**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HAEMONETICS CORPORATION,<br><br>*Plaintiff and Counterclaim Defendant*,<br><br>v.<br><br>FRESENIUS KABI USA, LLC<br>FRESENIUS KABI AG,<br><br>*Defendants*, and<br><br>FENWAL, INC.,<br><br>*Defendant and Counterclaim Plaintiff* | Case No.: 1:25-cv-08680<br><br>**JURY TRIAL DEMANDED**<br><br>Honorable LaShonda A. Hunt |

**PLAINTIFF HAEMONETICS CORPORATION'S ANSWER AND DEFENSES TO DEFENDANT FENWAL, INC.'S COUNTERCLAIMS**

Haemonetics Corporation ("Haemonetics"), by and through its undersigned counsel, hereby submits its Answer and Defenses to Defendant's Counterclaims (ECF No. 51) filed by Fenwal, Inc. ("Fenwal").

Haemonetics denies all allegations in Fenwal's Counterclaims, whether express or implied, expect those specifically admitted below. Each of the paragraphs 1-966 below corresponds to the same-numbered paragraphs in Fenwal's Counterclaims. Any factual allegation below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that arguably follow from the admitted facts. Haemonetics denies that Fenwal is entitled to the relief requested or any other relief. Haemonetics answers Fenwal's Counterclaims as follows:

## INTRODUCTION[1]

1. For more than 75 years, Fenwal has been a leader among life science companies, developing groundbreaking and innovative medical devices in pursuit of its mission to save and improve lives with high-quality, accessible, and innovative healthcare products. As a premier research-intensive life science company, Fenwal invests years researching, engineering, and developing each of its many products. Through the efforts of Fenwal's product development, regulatory affairs, and other business teams, Fenwal's research results in life-saving medical technology related to blood collection, separation, and transfusion, which is used globally to ensure a safe and available supply of blood products that provide care for critically and chronically ill patients.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

2. As just one example, Fenwal has pioneered the development of plasmapheresis systems, which withdraw the donor's blood, separate and collect the donor's plasma from the blood, and return the remaining blood components to the donor. Fenwal's plasmapheresis devices make plasma donation more accessible, convenient, and safer for donors. And in the case of the Adaptive Nomogram, they enable plasma collection facilities to collect an overall greater amount of plasma per donation session.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the remaining allegations in this paragraph. Haemonetics specifically denies that Fenwal has pioneered the development of plasmapheresis systems.

3. Plasma collected using Fenwal's systems are used to create life-saving therapies and medications for patients with serious medical conditions, including immune deficiencies, clotting disorders, autoimmune diseases, severe trauma, and cancer. These treatments cannot be synthetically produced; they must be derived from human plasma. Hundreds of plasma donations are typically required to treat just one patient with an immune disorder or autoimmune condition. Fenwal is one of the largest suppliers of plasmapheresis products in the United States. Fenwal's technologies have far-reaching impact, as its products are used to help treat patients on six continents.[2]

---

[1] Haemonetics repeats the headings recited in the Counterclaims for convenience. To the extent such headings contain factual allegations to which a response is required, Haemonetics denies all such allegations.

[2] https://firstwordhealthtech.com/story/1410735 (last visited December 2, 2025) (FENWAL 00004760-FENWAL 00004762).

**ANSWER:** Haemonetics admits that Fenwal is a supplier of plasmapheresis products in the United States and that plasmapheresis systems generally are used for the described purposes. Haemonetics otherwise lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the remaining allegations in this paragraph. Haemonetics refers to the cited document as to its contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

4. Haemonetics' patent infringement lawsuit against Fenwal and its affiliates seeks to rewrite history, re-casting Haemonetics—founded decades after Fenwal—as the leading innovator in the field. The reality is that far from being a leader, Haemonetics habitually follows Fenwal to market with its products. Rather than competing fairly in the market, Haemonetics seeks a competitive advantage through baseless litigation, using patents that cannot validly cover Fenwal's innovative plasmapheresis systems.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

5. Fenwal is entitled to have the cloud of infringement allegations removed from its innovative systems. Thus, Fenwal brings counterclaims under 28 U.S.C. § 2201 to seek declaratory judgment that the patents asserted by Haemonetics (U.S. Patent Nos. 10,758,652, 12,171,916, and 12,186,474) (collectively the "Haemonetics Asserted Patents") against Fenwal's plasmapheresis devices in the First Amended Complaint are neither valid nor infringed.

**ANSWER:** Haemonetics denies that Fenwal is entitled to have Haemonetics' infringement allegations removed. This paragraph also contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies these allegations in this paragraph.

6. Fenwal also counterclaims against Haemonetics under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, to vindicate its intellectual property rights based on Haemonetics' infringement of Fenwal's pioneering patents that cover plasmapheresis devices. Haemonetics makes, uses, sells/leases, offers for sale or lease, and/or unlawfully imports into the United States: (i) plasmapheresis devices, including the NexSys PCS® device, including those with YES® Technology and/or PERSONA® Technology (collectively, "NexSys PCS"), (ii) the disposable components and kits, including those used with the NexSys PCS ("Disposable Kits") and (iii) donor management software and related software, including software used with the NexSys PCS (collectively, "Accused Haemonetics Products").

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph. Haemonetics denies that it unlawfully imports any products into the United States, including the Accused Haemonetics Products. Haemonetics admits that it manufactures and sells the NexSys PCS® device.

7. The Accused Haemonetics Products infringe at least the following valid and enforceable patents owned by Fenwal: U.S. Patent Nos. 10,431,334 ("the '334 Patent"); 10,643,748 ("the '748 Patent"); 10,872,693 ("the '693 Patent"); 11,672,891 ("the '891 Patent"); 12,397,089 ("the '089 Patent"); 11,285,251 ("the '251 Patent"); 11,369,724 ("the '724 Patent"); 11,730,873 ("the '873 Patent"); and 12,144,624 ("the '624 Patent") (collectively, the "Fenwal Asserted Patents").

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**NATURE OF THE ACTION**

8. This is an action for: (i) patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*; (ii) invalidity of the Haemonetics Asserted Patents under the Declaratory Judgment Act (28 U.S.C. § 2201); (iii) non-infringement of the Haemonetics Asserted Patents under 28 U.S.C. § 2201; and (iv) such other relief as the Court deems just and proper.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

**THE PARTIES**

9. Fenwal is a medical technology corporation organized and existing pursuant to the laws of the state of Delaware and has a principal place of business at 3 Corporate Drive, Lake Zurich, Illinois 60047.[3] Fenwal is a subsidiary of Fresenius Kabi AG, a corporation organized and existing under the laws of the Federal Republic of Germany.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics refers to the

[3] Fenwal, Inc. Statement of Good Standing (State of Delaware Dept. of State, Division of Corporations) (dated November 18, 2025) (FENWAL 00004766).

cited document as to its contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

10. Haemonetics Corporation (Haemonetics) is a Massachusetts corporation with its principal place of business at 125 Summer Street, Boston, Massachusetts 02110. Haemonetics is the FDA registered Specification Developer for the Accused Haemonetics Products that are manufactured, used, sold, leased, offer for sale or lease, and/or imported into the United States.

**ANSWER:** Haemonetics admits the allegations in this paragraph.

11. On information and belief, Haemonetics designs, develops, makes, imports, tests, offers for sale/lease, leases, and sells in the United States infringing plasmapheresis systems, their components, and related software, including devices sold under the tradenames NexSys PCS®, NexSys PCS® with YES® Technology, and NexSys PCS with PERSONA® Technology.[4] On information and belief, Haemonetics launched the NexSys PCS with YES® Technology in the United States in 2018 and the NexSys PCS with PERSONA® Technology in the United States in 2020.[5]

**ANSWER:** Haemonetics admits that it manufacturers and sells the NexSys PCS® device and that the NexSys PCS with YES® Technology was launched in the United States in 2018 and the NexSys PCS with PERSONA® Technology was launched in the United States in 2020. Haemonetics specifically denies that its devices infringe Fenwal's asserted patents. Haemonetics refers to the cited documents as to its contents which speak for themselves.

---

4 https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfrl/rl.cfm?start_search=1&showList=1&establishment Name=haemonetics&regNum=&StateName=&CountryName=&OwnerOperatorNumber=&OwnerOperatorName=&ProductCode=&DeviceName=&ProprietaryName=&establishmentType=&PAGENUM=10&SortColumn=EstablishmentName20%25ASC&RegistrationNumber=1219343 (last visited December 2, 2025) (FENWAL 00004774-FENWAL 00004778).

5 https://haemonetics.gcs-web.com/news-releases/news-release-details/haemoneticsannounces-regulatory-clearances-nexsys-pcstm (last visited December 2, 2025) (FENWAL 00004770-FENWAL 00004772) (Haemonetics Press Release re: YES Technology); 510(k) Letter - BK180185 (FENWAL 00004721-FENWAL 00004723); 510(k) Summary - BK180185 (FENWAL 00004724-FENWAL 00004728); https://haemonetics.gcsweb.com/news-releases/news-release-details/haemonetics-receives-fda-clearance-nexsyspcsr-personatm (last visited December 2, 2025) (FENWAL 00005399-FENWAL 00005404) ("Haemonetics Press Release re: PERSONA Technology").

## JURISDICTION

12. This Court has jurisdiction over Fenwal's counterclaims pursuant to 28 U.S.C. §§ 2201 *et seq.* and 28 U.S.C. §§ 1331, 1338(a), and § 1367. Furthermore, an actual, substantial, and continuing justiciable controversy exists between Fenwal and Haemonetics based on Haemonetics having filed its First Amended Complaint (ECF No. 32) against Fenwal alleging infringement of the Haemonetics Asserted Patents. The controversy concerns the invalidity and non-infringement of the Haemonetics Asserted Patents.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph. Haemonetics admits it filed a First Amended Complaint against Fenwal alleging infringement of the Haemonetics Asserted Patents.

13. This Court has personal jurisdiction over Haemonetics at least because Haemonetics has submitted to the personal jurisdiction of this Court by filing its Complaint (ECF No. 1) and First Amended Complaint (ECF No. 32) in this Court. This Court also has personal jurisdiction over Haemonetics because Haemonetics has committed acts of infringement in this District and the State of Illinois, including at least because it, directly and/or indirectly, advertises, makes, uses, sells, leases, and/or offers for sale/lease the infringing products at issue in this case in this District and the State of Illinois, and places those infringing products in the stream of commerce with the expectation and knowledge that they will be used by customers such as blood collection facilities in this District. Thus, Haemonetics has committed tortious acts of patent infringement in this District and the State of Illinois; has expressly aimed its actions at this District and the State of Illinois with the knowledge that they would cause harm and substantial injury to Fenwal in the District and the State of Illinois; and Fenwal's counterclaims relate to technologies in Haemonetics' products that infringe the Fenwal Asserted Patents and are imported, advertised, marketed, manufactured, used, offered for sale/lease, leased, and/or sold in this District and in the State of Illinois.

**ANSWER:** Haemonetics admits that this Court has personal jurisdiction over Haemonetics for the purpose of this proceeding only. Haemonetics specifically denies that it has committed any acts of infringement, in this District or elsewhere, and denies the remaining allegations in this paragraph.

## VENUE

14. Venue properly lies in this District under 28 U.S.C. §§ 1391 and 1400(b), because Haemonetics has consented to venue in this Court by filing its First Amended Complaint for patent infringement in this Court, and seeking other relief from this Court, thereby waiving any objections to venue for any counterclaims asserted against it. *See, e.g.*, *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 973, 976-77 (N.D. Ill. 2002); *Shapo v. Engle*, No. 98-cv-7909, 2000 WL 198435, at *5 (N.D. Ill. Feb. 11, 2000).

**ANSWER:** Haemonetics admits that venue is proper in this District for the purpose of this proceeding only. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

## FENWAL IS A WORLD LEADER IN BLOOD COLLECTION AND SEPARATION TECHNOLOGIES

15. Fenwal has been a pioneer in blood-collection and blood-separation technologies, for more than 75 years, bringing numerous innovative products including reusable devices and disposable sets for blood collection, separation, and transfusion to the market during this time. Fenwal's products address critical medical needs, enabling collection of blood components used in life-saving therapies which help treat patients on six continents.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics specifically denies that Fenwal has been a pioneer in blood-collection and blood-separation technologies.

16. Fenwal was founded as Fenwal Laboratories in 1945, shortly after World War II, by T.L. Fenn and Carl Walter. From its inception, Fenwal Laboratories was dedicated to advancing blood collection and separation technologies. The company quickly distinguished itself as an innovator: In 1948, it introduced the first plastic blood bag to replace glass bottles—a milestone that revolutionized blood collection by improving safety and sterility, making blood separation and modern blood banking possible. This early innovation set the stage for Fenwal's ongoing leadership in the transfusion and plasmapheresis fields.[6]

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics refers to the cited document as to its contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

17. In 1959, Baxter International ("Baxter") acquired Fenwal Laboratories and operated it as Baxter's transfusion therapies division. Over the following decades, the Fenwal division continued to pioneer the development of technologies focused on automating the

[6] https://www.biospace.com/fenwal-launched-as-independent-corporation-followingcompletion-of-divestiture-from-baxter-healthcare-corporation# (last visited December 2, 2025) (FENWAL 00004763-FENWAL 00004765); https://www.bioworld.com/articles/455418 (last visited December 2, 2025) (FENWAL 00004779-FENWAL 00004780).

collection, separation, filtration, and transfusion of blood and blood components, with a focus on the evolving needs of blood centers and hospitals worldwide.[7]

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics refers to the cited document as to its contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

18. In 1972, the Fenwal division invented its landmark product, the "Fenwal CS-3000," an automated blood-cell separating device.[8] The term "apheresis," a Greek word for "to separate," was coined as a result and the term started to be used by clinicians in 1979.[9] The Fenwal CS-3000 enabled the automated, continuous-flow collection of specific blood components, from a single donor. This revolutionized the blood donation process making it possible for donors to donate blood more frequently than they otherwise would be able to because the process allows for the collection of plasma from donated blood, while returning the remaining components—primarily red blood cells and platelets—back to the donor. The Fenwal CS-3000 was distributed worldwide, and the inventors were widely recognized for their achievement through awards including the prestigious Dale A. Smith Memorial Award from the Association for the Advancement of Blood and Biotherapies (AABB), formally known as the American Association for Blood Bankers.[10]

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics refers to the

---

[7] https://www.biospace.com/fenwal-launched-as-independent-corporation-followingcompletion-of-divestiture-from-baxter-healthcare-corporation# (last visited December 2, 2025) (FENWAL 00004763-FENWAL 00004765); Fenwal Company Fact Sheet (FENWAL 00005323-FENWAL 00005324) at 2; https://staging.giveplasma.ca/a-brief-history-ofapheresis-machines/ (last visited December 2, 2025) (FENWAL 00004710-FENWAL 00004711).

[8] https://staging.giveplasma.ca/a-brief-history-of-apheresis-machines/ (last visited December 2, 2025) (FENWAL 00004710-FENWAL 00004711); https://americanhistory.si.edu/collections/object/nmah_600368 (last visited December 2, 2025) (FENWAL 00004719-FENWAL 00004720); Fenwal Company Fact Sheet at 2.

[9] https://staging.giveplasma.ca/a-brief-history-of-apheresis-machines/ (last visited December 2, 2025) (FENWAL 00004710-FENWAL 00004711).

[10] https://staging.giveplasma.ca/a-brief-history-of-apheresis-machines/ (last visited December 2, 2025) (FENWAL 00004710-FENWAL 00004711); https://www.aabb.org/aboutaabb/history#:~:text=Since %20its%20inception%20in%201947, advancing%20donor%20and%20patient%20care (last visited December 2, 2025) (FENWAL 00004712-FENWAL 00004718).

cited documents as to their contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

19. The Fenwal division continued to innovate in the field of plasmapheresis. In 1984, Fenwal introduced the Autopheresis-C device, an automated system that further streamlined plasma collection. Whereas the Fenwal CS-3000 device was a centrifugal apheresis system, the Autopheresis-C device used a unique spinning membrane technology, which resulted in virtually cell-free plasma. And in 2003, the Fenwal division introduced the Alyx, a portable/mobile, automated cell separation device. This device collects two units of red blood cells or red cells and plasma from a single donor in less than 30 minutes.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

20. In 2007, private investors acquired the Fenwal division from Baxter and launched it as Fenwal, Inc.[11] In 2012, Fenwal was acquired by Fresenius Kabi, a leading global healthcare company that focuses on medicines and medical devices aimed at improving human healthcare. Fenwal's integration with Fresenius Kabi provided Fenwal with resources to further its technological advancements.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the remaining allegations in this paragraph. Haemonetics refers to the cited document as to its contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

21. By April 2012, Fenwal received FDA clearance to market a revolutionary new plasma collection system called the Aurora plasmapheresis system ("the Aurora System"). The Aurora System contains improved hardware and software, to support two-way, wireless data communication, improving the system's accuracy and safety and enhancing the operator and patient experience. Among other things, the Aurora System had an interactive touch-screen display with intuitive menus and icons, connectivity with Fenwal DXT software, and a controller that work in conjunction with other components of the system to provide an improved system. For example, the Aurora System enhanced donor safety in a revolutionary way by enabling more reliable identification and confirmation of the donor, ensuring that appropriate procedural parameters are set for each donor. The Aurora System also enhanced donor efficiency by automating the plasmapheresis procedure in a manner not achieved before.

---

[11] See https://www.bioworld.com/articles/455418 (last visited December 2, 2025) (FENWAL 00004779-FENWAL 00004780).

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

22. Fenwal continued to advance its plasmapheresis technologies, and in 2016, Fenwal released the Aurora Xi plasmapheresis system. This machine, which incorporated faster processing speeds and larger spinning membrane, improved plasma donation center efficiency and donor experience by reducing donation times.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the remaining allegations in this paragraph.

23. Fenwal's recent innovations were critical in addressing the shortage of plasma precipitated by the COVID pandemic. During the pandemic, donations decreased, and the inventory of collected plasma relied upon to stabilize plasma-derived therapies was depleted. Pharmaceutical manufacturers, who rely on plasma collectors, utilized all source plasma reserves to meet the growing demand for plasma-based therapies.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

24. Fenwal's innovations related to the Adaptive Nomogram responded to this increased need for plasma. This proprietary and innovative nomogram, which is used with the Aurora Xi system to collect plasma, considers a donor's unique characteristics to determine an optimal amount of plasma to safely collect from the donor while providing an advantage compared to other on-market nomograms. In January 2025, Fenwal received FDA clearance for the Adaptive Nomogram.[12]

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics refers to the cited document as to its contents and denies knowledge and information sufficient to know whether those contents are accurate and complete. Haemonetics notes, however, that the cited documents indicates that defendant Fresenius-Kabi received FDA clearance for the Adaptive Nomogram.

---

[12] https://www.fresenius-kabi.com/us/news-and-events/receives-fda-510k-clearance-adaptivenomogram-enhancing-plasma-collection-efficiency-aurora-xi-plasmapheresis-system (last visited December 2, 2025) (FENWAL 00004767-FENWAL 00004769).

25. The Adaptive Nomogram represents a significant industry milestone as it enabled the collection of an average of 11.5% more plasma per donation, supporting higher production of plasma-derived therapies.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

26. In bringing its plasmapheresis devices to market, Fenwal has made substantial investments including testing, research, development, engineering, design, data collection and analysis, clinical trials, manufacturing, sales, and marketing. Fenwal has conducted numerous clinical trials, costing millions of dollars each, to demonstrate the safety and efficacy of its products.[13]

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics refers to the cited document as to its contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

27. Today, Fenwal remains an innovative, market leader in blood collection systems. Fenwal's products have been used in millions of procedures worldwide, contributing to the safety, quality, and availability of plasma and other blood components for therapeutic use.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

## THE FENWAL ASSERTED PATENTS

28. As a leading medical technology innovator, Fenwal invests in its intellectual property and possesses a significant portfolio of patents covering various aspects of plasmapheresis and systems for carrying out these procedures, including patents infringed by Haemonetics' devices (the "Fenwal Asserted Patents").[14] The Fenwal Asserted Patents fall into three groups:

---

[13] https://clinicaltrials.gov/search?term=fenwal,%20inc (last visited December 2, 2025) (FENWAL 00005320-FENWAL 00005322).

[14] *See, e.g.*, https://www.chicagobusiness.com/technology/chicagos-most-innovativecompanies-2025 (Chicago's Most Innovative Companies 2025) (Oct. 3, 2025) (FENWAL 00004735-FENWAL 00004752) (identifying Fenwal as a leading patent holder among Chicago-area companies).

(i) **The 2011 Fenwal Patents**: U.S. Patent No. 10,431,334 ("the '334 Patent"), U.S. Patent No. 10,643,748 ("the '748 Patent"), and U.S. Patent No. 10,872,693 ("the '693 Patent").

(ii) **The 2016 Fenwal Patents:** U.S. Patent No. 11,672,891 ("the '891 Patent") and U.S. Patent No. 12,397,089 ("the '089 Patent").

(iii) **The 2018 Fenwal Patents**: U.S. Patent No. 11,852,251 ("the '251 Patent"), U.S. Patent No. 11,369,724 ("the '724 Patent"), U.S. Patent No. 11,730,873 ("the '873 Patent"), and U.S. Patent No. 12,144,624 ("the '624 Patent").

**ANSWER:** Haemonetics denies that the Haemonetics' devices infringe the Fenwal Asserted Patents, Haemonetics otherwise lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the remaining allegations in this paragraph. Haemonetics refers to the cited document as to its contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

***The 2011 Fenwal Patents***

29. While continuing to research and develop its plasmapheresis technology, Fenwal recognized that plasma collection, when performed improperly, posed a health and safety risk to patients and donors.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

30. For example, plasmapheresis procedures, when performed with incorrect parameters (*e.g.*, inaccurate donor-specific inputs), can lead and have led to adverse donor events, including hypotension, arrhythmias, hemolysis, shock, and in extreme cases, even death. *See e.g.* Garozzo *et al*., "Adverse reactions to blood donations: the READ project," Blood Transfus. 2010, 8: 49-62 (FENWAL 00005420-FENWAL 00005433); Gupte, "Automation in Blood Centre: Its impact on blood safety," Asian Journal of Transfusion Science, April 2015, Vol. 9, Supp. 1 (FENWAL 00005415-FENWAL 00005419). Use of procedure parameters that are unsuited to the patient/donor can also lead to inefficient under-collection of donor plasma. As explained in the specification of the 2011 Fenwal Patents, Fenwal inventors recognized these problems with use of procedure parameters that are not tailored to the donor:

> It is axiomatic that the parameters under which an at least partially automated medical procedure is performed, including without limitation blood donations and apheresis, should correspond or be appropriate to the characteristics of the donor or patient upon which the procedure is being performed. For example, when performing a blood donation procedure, it

> may be advantageous for a number of parameters, such as the sex and weight of the donor or patient, to be taken into consideration. If the incorrect operational parameters are used, the procedure may be less efficient than it would otherwise be and/or in certain circumstances could possibly be harmful to the donor or patient. Accordingly, care should be taken that the operational parameters correspond to the unique characteristics of the donor or patient.

Exhibit 5 (the '693 Patent) at 1:28-41.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics refers to the cited documents as to their contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

31. Prior to Fenwal's inventions, these issues arose in part from errors in entry of donor or patient information into the system controlling the plasmapheresis collection, which led to inefficiencies in the collection procedure and/or dangers to the patient. *Id.* at 1:42-45, 1:46-52. The potential for error due to inaccurate application of donor-specific parameters was exacerbated by the fact that multiple different plasmapheresis devices may coexist in a single location, each running unique collection nomograms, with multiple donors being treated at the same time.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

32. Unlike the prior art systems, the systems and methods described in the 2011 Fenwal Patents enhance the plasmapheresis process by reducing error and increasing safety. The 2011 Fenwal Patents ensure the plasmapheresis procedures are accurately tailored to each donor's unique characteristics, including, for example, by the entry of donor-specific information, once, into a data storage location that can be reliably transmitted to control the plasmapheresis collection.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

33. The 2011 Fenwal Patents disclose a system that includes a database, a user interface, an apheresis treatment device, and a controller. The database is pre-programmed with one or more subject data entries, each subject data entry having associated with it subject-specific information (such as name, weight, sex, age, *etc.*). Additionally, the subject data entry may include procedural information, such as one or more parameters with which the medical procedure is to be performed (*e.g.*, processing time in an apheresis procedure, flow rate, *etc.*). The user interface is adapted to receive an identity input from a unique subject. The controller is configured to compare the identity input to the subject-specific information of the subject data entries. If the identity input

corresponds to the subject-specific information of a subject data entry, the controller commands the treatment device to perform a medical procedure with respect to the subject. If the identity input does not correspond to the subject-specific information of any of the subject data entries, the controller prevents the performance of the medical procedure with respect to the subject. *See* Exhibit 5 at 1:66-2:17.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. The contents of the 2011 Fenwal Patents speak for themselves.

34. The 2011 Fenwal Patents consist of three patents, listed below. The three patents share the same specification and claim priority to U.S. Application Ser. No. 13/110,520 ("the '520 Application"), which was filed on May 18, 2011 by inventors Brian C. Case and Lan. L Nguyen.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. The contents of the 2011 Fenwal Patents speak for themselves.

35. Fenwal owns by assignment the full right, title, and interest in each patent and patent application in the family that claims priority to the '520 Application. *See* Exhibits 2, 4, 6.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

***U.S. Patent No. 10,431,334***

36. U.S. Patent No. 10,431,334 is titled "Performing an apheresis procedure on a human subject with identity confirmation" and issued on October 1, 2019, with Brian C. Case and Lan L. Nguyen as inventors. A copy of the '334 Patent is attached as Exhibit 1.

**ANSWER:** Haemonetics admits the allegations of this paragraph based on the face of the '334 Patent.

37. The '334 Patent duly and legally issued from U.S. Application No. 16/162,867, a continuation of U.S. Application No. 15/836,227, which claims priority to the '520 Application through a chain of continuation applications.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

38. Fenwal owns by assignment the full right, title, and interest in the ‘334 Patent. A copy of the assignment history of the ‘334 Patent is attached as Exhibit 2.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

39. The ‘334 Patent is valid and enforceable.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

***U.S. Patent No. 10,643,748***

40. U.S. Patent No. 10,643,748 is titled “Performing an apheresis procedure on a human subject with identity confirmation” and issued on May 5, 2020, with Brian C. Case and Lan L. Nguyen as inventors. A copy of the ‘748 Patent is attached as Exhibit 3.

**ANSWER:** Haemonetics admits the allegations of this paragraph based on the face of the ’748 Patent.

41. The ‘748 Patent duly and legally issued from U.S. Application No. 16/545,962, a continuation of U.S. Application No. 16/162,867 (which issued as the ‘334 Patent).

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

42. The ‘748 Patent is in the same family as the ‘334 Patent and also claims priority to the ‘520 Application.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

43. Fenwal owns by assignment the full right, title, and interest in the ‘748 Patent. A copy of the assignment history of the ‘748 Patent is attached as Exhibit 4.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

44. The ‘748 Patent is valid and enforceable.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

***U.S. Patent No. 10,872,693***

45. The '693 Patent is titled "Performing an apheresis procedure on a human subject with identity confirmation" and issued on December 22, 2020, with Brian C. Case and Lan L. Nguyen as inventors. A copy of the '693 Patent is attached as Exhibit 5.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the face of the '693 Patent.

46. The '693 Patent duly and legally issued from U.S. Application No. 16/842,879, a continuation of U.S. Application No. 16/545,962 (which issued as the '748 Patent).

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

47. The '693 Patent is in the same family as the '334 and '748 Patents and also claims priority to the '520 Application.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

48. Fenwal owns by assignment the full right, title, and interest in the '693 Patent. A copy of the assignment history of the '693 Patent is attached as Exhibit 6.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

49. The '693 Patent is valid and enforceable.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

***The 2016 Fenwal Patents***

50. Processing biological materials such as blood to separate out medically useful components safely, efficiently and economically, presents many challenges. At the time of the 2016 patent inventions, the industry recognized the importance of automated systems for blood processing. *See e.g.*, Pietersz et al. "Processing and storage of blood components: strategies to improve patient safety;" International Journal of Clinical Transfusion Medicine 2015:3 55–64 at 57 (FENWAL 00005331-FENWAL 00005340) ("Today, automated equipment for collecting whole blood in plastic bags, mixing, measuring the blood flow, weighing the blood components, calculating the collection time, and documenting all data has been developed and has contributed to the safety by collecting a standardized volume of blood.").

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics refers to the cited documents as to their contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

51. As described by the 2016 patents, in using automated equipment, there are several processing parameters that must be accounted for. These include, for example, the time required for the procedure, flow rates, centrifugation speeds, collection volumes and appropriate stopping points. *See e.g.*, Exhibit 7 (the '891 Patent) at 1:39-52. Running a procedure that fails to properly accord with one or more processing parameters incurs risks such as damaging the desired biological end-product, safety concerns due to overcollection of biological material from a donor, and prematurely ending the collection process impacting yield. Before the 2016 invention, processing operators had to rely on their own prior experience with the device and procedure and/or empirical data to estimate appropriate parameters for a processing procedure. This approach was less than ideal and raised, *inter alia*, safety, efficiency, and waste concerns.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. The 2016 patents speak for themselves.

52. The novel system of the 2016 Fenwal Patents avoids the need to make assumptions regarding the operation of the processing equipment based on potentially unreliable empirical data, which may have poor correlation to the operational conditions in individual procedures. The system provides for pre-process evaluation of one or more outputs and/or in process conditions in advance of performing the process. Such pre-process evaluation may prevent damage to the material being processed, avoid unsafe operating conditions, prevent wastage of the processor's disposable elements and avoid producing a product that fails to meet the desired specifications. *See e.g.*, *id.* at 1:39-52, 5:5-18, 5:45-53, 5:62-67, 6:1-18. The 2016 Fenwal Patents describe a controller that calculates outputs prior to process initiation and can prevent the process from starting if the predicted process would exceed the system's physical or operational constraints. In addition, the 2016 Fenwal Patents discloses real-time in process monitoring to compare parameters to pre-calculated expectations from the mathematical model. See, e.g., *id.* at 5:1-17. If a deviation is detected, the system can alert the operator. *See, e.g.*, *id.* at 6:10-19.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. The 2016 Fenwal Patents speak for themselves.

53. Specifically, the 2016 patents describe and claim systems and methods for performing a series of concrete steps that include, for example, a processing circuit configured to

receive activation from the operator to turn the blood processing system on, conduct self-checks on the system, receive input data for a process parameter value from a touch screen, verify that value is within a present range for the value, prior to initiating the centrifugal separation process, store a pre-process calculation of a volume of the blood component to be collected, provide that information to the operator via the touchscreen, prompt the operator to mount the disposable fluid circuit, automatically confirm that the circuit is installed, prime tubing of the disposable fluid circuit with a fluid, begin the centrifugation separation process on the biological fluid, check the air detector sensor for fluid/air interface; weigh the product container during the centrifugal separation process, process the biological fluid until the predetermined volume of the blood component is collected and alert the operator when the process is complete. *See e.g.*, *id.* at 12:53-19:41, Figures 6 and 7.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. The 2016 patents speak for themselves.

54. The ‘089 and ‘891 Patents share the same specification and claim priority to provisional U.S. Application Ser. No. 62/342,675 (“the ‘675 Provisional Application”), which was filed on May 27, 2016 by inventors Christopher Wegener, Daniel Boggs, Bret Olson, Steven Binninger, and James Hosek.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

55. Fenwal owns by assignment the full right, title, and interest in the patent and patent application in the family that claims priority to the ‘675 Application (including the ‘089 and ‘891 Patents). *See* Exhibits 8, 10.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

***U.S. Patent No. 11,672,891***

56. U.S. Patent No. 11,672,891 is titled “Cell processing system and method with preliminary process evaluation” and issued on June 13, 2023, with Christopher Wegener, Daniel Boggs, Bret Olson, Steven Binninger, and James Hosek as inventors. A copy of the ‘891 Patent is attached as Exhibit 7.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the face of the ’891 Patent.

57. The '891 Patent duly and legally issued from U.S. Application No. 17/398,780, a continuation of U.S. Application No. 15/456,853. The '891 Patent ultimately claims priority to the '675 Provisional Application.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

58. Fenwal owns by assignment the full right, title, and interest in the '891 Patent. A copy of the assignment history of the '891 Patent is attached as Exhibit 8.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

59. The '891 Patent is valid and enforceable.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

***U.S. Patent No. 12,397,089***

60. U.S. Patent No. 12,397,089 is titled "Cell processing system and method with preliminary process evaluation" and issued on August 26, 2025, with Christopher Wegener, Daniel Boggs, Bret Olson, Steven Binninger, and James Hosek as inventors. A copy of the '089 Patent is attached as Exhibit 9.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the face of the '089 Patent.

61. The '089 Patent duly and legally issued from U.S. Application No. 18/180,637, a continuation of U.S. Application No. 17,398,780 (which issued as the '891 Patent).

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

62. The '089 Patent is in the same family as the '891 Patent and also claims priority to the '675 Provisional Application.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

63. Fenwal owns by assignment the full right, title, and interest in the '089 Patent. A copy of the assignment history of the '089 Patent is attached as Exhibit 10.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

64. The '089 Patent is valid and enforceable.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

***The 2018 Fenwal Patents***

65. Plasma saves lives. Countless patients with rare, chronic, and life-threatening conditions need regular therapies derived from plasma. The proteins in blood plasma provide the primary ingredients for many important biologic medicines. But each donation only contains a tiny amount of what is required to create a single dose for a patient. For example, more than 1200 plasma donations are required to treat a 150 lb. hemophilia patient for a year.[15] Plasma cannot be manufactured, and the sole source of this lifesaving blood component is donors. Studies show that a donor's physical experience significantly impacts their willingness to repeat donations.[16] Thus, crucial to ensuring an ample supply of plasma is safeguarding the health and safety of the donors and making the donation process as efficient and relaxed as possible to encourage repeat donors, while maximizing the amount of plasma that can be safely collected.

**ANSWER:** Haemonetics generally admits the allegations in this paragraph, but refers to the cited documents as to their contents and denies knowledge and information sufficient to know whether those contents are accurate and complete.

66. The 2018 inventions strive to meet the ever-growing demand for plasma-derived medicines for patients in need, by focusing on donor-impacting details, such as safety and convenience, while safely optimizing the volume of raw plasma to be collected for a particular donor. *See* Exhibit 13 ('724 Patent) at 1:25-29. At the time of the inventions of the 2018 Fenwal Patents, plasma collection centers primarily used a simplified nomogram issued by the FDA to set the maximum plasma collection volumes based on donor weight. *See id.* at 2:8-10; 4:36-38 and Figure 1. As described by the patents, the FDA's simplified nomogram permitted the same volume of plasma to be drawn from for example, a donor weighing 110 pounds, and a donor weighing 149 pounds. Thus, it allowed for disproportionate collection among donors and potentially placed individuals particularly at the fringes of the weight groups, at risk for adverse events. Further, by failing to account for individual characteristics, the simplified nomogram did not maximize plasma collection volume.

---

15 *See* https://plasma.fresenius-kabi.us/donate (last visited December 2, 2025) (FENWAL 00004755-FENWAL 00004758).

16 Kumari, "Prevalence of acute adverse reactions among whole blood donors: A 7 years study," Journal of Applied Hematology, vol. 6, Issue 4, October-December 2015 (FENWAL 00005325-FENWAL 00005330).

**ANSWER:** Haemonetics admits that "by failing to account for individual characteristics, the simplified nomogram did not maximize plasma collection volume." Haemonetics lacks information sufficient to admit or deny the remaining allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

67. The 2018 inventions allow for a personalized and improved donor experience. *See, e.g.*, *id.* at 51-59. They provide an automated system that maximizes the amount of plasma safely harvested from a donor, based on characteristics such as weight, height, hematocrit and the anticoagulant to whole blood ratio. ("ACR"). *See, e.g.*, *id.* at 2:66-3:21. The 2018 Fenwal Patents disclose aspects of the inventions including:

An automated plasmapheresis system performing multiple cycles of draw and return, comprising a hardware component (with pumps, sensors, controller) and a disposable kit (including a separator, collection containers and tubing). *See, e.g.*, *id.* at 3:22-30, 6:26-35.

A controller that is programmable and receives donor-specific parameters (such as weight, height, sex, hematocrit) either manually or electronically from a donor management system. The controller can be paired with a touchscreen for display and data entry. *See, e.g.*, *id.* at Abstract, 5:10-33, 6:3-6.

The system can calculate the target of plasma to be collected based on the combination of donor hematocrit and the ACR. The system can control the ACR and consider the anticoagulant volume in the plasma product collected. *See, e.g.*, *id.* at 3:39-67. Algorithms that factor in donor hematocrit and total blood volume, among other factors, to determine the maximum safe volume of raw plasma that can be collected are disclosed. Id. During the plasmapheresis procedure, the donor's hematocrit changes as the plasma is removed and red-blood cells are returned to the donor. The system can re-calculate allowable plasma product to be collected after each cycle, ensuring maximum safe amount of plasma is collected throughout the procedure. *See e.g.*, *id.* at 17:3-6.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph. Haemonetics refers to the contents of the cited documents.

68. Three of the four 2018 Fenwal Patents (the '251, '724 '873 Patents), share the same specification and claim priority to: (i) U.S. Application Ser. No. 62/846,400, filed May 10, 2019 ("the '400 Provisional Application"); (ii) U.S. Application Ser. No. 62/752,480 filed Oct. 30, 2018 ("the '480 Provisional Application"); (iii) U.S. Application Ser. No. 62/674,144, filed May 21, 2018 ("the '144 Provisional Application"); and (iv) PCT/US2019/033318 ("the '318 PCT Application").

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

69. The ‘624 Patent claims priority to the ‘400, ‘480, ‘144 Provisional Applications, the ‘318 PCT Applications, as well as to: (i) U.S. Application Ser. No. 63/140,534 filed on Jan. 22, 2021 (“the ‘534 Provisional Application”); and (ii) U.S. Application Ser. No. 17/306,099 (“the ‘099 Application”) filed on May 3, 2021, which is a continuation-in-part of U.S. application No. 16/739,441 (“the ‘441 Application”) filed on January 20, 2020.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

70. Fenwal owns by assignment the full right, title, and interest in the ‘251, ‘724, ‘873 and ‘624 Patents. *See* Exhibits 12, 14, 16, 18.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

***U.S. Patent No. 11,285,251***

71. U.S. Patent No. 11,285,251 is titled “Systems and methods for optimization of plasma collection volumes” and issued on March 29, 2022, with Amit J. Patel, Samantha M. Planas, Walter T. Watts, Kyungyoon Min, and Daniel R. Boggs as inventors. A copy of the ‘251 Patent is attached as Exhibit 11.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the face of the ’251 Patent.

72. The ‘251 Patent duly and legally issued from U.S. Application No. 17/386,992, a continuation of U.S. Application No. 17/194,410, which claims priority to the ‘144 Provisional Application through a chain of continuation applications.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

73. Fenwal owns by assignment the full right, title, and interest in the ‘251 Patent. A copy of the assignment history of the ‘251 Patent is attached as Exhibit 12.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

74. The ‘251 Patent is valid and enforceable.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

***U.S. Patent No. 11,369,724***

75. U.S. Patent No. 11,369,724 is titled “Systems and methods for optimization of plasma collection volumes” and issued on June 28, 2022, with Amit J. Patel, Samantha M. Planas, Walter T. Watts, Kyungyoon Min, and Daniel R. Boggs as inventors. A copy of the ‘724 Patent is attached as Exhibit 13.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the face of the ’724 Patent.

76. The ‘724 Patent duly and legally issued from U.S. Application No. 17/675,824, a continuation of U.S. Application No. 17/386,992 (which issued as the ‘251 Patent).

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

77. Fenwal owns by assignment the full right, title, and interest in the ‘724 Patent. A copy of the assignment history of the ‘724 Patent is attached as Exhibit 14.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

78. The ‘724 Patent is valid and enforceable.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

***U.S. Patent No. 11,730,873***

79. U.S. Patent No. 11,730,873 is titled “Systems and methods for optimization of plasma collection volumes” and issued on August 22, 2023, with Amit J. Patel, Samantha M. Planas, Walter T. Watts, Kyungyoon Min, and Daniel R. Boggs as inventors. A copy of the ‘873 Patent is attached as Exhibit 15.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the face of the ’873 Patent.

80. The ‘873 Patent duly and legally issued from U.S. Application No. 18/109,547, a continuation of U.S. Application No. 17/825,918.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

81. Fenwal owns by assignment the full right, title, and interest in the '873 Patent. A copy of the assignment history of the '873 Patent is attached as Exhibit 16.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

82. The '873 Patent is valid and enforceable.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

***U.S. Patent No. 12,144,624***

83. U.S. Patent No. 12,144,624 is titled "Systems and methods for plasma collection" and issued on November 19, 2024, with Amit J. Patel, Samantha M. Planas, Walter T. Watts, Kyungyoon Min, Daniel R. Boggs, and Katherine N. Radwanski as inventors. A copy of the '624 Patent is attached as Exhibit 17.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the face of the '624 Patent.

84. The '624 Patent duly and legally issued from U.S. Application No. 18/371,795, a continuation of U.S. Application No. 17/861.437.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

85. Fenwal owns by assignment the full right, title, and interest in the '624 Patent. A copy of the assignment history of the '624 Patent is attached as Exhibit 18.

**ANSWER:** Haemonetics lacks information sufficient to admit or deny the allegations in this paragraph, and on that basis, denies the allegations in this paragraph.

86. The '624 Patent is valid and enforceable.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

## HAEMONETICS AND THE ACCUSED HAEMONETICS PRODUCTS

87. Haemonetics competes with Fenwal's Aurora and Aurora Xi device product lines in the automated plasma collection market.[17] Haemonetics has three principal businesses: Plasma, Blood Center, and Hospital.[18] Haemonetics' "Plasma" business "includes plasma collection devices and disposables, [and] donor management software and supporting software solutions sold to plasma customers."[19] Its "Blood Center" business "includes blood collection and processing devices and disposables for plasma, red cells and platelets."[20]

**ANSWER:** Haemonetics admits that it competes with Fenwal's devices in the automated plasma collection market. Haemonetics denies the characterizations of its business in this paragraph. Haemonetics refers to the cited document that speaks for itself.

88. Through its Plasma business, Haemonetics offers "automated plasma collection systems, donor management software and supporting software solutions."[21] Haemonetics' plasma products include plasma collection devices, associated disposable/consumable products, and software and services that are designed to support multiple facets of plasma collector operations.[22]

**ANSWER:** Haemonetics admits the allegations in this paragraph quoted from the cited document, but otherwise refers to the cited document that speaks for itself.

89. The plasmapheresis systems that Haemonetics makes/manufactures, imports, offers for sale/lease, leases, sells, and/or uses in the United States include: (i) the NexSys PCS plasmapheresis device, including those used with YES® and/or PERSONA® Technologies (collectively, NexSys PCS), (ii) Disposable Kits, and (iii) donor management software and related software used with the NexSys PCS (collectively, Accused Haemonetics Products). The Accused Haemonetics Products form an integrated system (the "NexSys PCS System") and are used by blood establishment centers and other entities in the United States to collect plasma.[23]

---

17 https://haemonetics.gcs-web.com/static-files/c3810e5b-ce8f-46e3-8e76-c66ff4145609 (last visited December 2, 2025) ("2025 Haemonetics 10-K") (FENWAL 00004590-FENWAL 00004709) at 3.

18 *Id.* at 1.

19 *Id.* at 1.

20 *Id.* at 1.

21 *Id.* at 1.

22 *Id.* at 2.

23 NexSys PCS User Manual, 117649-US(AG) (Jan. 2020) ("NexSys PCS User Manual") (FENWAL 00004781-FENWAL 00004905) at 10;

**ANSWER:** Haemonetics admits that Haemonetics manufactures and sells the NexSys PCS® System. Haemonetics denies the remaining characterizations regarding the Accused Haemonetics Products in this paragraph, and refers to the cited NexSys PCS User Manual, that speaks for itself.

90. Haemonetics represents that the NexSys PCS System includes the following parts that collectively function as a system:

- **NexSys PCS device:** The electro-mechanical device and graphical user interface (GUI) screen. The NexSys PCS device has built-in guided operation, automated procedure programming, donor information display, and bi-directional connectivity to Blood Establishment Computer Systems ("BECS"), which runs Haemonetics' NexLynk Data Management System or another third-party donor management system.[24,25] The NexSys PCS device is offered with the Standard nomogram, the YES Technology nomogram ("NexSys PCS YES"), or the PERSONA Technology nomogram ("NexSys PCS PERSONA").
- **Protocol:** The embedded software that controls the process used to gather blood components from a donor (including nomograms such as the YES® or PERSONA® nomograms)
- **Disposable set:** Single-use collection components (Disposable Kits), which are also sold by Haemonetics
- **Solutions:** Anticoagulant and (optionally) saline solutions for collecting and processing blood components (also sold by Haemonetics).[26]

**ANSWER:** Haemonetics refers to the cited documents and their contents, which speak for themselves.

91. In 2018, Haemonetics received 510(k) clearance from the U.S. Food and Drug Administration ("FDA") for use of the YES® Technology with the NexSys PCS device and

---

https://plasma.haemonetics.com/devicesolutions (last visited December 2, 2025) (FENWAL 00004753-FENWAL 00004754).

[24] https://plasma.haemonetics.com/device-solutions/nexsys-pcs (last visited December 2, 2025) (FENWAL 00005301-FENWAL 00005305).

[25] https://plasma.haemonetics.com/-/media/files/plasma/persona_brochure.pdf (last visited December 2, 2025) (FENWAL 00005316-FENWAL 00005319) ("NexSys PCS PERSONA Brochure").

[26] NexSys PCS User Manual at 10; 2025 Haemonetics 10-K at 7.

released the device in the United States.[27] On the FDA Establishment Registration & Device Listing website, Haemonetics is listed as the Specification Developer for the NexSys PCS device with YES® Technology.[28]

**ANSWER:** Haemonetics admits that it received 510(k) clearance from the FDA for its YES® Technology in 2018. Haemonetics otherwise refers to the cited documents which speak for themselves.

92. Haemonetics has stated that Plasma Target Selection for the YES® Technology has the "option to target based on Plasma Volume/Weight or Collection Volume."[29]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself.

93. In 2020, Haemonetics received FDA 510(k) clearance for use of the PERSONA® Technology with the NexSys PCS and released the device in the United States.[30] On the FDA Establishment Registration & Device Listing website, Haemonetics is listed as the Specification Developer for the NexSys PCS® device with PERSONA® Technology.[31]

---

27 https://haemonetics.gcs-web.com/news-releases/news-release-details/haemoneticsannounces-regulatory-clearances-nexsys-pcstm (last accessed December 2, 2025) (FENWAL 00004770-FENWAL 00004772); 510(k) Letter - BK180185 (FENWAL 00004721-FENWAL 00004723); 510(k) Summary - BK180185 (FENWAL 00004724-FENWAL 00004728).

28 On information and belief, the YES® nomogram was first released for PCS 300. On further information and belief, the FDA premarket submission number for the YES® nomogram is BK180185. *See* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfrl/rl.cfm?start_search=1&showList=1&establishmentName=&regNum=&StateName=&CountryName=&OwnerOperatorNumber=&OwnerOperatorName=&ProductCode=GKT&DeviceName=&ProprietaryName=&establishmentType=&PAGENUM=10&SortColumn=EstablishmentName20%25ASC&RegistrationNumber=1219343 (FENWAL 00005397-FENWAL 00005398); https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfrl/rl.cfm?lid=584566&lpcd=GKT (Establishment Registration & Device Listing for PCS 300, NexSys PCS, listing Haemonetics as the Specification Developer) (last visited December 2, 2025) (FENWAL 00004759).

29 510(k) Summary - BK180185.

30 2025 Haemonetics 10-K at 2; Haemonetics Press Release re: PERSONA Technology.

31 https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfrl/rl.cfm?start_search=1&showList=1&establishment Name=haemonetics&regNum=&StateName=&CountryName=&OwnerOperatorNumber=&OwnerOperatorName=&ProductCode=&DeviceName=&ProprietaryName=&establishmentType=&P

**ANSWER:** Haemonetics admits that it received 510(k) FDA clearance for the use of the PERSONA® Technology in 2020. Haemonetics otherwise refers to the cited documents which speak for themselves.

94. Haemonetics advertises the PERSONA® Technology as "built upon the NexSys PCS platform."[32] On information and belief, the Persona Technology calculates a target volume of plasma for collection from the donor based on the donor's weight, height, and hematocrit (*i.e.*, the percentage of red blood cells in the total volume of blood). Haemonetics states that "NexSys PCS with Persona technology uses a percent plasma nomogram that customizes plasma collection based on an individual donor's body composition."[33]

**ANSWER:** Haemonetics denies the characterizations of its technology in this paragraph, and refers to the cited documents which speak for themselves.

95. The NexSys PCS forms "bi-directional connectivity" with a BECS and may receive donor information stored on the BECS and send reports of a donor's plasmapheresis procedure to the BECS.[34]

**ANSWER:** Haemonetics denies the characterizations of its technology in this paragraph, and refers to the cited document that speaks for itself.

96. Haemonetics offers supporting software applications to provide connectivity between the NexSys PCS and BECS, including:

- **HaemoCommunicator**: This is a software application that "serves as middleware for data communication" between NexSys PCS and the BECS;[35]
- **NexSys PCS Device Driver:** This driver enables HaemoCommunicator to send and receive data from NexSys PCS. According to Haemonetics, "[w]ith this data, the NexSys PCS device can be pre-programmed for each collection, with

AGENUM=10&SortColumn=EstablishmentName20%25ASC&RegistrationNumber=1219343 (last visited December 2, 2025) (FENWAL 00004759).

32 NexSys PCS PERSONA Brochure.

33 *Id.* at 2; *see also* Sept. 30, 2020 Haemonetics 510(k) Summary Submission (FENWAL 00004729-FENWAL 00004734) at 1.

34 https://plasma.haemonetics.com/-/media/files/plasma/plasma-connectivity-brochure.pdf (last visited December 2, 2025) (FENWAL 00004909- FENWAL 00004911) ("NexSys PCS Bi-Directional Connectivity Brochure").

35 NexSys PCS Bi-Directional Connectivity Brochure.

information about the collection sent back to HaemoCommunicator once the donation is complete."[36]

- **HaemoCommunicator HTTP Driver:** This driver connects with BECS software solutions to permit integration of the NexSys PCS device with the BECS.[37]

- **NexSys PCS HL7 Driver:** On information and belief, similar to the HaemoCommunicator HTTP Driver, this driver enables data transfer between HaemoCommunicator and non-Haemonetics BECS software.[38]

**ANSWER:** Haemonetics denies the characterizations of its technology in this paragraph, and refers to the cited documents which speak for themselves.

97. NexSys PCS includes bi-directional connectivity to Haemonetics' NexLynk Donor Management System ("DMS") to automate programming of donation procedures and automated data capture of procedure data.[39] Among other things, the NexLynk DMS software solution stores donor information (*e.g.*, donor characteristics) and provides donor information to the NexSys PCS.[40,41]

**ANSWER:** Haemonetics denies the characterizations of its technology in this paragraph, and refers to the cited documents which speak for themselves.

98. The Disposable Kits used with the NexSys PCS plasmapheresis devices include:

- Disposable Bowl;[42]

---

36 *Id.*

37 *Id.*

38 NexSys PCS Bi-Directional Connectivity Brochure.

39 2025 Haemonetics 10-K at 2.

40 https://plasma.haemonetics.com/-/media/files/plasma/nexsys_pcs_brochure.pdf (last visited December 2, 2025) (FENWAL 00005310-FENWAL 00005315) ("NexSys PCS Brochure").

41 https://plasma.haemonetics.com/-/media/files/plasma/nexlynk_dms_brochure.pdf (last visited December 2, 2025) (FENWAL 00004905-FENWAL 00004908) ("NexLynk DMS Brochure").

42 NexSys PCS User Manual at 40-42.

- Harness (includes the anticoagulant spike; a needle adapter; turning stops; Donor Pressure Monitor (DPM) Filter; Bowl Connector; Blood Filter; and Tubing (including the donor line and the anticoagulant line )); [43]
- Plasma Collection Container;[44]
- Venipuncture needle.[45]

**ANSWER:** Haemonetics denies the characterizations of its Disposable Kits in this paragraph, and refers to the cited documents which speak for themselves.

99. On information and belief, as explained below, Haemonetics makes, uses, sells/leases, offers for sale/lease, and/or imports automated plasmapheresis systems (including NexSys PCS), their components, and related software in the United States.

**ANSWER:** Haemonetics admits that Haemonetics manufactures and sells the NexSys PCS® device, and otherwise denies characterizations of its products in this paragraph.

100. On further information and belief, Haemonetics has entered into agreements with its U.S. customers to adopt NexSys PCS in their global collection network.[46] On further information and belief, Haemonetics' customers are using the NexLynk DMS donor management software.[47]

**ANSWER:** Haemonetics denies the characterizations of its business in this paragraph, and refers to the cited document that speaks for itself.

101. Haemonetics leases the NexSys PCS devices to its blood-bank and plasma center customers under contractual arrangements that typically include an operating or sales-type lease as well as the purchase and consumption of a certain level of disposable products.[48] On information and belief, Haemonetics transfers the rights of possession and use of the NexSys PCS devices to its customers until the devices are returned to Haemonetics upon the termination or expiration of

---

43 *Id.* at 42-43.

44 *Id.* at 43.

45 *See, e.g.*, https://www.graylinemedical.com/products/haemonetics-corp-apheresis-collectionneedles-sysloc-black-eye-needle-sterile-17g-x-1-824-1704#:~:text=Home%20Haemonetics%20Corp%20Apheresis%20Collection,Give%20us%20a%20call (last visited December 2, 2025) (FENWAL 00004773).

46 2025 Haemonetics 10-K at 3.

47 *Id.*

48 *See, e.g.*, 2025 Haemonetics 10-K at 84 ("Lessor Activity").

the agreement between Haemonetics and the customers and receives a fee from its customer for the use of the device in plasmapheresis procedures. On further information and belief, Haemonetics also sells some NexSys PCS devices to its customers.[49] On information and belief, Haemonetics imports NexSys PCS devices into the United States.[50]

**ANSWER:** Haemonetics denies the characterizations of its business in this paragraph, and refers to the cited documents which speak for themselves.

102. On further information and belief, Haemonetics also sells[51] to its customers disposable products (Disposable Kits) that are used with the NexSys PCS device in plasmapheresis procedures.

**ANSWER:** Haemonetics admits it sells disposable products to customers relating to plasmapheresis procedures. Haemonetics otherwise denies the characterizations of its business in this paragraph, and refers to the cited document that speaks for itself.

103. On information and belief, Haemonetics sells and/or provides certain software to its customers, including the NexLynk DMS and other supporting software.[52]

**ANSWER:** Haemonetics admits it provides software to its customers. Haemonetics otherwise denies the characterizations of its business in this paragraph, and refers to the cited document that speaks for itself.

104. On further information and belief, Haemonetics' capital equipment is manufactured in Malaysia, Australia and the United States.[53] On information and belief, Haemonetics makes its plasma collection devices in Malaysia (through its wholly owned Malaysian subsidiary Haemonetics Malaysia) and/or in the United States.[54,55] On further information and belief,

---

[49] *Id.* at 58 ("Product Revenues").

[50] *See* Haemonetics Malaysia Sdn Bhd Establishment Registration & Device Listing (FENWAL 00005434-FENWAL 00005436) and Importation Records (FENWAL 00005437).

[51] *See, e.g.*, 2025 Haemonetics 10-K at 84 ("Lessor Activity"), 58 ("Product Revenues").

[52] *See, e.g.*, *id.* at 1 ("Company Overview"), 34 ("Our Business"), 57, 59 ("Software and Other Revenues").

[53] *Id.* at 7.

[54] *Id.*

[55] *See, e.g.*, *id.* at Ex. 21.1.

Haemonetics' primary disposable/consumable manufacturing operations are in North America and Malaysia.[56]

**ANSWER:** Haemonetics denies the characterizations of its business in this paragraph, and refers to the cited documents which speak for themselves.

105. On information and belief, Haemonetics provides training and services to its U.S. customers regarding the use of the Accused Haemonetics Products as a system to perform plasmapheresis. For example, Haemonetics provides user and service manuals for the NexSys PCS System.[57] Moreover, Haemonetics makes available to its customers an Education Portal "featur[ing] useful information about the NexSys PCS® system, plasma software solutions, and more."[58]

**ANSWER:** Haemonetics admits that it makes user and service manuals for the NexSys PCS System available. Haemonetics otherwise denies the characterizations of its business in this paragraph, and refers to the cited documents which speak for themselves.

106. On further information and belief, Haemonetics employs a device and software implementation team to "support the planning and installation of the NexSys PCS Connectivity Package and provide support in establishing bi-directional communication with [the] BECS."[59] On information and belief, the Haemonetics Technical Service Team installs NexSys PCS devices, and the Haemonetics Software Implementation Team installs HaemoCommunicator and other software applications.[60] Haemonetics also provides ongoing product support to its customers.[61]

**ANSWER:** Haemonetics denies the characterizations of its business in this paragraph, and refers to the cited document that speaks for itself.

---

56 2025 Haemonetics 10-K at 7 ("Manufacturing").

57 *See, e.g.*, NexSys PCS User Manual; NexSys PCS Service Manual (device LN PCS-300-US; software version PCS300.1.3.x) (Jan. 2019) (FENWAL 00004915-FENWAL 00005176) ("NexSys PCS Service Manual").

58 https://plasma.haemonetics.com/device-solutions/nexsys-pcs-persona-technology (last visited December 2, 2025) (FENWAL 00005306-FENWAL 00005309).

59 NexSys PCS Bi-Directional Connectivity Brochure.

60 *Id.*

61 *Id.*

**COUNT 1: INFRINGEMENT OF U.S. PATENT NO. 10,431,334**

107. Fenwal realleges and incorporates the allegations set forth in the foregoing paragraphs 1-106 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

108. On information and belief, Haemonetics has infringed and continues to infringe, directly and indirectly, literally and/or under the doctrine of equivalents, at least claims 1, 2, 5, 712, and 16 of the '334 Patent by making, importing, using, offering for sale/lease, and/or selling/leasing the Accused Haemonetics Products in the United States. The Accused Haemonetics Products meet each limitation of each of these claims, literally and/or under the doctrine of equivalents, as described in Exhibit 19,[62] which is incorporated herein by reference. Fenwal reserves the right to assert additional claims of the '334 Patent against Haemonetics based on discovery that will become available in due course.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

109. Claim 1 of the '334 Patent recites:

> 1. A system for performing an apheresis procedure on a human subject, comprising:
>
> an apheresis treatment device configured to draw blood from a human subject, separate the blood by blood component, and return at least one of the components to the human subject; and a remote data storage device located remotely from the apheresis treatment device and configured to communicate with the apheresis treatment device over a network, the remote data storage device programmed with a plurality of subject data entries, each subject data entry associated with a human subject, each subject data entry comprising subject-specific information, the remote data storage device configured to download subject-specific information comprising a name and a birth date from the subject data entry and further configured to program the apheresis treatment device with a plurality of parameters for the apheresis medical procedure; the apheresis treatment device comprising:
>
> > a wireless circuit configured to communicate with the remote data storage device;
> >
> > a touch screen configured to receive an input; and

[62] All cites to Exhibits 19-27 are representative only.

> a controller configured to confirm an identity of the human subject based on the input and, based at least in part on the result of the confirmation, provide access to an apheresis procedure operated according to the programmed parameters on the apheresis treatment device.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '334 Patent.

110. The Accused Haemonetics Products meet each of the foregoing limitations of claim 1, literally and/or under the doctrine of equivalents, as described in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

111. The Accused Haemonetics Products form a system for performing an apheresis procedure, *e.g.*, a plasmapheresis procedure, on a human subject (*e.g.*, a plasma donor).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Product form a system for performing an apheresis procedure as claimed in the '334 Patent.

112. The NexSys PCS is an apheresis treatment device that is configured to draw blood from a human subject, separate the blood components (*e.g.*, plasma and red blood cells), and return at least one of the components (*e.g.,* red blood cells) to the human subject.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Product is configured to draw blood from a human subject, separate the blood components, and return at least one of the components to the human subject as claimed in the '334 Patent.

113. The Accused Haemonetics Products have a remote data storage device located remotely from the NexSys PCS apheresis treatment device and configured to communicate with the apheresis treatment device over a network (*e.g.*, wired or wireless internet).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Product have a remote data storage device located remotely from the NexSys PCS apheresis treatment device and

configured to communicate with the apheresis treatment device over a network as claimed in the '334 Patent.

114. On information and belief, the remote data storage device of the Accused Haemonetics Products runs the NexLynk DMS or a third party's donor management system software.

**ANSWER:** Haemonetics denies that the Accused Haemonetics Products have a remote storage device as claimed in the '334 Patent.

115. The remote data storage device of the Accused Haemonetics Products is programmed with a plurality of subject data entries, each subject data entry associated with a human subject, each subject data entry comprising subject-specific information.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products are programmed with a plurality of subject data entries, each subject data entry associated with a human subject, each subject data entry comprising subject-specific information as claimed in the '334 Patent.

116. The subject-specific information programmed in the remote storage device includes, for example, donor name, donor ID, and donor date of birth.

**ANSWER:** Haemonetics denies that the Accused Haemonetics Product have a remote storage device as claimed in the '334 Patent.

117. Moreover, the data storage device of the Accused Haemonetics Products is configured to download subject-specific information comprising and is also configured to program the apheresis treatment device with a plurality of parameters for the apheresis medical procedure.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Product are configured to download subject-specific information comprising and is also configured to program the apheresis treatment device with a plurality of parameters for the apheresis medical procedure as claimed in the '334 Patent.

118. For example, subject-specific information used with the Accused Haemonetics Products may include donor name, donor ID, and donor birth date from the subject data entry.

**ANSWER:** Haemonetics denies that the Accused Haemonetics Product are configured to download and program subject-specific information as claimed in the ’334 Patent.

119. For example, the parameters used with the Accused Haemonetics Products may include one or more of: Plasma Target Volume, Max Plasma Per Cycle, Saline Type, Total Saline Volume to Return, and/or AC Solution Volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Product uses parameters as claimed in the ’334 Patent.

120. The NexSys PCS apheresis device further includes a wireless circuit (*e.g.*, a Wi-Fi modem) that is configured to communicate with the remote data storage device.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS device includes a wireless circuit that is configured to communicate with the remote data storage device as claimed in the ’334 Patent.

121. The NexSys PCS apheresis device also includes a touch screen that is configured to receive user touch input.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS device includes a touch screen that is configured to receive user touch input as claimed in the ’334 Patent.

122. The NexSys PCS apheresis device also includes a controller that is configured to confirm an identity of the human subject based on the user input and, based at least in part on the result of the confirmation, provide access to an apheresis procedure operated according to the programmed parameters on the apheresis treatment device. Alternatively, the NexSys PCS apheresis device meets the controller limitation under the doctrine of equivalence, because the device perform substantially the same function as the recited limitation (confirm an identity of the human subject based on the user input and, based at least in part on the result of the confirmation, provide access to an apheresis procedure operated according to the programmed parameters on the apheresis treatment device), in substantially the same way, and achieves substantially the same result.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS device includes controller that is configured to confirm an identity of the human subject based on the user input and, based at least in part on the result of the confirmation, provide access to an apheresis procedure operated according to the programmed parameters on the apheresis treatment device as claimed in the '334 Patent. Haemonetics denies the remaining allegations of this paragraph.

123. Claim 2 of the '334 Patent recites: "The system of claim 1, wherein the processing circuit is configured to generate an error signal that prevents the performance of the apheresis procedure with respect to the human subject in the case where the identity of the human subject is not confirmed."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '334 Patent.

124. The Accused Haemonetics Products practice claim 2 of the '334 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

125. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

126. The processing circuit (controller) in the NexSys PCS is configured to generate an error signal that prevents the apheresis procedure from being performed on the human subject in the case where the identity of the human subject is not confirmed.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS device is configured to generate an error signal that prevents the apheresis procedure from being performed on the human subject in the case where the identity of the human subject is not confirmed as claimed in the '334 Patent.

127. Claim 5 of the '334 Patent recites: "The system of claim 1, wherein if the controller confirms the identity of the human subject, the controller commands the treatment device to perform the apheresis procedure."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '334 Patent.

128. The Accused Haemonetics Products practice claim 5 of the '334 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

129. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

130. In the NexSys PCS, if the controller confirms the human subject's identity, the controller commands the NexSys PCS to perform the plasmapheresis procedure.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that if the controller confirms the human subject's identity, the controller commands the NexSys PCS to perform the plasmapheresis procedure as claimed in the '334 Patent.

131. Claim 7 of the '334 Patent recites: "The system of claim 1, wherein if the controller does not confirm the identity of the human subject, the controller is configured to respond by disabling or declining to proceed with the apheresis procedure and by triggering an audible and/or visual alarm or alert."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '334 Patent.

132. The Accused Haemonetics Products practice claim 7 of the '334 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

133. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

134. On information and belief, in the NexSys PCS, if the controller does not confirm the human subject's identity, the controller is configured to not allow the apheresis procedure to proceed and is also configured to provide at least a visual alert or alarm to inform the user.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that if the controller does not confirm the human subject's identity, the controller is configured to not allow the apheresis procedure to proceed and is also configured to provide at least a visual alert or alarm to inform the user as claimed in the '334 Patent.

135. Claim 8 of the '334 Patent recites: "The system of claim 7, wherein the alarm or alert comprises a text error message displayed on the touch screen."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '334 Patent.

136. The Accused Haemonetics Products practice claim 8 of the '334 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

137. As explained above, the Accused Haemonetics Products form a system that practices claim 7.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

138. On information and belief, the NexSys PCS informs the user that donor identity has not been confirmed through a notification that includes a text message.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS informs the user that donor identity has not been confirmed through a notification that includes a text message as claimed in the '334 Patent.

139. Claim 9 of the '334 Patent recites: "The system of claim 1, further comprising a bar code reader coupled to the apheresis treatment device."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’334 Patent.

140. The Accused Haemonetics Products practice claim 9 of the ‘334 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

141. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

142. The NexSys PCS has a bar code reader.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS has a bar code reader as claimed in the ’334 Patent..

143. Claim 10 of the ‘334 Patent recites: “The system of claim 1, wherein the remote data storage device is pre-programmed with the subject-specific information at a time prior to the system carrying out the apheresis procedure on the human subject.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’334 Patent.

144. The Accused Haemonetics Products practice claim 10 of the ‘334 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

145. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

146. On information and belief, the remote data storage device of the Accused Haemonetics Products is pre-programmed with the subject-specific information at a time before the system carrying out the apheresis procedure on the human subject.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the remote data storage device of the

Accused Haemonetics Products is pre-programmed with the subject-specific information at a time before the system carrying out the apheresis procedure on the human subject as claimed in the ’334 Patent.

147. On information and belief, the remote data storage device of the Accused Haemonetics Products runs the NexLynk DMS or a third party’s donor management system software.

**ANSWER:** Haemonetics denies the Accused Haemonetics Products have a remote data storage device as claimed in the ’334 Patent and, therefore, denies the allegations in this paragraph.

148. Claim 11 of the ‘334 Patent recites: “The system of claim 1, wherein at least one of the parameters used to program the apheresis treatment device for the apheresis medical procedure is stored in the subject data entry.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’334 Patent.

149. The Accused Haemonetics Products practice claim 11 of the ‘334 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

150. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

151. On information and belief, at least “Plasma Target Volume” is a parameter that is used to program the NexSys PCS device for the apheresis medical procedure. On information and belief, “Plasma Target Volume” is the collection volume that is computed on the BECS (*e.g.*, NexLynk DMS) using the PERSONA nomogram. On further information and belief, Plasma Target Volume is stored in the data entry.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS device uses parameters as claimed in the ’334 Patent.

152. Claim 12 of the ‘334 Patent recites:

> 12. A system for performing an apheresis procedure on a human subject, comprising:
>
> > an apheresis treatment device configured to draw blood from a human subject, separate the blood by blood component, and return at least one of the components to the human subject; and a remote data storage device located remotely from the apheresis treatment device and configured to communicate with the apheresis treatment device over a network, the remote data storage device programmed with a plurality of subject data entries, each subject data entry associated with a human subject, each subject data entry comprising subject-specific information, the data storage device configured to download a plurality of the subject-specific information of the human subject from the subject data entry and further configured to pre-program the apheresis treatment device with a plurality of parameters for the apheresis medical procedure; the apheresis treatment device comprising:
> >
> > > an input device configured to receive a user input; and
> > >
> > > a processing circuit, wherein the processing circuit is disposed within the apheresis treatment device, the processing circuit configured to confirm the human subject based on the received user input and using the plurality of subject-specific information downloaded from the data storage device to provide access to an apheresis procedure on the apheresis treatment device operated according to the pre-programmed parameters.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '334 Patent.

153. The Accused Haemonetics Products meet each of the foregoing limitations of claim 12, literally and/or under the doctrine of equivalents, as described in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

154. The Accused Haemonetics Products constitute a system for an apheresis procedure, *e.g.*, a plasmapheresis procedure, on a human subject, *e.g.*, a plasma donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products constitute a system for an apheresis procedure on a human subject as claimed in the ’334 Patent.

155. The NexSys PCS is an apheresis treatment device configured to draw blood from a donor, separate the blood components (*i.e.*, plasma and red blood cells), and return at least one of the components (red blood cells) to the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS is an apheresis treatment device configured to draw blood from a donor, separate the blood components, and return at least one of the components to the donor as claimed in the ’334 Patent.

156. The Accused Haemonetics Products have a remote data storage device (which may run the NexLynk DMS and/or a third-party donor management system software) that is located remotely from the NexSys PCS apheresis treatment device and configured to communicate with the apheresis treatment device over a network (*e.g.*, wired or wireless internet).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS have a remote data storage device that is located remotely from the NexSys PCS apheresis treatment device and configured to communicate with the apheresis treatment device over a network as claimed in the ’334 Patent.

157. The remote data storage device of the Accused Haemonetics Products is programmed with a plurality of subject data entries, each subject data entry associated with a donor, each subject data entry comprising subject-specific information (*e.g.*, donor name, donor ID, and donor date of birth).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the remote data storage device of the Accused Haemonetics Products is programmed with a plurality of subject data entries, each subject data entry associated with a donor, each subject data entry comprising subject-specific information as claimed in the ’334 Patent.

158. Moreover, the data storage device of Accused Haemonetics Products is configured to download a plurality of the subject-specific information of the donor from the subject data entry and is also configured to pre-program the apheresis treatment device with a plurality of parameters for the apheresis medical procedure. For example, the parameters may include one or more of: Plasma Target Volume, Max Plasma Per Cycle, Saline Type, Total Saline Volume to Return, and/or AC Solution Volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the data storage device of Accused Haemonetics Products is configured to download a plurality of the subject-specific information of the donor from the subject data entry and is also configured to pre-program the apheresis treatment device with a plurality of parameters for the apheresis medical procedure as claimed in the ’334 Patent.

159. The NexSys PCS apheresis device further includes an input device configured to receive a user input.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS device includes an input device configured to receive a user input as claimed in the ’334 Patent.

160. The NexSys PCS apheresis device also includes a processing circuit, wherein the processing circuit is disposed within the apheresis treatment device. For example, the Device Controller (DC) alone and/or in combination with the Motor Controller (MC) and/or the UI Processor,[63] constitute a “processing circuit.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS device includes a processing circuit, wherein the processing circuit is disposed within the apheresis treatment device as claimed in the ’334 Patent. Haemonetics refers to the cited document that speaks for itself.

161. The processing circuit of Accused Haemonetics Products is configured to confirm the donor based on the received user input and using the plurality of subject-specific information downloaded from the data storage device to provide access to an apheresis procedure on the apheresis treatment device operated according to the pre-programmed parameters.

---

[63] *See, e.g.*, NexSys PCS Service Manual at 37-78

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the processing circuit of Accused Haemonetics Products is configured to confirm the donor based on the received user input and using the plurality of subject-specific information downloaded from the data storage device to provide access to an apheresis procedure on the apheresis treatment device operated according to the pre-programmed parameters as claimed in the ’334 Patent.

162. Claim 16 of the ‘334 Patent recites: “The system of claim 12, wherein the downloaded plurality of subject-specific information comprises name, sex, weight and birthdate of the donor, wherein the apheresis treatment device is configured to operate the apheresis procedure based at least in part on a parameter derived from at least one of the sex and weight of the human subject upon which the apheresis procedure is performed.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’334 Patent.

163. The Accused Haemonetics Products practice claim 16 of the ‘334 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

164. As explained above, the Accused Haemonetics Products form a system that practices claim 12.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

165. The plurality of subject-specific information downloaded by the NexSys PCS includes donor name, donor ID, weight, and birthdate.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies plurality of subject-specific information downloaded by the NexSys PCS includes donor name, donor ID, weight, and birthdate as claimed in the ’334 Patent.

166. The NexSys PCS is configured to operate the plasmapheresis procedure using the PERSONA nomogram, which is based at least in part on a parameter derived from at least one of the sex and weight of the donor on whom the plasmapheresis procedure is performed. For example, the PERSONA nomogram determines a donor’s target plasma collection volume using: (i) the

donor's body-mass index (BMI), derived from the donor's height and weight; and (ii) the donor's hematocrit.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS is based at least in part on a parameter derived from at least one of the sex and weight of the donor on whom the plasmapheresis procedure is performed as claimed in the '334 Patent.

167. Haemonetics directly infringes at least claims 1, 2, 5, 7-12, and 16 of the '334 Patent by using (including in tests, commercial demonstrations, and clinical trials), importing, making, offering to sell/lease, selling, and/or leasing the Accused Haemonetics Products in the United States to its partners, clients, customers, and/or end users who use the products across this country, including in this District.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

168. Additionally, on information and belief, the infringing acts of third parties (such as Haemonetics' customers, clients, partners, and end users such as clinicians and phlebotomists) are attributable to Haemonetics. Haemonetics' partners, clients, customers, and/or end users in the United States lease and/or buy the Accused Haemonetics Products across this country, including in this District. On information and belief, Haemonetics directs and controls the activities or actions of its third-party customers with respect to the Accused Haemonetics Products through contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Haemonetics Products which, when followed and used, result in infringement of the '334 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

169. In addition to directly infringing the '334 Patent, Haemonetics has indirectly infringed at least claims 1, 2, 5, 7-12, and 16 of the '334 Patent of the '334 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '334 Patent (including claims 1, 2, 5, 7-12, and 16) at least by using the Accused Haemonetics Products in plasma donation centers. On information and belief, Haemonetics markets, offers to sell/lease, and/or sells/leases the Accused Haemonetics Products to customers and/or end users. On additional information and belief, Haemonetics provides, *inter alia*, training, written guidance (*e.g.*, User Manuals and Service Manuals), technical assistance, promotional materials, sales and marketing materials, and/or demonstrations to customers and end users.[64] On information and belief, these acts induce said third parties to perform acts intended by Haemonetics to cause direct infringement of the '334 Patent. On information and belief, Haemonetics performed, and continues to perform, the acts that

[64] *See, e.g.*, NexSys PCS Service Manual; NexSys PCS User Manual; NexSys PCS PERSONA Brochure; NexSys PCS Brochure.

constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '334 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph. Haemonetics further refers to the cited documents which speak for themselves.

170. Haemonetics has had knowledge of the '334 Patent since at least the filing of these Counterclaims. Haemonetics also has had knowledge that the induced acts of its customers and end users constitutes infringement of the '334 Patent since at least the filing of these Counterclaims.

**ANSWER:** Haemonetics admits that it has knowledge of the '334 Patent at the time of filing of the Counterclaims. Haemonetics denies the remaining allegations in this paragraph.

171. Haemonetics has also indirectly infringed at least claims 1, 2, 5, 7-12, and 16 of the '334 Patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to the infringement of the '334 Patent by third parties, such as its customers and end users. Such third parties infringe the '334 Patent at least by using the Accused Haemonetics Products in plasma donation centers. Haemonetics' affirmative acts of making, importing, leasing, and/or selling the Accused Haemonetics Products contributes to the infringement of the '334 Patent (including claims 1, 2, 5, 7-12, and 16) because those components constitute a material part of the invention of the '334 Patent (as they embody all limitations of the claims), are specially made or adapted for use in infringing the '334 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

172. As a consequence of Haemonetics' direct and indirect infringement of the '334 Patent, both literally and under the doctrine of equivalents, Fenwal has been and continues to be irreparably harmed.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

173. Due to Haemonetics' infringing acts, Fenwal has been and will be damaged in an amount to be determined at trial.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

174. On information and belief, unless enjoined, Haemonetics will continue to infringe the '334 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 2: INFRINGEMENT OF U.S. PATENT NO. 10,643,748**

175. Fenwal realleges and incorporates the allegations set forth in the foregoing paragraphs 1-174 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

176. On information and belief, Haemonetics has infringed and continues to infringe, directly and indirectly, literally and/or under the doctrine of equivalents, at least claims 1, 2, 5, 712, 15, 17, 19, and 20 of the '748 Patent by making, importing, using, offering for sale/lease, and/or selling/leasing the Accused Haemonetics Products in the United States. The use of the Accused Haemonetics Products meet each limitation of each of these claims, literally and/or under the doctrine of equivalents, as described in Exhibit 20, which is incorporated herein by reference. Fenwal reserves the right to assert additional claims of the '748 Patent against Haemonetics based on discovery that will become available in due course.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

177. Claim 1 of the '748 Patent covers a novel method of performing apheresis and recites:

> A method of performing an apheresis procedure on a donor, comprising:
>
> receiving donor information used to identify a donor;
>
> storing the donor information into a data entry of a database, the database comprising data entries for a plurality of different donors;
>
> transmitting the donor information comprising a name and a birth date from the database to an apheresis treatment device;
>
> transmitting a plurality of parameters to the apheresis treatment device to program the apheresis treatment device for an apheresis procedure;
>
> receiving an input from a touch screen of the apheresis treatment device;
>
> confirming an identity of the donor based on the input; and
>
> performing the apheresis procedure according to the programmed parameters on the apheresis treatment device based on confirming the identity of the donor.

**ANSWER:** Haemonetics admits that claim 1 of the '748 Patent recites the claim language as stated in this paragraph based on the language in the '748 Patent. Haemonetics denies the remaining allegations in this paragraph.

178. The use of the Accused Haemonetics Products meets each of the foregoing limitations of claim 1, literally and/or under the doctrine of equivalents, as described in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

179. Claim 1 of the '748 Patent recites in part, "[a] method of performing an apheresis procedure on a donor."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

180. As shown by at least the NexSys PCS User Manual, the Accused Haemonetics Products practice a method of performing an apheresis procedure on a donor. The NexSys PCS User Manual discloses instructions for the "plasmapheresis system designed for the highly efficient collection of plasma from donors."[65]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice a method of performing an apheresis procedure on a donor as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself.

181. End users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform a method of performing an apheresis procedure on a donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies end users following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform a method of performing an apheresis procedure on a donor as claimed in the '748 Patent.

---

[65] NexSys PCS User Manual, at 10.

182. Claim 1 of the '748 Patent also recites in part, "receiving donor information used to identify a donor."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

183. As shown by at least the NexSys PCS User Manual, the Accused Haemonetics Products practice the step of "receiving donor information used to identify a donor." The NexSys PCS User Manual discloses instructions for "verifying the donor" including "scan[ning] a donor barcode" or "enter[ing] the donor's ID."[66]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of receiving donor information used to identify a donor as claimed in the '748 Patent. Heamonetics refers to the cited document that speaks for itself.

184. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of "receiving donor information used to identify a donor."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of receiving donor information used to identify a donor as claimed in the '748 Patent.

185. Claim 1 of the '748 Patent also recites in part, "storing the donor information into a data entry of a database, the database comprising data entries for a plurality of different donors."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

186. As shown by at least the NexSys PCS User Manual and NexLynk DMS Brochure, the Accused Haemonetics Products practice the step of "storing the donor information into a data entry of a database, the database comprising data entries for a plurality of different donors." The NexSys PCS User Manual describes a "BECS" which is a "central monitoring software system that exchanges information with the device via an approved server application."[67] It further

66 NexSys PCS User Manual, at 59.

67 NexSys PCS User Manual, at 59.

describes how the Accused Haemonetics Products "receive[] [donor] information from the BECS."[68]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of storing the donor information into a data entry of a database, the database comprising data entries for a plurality of different donors as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself.

187. The NexLynk DMS Brochure describes the software as helping users "manage information about your donors" and providing "donor management" functionality.[69]

**ANSWER:** Haemonetics denies the allegations in this paragraph and refers to the cited document that speaks for itself.

188. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual and utilizing the NexLynk DMS software or other third-party donor management system will perform the step of "storing the donor information into a data entry of a database, the database comprising data entries for a plurality of different donors."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of storing the donor information into a data entry of a database, the database comprising data entries for a plurality of different donors as claimed in the '748 Patent.

189. Claim 1 of the '748 Patent also recites in part, "transmitting the donor information comprising a name and a birth date from the database to an apheresis treatment device."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

190. As stated above, the NexSys PCS User Manual discloses that the Accused Haemonetics Products, including the NexSys PCS, "receive[] [donor] information from the

[68] *Id.* at 59.

[69] NexLynk DMS Brochure, at 3.

BECS."[70] As shown in the NexSys PCS User Manual, that donor information includes the donor name and birth date.[71]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the receiving donor information step as claimed in the '748 Patent. Haemonetics refers to the cited documents which speak for themselves.

191. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of "transmitting the donor information comprising a name and a birth date from the database to an apheresis treatment device."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of transmitting the donor information comprising a name and a birth date from the database to an apheresis treatment device as claimed in the '748 Patent.

192. Claim 1 of the '748 Patent also recites in part, "transmitting a plurality of parameters to the apheresis treatment device to program the apheresis treatment device for an apheresis procedure."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

193. As shown at least in the NexSys PCS User Manual and NexLynk DMS Brochure, the Accused Haemonetics Products transmit a plurality of parameters to the NexSys PCS device to program the device for an apheresis procedure. For example, the NexLynk DMS Brochure describes how the software "integrate[s] bidirectionally with the plasma collection device."[72]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products transmit a

---

70 NexSys PCS User Manual, at 59.

71 *Id.* at 60, Fig. 22.

72 NexLynk DMS Brochure, at 4.

plurality of parameters to program the device for an apheresis procedure as claimed in the ’748 Patent. Haemonetics refers to the cited document that speaks for itself.

194. The parameters may include: Plasma Target Volume, Max Plasma Per Cycle, Saline Type, Total Saline Volume to Return, and/or AC Solution Volume.[73]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products use parameters as claimed in the ’748 Patent. Haemonetics refers to the cited document that speaks for itself.

195. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “transmitting a plurality of parameters to the apheresis treatment device to program the apheresis treatment device for an apheresis procedure.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of transmitting a plurality of parameters to the apheresis treatment device to program the apheresis treatment device for an apheresis procedure as claimed in the ’748 Patent.

196. Claim 1 of the ‘748 Patent also recites in part, “receiving an input from a touch screen of the apheresis treatment device.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

197. As shown in the NexSys PCS User Manual, the NexSys PCS device includes a “touchscreen graphical user interface.”[74] The manual describes how the device receives inputs from a touchscreen periodically as part of its intended operation.[75]

---

73 *See, e.g.*, NexSys PCS User Manual, at 59-60.

74 NexSys PCS User Manual, at 11.

75 *See, e.g.*, NexSys PCS User Manual, at 60, 71, 74.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of receiving an input from a touch screen of the apheresis treatment device as claimed in the ’748 Patent. Haemonetics refers to the cited document that speaks for itself.

198. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “receiving an input from a touch screen of the apheresis treatment device.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of receiving an input from a touch screen of the apheresis treatment device as claimed in the ’748 Patent.

199. Claim 1 of the ‘748 Patent also recites in part, “confirming an identity of the donor based on the input.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

200. As shown in the NexSys PCS User Manual, as part of the “verifying the donor” instructions, the touchscreen displays a “Confirm” button that the user presses to confirm donor information including donor identity.[76]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of confirming an identity of the donor based on the input as claimed in the ’748 Patent. Haemonetics refers to the cited document that speaks for itself.

201. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “confirming an identity of the donor based on the input.”

---

[76] NexSys PCS User Manual, at 60.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of confirming an identity of the donor based on the input as claimed in the ’748 Patent.

202. Claim 1 of the ‘748 Patent also recites in part, “performing the apheresis procedure according to the programmed parameters on the apheresis treatment device based on confirming the identity of the donor.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

203. As shown at least in the PCS PERSONA Brochure and NexSys PCS User Manual, the Accused Haemonetics Products comprise “plasmapheresis system designed for the highly efficient collection of plasma from donors,” *i.e.*, performing an apheresis procedure. The NexSys PCS User Manual shows that the apheresis procedure is performed according to parameters that are based on a confirmed donor identity.[77]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of performing the apheresis procedure according to the programmed parameters on the apheresis treatment device based on confirming the identity of the donor as claimed in the ’748 Patent. Haemonetics refers to the cited document that speaks for itself.

204. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “performing the apheresis procedure according to the programmed parameters on the apheresis treatment device based on confirming the identity of the donor.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice the step of performing the apheresis procedure according to the programmed parameters on the

[77] *See, e.g.*, NexSys PCS User Manual, at 59-60.

apheresis treatment device based on confirming the identity of the donor as claimed in the ’748 Patent.

205. Claim 2 of the ‘748 recites: “The method of claim 1, generating an error signal that prevents the performance of the apheresis procedure with respect to the donor in the case where the identity of the donor is not confirmed.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

206. The use of the Accused Haemonetics Products practices claim 2, literally and/or under the doctrine of equivalents, as described in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

207. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

208. During use of the NexSys PCS, the NexSys PCS generates an error signal that prevents the apheresis procedure from being performed on the human subject if the identity of the human subject is not confirmed.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS generating an error signal that prevents the performance of the apheresis procedure with respect to the donor in the case where the identity of the donor is not confirmed as claimed in the ’748 Patent.

209. Claim 5 of the ‘748 Patent recites: “The method of claim 1, wherein if the identity of the donor is confirmed, the method comprises commanding the treatment device to perform the apheresis procedure.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

210. The use of the Accused Haemonetics Products practices claim 5 of the ‘748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

211. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

212. As described above, during use of the NexSys PCS, donor identity is confirmed via an input to the touchscreen. The NexSys PCS User Manual thereafter explains the performance of an apheresis procedure, specifically plasmapheresis, initiated by a command to the treatment device.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies during the use of the NexSys PCS device, if the identity of the donor is confirmed, the method comprises commanding the treatment device to perform the apheresis procedure as claimed in the '748 Patent.

213. Claim 7 of the '748 Patent recites: "The method of claim 1, wherein if the identity of the donor does not match the input, the apheresis treatment device responds by disabling or declining to proceed with the apheresis procedure and by triggering an audible and/or visual alarm or alert."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

214. The use of the Accused Haemonetics Products practices claim 7 of the '748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

215. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

216. On information and belief, during the use of the NexSys PCS, if the donor identity does not match the user input, the NexSys PCS does not proceed with the apheresis procedure and generates at least a visual alarm or alert for the user.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies during the use of the NexSys PCS device, if the

identity of the donor does not match the input, the apheresis treatment device responds by disabling or declining to proceed with the apheresis procedure and by triggering an audible and/or visual alarm or alert as claimed in the ’748 Patent.

217. Claim 8 of the ‘748 Patent recites: “The method of claim 7, wherein the alarm or alert comprises a text error message displayed on the touch screen.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

218. The use of the Accused Haemonetics Products practices claim 8 of the ‘748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

219. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 7.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

220. On information and belief, during the use of the NexSys PCS, if the donor identity does not match the user input, the NexSys PCS does not proceed with the apheresis procedure and generates at least a visual alarm or alert for the user, and this visual alarm or alert includes a text message.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS device generates an alarm or alert that comprises a text error message displayed on the touch screen as claimed in the ’748 Patent.

221. Claim 9 of the ‘748 Patent recites: “The method of claim 1, further comprising receiving data from a bar code reader coupled to the apheresis treatment device.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

222. The use of the Accused Haemonetics Products practices claim 9 of the ‘748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

223. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

224. As described in the NexSys PCS User Manual, the first step in the "verifying the donor" section is to "scan a donor barcode."[78] Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the NexSys PCS device to "receiv[e] data from a bar code reader coupled to the apheresis treatment device."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS device receives data from a bar code reader coupled to the apheresis treatment device as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself.

225. Claim 10 of the '748 Patent recites: "The method of claim 1, wherein receiving and storing the donor information occurs at a time prior to carrying out the apheresis procedure on the donor."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

226. The use of the Accused Haemonetics Products practices claim 10 of the '748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

227. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

228. During the use of the NexSys PCS, receiving the donor information and storing the donor information in a data entry of a database (on the NexLynk DMS and/or other third-party donor management system) takes place before the plasmapheresis procedure is begun.

---

78 NexSys PCS User Manual at 59.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that with the NexSys PCS device receiving and storing the donor information occurs at a time prior to carrying out the apheresis procedure on the donor as claimed in the ’748 Patent.

229. Furthermore, as shown in the NexSys PCS User Manual, donor information is received and stored prior to carrying out the apheresis procedure on the donor, such that the information can be retrieved from NexLynk DMS or another third-party donor management system, prior to initiating the procedure.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that with the NexSys PCS device receiving and storing the donor information occurs at a time prior to carrying out the apheresis procedure on the donor as claimed in the ’748 Patent. Haemonetics refers to the NexSys PCS User Manual that speaks for itself.

230. Claim 11 of the ‘748 Patent recites: “The method of claim 1, wherein at least one of the parameters used to program the apheresis treatment device for the apheresis procedure is stored in the data entry.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

231. The use of the Accused Haemonetics Products practices claim 11 of the ‘748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

232. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

233. On information and belief, during use of the NexSys PCS, “Plasma Target Volume” is a parameter that is stored in the data entry.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS includes parameters as claimed in the '748 Patent.

234. Plasma Target Volume is the collection volume that is computed on the BECS (*e.g.*, NexLynk DMS) using the PERSONA nomogram.

**ANSWER:** Haemonetics denies the allegations as stated in this paragraph.

235. Claim 12 of the '748 Patent recites:

> 12. A method of performing an apheresis procedure on a human subject, comprising:
>
> receiving over a network donor information comprising a plurality of donor-specific information;
>
> receiving over the network a plurality of parameters for an apheresis procedure;
>
> receiving a user input from a touch screen to confirm a donor based on the plurality of donor-specific information;
>
> in response to confirming the donor, proceeding with an apheresis procedure operated according to the plurality of parameters, the apheresis procedure comprising drawing blood from a human subject, separating the blood by blood component, and returning at least one of the components to the donor.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

236. The use of the Accused Haemonetics Products practices claim 12 of the '748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

237. As described above in relation to claim 1, the Accused Haemonetics Products practice a method of performing an apheresis procedure on a human subject. The NexSys PCS User Manual discloses instructions for the "plasmapheresis system designed for the highly efficient collection of plasma from donors."[79]

[79] NexSys PCS User Manual, at 10.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method of performing an apheresis procedure on a human subject as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself.

238. At least end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform a method of performing an apheresis procedure on a human subject.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method of performing an apheresis procedure on a human subject as claimed in the '748 Patent.

239. Claim 12 of the '748 Patent also recites in part, "receiving over a network donor information comprising a plurality of donor-specific information."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

240. As shown at least in the NexSys PCS Bi-Directional Connectivity Brochure, the NexSys PCS device communicates over a network with software systems. The NexSys PCS device includes an ethernet connection that "enables the device to communicate with the approved server application."[80] Information received includes donor-specific information such as name, weight, and date of birth.[81]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method including receiving over a network donor information comprising a plurality of donor-specific information as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself.

241. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the NexSys PCS

---

80 NexSys PCS User Manual, at 28.

81 *Id.* at 60.

device to perform the step of "receiving over a network donor information comprising a plurality of donor-specific information."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method including receiving over a network donor information comprising a plurality of donor-specific information as claimed in the '748 Patent.

242. Claim 12 of the '748 Patent also recites in part, "receiving over the network a plurality of parameters for an apheresis procedure."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

243. As described above in relation to claim 1, when used according to the NexSys PCS User Manual, the NexSys PCS device receives a plurality of parameters for an apheresis procedure. As shown in at least the NexSys PCS Bi-Directional Connectivity Brochure, such plurality of parameters may be received over a network.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method including receiving over the network a plurality of parameters for an apheresis procedure as claimed in the '748 Patent. Haemonetics refers to the NexSys PCS User Manual that speaks for itself.

244. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the NexSys PCS device to perform the step of "receiving over the network a plurality of parameters for an apheresis procedure."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method including receiving over the network a plurality of parameters for an apheresis procedure as claimed in the '748 Patent.

245. Claim 12 of the '748 Patent also recites in part, "receiving a user input from a touch screen to confirm a donor based on the plurality of donor-specific information."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

246. As described above in relation to claim 1, at least the NexSys PCS User Manual describes the user confirming a donor via a touchscreen input based on a plurality of donor-specific information. Said information may include name and date of birth.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method including receiving a user input from a touch screen to confirm a donor based on the plurality of donor-specific information as claimed in the '748 Patent. Haemonetics refers to the NexSys PCS User Manual that speaks for itself.

247. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the NexSys PCS device to perform the step of "receiving a user input from a touch screen to confirm a donor based on the plurality of donor-specific information."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method including receiving a user input from a touch screen to confirm a donor based on the plurality of donor-specific information as claimed in the '748 Patent. Haemonetics refers to the NexSys PCS User Manual that speaks for itself.

248. Claim 12 of the '748 Patent also recites in part, "in response to confirming the donor, proceeding with an apheresis procedure operated according to the plurality of parameters, the apheresis procedure comprising drawing blood from a human subject, separating the blood by blood component, and returning at least one of the components to the donor."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

249. As described above in relation to claim 1, in response to the user confirming the donor via a touchscreen input, the NexSys PCS device performs an apheresis procedure according

to the plurality of parameters, the apheresis procedure comprising drawing blood from a human subject, separating the blood by blood component, and returning at least one of the components to the donor, at least including a plasmapheresis procedure.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method including in response to confirming the donor, proceeding with an apheresis procedure operated according to the plurality of parameters, the apheresis procedure comprising drawing blood from a human subject, separating the blood by blood component, and returning at least one of the components to the donor as claimed in the ’748 Patent.

250. Claim 15 of the ‘748 Patent recites: “The method of claim 12, wherein the plurality of donor-specific information are received wirelessly.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

251. The use of the Accused Haemonetics Products practices claim 15 of the ‘748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

252. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 12.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

253. During use of the NexSys PCS for a plasmapheresis procedure, the device receives donor-specific information wirelessly (through Wi-Fi).[82]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice

82 *See, e.g.*, NexSys PCS Service Manual at 64 (explaining adjustments to wireless connection settings to connect the device to a “server application”).

a method wherein the plurality of donor-specific information are received wirelessly as claimed in the ’748 Patent. Haemonetics refers to the cited document that speaks for itself.

254. Claim 17 of the ‘748 Patent recites:

> 17. A method of performing an apheresis procedure on a human subject, comprising:
>
> storing a plurality of subject data entries in a data storage device located remotely from an apheresis treatment device, each subject data entry associated with a human subject, each subject data entry comprising subject-specific information, wherein the remote data storage device is preprogrammed with the subject-specific information at a time prior to the system carrying out the apheresis procedure on the human subject;
>
> downloading subject-specific information comprising a name and a birth date from a subject data entry;
>
> programming the apheresis treatment device with a plurality of parameters for the apheresis medical procedure;
>
> receiving an input from a touch screen; and
>
> confirming an identity of the human subject based on the input and, based at least in part on the result of the confirmation, providing access to an apheresis procedure operated according to the programmed parameters on the apheresis treatment device.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

255. The use of the Accused Haemonetics Products practices claim 17 of the ‘748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

256. As described above in relation to claim 1, the Accused Haemonetics Products practice a method of performing an apheresis procedure on a human subject. The NexSys PCS User Manual discloses instructions for the “plasmapheresis system designed for the highly efficient collection of plasma from donors.”[83]

[83] NexSys PCS User Manual, at 10.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products practice a method of performing an apheresis procedure on a human subject as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself.

257. Claim 17 of the '748 Patent also recites in part, "storing a plurality of subject data entries in a data storage device located remotely from an apheresis treatment device, each subject data entry associated with a human subject, each subject data entry comprising subject-specific information, wherein the remote data storage device is pre-programmed with the subject-specific information at a time prior to the system carrying out the apheresis procedure on the human subject."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

258. As shown at least in the NexLynk DMS Brochure, the Accused Haemonetics Products store subject data in a data storage device remotely from the apheresis treatment device. Said subject data is associated with a human subject, *e.g.*, plasma donors, and comprises subject-specific information, *e.g.*, name, weight, and birth date.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products store subject data in a data storage device remotely from the apheresis treatment device as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself.

259. As evidenced at least by the NexSys PCS User Manual, said remote data storage device is pre-programmed with this information prior to the system carrying out the apheresis procedure on the human subject. The User Manual describes steps for "verifying the donor" that include retrieval of pre-programmed donor-specific information from a remote data storage device (*e.g.*, BECS, NexLynk DMS, or other third-party donor management system).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products' remote data storage device is pre-programmed with this information prior to the system carrying out the apheresis procedure on the human subject as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself.

260. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the Accused Haemonetics Products to perform the step of "storing a plurality of subject data entries in a data storage device located remotely from an apheresis treatment device, each subject data entry associated with a human subject, each subject data entry comprising subject-specific information, wherein the remote data storage device is pre-programmed with the subject-specific information at a time prior to the system carrying out the apheresis procedure on the human subject."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform the step of storing a plurality of subject data entries in a data storage device located remotely from an apheresis treatment device, each subject data entry associated with a human subject, each subject data entry comprising subject-specific information, wherein the remote data storage device is pre-programmed with the subject-specific information at a time prior to the system carrying out the apheresis procedure on the human subject as claimed in the '748 Patent.

261. Claim 17 of the '748 Patent also recites in part, "downloading subject-specific information comprising a name and a birth date from a subject data entry."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

262. As shown at least in the NexSys PCS User Manual, the NexSys PCS device downloads subject-specific information from a subject data entry including name and birth date. NexSys PCS User Manual, at 60. Said information is downloaded via or from the NexLynk DMS or other third-party donor management system.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform the step of downloading subject-specific information comprising a name and a birth date from a subject data entry as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself

263. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the Accused

Haemonetics Products to perform the step of "downloading subject-specific information comprising a name and a birth date from a subject data entry."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform the step of downloading subject-specific information comprising a name and a birth date from a subject data entry as claimed in the '748 Patent.

264. Claim 17 of the '748 Patent also recites in part, "programming the apheresis treatment device with a plurality of parameters for the apheresis medical procedure."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

265. As described above in relation to claim 1, the Accused Haemonetics Products comprise a "plasmapheresis system designed for the highly efficient collection of plasma from donors," *i.e.*, performing an apheresis procedure. The apheresis procedure is performed by the apheresis treatment device that is "pre-programmed for each collection" according to data received by the device comprising "a plurality of parameters."[84]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform the step of programming the apheresis treatment device with a plurality of parameters for the apheresis medical procedure as claimed in the '748 Patent. Haemonetics refers to the cited document that speaks for itself.

266. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the Accused Haemonetics Products to perform the step of "programming the apheresis treatment device with a plurality of parameters for the apheresis medical procedure."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform

---

84 *See* NexSys PCS User Manual, at 59-60; NexSys PCS Bi-Directional Connectivity Brochure, at 2.

the step of programming the apheresis treatment device with a plurality of parameters for the apheresis medical procedure as claimed in the '748 Patent.

267. Claim 17 of the '748 Patent also recites in part, "receiving an input from a touch screen."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

268. As described above in relation to claim 1, the instructions for use of the NexSys PCS device include touchscreen inputs by the user.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform the step of receiving an input from a touch screen as claimed in the '748 Patent.

269. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the Accused Haemonetics Products to perform the step of "receiving an input from a touch screen."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform the step of receiving an input from a touch screen as claimed in the '748 Patent.

270. Claim 17 of the '748 Patent also recites in part, "confirming an identity of the human subject based on the input."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

271. As described above in relation to claim 1, the instructions for use of the NexSys PCS device include confirming the identity of the human subject (*i.e.*, donor) through an input to the touchscreen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform

the step of confirming an identity of the human subject based on the input as claimed in the ’748 Patent.

272. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the Accused Haemonetics Products to perform the step of “confirming an identity of the human subject based on the input.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform the step of confirming an identity of the human subject based on the input as claimed in the ’748 Patent.

273. Claim 17 of the ‘748 Patent also recites in part, “based at least in part on the result of the confirmation, providing access to an apheresis procedure operated according to the programmed parameters on the apheresis treatment device.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

274. As described above in relation to claim 1, the NexSys PCS device carries out an apheresis procedure (*e.g.*, plasmapheresis) based at least in part on the confirmation of human subject (*i.e.*, donor) identity. The apheresis procedure is operated according to the programmed parameters.[85]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform the step of based at least in part on the result of the confirmation, providing access to an apheresis procedure operated according to the programmed parameters on the apheresis treatment device as claimed in the ’748 Patent. Haemonetics refers to the cited document that speaks for itself.

275. Accordingly, end users, such as customers and phlebotomists, following the instructions provided by Haemonetics in the NexSys PCS User Manual will cause the Accused Haemonetics Products to perform the step of “based at least in part on the result of the

---

85 *See* NexSys PCS User Manual, at 59-60; NexSys PCS Bi-Directional Connectivity Brochure, at 2.

confirmation, providing access to an apheresis procedure operated according to the programmed parameters on the apheresis treatment device."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products perform the step of based at least in part on the result of the confirmation, providing access to an apheresis procedure operated according to the programmed parameters on the apheresis treatment device as claimed in the '748 Patent.

276. Claim 19 of the '748 Patent recites: "The method of claim 17, wherein if the controller does not confirm the identity of the human subject the controller is configured to respond by declining to proceed with the apheresis procedure and by triggering an audible and/or visual alarm or alert, wherein the alarm or alert comprises a text error message displayed on the touch screen."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '748 Patent.

277. The use of the Accused Haemonetics Products practices claim 19 of the '748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

278. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

279. If the donor identity does not match the user input, the NexSys PCS does not proceed with the apheresis procedure and generates at least a visual alarm or alert for the user. On information and belief, this visual alarm or alert includes a text message.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that in the Accused Haemonetics Products if the controller does not confirm the identity of the human subject the controller is configured to respond by declining to proceed with the apheresis procedure and by triggering an audible and/or visual

alarm or alert, wherein the alarm or alert comprises a text error message displayed on the touch screen as claimed in the ’748 Patent.

280. Claim 20 of the ‘748 Patent recites: “The method of claim 17, wherein at least one of the parameters used to program the apheresis treatment device for the apheresis medical procedure is stored in the subject data entry and downloaded from the subject data entry.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’748 Patent.

281. The use of the Accused Haemonetics Products practices claim 20 of the ‘748 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

282. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

283. On information and belief, “Plasma Target Volume” is the collection volume that is computed on the BECS (*e.g.*, NexLynk DMS) using the PERSONA nomogram and is a parameter that is stored in the data entry.

**ANSWER:** Haemonetics denies the allegations as stated in this paragraph.

284. In addition to end users of the Accused Haemonetics Products, on information and belief, Haemonetics and its agents directly infringe at least claims 1, 2, 5, 7-12, 15, 17, 19, and 20 of the ‘748 Patent by using the Accused Haemonetics Products in the United States (for example in tests and commercial demonstrations) according to the instructions and guidance that Haemonetics provides to its end customers in the NexSys PCS User Manual and the NexSys PCS Service Manual.[86]

**ANSWER:** Haemonetics denies the allegations in this paragraph and refers to the cited document that speaks for itself.

285. Additionally, on information and belief, the infringing acts of third parties (such as Haemonetics’ customers, clients, partners, and end users such as clinicians and phlebotomists) are attributable to Haemonetics. Haemonetics’ partners, clients, customers, and/or end users in the United States lease and/or buy the Accused Haemonetics Products across this country, including in this District. On information and belief, Haemonetics directs and controls the activities or

86 *See generally* NexSys PCS User Manual; NexSys PCS Service Manual.

actions of its third-party customers with respect to the Accused Haemonetics Products through contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Haemonetics Products which, when followed and used, result in infringement of the '748 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

286. In addition to directly infringing the '748 Patent, Haemonetics has indirectly infringed the '748 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '748 Patent (including claims 1, 2, 5, 7-12, 15, 17, 19, and 20) at least by using the Accused Haemonetics Products in plasma donation centers. On information and belief, Haemonetics markets, offers to sell/lease, and/or sells/leases the Accused Haemonetics Products to customers and/or end users. On additional information and belief, Haemonetics provides, *inter alia*, training, written guidance (*e.g.*, User Manuals and Service Manuals), technical assistance, promotional materials, sales and marketing materials, and/or demonstrations to customers and end users.[87] On information and belief, these acts induce said third parties to perform acts intended by Haemonetics to cause direct infringement of the '748 Patent. On information and belief, Haemonetics performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '748 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph and refers to the cited document that speaks for itself.

287. Haemonetics has had knowledge of the '748 Patent since at least the filing of these Counterclaims. Haemonetics has had knowledge that the induced acts of its customers and end users constitutes infringement of the '748 Patent since at least the filing of these Counterclaims.

**ANSWER:** Haemonetics admits that it has had knowledge of the '748 Patent since at least the filing of these Counterclaims. Haemonetics otherwise denies the remaining allegations in this paragraph.

288. Haemonetics has also indirectly infringed the '748 Patent (including claims 1, 2, 5, 7-12, 15, 17, 19, and 20) as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to the infringement of the '748 Patent by third parties, such as its customers and end users. Such third parties infringe the '748 Patent (including claims 1, 2, 5, 7-12, 15, 17, 19, and 20) at least by using the Accused Haemonetics Products in plasma donation centers. Haemonetics' affirmative acts of making, importing, leasing, and/or selling the Accused Haemonetics Products contributes to the infringement of the '748 Patent because those components constitute a material part of the invention of the '748 Patent (as their use practices all limitations of the claims), are specially made

---

[87] *See, e.g.*, NexSys PCS Service Manual; NexSys PCS User Manual; NexSys PCS PERSONA Brochure; NexSys PCS Brochure.

or adapted for use in infringing the '748 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

289. As a consequence of Haemonetics' direct and indirect infringement of the '748 Patent, both literally and under the doctrine of equivalents, Fenwal has been and continues to be irreparably harmed.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

290. Due to Haemonetics' infringing acts, Fenwal has been and will be damaged in an amount to be determined at trial.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

291. On information and belief, unless enjoined, Haemonetics will continue to infringe the '748 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 3: INFRINGEMENT OF U.S. PATENT NO. 10,872,693**

292. Fenwal realleges and incorporates the allegations set forth in the foregoing paragraphs 1-291 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

293. On information and belief, Haemonetics has infringed and continues to infringe, directly and indirectly, literally and/or under the doctrine of equivalents, at least claims 1, 2, 4, 5, 7-9, 11, 12, 15, 17, 19, and 20 of the '693 Patent by making, importing, using, offering for sale/lease, and/or selling/leasing the Accused Haemonetics Products in the United States. The Accused Haemonetics Products meet each limitation of each of these claims, literally and/or under the doctrine of equivalents, as described in Exhibit 21, which is incorporated herein by reference. Fenwal reserves the right to assert additional claims of the '693 Patent against Haemonetics based on discovery that will become available in due course.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

294. Claim 1 of the '693 Patent recites:

> 1. A system for performing an apheresis procedure on a donor, comprising:
>
> an apheresis device; and

a server configured to:

receive donor information used to identify a donor;

store the donor information into a data entry of a database, the database comprising data entries for a plurality of different donors; and

transmit the donor information comprising a name and a birth date from the database to the apheresis device;

transmit a plurality of parameters to the apheresis device to program the apheresis device for an apheresis procedure; and

the apheresis device configured to:

receive an input from a touch screen of the apheresis device;

confirm an identity of the donor based on the input; and

perform the apheresis procedure according to the programmed parameters on the apheresis device based on confirming the identity of the donor.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’693 Patent.

295. The Accused Haemonetics Products meet each of the foregoing limitations of claim 1, literally and/or under the doctrine of equivalents, as described in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

296. The Accused Haemonetics Products comprise a system for performing an apheresis procedure (i.e., plasmapheresis) on a donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products comprise a system for performing an apheresis procedure on a donor as claimed in the ’693 Patent.

297. The NexSys PCS is an apheresis device.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS is an apheresis device as claimed in the ’693 Patent.

298. The system of the Accused Haemonetics Products includes a server. For example, the NexLynk DMS software (or other third-party donor management system) and/or their associated software applications (*e.g.*, HaemoCommunicator) constitute a server. Additionally, the aforementioned software, together with the hardware on which it runs, constitutes a server.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products include a server as claimed in the ’693 Patent.

299. On information and belief, the server of the Accused Haemonetics Products is configured to receive donor information to identify a donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the server of the Accused Haemonetics Products is configured to receive donor information to identify a donor as claimed in the ’693 Patent.

300. For example, donor information may include donor name, donor ID, and donor date of birth.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the server of the Accused Haemonetics Products is configured to receive donor information to identify a donor as claimed in the ’693 Patent.

301. On information and belief, the server of the Accused Haemonetics Products is configured to store the donor information into a data entry of a database, the database comprising data entries for a plurality of different donors. The database resides in and/or communicates with the NexLynk DMS software or other third-party donor management system.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the server of the Accused Haemonetics

Products is configured to store the donor information into a data entry of a database, the database comprising data entries for a plurality of different donors as claimed in the ’693 Patent.

302. The server is configured to transmit the donor information comprising a name and a birth date from the database to the NexSys PCS.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the server is configured to transmit the donor information comprising a name and a birth date from the database to the NexSys PCS as claimed in the ’693 Patent.

303. The sever is configured to transmit a plurality of parameters to the apheresis device to program the NexSys PCS for the plasmapheresis procedure.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the server is configured to transmit a plurality of parameters to the apheresis device to program the NexSys PCS for the plasmapheresis procedure as claimed in the ’693 Patent.

304. For example, the parameters may include: Plasma Target Volume, Max Plasma Per Cycle, Saline Type, Total Saline Volume to Return, and/or AC Solution Volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products use parameters as claimed in the ’693 Patent.

305. The NexSys PCS is configured to receive user input from the device’s touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured to receive user input from the device’s touch screen as claimed in the ’693 Patent.

306. The NexSys PCS is configured to confirm the identity of the donor based on the user input received from the touchscreen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured to confirm the identity of the donor based on the user input received from the touchscreen as claimed in the '693 Patent.

307. The NexSys PCS is configured to perform plasmapheresis with the programmed parameters based on confirming the identity of the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured to perform plasmapheresis with the programmed parameters based on confirming the identity of the donor as claimed in the '693 Patent.

308. Claim 2 of the '693 Patent recites: "The system of claim 1, the apheresis device configured to generate an error signal that prevents the performance of the apheresis procedure with respect to the donor in the case where the identity of the donor is not confirmed."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '693 Patent.

309. The Accused Haemonetics Products meet each of the foregoing limitations of claim 2, literally and/or under the doctrine of equivalents, as described in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

310. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

311. The NexSys PCS is configured to generate an error signal that prevents the plasmapheresis procedure from being performed on the donor in the case where the identity of the donor is not confirmed.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured to generate

an error signal that prevents the plasmapheresis procedure from being performed on the donor in the case where the identity of the donor is not confirmed as claimed in the ’693 Patent.

312. Claim 4 of the ‘693 Patent recites: “The system of claim 1, wherein the apheresis procedure is a plasmapheresis procedure.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’693 Patent.

313. The Accused Haemonetics Products meet each of the foregoing limitations of claim 4, literally and/or under the doctrine of equivalents, as described in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

314. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

315. The NexSys PCS performs is a plasmapheresis machine, which performs a plasmapheresis procedure.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS performs is a plasmapheresis machine, which performs a plasmapheresis procedure as claimed in the ’693 Patent.

316. Claim 5 of the ‘693 Patent recites: “The system of claim 1, wherein if the identity of the donor is confirmed, the device is commanded to perform the apheresis procedure.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’693 Patent.

317. The Accused Haemonetics Products meet each of the foregoing limitations of claim 5, literally and/or under the doctrine of equivalents, as described in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

318. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

319. The NexSys PCS is configured such that, if the identity of the donor is confirmed, the NexSys PCS is commanded to perform the plasmapheresis procedure.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured such that, if the identity of the donor is confirmed, the NexSys PCS is commanded to perform the plasmapheresis procedure as claimed in the ’693 Patent.

320. Claim 7 of the ‘693 Patent recites: “The system of claim 1, wherein if the identity of the donor does not match the input, the apheresis device responds by disabling or declining to proceed with the apheresis procedure and by triggering an audible and/or visual alarm or alert.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’693 Patent.

321. The Accused Haemonetics Products practice claim 7 of the ‘693 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

322. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

323. On information and belief, the NexSys PCS is configured such that, if the identity of the donor does not match the input, the device responds by disabling or declining to proceed with the plasmapheresis procedure for the tripper and by triggering at least a visual alert or alarm to inform the user.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured such that, if the identity of the donor does not match the input, the device responds by disabling or declining to proceed with the plasmapheresis procedure for the tripper and by triggering at least a visual alert or alarm to inform the user as claimed in the ’693 Patent.

324. Claim 8 of the '693 Patent recites: "8. The system of claim 7, wherein the alarm or alert comprises a text error message displayed on the touch screen."

**ANSWER:** Haemonetics recites the allegations in this paragraph based on the language in the '693 Patent.

325. The Accused Haemonetics Products practice claim 8 of the '693 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

326. As explained above, the Accused Haemonetics Products form a system that practices claim 7.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

327. On information and belief, the NexSys PCS is configured such that the visual alarm or alert includes a text error message displayed on the touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured such that the visual alarm or alert includes a text error message displayed on the touch screen as claimed in the '693 Patent.

328. Claim 9 of the '693 Patent recites: "The system of claim 1, further comprising a bar code reader coupled to the apheresis device configured to receive data."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '693 Patent.

329. The Accused Haemonetics Products practice claim 9 of the '693 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

330. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

331. The NexSys PCS includes a bar code reader that is coupled to the apheresis device and is configured to received data (*e.g.* donor bar code).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS includes a bar code reader that is coupled to the apheresis device and is configured to received data as claimed in the '693 Patent.

332. Claim 11 of the '693 Patent recites: "The system of claim 1, wherein at least one of the parameters used to program the apheresis device for the apheresis procedure is stored in the data entry."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '693 Patent.

333. The Accused Haemonetics Products practice claim 11 of the '693 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

334. As explained above, the Accused Haemonetics Products form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

335. At least of one of the parameters of the Accused Haemonetics Products used to program the NexSys PCS for the plasmapheresis procedure is stored in the data entry.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that at least of one of the parameters of the Accused Haemonetics Products used to program the NexSys PCS for the plasmapheresis procedure is stored in the data entry as claimed in the '693 Patent.

336. On information and belief, "Plasma Target Volume" is a parameter that is used to program the NexSys PCS device and is stored in the data entry.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that "Plasma Target Volume" is a parameter that is used to program the NexSys PCS device and is stored in the data entry as claimed in the '693 Patent.

337. Claim 12 of the '693 Patent covers a novel system for performing an apheresis procedure and recites:

> 12. A system for performing an apheresis procedure on a donor, comprising:
>
> an apheresis device configured to:
>
>> receive over a network donor information comprising donor-specific information;
>>
>> receive over the network a plurality of parameters for an apheresis procedure;
>>
>> receive a user input from a touch screen to confirm a donor based on the donor-specific information; and
>>
>> in response to confirming the donor, proceed with an apheresis procedure operated according to the plurality of parameters, the apheresis procedure configured to draw whole blood from the don[o]r, separate at least one component from the whole blood, and return at least one other component of the whole blood to the donor.

**ANSWER:** Haemonetics admits that Claim 12 of the '693 Patent recites the stated claim language based on the language in the '693 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

338. The Accused Haemonetics Products meet each of the foregoing limitations of claim 12, literally and/or under the doctrine of equivalents, as described in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

339. The Accused Haemonetics Products form a system for an apheresis procedure (i.e., a plasmapheresis procedure), on a plasma donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products form a system for an apheresis procedure, on a plasma donor as claimed in the '693 Patent.

340. The system includes the NexSys PCS, which is an apheresis device.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS system includes the NexSys PCS, which is an apheresis device as claimed in the '693 Patent.

341. The NexSys PCS is configured to receive over a network (*e.g.*, internet) donor information. On information and belief, the NexSys PCS receives the donor information from the NexLynk DMS or another third-party data management system.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS is configured to receive over a network donor information as claimed in the '693 Patent.

342. For example, donor information includes donor-specific information, such as donor name, date of birth, and donor ID.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured to receive donor information that includes donor-specific information as claimed in the '693 Patent.

343. The NexSys PCS is configured to receive over the network a plurality of parameters for an apheresis procedure. For example, the parameters may include: Plasma Target Volume, Max Plasma Per Cycle, Saline Type, Total Saline Volume to Return, and/or AC Solution Volume. On information and belief, the NexSys PCS receives this information from the NexLynk DMS or another third-party data management system.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured to receive over the network a plurality of parameters for an apheresis procedure as claimed in the '693 Patent.

344. The NexSys PCS is configured to receive a user input from a touch screen to confirm a donor based on the donor-specific information.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured to receive a user input from a touch screen to confirm a donor based on the donor-specific information as claimed in the '693 Patent.

345. The NexSys PCS is configured such that, in response to confirming the donor, it proceeds with a plasmapheresis procedure (which is an apheresis procedure) operated according to the plurality of parameters. The plasmapheresis procedure is configured to draw whole blood from the donor, separate at least one component (plasma) from the whole blood, and return at least one other component of the whole blood (red blood cells) to the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS is configured such that, in response to confirming the donor, it proceeds with an apheresis procedure operated according to the plurality of parameters and the apheresis procedure is configured to draw whole blood from the donor, separate at least one component from the whole blood, and return at least one other component of the whole blood to the donor as claimed in the ’693 Patent.

346. Claim 15 of the ‘693 Patent recites: “The system of claim 12, wherein the apheresis procedure is a plasmapheresis procedure, wherein the at least one component separated from the whole blood comprises plasma.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’693 Patent.

347. The Accused Haemonetics Products practice claim 15 of the ‘693 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

348. As explained above, the Accused Haemonetics Products form a system that practices claim 12.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

349. The apheresis procedure that the NexSys PCS device performs is a plasmapheresis procedure, and at least component that is separate from the whole blood drawn from the donor includes plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the apheresis procedure that the NexSys PCS device performs is a plasmapheresis procedure, and at least component that is separate from the whole blood drawn from the donor includes plasma as claimed in the ’693 Patent.

350. Claim 17 of the ‘693 Patent recites:

> 17. A system for performing an apheresis procedure on a human subject, comprising:
>
> an apheresis device; and
>
> a server configured to:
>
> > store a plurality of subject data entries in a data storage device located remotely from the apheresis device, each subject data entry associated with a human subject, each subject data entry comprising subject-specific information, wherein the remote data storage device is pre-programmed with the subject-specific information at a time prior to the system carrying out the apheresis procedure on the human subject;
> >
> > download subject-specific information comprising a name and a birth date from a subject data entry;
> >
> > program the apheresis device with a plurality of parameters for the apheresis medical procedure;
> >
> > wherein the apheresis device is configured to:
> >
> > receive an input from a touch screen; confirm an identity of the human subject based on the input; and
> >
> > based at least in part on the result of the confirmation, providing access to an apheresis procedure operated according to the programmed parameters on the apheresis device.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’693 Patent.

351. The Accused Haemonetics Products practice claim 17 of the ‘693 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

352. The Accused Haemonetics Products comprise a system for performing an apheresis procedure (plasmapheresis) on a human subject (*e.g.*, a donor).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products comprise a system for performing an apheresis procedure on a human subject as claimed in the ’693 Patent.

353. The system includes the NexSys PCS, which is an apheresis device.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the Accused Haemonetics Products comprise a system that includes the NexSys PCS, which is an apheresis device as claimed in the ’693 Patent.

354. The system of the Accused Haemonetics Products includes a server. For example, the NexLynk DMS software (or other third-party donor management system) and/or their associated software applications (*e.g.*, HaemoCommunicator) constitute a server. Additionally, the aforementioned software, together with the hardware on which it runs, constitutes a server.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the system of the Accused Haemonetics Products includes a server as claimed in the ’693 Patent.

355. The server that is part of the system of the Accused Haemonetics Products is configured to store a plurality of subject data entries in a data storage device (which runs the NexLynk DMS and/or other third-party donor management system) that is located remotely from the apheresis device.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the server that is part of the system of the Accused Haemonetics Products is configured to store a plurality of subject data entries in a data storage device that is located remotely from the apheresis device as claimed in the ’693 Patent.

356. Further, each subject data entry is associated with a donor, and each subject data entry includes subject-specific information. For example, said subject-specific information may include donor name, donor ID, donor date of birth, and donor weight.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that in the Accused Haemonetics Products each subject data entry is associated with a donor, and each subject data entry includes subject-specific information as claimed in the ’693 Patent.

357. The remote data storage device is pre-programmed with the subject-specific information at a time prior to the system carrying out the apheresis procedure on the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the remote data storage device is pre-programmed with the subject-specific information at a time prior to the system carrying out the apheresis procedure on the donor as claimed in the ’693 Patent.

358. The server that is part of the system is configured to download subject-specific information, including donor name and donor date of birth, from the subject data entry in NexLynk DMS or other third-party donor management system.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the server that is part of the system is configured to download subject-specific information, including donor name and donor date of birth as claimed in the ’693 Patent.

359. The server that is part of the system is configured to program the apheresis device with a plurality of parameters for the apheresis medical procedure. For example, the parameters may include: Plasma Target Volume, Max Plasma Per Cycle, Saline Type, Total Saline Volume to Return, and/or AC Solution Volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the server that is part of the system is configured to program the apheresis device with a plurality of parameters for the apheresis medical procedure as claimed in the ’693 Patent.

360. The NexSys PCS is configured to receive an input from the touch screen on the device.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS is configured to receive an input from the touch screen on the device as claimed in the '693 Patent.

361. The NexSys PCS is also configured to confirm an identity of the human subject based on the user input received from the touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS is also configured to confirm an identity of the human subject based on the user input received from the touch screen as claimed in the '693 Patent.

362. The NexSys PCS is also configured such that, based at least in part on the result of the confirmation, the NexSys PCS allows a plasmapheresis procedure to be performed with the device according to the programmed parameters.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS is configured such that, based at least in part on the result of the confirmation, the NexSys PCS allows a plasmapheresis procedure to be performed with the device according to the programmed parameters as claimed in the '693 Patent.

363. Claim 19 of the '693 Patent recites: "The system of claim 17, wherein if the apheresis device does not confirm the identity of the human subject, the apheresis device is configured to respond by declining to proceed with the apheresis procedure and by triggering an audible and/or visual alarm or alert, wherein the alarm or alert comprises a text error message displayed on the touch screen."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '693 Patent.

364. The Accused Haemonetics Products practice claim 19 of the '693 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

365. As explained above, the Accused Haemonetics Products form a system that practices claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

366. If the NexSys PCS cannot confirm the identity of the human subject, the device is configured to respond by declining to proceed with the plasmapheresis procedure and by triggering an audible and/or visual alarm or alert, wherein the alarm or alert comprises a text error message displayed on the touch screen. On information and belief, the NexSys PCS informs the user that donor identity has not been confirmed through a notification that includes a text message.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that if the NexSys PCS cannot confirm the identity of the human subject, the device is configured to respond by declining to proceed with the plasmapheresis procedure and by triggering an audible and/or visual alarm or alert, wherein the alarm or alert comprises a text error message displayed on the touch screen as claimed in the ’693 Patent.

367. Claim 20 of the ‘693 Patent recites: “The system of claim 17, wherein at least one of the parameters used to program the apheresis device for the apheresis medical procedure is stored in the subject data entry and downloaded from the subject data entry.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’693 Patent.

368. The Accused Haemonetics Products practice claim 20 of the ‘693 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

369. As explained above, the Accused Haemonetics Products form a system that practices claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

370. On information and belief, “Plasma Target Volume” is used to program the NexSys PCS (with YES or PERSONA Technologies) for the apheresis medical procedure and is stored in the data entry.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that "Plasma Target Volume" is a parameter as claimed in the '693 Patent and further denies that "Plasma Target Volume" is a parameter used to program the NexSys PCS for the apheresis medical procedure and is stored in the data entry as claimed in the '693 Patent.

371. Haemonetics directly infringes at least claims 1, 2, 4, 5, 7-9, 11, 12, 15, 17, 19, and 20 of the '693 Patent by using (including in tests, commercial demonstrations, and clinical trials), making, importing, offering for sale/lease, selling, and/or leasing the Accused Haemonetics Products in the United States.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

372. Additionally, on information and belief, the infringing acts of third parties (such as Haemonetics' customers, clients, partners, and end users such as clinicians and phlebotomists) are attributable to Haemonetics. Haemonetics' partners, clients, customers, and/or end users in the United States lease and/or buy the Accused Haemonetics Products across this country, including in this District. On information and belief, Haemonetics directs and controls the activities or actions of its third-party customers with respect to the Accused Haemonetics Products through contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Haemonetics Products which, when followed and used, result in infringement of the '693 Patent, including at least claims 1, 2, 4, 5, 7-9, 11, 12, 15, 17, 19, and 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

373. In addition to directly infringing the '693 Patent, Haemonetics has indirectly infringed the '693 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '693 Patent (including claims 1, 2, 4, 5, 7-9, 11, 12, 15, 17, 19, and 20) at least by using the Accused Haemonetics Products in plasma donation centers. On information and belief, Haemonetics markets, offers to sell/lease, and/or sells/leases the Accused Haemonetics Products to customers and/or end users. On additional information and belief, Haemonetics provides, *inter alia*, training, written guidance (*e.g.*, User Manuals and Service Manuals), technical assistance, promotional materials, sales and marketing materials, and/or demonstrations to customers and end users.[88] On information and belief, these acts induce said third parties to perform acts intended by Haemonetics to cause direct infringement of the '693 Patent (including claims 1, 2, 4, 5, 7-9, 11, 12, 15, 17, 19, and 20). On information and belief, Haemonetics performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the

---

[88] *See, e.g.*, NexSys PCS Service Manual; NexSys PCS User Manual; NexSys PCS PERSONA Brochure; NexSys PCS Brochure.

induced acts would constitute infringement of the ‘693 Patent (including claims 1, 2, 4, 5, 7-9, 11, 12, 15, 17, 19, and 20).

**ANSWER:** Haemonetics denies the allegations in this paragraph.

374. Haemonetics has had knowledge of the ‘693 Patent since at least the filing of these Counterclaims. Haemonetics has had knowledge that the induced acts of its customers and end users constitutes infringement of the ‘693 Patent since at least the filing of these Counterclaims.

**ANSWER:** Haemonetics admits that it has had knowledge of the ’693 Patent since at least the filing of the Counterclaims. Haemonetics otherwise denies the remaining allegations in this paragraph.

375. Haemonetics has also indirectly infringed the ‘693 Patent (including claims 1, 2, 4, 5, 7-9, 11, 12, 15, 17, 19, and 20) as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to the infringement of the ‘693 Patent by third parties, such as its customers and end users. Such third parties infringe the ‘693 Patent (including claims 1, 2, 4, 5, 7-9, 11, 12, 15, 17, 19, and 20) at least by using the Accused Haemonetics Products in plasma donation centers. Haemonetics’ affirmative acts of making, importing, leasing, and/or selling the Accused Haemonetics Products contributes to the infringement of the ‘693 Patent because those components constitute a material part of the invention of the ‘693 Patent (as they embody all limitations of the claims), are specially made or adapted for use in infringing the ‘693 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

376. As a consequence of Haemonetics’ direct and indirect infringement of the ‘693 Patent, both literally and under the doctrine of equivalents, Fenwal has been and continues to be irreparably harmed.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

377. Due to Haemonetics’ infringing acts, Fenwal has been and will be damaged in an amount to be determined at trial.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

378. On information and belief, unless enjoined, Haemonetics will continue to infringe the ‘693 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 4: INFRINGEMENT OF U.S. PATENT NO. 11,672,891**

379. Fenwal realleges and incorporates the allegations set forth in the foregoing paragraphs 1-378 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

380. On information and belief, Haemonetics has infringed and continues to infringe, directly and indirectly, literally and/or under the doctrine of equivalents, at least claims 1-3, 5, 6, 8, 11, 13, and 15 of the '891 Patent by making, importing, using, offering for sale/lease, and/or selling/leasing the NexSys PCS YES, the NexSys PCS PERSONA, and Disposable Kits in the United States. The Accused Haemonetics Products meet each limitation of each of foregoing claims, literally and/or under the doctrine of equivalents, as described in Exhibit 22, which is incorporated herein by reference. Fenwal reserves the right to assert additional claims of the '891 Patent against Haemonetics based on discovery that will become available in due course.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

381. Claim 1 of the '891 Patent covers a novel system for collecting a blood component and recites:

> 1. A blood processing system comprising:
>
> a blood processing apparatus comprising reusable hardware and a disposable fluid circuit, the blood processing apparatus comprising a separator configured to perform a centrifugal separation process on a biological fluid from a source to provide a blood component in a product container, the reusable hardware comprising a weight scale configured to weigh the product container and an air detector sensor;
>
> a touch screen configured to receive input from an operator;
>
> a transmitter/receiver device configured to communicate over a network and to receive process parameters from a server computer; and
>
> a processing circuit coupled to the blood processing apparatus and the network, the processing circuit configured to receive the process parameters from the server computer and store them in a memory, the processing circuit configured to store default process parameters in the memory, the processing circuit configured to:
>
> > receive an activation from the operator to switch on the blood processing system;

> conduct self-checks on the blood processing apparatus;
>
> receive input data for a value of a process parameter from the touch screen;
>
> verify that the value is within a preset range for the value;
>
> prior to operating the blood processing apparatus according to a centrifugal separation process, store a pre-process calculation of a volume of the blood component to be collected in the product container and provide an indication of the volume to an operator via the touch screen;
>
> prompt the operator to mount the disposable fluid circuit;
>
> automatically check to determine whether the disposable fluid circuit is installed;
>
> prime tubing of the disposable fluid circuit with a fluid;
>
> commence the centrifugal separation process on the biological fluid;
>
> check the air detector sensor for a fluid/air interface;
>
> weigh the product container during the centrifugal separation process;
>
> process the biological fluid until the volume of the blood component to be collected is collected; and
>
> upon completion of the centrifugal separation process, prompt the operator.

**ANSWER:** Haemonetics admits that Claim 1 of the ’891 Patent recites the stated claim language based on the language in the ’891 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

382. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, constitute “blood processing system[s]” that draw and collect whole blood from a donor, separate the whole blood into its components (*e.g.*, red cells, white cells/platelets, and plasma), and return at least one other component of the whole blood to the donor (*e.g.*, red cells, white cells/platelets).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, constitute blood processing systems as claimed in the '693 Patent.

383. The NexSys PCS YES and NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware (*e.g.,* Centrifuge) and a Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters. One set of tubing is used to connect to a donor via a venipuncture needle when drawing whole blood from the donor. After separation of the whole blood in a centrifuge separator, the separated plasma is collected in a plasma collection container that is placed in a bottle holder connected to a weigher arm that weighs the container and its contents. The reusable hardware also comprises several air detector sensors.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS YES and NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware and a Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters as claimed in the '693 Patent. Haemonetics further denies that the NexSys systems include a weight scale and air detector sensor as claimed in the '693 Patent.

384. Each of the NexSys PCS YES and NexSys PCS PERSONA has a touch screen which is configured to receive an input (*e.g.*, donor ID, various parameters) from the touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS systems have a touch screen which is configured to receive an input as claimed in the '693 Patent.

385. Each of the NexSys PCS YES and the NexSys PCS PERSONA has a transmitter and receiver device configured to communicate over a network and to receive data from a server computer. The BECS running a data management system software application (*e.g.*, NexLynk DMS) constitutes a "server" run on a server computer.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS systems have a transmitter and receiver device configured to communicate over a network and to receive data from a server

computer as claimed in the '693 Patent. Haemonetics further denies the BECS running a data management system software application constitutes a server as claimed in the '693 Patent.

386. Each of the NexSys PCS YES and the NexSys PCS PERSONA includes a processing circuit that is coupled to the blood processing apparatus and a network, and the processing circuit is configured to receive the data from the server computer and store the data in a memory. The processing circuit of the NexSys PCS YES and the NexSys PCS PERSONA is also configured to store default process parameters in a memory.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS systems includes a processing circuit that is coupled to the blood processing apparatus and a network, and the processing circuit is configured to receive the data from the server computer and store the data in a memory as claimed in the '693 Patent. Haemonetics further denies the processing circuit of the NexSys PCS YES and the NexSys PCS PERSONA is also configured to store default process parameters in a memory as claimed in the '693 Patent.

387. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to receive an activation from the operator when the NexSys PCS YES and the NexSys PCS PERSONA are turned on with a switch by the operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to receive an activation from the operator when the NexSys PCS YES and the NexSys PCS PERSONA are turned on with a switch by the operator as claimed in the '693 Patent.

388. When the NexSys PCS YES and the NexSys PCS PERSONA are powered on, the processing circuits of each is configured conduct self-checks on the blood processing apparatus.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that when the NexSys PCS YES and the NexSys

PCS PERSONA are powered on, the processing circuits of each is configured conduct self-checks on the blood processing apparatus as claimed in the ’693 Patent.

389. The NexSys PCS YES and the NexSys PCS PERSONA have a touch screen and the processing circuits in the NexSys PCS YES and the NexSys PCS PERSONA are configured to receive input data for the value of a process parameter. For example, values for process parameters such as pump speed and “Max Plasma Per Cycle” can be input via the touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA have a touch screen and the processing circuits in the NexSys PCS YES and the NexSys PCS PERSONA are configured to receive input data for the value of a process parameter as claimed in the ’693 Patent. Haemonetics further denies that pump speed and “Max Plasma Per Cycle” are parameters as claimed in the ’693 Patent.

390. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA verify that the value of the process parameter is within a present range. For example, values for process parameters such as “Max Plasma Per Cycle,” “Total Saline Volume to Return,” “Empty AC Bag Weight,” and “AC Solution Volume” must fall within the preset ranges.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA verify that the value of the process parameter is within a present range as claimed in the ’693 Patent. Haemonetics further denies that “Max Plasma Per Cycle,” “Total Saline Volume to Return,” “Empty AC Bag Weight,” and “AC Solution Volume” are parameters as claimed in the ’693 Patent.

391. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to store a pre-process calculation of a volume of the blood component to be collected. For example, using the PERSONA nomogram, a target plasma collection volume is calculated based on weight, height, and hematocrit of the donor. Further, the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to display on the touch screen the volume of the blood component to be collected before the blood processing procedure commences.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to store a pre-process calculation of a volume of the blood component to be collected as claimed in the ’693 Patent. Haemonetics further denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to display on the touch screen the volume of the blood component to be collected before the blood processing procedure commences as claimed in the ’693 Patent.

392. Before commencing a blood processing procedure (*e.g.*, a plasmapheresis procedure), a Disposable Kit comprising a single-use disposable set that includes the Harness connecting disposable components is installed on the NexSys PCS YES and the NexSys PCS PERSONA. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to prompt an operator, through the touch screen, to install the disposable tubing set.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that before commencing a blood processing procedure, a Disposable Kit is installed on the NexSys system and the processing circuits of the NexSys system are configured to prompt an operator, through the touch screen, to install the disposable tubing set as claimed in the ’693 Patent.

393. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to automatically check to determine whether the disposable fluid circuit is installed.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to automatically check to determine whether the disposable fluid circuit is installed as claimed in the ’693 Patent.

394. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to operate the anticoagulant short prime (AC Short Prime) feature. This feature involves priming with anticoagulant the Harness before a blood processing procedure (*e.g.*, a plasmapheresis procedure). Upon completion of the anticoagulant prime, the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to commence the centrifugal separation process on the biological fluid.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS system are configured to operate the anticoagulant short prime feature and, upon completion, the processing circuits are configured to commence the centrifugal separation process on the biological fluid as claimed in the '693 Patent.

395. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA check air detectors which are ultrasonic sensors for the donor line, the anticoagulant line, and the blood line. The ultrasonic air sensors in the NexSys PCS YES and the NexSys PCS PERSONA detect the presence of air based on differences in sound impedance of the air and the fluid at the fluid/air interface.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA check air detectors which are ultrasonic sensors, which detect the presence of air based on differences in sound impedance of the air and the fluid at the fluid/air interface, for the donor line, the anticoagulant line, and the blood line as claimed in the '693 Patent.

396. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to weigh the plasma product container during the centrifugal separation. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA operate the processing of the biological fluid until the volume of the blood component to be collected is collected. Upon completion, the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to provide visual prompts to the operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to weigh the plasma product container during the centrifugal separation and, upon completion, the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to provide visual prompts to the operator as claimed in the '693 Patent.

397. Claim 2 of the '891 Patent recites: "The blood processing system of claim 1, further comprising a barcode reader, wherein the processing circuit is further configured to receive input data for a value for a second process parameter from a barcode reader."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '891 Patent.

398. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, practice claim 2 of the '891 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 22.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

399. As explained above, NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

400. The NexSys PCS YES and the NexSys PCS PERSONA each comprise a barcode reader, and a processing circuit of each device is configured to receive input data for a value for a second process parameter from the barcode reader.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA each comprise a barcode reader, and a processing circuit of each device is configured to receive input data for a value for a second process parameter from the barcode reader as claimed in the '693 Patent.

401. Claim 3 of the '891 Patent recites: "The blood processing system of claim 1, wherein the disposable fluid circuit comprises a saline access site."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '891 Patent.

402. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, practice claim 3 of the '891 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 22.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

403. As explained above, NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

404. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, include a disposable fluid circuit which comprises a saline access site.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, include a disposable fluid circuit which comprises a saline access site as claimed in the ’693 Patent.

405. Claim 5 of the ‘891 Patent covers a novel system for collecting a blood component and recites:

> 5. A blood processing system comprising:
>
> a blood processing apparatus comprising reusable hardware and a disposable fluid circuit, the blood processing apparatus comprising a separator configured to perform a centrifugal separation process on a biological fluid from a source to provide a blood component in a product container, the reusable hardware comprising a weight scale configured to weigh the product container and an air detector sensor;
>
> a touch screen configured to receive input from an operator;
>
> a transmitter/receiver device configured to communicate over a network and to receive data from a server computer; and
>
> a processing circuit coupled to the blood processing apparatus and the network, the processing circuit configured to receive the data from the server computer and store the data in a memory, the processing circuit configured to store default process parameters in the memory, the processing circuit configured to:
>
>> receive an instruction from the operator to activate the blood processing system;
>>
>> conduct self-checks on the blood processing apparatus;
>>
>> receive input data for a value of a process parameter from the touch screen;

> verify that the value is within a preset range for the value;
>
> prior to operating the blood processing apparatus according to a centrifugal separation process, store a pre-process calculation of a volume of the blood component to be collected in the product container based at least in part on the value of the process parameter received from the touch screen;
>
> provide an indication of the volume to be collected to an operator via the touch screen;
>
> prompt the operator to mount the disposable fluid circuit;
>
> automatically check to determine whether the disposable fluid circuit is installed;
>
> prime tubing of the disposable fluid circuit with a fluid;
>
> commence the centrifugal separation process on the biological fluid;
>
> check the air detector sensor for a fluid/air interface;
>
> weigh the product container during the centrifugal separation process;
>
> process the biological fluid until the volume of the blood component to be collected is collected.

**ANSWER:** Haemonetics admits that Claim 5 of the ’891 Patent recites the stated claim language based on the language in the ’891 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

406. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, constitute "blood processing system[s]" that draw and collect whole blood from a donor, separate the whole blood into its components (*e.g.*, red cells, white cells/platelets, and plasma), and return at least one other component of the whole blood to the donor (*e.g.*, red cells, white cells/platelets).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS

PERSONA, each with a Disposable Kit, constitute blood processing systems as claimed in the '693 Patent.

407. The NexSys PCS YES and the NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware (*e.g.,* Centrifuge) and a Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters. One set of tubing is used to connect to a donor via a venipuncture needle when drawing whole blood from the donor. After separation of the whole blood in a centrifuge separator, the separated plasma is collected in a plasma collection container that is placed in a bottle holder connected to a weigher arm that weighs the container and its contents. The reusable hardware also comprises several air detector sensors.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS YES and the NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware and a Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters as claimed in the '693 Patent. Haemonetics further denies that the NexSys PCS systems include a weight scale and air detector sensor as claimed in the '693 Patent.

408. Each of the NexSys PCS YES and the NexSys PCS PERSONA has a touch screen which is configured to receive an input (*e.g.*, donor ID, various process parameters) from an operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA has a touch screen which is configured to receive an input from an operator as claimed in the '693 Patent.

409. Each of the NexSys PCS YES and the NexSys PCS PERSONA has a transmitter and receiver device configured to communicate over a network and to receive data from a server computer. The BECS running a data management system software application (*e.g.*, NexLynk DMS) constitutes a "server" run on a server computer.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA has a transmitter and receiver device configured to communicate over a network and

to receive data from a server computer as claimed in the ’693 Patent. Haemonetics further denies the BECS running a data management system software application constitutes a server run on a server computer as claimed in the ’693 Patent.

410. Each of the NexSys PCS YES and the NexSys PCS PERSONA includes a processing circuit that is coupled to the blood processing apparatus and a network and is configured to receive the data from the server computer and store the data in a memory. The processing circuit of the NexSys PCS YES and the NexSys PCS PERSONA is also configured to store default process parameters in a memory.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA includes a processing circuit that is coupled to the blood processing apparatus and a network and is configured to receive the data from the server computer and store the data in a memory and the processing circuit of the NexSys PCS YES and the NexSys PCS PERSONA is also configured to store default process parameters in a memory as claimed in the ’693 Patent.

411. Each of the NexSys PCS YES and the NexSys PCS PERSONA has a processing circuit configured to receive an activation from the operator when the NexSys PCS YES and the NexSys PCS PERSONA are activated with a switch by the operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA has a processing circuit configured to receive an activation from the operator when the NexSys PCS YES and the NexSys PCS PERSONA are activated with a switch by the operator as claimed in the ’693 Patent.

412. When the NexSys PCS YES and the NexSys PCS PERSONA are powered on, a processing circuit of each is configured conduct self-checks on the blood processing apparatus.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that when the NexSys PCS YES and the NexSys

PCS PERSONA are powered on, a processing circuit of each is configured to conduct self-checks on the blood processing apparatus as claimed in the ’693 Patent.

413. Each of the NexSys PCS YES and the NexSys PCS PERSONA has a touch screen, and the processing circuits of each device are configured to receive an input data for the value of a process parameter. For example, values for process parameters such as target collection volume, pump speed, “Max Plasma Per Cycle” can be input via the touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA has a touch screen, and the processing circuits of each device are configured to receive an input data for the value of a process parameter as claimed in the ’693 Patent. Haemonetics further denies that target collection volume, pump speed, and “Max Plasma Per Cycle” are parameters that can be input via the touch screen as claimed in the ’693 Patent.

414. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA verify that the value of the process parameter is within a present range. For example, values for process parameters such as “Max Plasma Per Cycle,” “Total Saline Volume to Return,” “Empty AC Bag Weight,” and “AC Solution Volume” must fall within the preset ranges.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA verify that the value of the process parameter is within a present range as claimed in the ’693 Patent. Haemonetics further denies that “Max Plasma Per Cycle,” “Total Saline Volume to Return,” “Empty AC Bag Weight,” and “AC Solution Volume” are parameters that can be input via the touch screen as claimed in the ’693 Patent.

415. The processing circuits of the NexSys PCS with YES and PERSONA are configured to store a pre-process calculation of a volume of the blood component to be collected based on the value of the process parameter received from the touch screen. For example, the target plasma volume can be based on the value for target plasma collection volume received through the touch screen. Further, the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to display on the touch screen the volume of the blood component to be collected before the blood processing procedure commences.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS with YES and PERSONA are configured to store a pre-process calculation of a volume of the blood component to be collected based on the value of the process parameter received from the touch screen as claimed in the '693 Patent. Haemonetics further denies that target plasma volume is a parameter as claimed in the '693 Patent. Haemonetics also denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to display on the touch screen the volume of the blood component to be collected before the blood processing procedure commences as claimed in the '693 Patent.

416. Before commencing a blood processing procedure (*e.g.*, a plasmapheresis procedure), a Disposable Kit comprising a single-use disposable set that includes the Harness connecting disposable components is installed on the NexSys PCS YES and the NexSys PCS PERSONA. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to prompt an operator, through the touch screen, to install the disposable tubing set. A processing circuit of the NexSys PCS YES and the NexSys PCS PERSONA automatically checks to determine whether the disposable fluid circuit is installed.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that before commencing a blood processing procedure, a Disposable Kit is installed on the NexSys PCS system and the processing circuits of are configured to prompt an operator, through the touch screen, to install the disposable tubing set and automatically checks to determine whether the disposable fluid circuit is installed as claimed in the '693 Patent.

417. The processing circuits of the NexSys PCS with YES and PERSONA are configured to operate the anticoagulant short prime (AC Short Prime) feature. This feature involves priming with anticoagulant the Harness before a blood processing procedure (*e.g.*, a plasmapheresis procedure). Upon completion of the anticoagulant prime, the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to commence the centrifugal separation process on the biological fluid.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS are configured to operate the anticoagulant short prime feature and, upon completion, the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to commence the centrifugal separation process on the biological fluid as claimed in the '693 Patent.

418. The processing circuits of the NexSys PCS with YES and PERSONA check air detectors which are ultrasonic sensors for the donor line, the anticoagulant line, and the blood line. The ultrasonic air sensors in the NexSys PCS with YES and PERSONA detect the presence of air based on differences in sound impedance of the air and the fluid at the fluid/air interface.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS with YES and PERSONA check air detectors which are ultrasonic sensors, which detect the presence of air based on differences in sound impedance of the air and the fluid at the fluid/air interface, for the donor line, the anticoagulant line, and the blood line as claimed in the '693 Patent.

419. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to weigh the plasma product container during the centrifugal separation. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA operate the processing of the biological fluid until the volume of the blood component to be collected is collected.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS system are configured to weigh the plasma product container during the centrifugal separation and operate the processing of the biological fluid until the volume of the blood component to be collected is collected as claimed in the '693 Patent.

420. Claim 6 of the '891 Patent recites: "The blood processing system of claim 5, wherein the processing circuit is further configured to, upon completion of the centrifugal separation process, prompt the operator."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’891 Patent.

421. The NexSys PCS YES and the NexSys PCS PERSONA NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, practice claim 6 of the ‘891 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 22.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

422. As explained above, the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, form a system that practices claim 5.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

423. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to provide visual prompts to alert the operator upon completion of the centrifugal separation process.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to provide visual prompts to alert the operator upon completion of the centrifugal separation process as claimed in the ’693 Patent.

424. Claim 8 of the ‘891 Patent recites: “The blood processing system of claim 5, wherein the pre-process calculation is based at least in part on the data received from the server computer.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’891 Patent.

425. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, practice claim 8 of the ‘891 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 22.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

426. As explained above, the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, form a system that practices claim 5.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

427. The NexSys PCS with YES and PERSONA calculates a pre-collection target plasma volume based on data received from the server computer. For example, the calculation can be based on donor information such as weight and hematocrit received from the BECS ran in a remote server computer.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS with YES and PERSONA calculates a pre-collection target plasma volume based on data received from the server computer as claimed in the '693 Patent.

428. Claim 11 of the '891 Patent covers a novel system for collecting a blood component and recites:

> 11. A blood processing system comprising:
>
> a blood processing apparatus comprising reusable hardware and a disposable fluid circuit, the blood processing apparatus comprising a separator configured to perform a centrifugal separation process on a biological fluid from a source to provide a blood component to a product container, the reusable hardware comprising a weight scale configured to weigh the product container and an air detector sensor;
>
> a touch screen configured to receive input from an operator; and
>
> a control unit coupled to the blood processing apparatus, the control unit configured to store default process parameters in the memory, the control unit configured to:
>
>> receive an instruction from the operator to activate the blood processing system;
>>
>> conduct self-checks on the blood processing apparatus;
>>
>> receive input data for a value of a process parameter from the touch screen;
>>
>> prior to operating the blood processing apparatus according to a centrifugal separation process, calculate a volume of the blood component to be collected in the product container based at least in part on the value of the process parameter received from the touch screen;
>>
>> provide an indication of the volume to be collected to an operator via the touch screen;

> prime tubing of the disposable fluid circuit with a fluid;
>
> commence the centrifugal separation process on the biological fluid using the default process parameters;
>
> check the air detector sensor for a fluid/air interface;
>
> weigh the product container during the centrifugal separation process;
>
> process the biological fluid to collect the volume of the blood component to be collected.

**ANSWER:** Haemonetics admits that Claim 11 of the '891 Patent recites the stated claim language based on the language in the '891 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

429. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, constitute "blood processing system[s]" that draw and collect whole blood from a donor, separate the whole blood into its components (*e.g.*, red cells, white cells/platelets, and plasma), and return at least one other component of the whole blood to the donor (*e.g.*, red cells, white cells/platelets).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, constitute blood processing systems as claimed in the '693 Patent.

430. The NexSys PCS YES and NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware (*e.g.,* Centrifuge) and a Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters. One set of tubing is used to connect to a donor via a venipuncture needle when drawing whole blood from the donor. After separation of the whole blood in a centrifuge separator, the separated plasma is collected in a plasma collection container that is placed in a bottle holder connected to a weigher arm that weighs the container and its contents. The reusable hardware also comprises several air detector sensors.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware and a

Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters as claimed in the ’693 Patent. Haemonetics further denies that the NexSys PCS systems include a weight scale and air detector sensor as claimed in the ’693 Patent.

431. Each of the NexSys PCS YES and NexSys PCS PERSONA has a touch screen which is configured to receive an input (*e.g.*, donor ID, various process parameters) from the operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and NexSys PCS PERSONA has a touch screen which is configured to receive an input from the operator as claimed in the ’693 Patent.

432. Each of the NexSys PCS YES and NexSys PCS PERSONA includes a control unit coupled to the blood processing apparatus. The control units of the NexSys PCS YES and NexSys PCS PERSONA are configured to store default process parameters in a memory.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and NexSys PCS PERSONA includes a control unit coupled to the blood processing apparatus that is configured to store process parameters in a memory as claimed in the ’693 Patent.

433. The control units of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive an activation from the operator when the NexSys PCS YES and NexSys PCS PERSONA are activated with a switch by the operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the control units of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive an activation from the operator when the NexSys PCS YES and NexSys PCS PERSONA are activated with a switch by the operator as claimed in the ’693 Patent.

434. When the NexSys PCS YES and NexSys PCS PERSONA are activated, a control unit of each conducts self-checks on the blood processing apparatus.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that when the NexSys PCS YES and NexSys PCS PERSONA are activated, a control unit of each conducts self-checks on the blood processing apparatus as claimed in the ’693 Patent.

435. The control units of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive input data for a value of a process parameter from the touch screen. For example, values for process parameters such as target plasma volume, pump speed and “Max Plasma Per Cycle” can be input via the touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the control units of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive input data for a value of a process parameter from the touch screen as claimed in the ’693 Patent. Haemonetics further denies that target plasma volume, pump speed and “Max Plasma Per Cycle” are process parameters that can be input via the touch screen as claimed in the ’693 Patent.

436. The control units of the NexSys PCS YES and NexSys PCS PERSONA are configured to calculate a volume of the blood component to be collected based on the value of the process parameter received from the touch screen. For example, the target plasma volume can be based on the value for target plasma collection volume received through the touch screen. The control unit is configured to provide an indication of the volume to be collected by displaying the volume on the touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the control units of the NexSys PCS YES and NexSys PCS PERSONA are configured to calculate a volume of the blood component to be collected based on the value of the process parameter received from the touch screen as claimed in the ’693 Patent. Haemonetics further denies that target plasma volume is a process parameter that can be input via the touch screen as claimed in the ’693 Patent. Haemonetics also denies that the control unit is configured to provide an indication of the volume to be collected by displaying the volume on the touch screen as claimed in the ’693 Patent.

437. The control units of the NexSys PCS YES and NexSys PCS PERSONA are configured to operate the anticoagulant short prime (AC Short Prime) feature. This feature involves priming with anticoagulant the Harness before a blood processing procedure (*e.g.*, a plasmapheresis procedure). Upon completion of the anticoagulant prime, the control units are configured to commence the centrifugal separation process.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the control units of the NexSys PCS YES and NexSys PCS PERSONA are configured to operate the anticoagulant short prime and, upon completion, the control units are configured to commence the centrifugal separation process as claimed in the '693 Patent.

438. The control units of the NexSys PCS YES and the NexSys PCS PERSONA are configured to check air detectors which are ultrasonic sensors for the donor line, the anticoagulant line, and the blood line. The ultrasonic air sensors in the NexSys PCS YES and the NexSys PCS PERSONA detect the presence of air based on differences in sound impedance of the air and the fluid at the fluid/air interface.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the control units of the NexSys PCS YES and the NexSys PCS PERSONA are configured to check air detectors which are ultrasonic sensors, which detect the presence of air based on differences in sound impedance of the air and the fluid at the fluid/air interface, for the donor line, the anticoagulant line, and the blood line as claimed in the '693 Patent.

439. The control units of the NexSys PCS YES and the NexSys PCS PERSONA are configured to weigh the plasma product container during the centrifugal separation. The control units of the NexSys PCS YES and the NexSys PCS PERSONA are configured to operate the processing of the biological fluid until the volume of the blood component to be collected is collected.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the control units of the NexSys PCS YES and the NexSys PCS PERSONA are configured to weigh the plasma product container during the

centrifugal separation and are configured to operate the processing of the biological fluid until the volume of the blood component to be collected is collected as claimed in the '693 Patent.

440. Claim 13 of the '891 Patent recites: "The blood processing system of claim 11, further comprising a transmitter/receiver device configured to communicate over a network and to receive data from a server computer, the control unit configured to receive the data from the server computer and store the data in a memory."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '891 Patent.

441. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, practices claim 13 of the '891 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 22.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

442. As explained above, the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, form a system that practices claim 11.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

443. Each of the NexSys PCS YES and the NexSys PCS PERSONA has a transmitter and receiver device configured to communicate over a network and receive data from a server computer and the control unit of each device is configured to receive data from the server computer and store the data in a memory. The BECS running a data management system software application (*e.g.*, NexLynk DMS) constitutes a "server" run on a server computer.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA has a transmitter and receiver device configured to communicate over a network and receive data from a server computer and the control unit of each device is configured to receive data from the server computer and store the data in a memory as claimed in the '693 Patent. Haemonetics further denies that the BECS running a data management system software application constitutes a server run on a server computer as claimed in the '693 Patent.

444. Claim 15 of the '891 Patent recites: "The blood processing system of claim 14, wherein the control unit is further configured to: prompt the operator to mount the disposable fluid circuit; and automatically check to determine whether the disposable fluid circuit is installed."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’891 Patent.

445. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, practices claim 15 of the ‘891 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 22.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

446. As explained above, the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, form a system that practices claim 14.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

447. Before commencing a blood processing procedure (*e.g.*, a plasmapheresis procedure), the control units of the NexSys PCS YES and the NexSys PCS PERSONA are configured to prompt an operator, on the touch screen, to install the Disposable Kit. The control units of the NexSys PCS YES and the NexSys PCS PERSONA are configured to automatically check to determine whether the disposable fluid circuit is installed.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that before commencing a blood processing procedure, the control units of the NexSys PCS YES and the NexSys PCS PERSONA are configured to prompt an operator, on the touch screen, to install the Disposable Kit as claimed in the ’693 Patent. Haemonetics further denies that the control units of the NexSys PCS YES and the NexSys PCS PERSONA are configured to automatically check to determine whether the disposable fluid circuit is installed as claimed in the ’693 Patent.

448. Haemonetics directly infringes at least claims 1, 3, 5, 6, 8, 11, 13, and 15 of the ‘891 Patent by using (including in tests, commercial demonstrations, and clinical trials), making, importing, offering for sale/lease, selling, and/or leasing the Accused Haemonetics Products in the United States.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

449. Additionally, on information and belief, the infringing acts of third parties (such as Haemonetics’ customers, clients, partners, and end users such as clinicians and phlebotomists) are attributable to Haemonetics. Haemonetics’ partners, clients, customers, and/or end users in the United States lease and/or buy the Accused Haemonetics Products across this country, including in this District. On information and belief, Haemonetics directs and controls the activities or

actions of its third-party customers with respect to the Accused Haemonetics Products through contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Haemonetics Products which, when followed and used, result in infringement of the ‘891 Patent, including at least claims 1, 3, 5, 6, 8, 11, 13, and 15.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

450. In addition to directly infringing the ‘891 Patent, Haemonetics has indirectly infringed the ‘891 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the ‘891 Patent (including claims 1, 3, 5, 6, 8, 11, 13, and 15) at least by using the Accused Haemonetics Products in plasma donation centers. On information and belief, Haemonetics markets, offers to sell/lease, and/or sells/leases the Accused Haemonetics Products to customers and/or end users. On additional information and belief, Haemonetics provides, *inter alia*, training, written guidance (*e.g.*, User Manuals and Service Manuals), technical assistance, promotional materials, sales and marketing materials, and/or demonstrations to customers and end users.[89] On information and belief, these acts induce said third parties to perform acts intended by Haemonetics to cause direct infringement of the ‘891 Patent (including claims 1, 3, 5, 6, 8, 11, 13, and 15). On information and belief, Haemonetics performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the ‘891 Patent (including claims 1, 3, 5, 6, 8, 11, 13, and 15).

**ANSWER:** Haemonetics denies the allegations in this paragraph. Haemonetics refers to the document cited that speaks for itself.

451. Haemonetics has had knowledge of the ‘891 Patent since at least the filing of these Counterclaims. Haemonetics has had knowledge that the induced acts of its customers and end users constitutes infringement of the ‘891 Patent since at least the filing of these Counterclaims.

**ANSWER:** Haemonetics admits it has had knowledge of the ‘891 Patent since at least the filing of these Counterclaims. Haemonetics otherwise denies the remaining allegations in this paragraph.

452. Haemonetics has also indirectly infringed the ‘891 Patent (including claims 1, 3, 5, 6, 8, 11, 13, and 15) as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to the infringement of the ‘891 Patent by third parties, such as its customers and end users. Such third parties infringe the ‘891 Patent (including claims 1, 3, 5, 6, 8, 11, 13, and 15) at least by using the Accused Haemonetics Products in plasma donation centers. Haemonetics’ affirmative acts of making, importing, leasing, and/or selling the Accused Haemonetics Products contributes to the infringement of the ‘891 Patent because those components constitute a material part of the invention of the ‘891 Patent (as they embody all limitations of the claims), are specially made or

[89] *See, e.g.*, NexSys PCS Service Manual; NexSys PCS User Manual; NexSys PCS PERSONA Brochure; NexSys PCS Brochure.

adapted for use in infringing the '891 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

453. As a consequence of Haemonetics' direct and indirect infringement of the '891 Patent, both literally and under the doctrine of equivalents, Fenwal has been and continues to be irreparably harmed.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

454. Due to Haemonetics' infringing acts, Fenwal has been and will be damaged in an amount to be determined at trial.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

455. On information and belief, unless enjoined, Haemonetics will continue to infringe the '891 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 5: INFRINGEMENT OF U.S. PATENT NO. 12,397,089**

456. Fenwal realleges and incorporates the allegations set forth in the foregoing paragraphs 1-455 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

457. On information and belief, Haemonetics has infringed and continues to infringe, directly and indirectly, literally and/or under the doctrine of equivalents, at least claims 16, 18, 20, 21, and 23 of the '089 Patent by making, importing, using, offering for sale/lease, and/or selling/leasing the NexSys PCS YES, the NexSys PCS PERSONA, and Disposable Kits in the United States. The Accused Haemonetics Products meet each limitation of each of foregoing claims, literally and/or under the doctrine of equivalents, as described in Exhibit 23, which is incorporated herein by reference. Fenwal reserves the right to assert additional claims of the '089 Patent against Haemonetics based on discovery that will become available in due course.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

458. Claim 16 of the '089 Patent covers a novel system for collecting plasma and recites:

> 16. A blood processing system comprising:
>
> a blood processing apparatus comprising reusable hardware and a disposable fluid circuit, the blood processing apparatus comprising a separator configured to perform a centrifugal separation process

on a biological fluid from a source to provide a blood component in a product container, the reusable hardware comprising a weight scale configured to weigh the product container;

a transmitter/receiver device configured to communicate over a network and to receive instructions and/or information from a server computer;

a barcode reader configured to receive input data for a pre-process calculation from a barcode; and

a processing circuit coupled to the blood processing apparatus and the network, the processing circuit configured to receive the input data for the pro-process calculation from the barcode reader and store the input data in

a memory, the processing circuit configured to store default process parameters in the memory, the processing circuit configured to:

> receive an activation from the operator to switch on the blood processing system;
>
> conduct self-checks on the blood processing apparatus;
>
> receive the input data for the pre-process calculation from the barcode reader;
>
> verify that the value is within a preset range for the value;
>
> prior to operating the blood processing apparatus according to a centrifugal separation process, store a pre-process calculation of a volume of the blood component to be collected in the product container and provide an indication of the volume to an operator via the touch screen;
>
> prompt the operator to mount the disposable fluid circuit;
>
> automatically check to determine whether the disposable fluid circuit is installed;
>
> prime tubing of the disposable fluid circuit with a fluid;
>
> commence the centrifugal separation process on the biological fluid;
>
> weigh the product container during the centrifugal separation process;

> process the biological fluid until the volume of the blood component to be collected is collected; and
>
> upon completion of the centrifugal separation process, prompt the operator.

**ANSWER:** Haemonetics admits that Claim 16 of the '089 Patent recites the stated claim language based on the language in the '089 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

459. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, constitute "blood processing system[s]" that draw and collect whole blood from a donor, separate the whole blood into its components (*e.g.*, red cells, white cells/platelets, and plasma), and return at least one other component of the whole blood to the donor (*e.g.*, red cells, white cells/platelets).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, constitute blood processing systems as claimed in the '089 Patent.

460. The NexSys PCS YES and NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware (*e.g.,* Centrifuge) and a Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters. One set of tubing is used to connect to a donor via a venipuncture needle when drawing whole blood from the donor. After separation of the whole blood in a centrifuge separator, the separated plasma is collected in a plasma collection container that is placed in a bottle holder connected to a weigher arm that weighs the container and its contents. The reusable hardware also comprises several air detector sensors.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that NexSys PCS YES and NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware a Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters as claimed in the '089 Patent. Haemonetics further denies that the NexSys PCS systems include a weight sscale or air detector sensor as claimed in the '089 Patent.

461. Each of the NexSys PCS YES and NexSys PCS PERSONA has a transmitter and receiver device configured to communicate over a network and receive instructions and/or information from a server computer. The BECS running a data management system software application (*e.g.*, NexLynk DMS) constitutes a "server" run on a server computer.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and NexSys PCS PERSONA has a transmitter and receiver device configured to communicate over a network and receive instructions and/or information from a server computer as claimed in the '089 Patent. Haemonetics further denies that the BECS running a data management system software application constitutes a server run on a server computer as claimed in the '089 Patent.

462. Each of the NexSys PCS YES and NexSys PCS PERSONA has a barcode reader which is configured to receive input data for a pre-process calculation from a barcode.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and NexSys PCS PERSONA has a barcode reader which is configured to receive input data for a pre-process calculation from a barcode as claimed in the '089 Patent.

463. Each of the NexSys PCS YES and NexSys PCS PERSONA includes a processing circuit coupled to the blood processing apparatus and a network. The processing circuit of each is configured to receive input data for a pre-process calculation from the barcode reader and store the input data in memory. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are also configured to store default process parameters in memory.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and NexSys PCS PERSONA includes a processing circuit coupled to the blood processing apparatus and a network that are configured to receive input data for a pre-process calculation from the barcode reader and store the input data in memory and store default process parameters in memory as claimed in the '089 Patent.

464. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive an activation from the operator when the NexSys PCS YES and NexSys PCS PERSONA are activated with a switch by the operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive an activation from the operator when the NexSys PCS YES and NexSys PCS PERSONA are activated with a switch by the operator as claimed in the ’089 Patent.

465. When the NexSys PCS YES and NexSys PCS PERSONA is powered on, the processing circuit of each is configured to conduct self-checks on the blood processing apparatus.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and NexSys PCS PERSONA is powered on, the processing circuit of each is configured to conduct self-checks on the blood processing apparatus as claimed in the ’089 Patent.

466. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive input data for a pre-process calculation from a barcode reader. For example, through the bar code reader, the processing circuit can receive information such as process parameters or donor information such as weight and hematocrit, which is used to calculate a target plasma volume. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to verify that the values received are within a preset range.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive input data for a pre-process calculation from a barcode reader as claimed in the ’089 Patent. Haemonetics further denies that the NexSys PCS system uses process parameters and/or donor information as claimed in the ’089 Patent. Haemonetics denies the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to verify that the values received are within a preset range as claimed in the ’089 Patent.

467. Prior to operating the blood centrifugal separation process, the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA store a pre-collection volume of the blood component to be collected. Further, the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to provide an indication of the volume of the blood component to be collected to the operator via a touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that prior to operating the blood centrifugal separation process, the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA store a pre-collection volume of the blood component to be collected as claimed in the ’089 Patent. Haemonetics further denies that the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to provide an indication of the volume of the blood component to be collected to the operator via a touch screen as claimed in the ’089 Patent.

468. Before commencing a blood processing procedure (*e.g.*, a plasmapheresis procedure), the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to prompt an operator, on the touch screen, to install the Disposable Kit. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to automatically check to determine whether the disposable fluid circuit is installed.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that before commencing a blood processing procedure, the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to prompt an operator, on the touch screen, to install the Disposable Kit as claimed in the ’089 Patent. Haemonetics further denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to automatically check to determine whether the disposable fluid circuit is installed as claimed in the ’089 Patent.

469. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to operate the anticoagulant short prime (AC Short Prime) feature. This feature involves priming with anticoagulant the Harness before a blood processing procedure (*e.g.*, a plasmapheresis procedure). Upon completion of the anticoagulant prime, the blood processing procedure (*e.g.*, a plasmapheresis procedure) is commenced, including centrifugal separation process on the biological fluid.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to operate the anticoagulant short prime feature and, upon completion, the blood processing procedure is commenced, including centrifugal separation process on the biological fluid as claimed in the '089 Patent.

470. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to weigh the plasma product container during the centrifugal separation. The processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to operate the processing of the biological fluid until the volume of the blood component to be collected is collected. Upon completion, the processing circuit of the NexSys PCS with YES and PERSONA is configured to prompt the operator with visual alerts.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to weigh the plasma product container during the centrifugal separation as claimed in the '089 Patent. Haemonetics further denies the processing circuits of the NexSys PCS YES and the NexSys PCS PERSONA are configured to operate the processing of the biological fluid until the volume of the blood component to be collected is collected and, upon completion, configured to prompt the operator with visual alerts as claimed in the '089 Patent.

471. Claim 18 of the '089 Patent recites: *"The blood processing system of claim 16, wherein the disposable fluid circuit comprises a saline access site."*

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '089 Patent.

472. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, practice claim 18 of the '089 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 23.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

473. As explained above, the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, form a system that practices claim 16.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

474. The tubing of the Disposable Kit used with NexSys PCS YES and the NexSys PCS PERSONA comprise a saline access site.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the tubing of the Disposable Kit used with NexSys PCS YES and the NexSys PCS PERSONA comprise a saline access site as claimed in the '089 Patent.

475. Claim 20 of the '089 Patent covers a novel system for collecting a blood component and recites:

> 20. A blood processing system comprising:
>
> a blood processing apparatus comprising reusable hardware and a disposable fluid circuit, the blood processing apparatus comprising a separator configured to perform a centrifugal separation process on a biological fluid from a source to provide a blood component in a product container, the reusable hardware comprising a weight scale configured to weigh the product container;
>
> a touch screen configured to receive input from an operator;
>
> a transmitter/receiver device configured to communicate over a network and to receive data from a server computer; and
>
> a processing circuit coupled to the blood processing apparatus and the network, the processing circuit configured to receive the data from the server computer and store the data in a memory, the processing circuit configured to store default process parameters in the memory, the processing circuit configured to:
>
>> receive an instruction from the operator to activate the blood processing system;
>>
>> conduct self-checks on the blood processing apparatus;
>>
>> receive input data for a value of a process parameter from the touch screen;
>>
>> verify that the value is within a preset range for the value;

> prior to operating the blood processing apparatus according to the centrifugal separation process, store a pre-process calculation of a volume of the blood component to be collected in the product container based at least in part on the value of the process parameter received from the touch screen and/or based on the data received from the server computer;
>
> provide an indication of the volume to be collected to an operator via the touch screen;
>
> prompt the operator to mount the disposable fluid circuit;
>
> prime tubing of the disposable fluid circuit with a fluid;
>
> commence the centrifugal separation process on the biological fluid, wherein the centrifugal separation process is based at least in part on the default process parameters;
>
> process the biological fluid until the volume of the blood component to be collected is collected.

**ANSWER:** Haemonetics admits that Claim 20 of the ’089 Patent recites the stated claim language based on the language in the ’089 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

476. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, constitute “blood processing system[s]” that draw and collect whole blood from a donor, separate the whole blood into its components (*e.g.*, red cells, white cells/platelets, and plasma), and return at least one other component of the whole blood to the donor (*e.g.*, red cells, white cells/platelets).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, constitute blood processing systems as claimed in the ’089 Patent.

477. The NexSys PCS YES and NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware (*e.g.,* Centrifuge) and a Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters. One set of tubing is used to connect to a donor via a venipuncture needle when drawing whole blood from the donor. After separation of the whole blood in a centrifuge separator, the separated plasma is collected in a

plasma collection container that is placed in a bottle holder connected to a weigher arm that weighs the container and its contents. The reusable hardware also comprises several air detector sensors.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and NexSys PCS PERSONA incorporate a blood processing apparatus comprising reusable hardware and a Disposable Kit constituting a disposable fluid circuit including a collection of tubing and filters as claimed in the ’089 Patent. Haemonetics further denies that the NexSys PCS systems include a weight scale or air detector sensors as claimed in the ’089 Patent.

478. Each the NexSys PCS YES and the NexSys PCS PERSONA has a touch screen which is configured to receive an input (*e.g.*, donor ID, various process parameters) from the operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA has a touch screen which is configured to receive an input from the operator as claimed in the ’089 Patent.

479. Each of the NexSys PCS YES and the NexSys PCS PERSONA has a transmitter and receiver device configured to communicate over a network and receive data from a server computer. The BECS running a data management system software application (*e.g.*, NexLynk DMS) constitutes a “server” run on a server computer.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA has a transmitter and receiver device configured to communicate over a network and receive data from a server computer as claimed in the ’089 Patent. Haemonetics further denies the BECS running a data management system software application constitutes a server run on a server computer as claimed in the ’089 Patent.

480. Each of the NexSys PCS YES and the NexSys PCS PERSONA includes a processing circuit coupled to the blood processing apparatus and a network, that is configured to receive data from a server computer and to store the data in a memory. The processing circuits of

the NexSys PCS YES and NexSys PCS PERSONA are configured to store default process parameters in a memory.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and the NexSys PCS PERSONA includes a processing circuit coupled to the blood processing apparatus and a network, that is configured to receive data from a server computer and to store the data in a memory and to store the data in a memory as claimed in the ’089 Patent.

481. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive an activation from the operator when the NexSys PCS YES and NexSys PCS PERSONA are activated with a switch by the operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to receive an activation from the operator when the NexSys PCS YES and NexSys PCS PERSONA are activated with a switch by the operator as claimed in the ’089 Patent.

482. When the NexSys PCS YES and NexSys PCS PERSONA are powered on, the processing circuit is configured to conduct self-checks on the blood processing apparatus.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that when the NexSys PCS YES and NexSys PCS PERSONA are powered on, the processing circuit is configured to conduct self-checks on the blood processing apparatus as claimed in the ’089 Patent.

483. The NexSys PCS YES and NexSys PCS PERSONA have a touch screen and a processing circuit of each is configured to receive an input data for a value of a process parameter through the touch screen. For example, values for process parameters such as pump speed and “Max Plasma Per Cycle” can be input via the touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the NexSys PCS YES and NexSys PCS

PERSONA have a touch screen and a processing circuit of each is configured to receive an input data for a value of a process parameter through the touch screen as claimed in the '089 Patent. Haemonetics further denies pump speed and "Max Plasma Per Cycle" are process parameters that can be input via the touch screen as claimed in the '089 Patent.

484. The processing circuit of the NexSys PCS YES and NexSys PCS PERSONA verifies that the value of the process parameter is within a present range. For example, values for process parameters such as "Max Plasma Per Cycle," "Total Saline Volume to Return," "Empty AC Bag Weight," and "AC Solution Volume" must fall within the preset ranges.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuit of the NexSys PCS YES and NexSys PCS PERSONA verifies that the value of the process parameter is within a present range as claimed in the '089 Patent. Haemonetics further denies "Max Plasma Per Cycle," "Total Saline Volume to Return," "Empty AC Bag Weight," and "AC Solution Volume" are process parameters as claimed in the '089 Patent.

485. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to store a pre-collection calculation of a volume of the blood component to be collected in the product container based on the value of the process parameter received from the touch screen and/or based on the data received from the server computer. For example, the server computer transmits donor information to the NexSys PCS YES and NexSys PCS PERSONA. Using the PERSONA nomogram, a target plasma collection volume is calculated based on weight, height, and hematocrit of the donor received from the touch screen or from the server computer. The processing circuit of each device is configured to provide an indication of the volume of the blood component via the touch screen.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to store a pre-collection calculation of a volume of the blood component to be collected in the product container based on the value of the process parameter received from the touch screen and/or based on the data received from the server computer as claimed in the '089 Patent. Haemonetics further denies the processing circuit of each

device is configured to provide an indication of the volume of the blood component via the touch screen as claimed in the '089 Patent.

486. Before commencing a blood processing procedure (*e.g.*, a plasmapheresis procedure), a single-use disposable set that includes the Harness connecting disposable components is installed on the NexSys PCS with YES and PERSONA. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to prompt an operator, through the touch screen, to install the disposable tubing set.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that before commencing a blood processing procedure, a single-use disposable set that includes the Harness connecting disposable components is installed on the NexSys PCS with YES and PERSONA and the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to prompt an operator, through the touch screen, to install the disposable tubing set as claimed in the '089 Patent.

487. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to operate the anticoagulant short prime (AC Short Prime) feature. This feature involves priming with anticoagulant the Harness before a blood processing procedure (*e.g.*, a plasmapheresis procedure). Upon completion of the anticoagulant prime, the blood processing procedure (*e.g.*, a plasmapheresis procedure) is commenced, including the centrifugal separation process which is based at least in part on default process parameters. A processing circuit of each device operates the processing of the biological fluid until the volume of blood component to be collected is collected.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to operate the anticoagulant short prime feature and, upon completion, the blood processing procedure is commenced, including the centrifugal separation process which is based at least in part on default process parameters as claimed in the '089 Patent. Haemonetics further denies a processing circuit of each device operates the processing of the biological fluid until the volume of blood component to be collected is collected as claimed in the '089 Patent.

488. Claim 21 of the '089 Patent recites: "The blood processing system of claim 20, wherein the processing circuit is further configured to, upon completion of the centrifugal separation process, prompt the operator."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '089 Patent.

489. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, practices claim 21 of the '089 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 23, which is incorporated herein by reference.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

490. As explained above, the Accused Haemonetics Products form a system that practices claim 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

491. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to provide visual prompts to alert the operator upon completion of the centrifugal separation process.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to provide visual prompts to alert the operator upon completion of the centrifugal separation process as claimed in the '089 Patent.

492. Claim 23 of the '089 Patent recites: "The blood processing system of claim 20, wherein the processing circuit is configured to automatically check to determine whether the disposable fluid circuit is installed."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '089 Patent.

493. The NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, practices claim 23 of the '089 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 23.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

494. As explained above, the NexSys PCS YES and the NexSys PCS PERSONA, each with a Disposable Kit, form a system that practices claim 20.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

495. The processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to automatically check to determine whether the disposable fluid circuit is installed.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the processing circuits of the NexSys PCS YES and NexSys PCS PERSONA are configured to automatically check to determine whether the disposable fluid circuit is installed as claimed in the ’089 Patent.

496. Haemonetics directly infringes at least claims 16, 18, 20, 21, and 23 of the ‘089 Patent by using (including in tests, commercial demonstrations, and clinical trials), making, importing, offering for sale/lease, selling, and/or leasing the Accused Haemonetics Products in the United States.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

497. Additionally, on information and belief, the infringing acts of third parties (such as Haemonetics’ customers, clients, partners, and end users such as clinicians and phlebotomists) are attributable to Haemonetics. Haemonetics’ partners, clients, customers, and/or end users in the United States lease and/or buy the Accused Haemonetics Products across this country, including in this District. On information and belief, Haemonetics directs and controls the activities or actions of its third-party customers with respect to the Accused Haemonetics Products through contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Haemonetics Products which, when followed and used, result in infringement of the ‘089 Patent, including at least claims 16, 18, 20, 21, and 23.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

498. In addition to directly infringing the ‘089 Patent, Haemonetics has indirectly infringed the ‘089 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the ‘089 Patent (including claims 16, 18, 20, 21, and 23) at least by using the Accused Haemonetics Products in plasma donation centers. On information and belief, Haemonetics markets, offers to sell/lease, and/or sells/leases the Accused Haemonetics Products to customers and/or end users. On additional information and belief, Haemonetics provides, *inter alia*, training, written guidance (*e.g.*, User Manuals and Service Manuals), technical assistance, promotional materials, sales and marketing materials, and/or demonstrations to customers and end users.[90] On information and belief, these acts induce said third parties to perform acts intended by Haemonetics to cause direct infringement of the ‘089 Patent (including claims 16, 18, 20, 21, and 23). On information and

---

[90] *See, e.g.*, NexSys PCS Service Manual; NexSys PCS User Manual; NexSys PCS PERSONA Brochure; NexSys PCS Brochure.

belief, Haemonetics performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the ‘089 Patent (including claims 16, 18, 20, 21, and 23).

**ANSWER:** Haemonetics denies the allegations in this paragraph and refers to the cited document that speaks for itself.

499. Haemonetics has had knowledge of the ‘089 Patent since at least the filing of these Counterclaims. Haemonetics has had knowledge that the induced acts of its customers and end users constitutes infringement of the ‘089 Patent since at least the filing of these Counterclaims.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

500. Haemonetics has also indirectly infringed the ‘089 Patent (including claims 16, 18, 20, 21, and 23) as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to the infringement of the ‘089 Patent by third parties, such as its customers and end users. Such third parties infringe the ‘089 Patent (including claims 16, 18, 20, 21, and 23) at least by using the Accused Haemonetics Products in plasma donation centers. Haemonetics’ affirmative acts of making, importing, leasing, and/or selling the Accused Haemonetics Products contributes to the infringement of the ‘089 Patent because those components constitute a material part of the invention of the ‘089 Patent (as they embody all limitations of the claims), are specially made or adapted for use in infringing the ‘089 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

501. As a consequence of Haemonetics’ direct and indirect infringement of the ‘089 Patent, both literally and under the doctrine of equivalents, Fenwal has been and continues to be irreparably harmed.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

502. Due to Haemonetics’ infringing acts, Fenwal has been and will be damaged in an amount to be determined at trial.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

503. On information and belief, unless enjoined, Haemonetics will continue to infringe the ‘089 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 6: INFRINGEMENT OF U.S. PATENT NO. 11,285,251**

504. Fenwal realleges and incorporates the allegations set forth in the foregoing paragraphs 1-503 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

505. On information and belief, Haemonetics has infringed and continues to infringe, directly and indirectly, literally and/or under the doctrine of equivalents, claims 1-9 of the '251 Patent by making, importing, using, offering for sale/lease, and/or selling/leasing the NexSys PCS PERSONA and Disposable Kits in the United States. The Accused Haemonetics Products meet each limitation of each of foregoing claims, literally and/or under the doctrine of equivalents, as described in Exhibit 24, which is incorporated herein by reference. Fenwal reserves the right to assert additional claims of the '251 Patent against Haemonetics based on discovery that will become available in due course.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

506. Claim 1 of the '251 Patent covers a novel system for collecting plasma and recites:

> 1. A system for collecting plasma, comprising:
>
> a venipuncture needle configured to draw whole blood from a donor;
>
> a separator configured to separate the whole blood into a plasma product and a second blood component comprising red blood cells, the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container;
>
> a donor line fluidly coupled to the venipuncture needle configured to introduce the whole blood from the donor to the separator, flow through the donor line being controlled by a first pump;
>
> an anticoagulant line coupled to an anticoagulant source, flow through the anticoagulant line being controlled by a second pump to combine anticoagulant with the whole blood from the donor based on an anticoagulant ratio (ACR);
>
> a touchscreen configured to receive input from an operator; and
>
> a controller programmed to control operation of the system, the controller coupled to the touchscreen and programmed to receive donor parameters electronically from a donor management system, to use a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, wherein the target volume for raw plasma is set prior to blood collection from the donor; the controller to control the system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the

> plasma product and the second blood component and to return the second blood component to the donor, wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP).

**ANSWER:** Haemonetics admits that Claim 1 of the ’251 Patent recites the stated claim language based on the language in the ’251 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

507. The NexSys PCS PERSONA with a Disposable Kit meets each of the foregoing limitations of claim 1, literally and/or under the doctrine of equivalents, as described in Exhibit 24, which is incorporated herein by reference.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

508. The NexSys PCS PERSONA with a Disposable Kit constitutes “[a] system for collecting plasma.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with a Disposable Kit constitutes a system for collecting plasma as claimed in the ’251 Patent.

509. The Disposable Kit includes a venipuncture needle for withdrawing whole blood from the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Disposable Kit includes a venipuncture needle for withdrawing whole blood from the donor as claimed in the ’251 Patent.

510. The NexSys PCS PERSONA with the Disposable Kit has a separator (including, for example, the centrifuge and disposable bowl) that is configured to separate the whole blood into a plasma product and a second blood component comprising red blood cells.[91]

---

[91] *See, e.g.*, NexSys PCS User Manual at 21-22, 40-41; NexSys PCS Service Manual at 186-188.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable Kit has a separator that is configured to separate the whole blood into a plasma product and a second blood component comprising red blood cells as claimed in the '251 Patent. Haemonetics refers to the cited document that speaks for itself.

511. The blood separator has a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container. The disposable bowl has a plasma output port that is coupled to a plasma line (which is part of the tubing), and the plasma line is configured to send the plasma product (plasma and anticoagulant) to a plasma product collection container (the Plasma Collection Container).[92]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the blood separator has a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container and the disposable bowl has a plasma output port that is coupled to a plasma line, and the plasma line is configured to send the plasma product to a plasma product collection container as claimed in the '251 Patent. Haemonetics refers to the cited document that speaks for itself.

512. The Disposable Kit includes a donor line that is fluidly coupled to the venipuncture needle and is configured to introduce the whole blood from the donor to the separator. The flow through the donor line is controlled by a "first pump" (the Blood Pump).[93]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Disposable Kit includes a donor line that is fluidly coupled to the venipuncture needle and is configured to introduce the whole blood from the donor to the separator and the flow through the donor line controlled by a first pump as claimed in the '251 Patent. Haemonetics refers to the cited document that speaks for itself.

---

92 *See, e.g.*, NexSys PCS User Manual at 43.

93 *See, e.g.*, NexSys PCS User Manual at 23.

513. The Disposable Kit includes an anticoagulant line that is coupled to an anticoagulant source (the anticoagulant solution bag).[94] The flow through the anticoagulant line is controlled by a second pump (the Anticoagulant Pump).[95] The second pump combines anticoagulant with the whole blood from the donor based on an anticoagulant ratio (ACR) of 1:16.[96]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Disposable Kit includes an anticoagulant line that is coupled to an anticoagulant source, the flow through the anticoagulant line controlled by a second pump that combines anticoagulant with whole blood from the donor based on an anticoagulant ratio as claimed in the ’251 Patent. Haemonetics refers to the cited document that speaks for itself.

514. The NexSys PCS PERSONA has a touchscreen that is configured to receive an input from an operator.[97]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA has a touchscreen that is configured to receive an input from an operator as claimed in the ’251 Patent. Haemonetics refers to the cited document that speaks for itself.

515. The NexSys PCS PERSONA has a “controller” that is programmed (via software/firmware) to control the operation of the system composed of the NexSys PCS PERSONA and Donor Kit.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA has a controller that is programmed to control the operation of the system composed of the NexSys PCS

94 *See, e.g.*, NexSys PCS User Manual at 23.

95 *Id.* at 23.

96 *Id.*

97 *See, e.g.*, NexSys PCS User Manual at 20, 28-29.

PERSONA and Donor Kit as claimed in the ’251 Patent. Haemonetics refers to the cited document that speaks for itself.

516. The controller is coupled to the touchscreen and is also programmed to receive donor parameters electronically from a donor management system.[98]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller is coupled to the touchscreen and is also programmed to receive donor parameters electronically from a donor management system as claimed in the ’251 Patent. Haemonetics refers to the cited document that speaks for itself.

517. The controller is programmed to use a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume. The NexSys PCS PERSONA determines the donor’s total blood volume using donor weight and height.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller is programmed to use a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume as claimed in the ’251 Patent. Haemonetics further denies that the NexSys PCS PERSONA determines the donor’s total blood volume using donor weight and height as claimed in the ’251 Patent.

518. The NexSys PCS PERSONA controller sets the target volume for raw plasma is prior to blood collection from the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller sets the

---

98 *See* NexSys PCS Service Manual at 31, 37-38, 59-60.

target volume for raw plasma is prior to blood collection from the donor as claimed in the '251 Patent.

519. The controller controls the NexSys PCS PERSONA and Disposable Kit system to operate draw and return phases (Draw Cycle and Return Cycle respectively)[99] to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component (*e.g.*, red blood cells) and to return the second blood component to the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller controls the NexSys PCS PERSONA and Disposable Kit system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor as claimed in the '251 Patent. Haemonetics refers to the cited document that speaks for itself.

520. The NexSys PCS PERSONA controller is configured to operate the draw and return phases until a volume of raw plasma (VRP) in the collection container (Plasma Collection Container) equals the target volume of raw plasma. The volume of raw plasma (VRP) is based on a measured volume of plasma product (VPP). The NexSys PCS PERSONA weighs the plasma product to determine if the volume of raw plasma collected equals the target volume of raw plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to operate the draw and return phases until a volume of raw plasma, based on a measured volume of plasma product, in the collection container equals the target volume of raw plasma as claimed in the '251 Patent. Haemonetics further denies the NexSys PCS PERSONA weighs the plasma product to determine if the volume of raw plasma collected equals the target volume of raw plasma as claimed in the '251 Patent.

521. Alternatively, the NexSys PCS PERSONA meets the controller limitation under the doctrine of equivalence, because the device perform substantially the same function as the recited limitation ("a controller programmed to control operation of the system, the controller coupled to

---

[99] *See, e.g.*, NexSys PCS User Manual at 10.

the touchscreen and programmed to receive donor parameters electronically from a donor management system, to use a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, wherein the target volume for raw plasma is set prior to blood collection from the donor; the controller to control the system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor, wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP)"), in substantially the same way, and achieves substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

522. Claim 2 of the '251 Patent recites: "The system of claim 1, wherein ACR=Volume of Whole Blood/Volume of Anticoagulant."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '251 Patent.

523. The NexSys PCS PERSONA with Disposable Kit meets each element of claim 2 of the '251 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 24.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

524. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

525. The ACR used in the NexSys PCS PERSONA is equal to the volume of whole blood divided by the volume of anticoagulant. For example, where the system combines 16 units of whole blood with 1 unit of anticoagulant, the ACR is 16/1 or 16.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the ACR used in the NexSys PCS PERSONA is equal to the volume of whole blood divided by the volume of anticoagulant as claimed in the '251 Patent.

526. Claim 3 of the '251 Patent recites: "The system of claim 1, wherein the volume of plasma product (VPP) is measured by a weigh scale."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’251 Patent.

527. The NexSys PCS PERSONA with Disposable Kit meets each element of claim 3 of the ‘251 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 24.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

528. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

529. The NexSys PCS PERSONA measures the volume of plasma product by using a weigh scale which measures the plasma collection container as plasma product (anticoagulant and raw plasma) is being collected in the container.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA measures the volume of plasma product by using a weigh scale which measures the plasma collection container as plasma product is being collected in the container as claimed in the ’251 Patent.

530. Claim 4 of the ‘251 Patent recites: “The system of claim 1, wherein the controller is configured to receive the donor’s weight and hematocrit electronically from the donor management system, wherein the donor management system is used for qualification screening.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’251 Patent.

531. The NexSys PCS PERSONA with the Disposable Kit meets each element of claim 4 of the ‘251 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 24, which is incorporated herein by reference.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

532. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

533. The NexSys PCS PERSONA has a controller that is further configured to receive the donor’s weight and hematocrit electronically from the donor management system (*e.g.*, the

NexLynk DMS or another third-party donor management system), wherein the donor management system is used for qualification screening.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA has a controller that is further configured to receive the donor's weight and hematocrit electronically from the donor management system, wherein the donor management system is used for qualification screening as claimed in the '251 Patent.

534. On information and belief, the donor management system (*e.g.*, the NexLynk DMS and/or another third-party donor management system) is used for qualification screening, *e.g.*, to ensure that donor is medically qualified to donate plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the donor management system is used for qualification screening as claimed in the '251 Patent.

535. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (to receive the donor's weight and hematocrit electronically from the donor management system, wherein the donor management system is used for qualification screening), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

536. Claim 5 of the '251 Patent recites: "The system of claim 1, wherein the controller is programmed to calculate the target volume of raw plasma (VRP) by calculating a fraction of the total blood volume or the total plasma volume for the donor."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '251 Patent.

537. The NexSys PCS PERSONA with the Disposable Kit meets each element of claim 5 of the '251 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 24.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

538. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

539. The NexSys PCS PERSONA has a controller that is programmed to calculate, using the PERSONA nomogram, the target volume of raw plasma (VRP) by calculating a fraction of the total blood volume or the total plasma volume for the donor. Specifically, the controller calculates the target volume of raw plasma as 28.5% of the total plasma volume of the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA has a controller that is programmed to calculate, using the PERSONA nomogram, the target volume of raw plasma by calculating a fraction of the total blood volume or the total plasma volume for the donor as claimed in the '251 Patent.

540. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (to calculate the target volume of raw plasma (VRP) by calculating a fraction of the total blood volume or the total plasma volume for the donor), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

541. Claim 6 of the '251 Patent recites: "The system of claim 1, wherein the controller is programmed to perform the draw and return cycles at least three times and the controller is programmed to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '251 Patent.

542. The NexSys PCS PERSONA with the Disposable Kit meets each element of claim 6 of the '251 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 24.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

543. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

544. The NexSys PCS PERSONA has a controller that is programmed to perform the draw and return cycles at least three times and the controller is programmed to determine a volume

of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA has a controller that is programmed to perform the draw and return cycles at least three times and the controller is programmed to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase as claimed in the ’251 Patent.

545. Alternatively, the NexSys PCS PERSONA device meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (perform the draw and return cycles at least three times and the controller is programmed to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

546. Claim 7 of the ‘251 Patent recites: “The system of claim 1, wherein the venipuncture needle is a single needle through which whole blood is drawn from the donor in a collection phase and the second blood component is returned to the donor in a return phase.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’251 Patent.

547. NexSys PCS PERSONA with the Disposable Kit meets each element of claim 7 of the ‘251 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 24.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

548. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

549. The Disposable Kit has a single venipuncture needle through which whole blood is drawn from the donor in a collection phase and the second blood component is returned to the donor in a return phase.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Disposable Kit has a single venipuncture

needle through which whole blood is drawn from the donor in a collection phase and the second blood component is returned to the donor in a return phase as claimed in the ’251 Patent.

550. Claim 8 of the ‘251 Patent recites: “The system of claim 1, wherein the controller is configured to control operation of the system to combine anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’251 Patent.

551. The NexSys PCS PERSONA with the Disposable Kit meets each element of claim 8 of the ‘251 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 24.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

552. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

553. The NexSys PCS PERSONA controller is configured to control operation of the system to combine anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to control operation of the system to combine anticoagulant with the whole blood from the donor at an anticoagulant ratio as claimed in the ’251 Patent.

554. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (control operation of the system to combine anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

555. Claim 9 of the ‘251 Patent recites: “The system of claim 1, wherein the donor management system calculates the target volume for raw plasma based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total

donor plasma volume, wherein the donor management system transmits the target volume for raw plasma to the controller."

**ANSWER:** Haemonetics admit the allegations in this paragraph based on the language in the '251 Patent.

556. The NexSys PCS PERSONA with the Disposable Kit meet each element of claim 9 of the '251 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 24.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

557. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

558. The donor management system (*e.g.*, the NexSys Link or a third-party donor management system) running on the BECS uses the PERSONA nomogram to calculate the target volume for raw plasma based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume. In the PERSONA nomogram, the algorithm uses donor height and weight to calculate donor blood volume. The algorithm also uses hematocrit to calculate the total donor plasma volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the donor management system of the NexSys PCS system calculates the target volume for raw plasma based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume as claimed in the '251 Patent.

559. The donor management system (*e.g.*, NexLynk DMS or other third-party donor management system) transmits the target volume for raw plasma to the controller.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the donor management system transmits the target volume for raw plasma to the controller as claimed in the '251 Patent.

560. Haemonetics directly infringes at least claims 1-9 of the '251 Patent by using (including in tests, commercial demonstrations, and clinical trials), making, importing, offering for sale/lease, selling, and/or leasing the NexSys PCS PERSONA and Disposable Kits in the United States.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

561. Additionally, on information and belief, the infringing acts of third parties (such as Haemonetics' customers, clients, partners, and end users such as clinicians and phlebotomists) are attributable to Haemonetics. Haemonetics' partners, clients, customers, and/or end users in the United States lease and/or buy the Accused Haemonetics Products across this country, including in this District. On information and belief, Haemonetics directs and controls the activities or actions of its third-party customers with respect to the Accused Haemonetics Products through contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Haemonetics Products which, when followed and used, result in infringement of the '251 Patent, including at least claims 1-9.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

562. In addition to directly infringing the '251 Patent, Haemonetics has indirectly infringed the '251 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '251 Patent (including claims 1-9) at least by using the NexSys PCS PERSONA and Disposable Kits in plasma donation centers. On information and belief, Haemonetics markets, offers to sell/lease, and/or sells/leases the Accused Haemonetics Products to customers and/or end users. On additional information and belief, Haemonetics provides, *inter alia*, training, written guidance (*e.g.*, User Manuals and Service Manuals), technical assistance, promotional materials, sales and marketing materials, and/or demonstrations to customers and end users.[100] On information and belief, these acts induce said third parties to perform acts intended by Haemonetics to cause direct infringement of the '251 Patent (including claims 1-9). On information and belief, Haemonetics performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '251 Patent (including claims 1-9).

**ANSWER:** Haemonetics denies the allegations in this paragraph.

563. Haemonetics has had knowledge of the '251 Patent since at least the filing of these Counterclaims. Haemonetics has had knowledge that the induced acts of its customers and end users constitutes infringement of the '251 Patent since at least the filing of these Counterclaims.

**ANSWER:** Haemonetics admits that it has had knowledge of the '251 Patent since at least the filing of these Counterclaims, but otherwise denies the allegations in this paragraph.

564. Haemonetics has also indirectly infringed the '251 Patent (including claims 1-9) as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to the infringement of the '251 Patent by third parties, such as its customers and end users. Such third parties infringe the '251 Patent (including claims 1-9) at least by using the Accused Haemonetics Products in plasma

---

[100] *See, e.g.*, NexSys PCS Service Manual; NexSys PCS User Manual; NexSys PCS PERSONA Brochure; NexSys PCS Brochure.

donation centers. Haemonetics' affirmative acts of making, importing, leasing, and/or selling the Accused Haemonetics Products contributes to the infringement of the '251 Patent because those components constitute a material part of the invention of the '251 Patent (as they embody all limitations of the claims), are specially made or adapted for use in infringing the '251 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

565. As a consequence of Haemonetics' direct and indirect infringement of the '251 Patent, both literally and under the doctrine of equivalents, Fenwal has been and continues to be irreparably harmed.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

566. Due to Haemonetics' infringing acts, Fenwal has been and will be damaged in an amount to be determined at trial.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

567. On information and belief, unless enjoined, Haemonetics will continue to infringe the '251 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 7: INFRINGEMENT OF U.S. PATENT NO. 11,369,724**

568. Fenwal realleges and incorporates the allegations set forth in the foregoing paragraphs 1-567 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

569. On information and belief, Haemonetics has infringed and continues to infringe, directly and indirectly, literally and/or under the doctrine of equivalents, at least claims 1-16 and 19-25 of the '724 Patent by making, importing, using, offering for sale/lease, and/or selling/leasing NexSys PCS PERSONA and Disposable Kits in the United States. The Accused Haemonetics Products meet each limitation of each of foregoing claims, literally and/or under the doctrine of equivalents, as described in Exhibit 25, which is incorporated herein by reference. Fenwal reserves the right to assert additional claims of the '724 Patent against Haemonetics based on discovery that will become available in due course.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

570. Claim 1 of the '724 Patent covers a novel system for collecting plasma and recites:

1. A system for collecting plasma, comprising:

> a separator configured to separate whole blood into a plasma product and a second blood component comprising red blood cells, the separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container;
>
> a donor line configured to introduce the whole blood from a donor to the separator;
>
> a touchscreen configured to receive input from an operator; and
>
> a controller configured to control operation of the system, the controller coupled to the touchscreen and configured to receive donor parameters electronically from a donor management system,
>
> to use a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume,
>
> the target volume for raw plasma based on the total donor blood volume, wherein the target volume for raw plasma is set prior to blood collection from the donor;
>
> the controller to control the system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor,
>
> wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP).

**ANSWER:** Haemonetics admits that Claim 1 of the '724 Patent recites the stated claim language based on the language in the '724 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

571. The NexSys PCS PERSONA meets each of the foregoing limitations of claim 1, literally and/or under the doctrine of equivalents, as described in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

572. The NexSys PCS PERSONA with a Disposable Kit forms a system for collecting plasma of a human subject, *e.g.*, a plasma donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with a Disposable Kit forms a system for collecting plasma of a human subject as claimed in the '724 Patent.

573. The NexSys PCS PERSONA with the Disposable Kit has a "separator" (including, for example, the centrifuge and disposable bowl) that is configured to separate whole blood into a plasma product and a second blood component comprising red blood cells.[101]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable Kit has a separator that is configured to separate whole blood into a plasma product and a second blood component comprising red blood cells as claimed in the '724 Patent. Haemonetics refers to the cited document that speaks for itself.

574. The disposable bowl of the separator has a plasma output port that is coupled to a plasma line (which is part of the tubing), and the plasma line is configured to send the plasma product (plasma and anticoagulant) to a plasma product collection container (the Plasma Collection Container).[102]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the disposable bowl of the separator has a plasma output port that is coupled to a plasma line, and the plasma line is configured to send the plasma product to a plasma product collection container as claimed in the '724 Patent. Haemonetics refers to the cited document that speaks for itself.

575. The NexSys PCS PERSONA with the Disposable Kit includes a donor line configured to introduce the whole blood from the donor to the separator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable

[101] *See, e.g.*, NexSys PCS User Manual at 21-22, 40-41; NexSys PCS Service Manual at 186-188.

[102] *See, e.g.*, NexSys PCS User Manual at 43.

Kit includes a donor line configured to introduce the whole blood from the donor to the separator as claimed in the ’724 Patent.

576. The NexSys PCS PERSONA with the Disposable Kit has an anticoagulant line coupled to an anticoagulant source (the anticoagulant solution bag)[103] configured to combine anticoagulant with the whole blood from the donor based on an anticoagulant ratio (ACR).[104]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable Kit has an anticoagulant line coupled to an anticoagulant source configured to combine anticoagulant with the whole blood from the donor based on an anticoagulant ratio as claimed in the ’724 Patent. Haemonetics refers to the cited document that speaks for itself.

577. The NexSys PCS PERSONA with the Disposable Kit has a touchscreen that is configured to receive an input from an operator.[105]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable Kit has a touchscreen that is configured to receive an input from an operator as claimed in the ’724 Patent. Haemonetics refers to the cited document that speaks for itself.

578. The NexSys PCS PERSONA with the Disposable Kit has a “controller” that is configured (via software/firmware) to control the operation of the system composed of the NexSys PCS PERSONA and Donor Kit.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable Kit has a controller that is configured to control the operation of the system as claimed in the ’724 Patent.

---

[103] *See, e.g.*, NexSys PCS User Manual at 23.

[104] *Id.*

[105] *See, e.g.*, NexSys PCS User Manual at 20, 28-29.

579. The controller is coupled to the touchscreen and is also programmed to receive donor parameters electronically from a donor management system (*e.g.*, NexLynk DMS).[106]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller is coupled to the touchscreen and is also programmed to receive donor parameters electronically from a donor management system as claimed in the '724 Patent. Haemonetics refers to the cited document that speaks for itself.

580. The controller is programmed to use a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume. The NexSys PCS PERSONA with the Disposable Kit determines the donor's total blood volume using donor weight and height.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller is programmed to use a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume as claimed in the '724 Patent.

581. The controller computes the target volume for raw plasma based on the total donor blood volume, wherein the target volume for raw plasma is set prior to blood collection from the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller computes the target volume for raw plasma based on the total donor blood volume, wherein the target volume for raw plasma is set prior to blood collection from the donor as claimed in the '724 Patent.

582. The controller controls the system consisting of the NexSys PCS PERSONA and the Disposable Kit to operate draw and return phases (Draw Cycle and Return Cycle respectively)[107] to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component (*e.g.*, red blood cells) and to return the second blood component to the donor.

---

[106] *See* NexSys PCS Service Manual at 31, 37-38, 59-60.

[107] *See, e.g.*, NexSys PCS User Manual at 10.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller controls the system consisting of the NexSys PCS PERSONA and the Disposable Kit to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor as claimed in the '724 Patent. Haemonetics refers to the cited document that speaks for itself.

583. The controller is also configured to operate the draw and return phases until a volume of raw plasma (VRP) in the collection container (Plasma Collection Container) equals the target volume of raw plasma. The volume of raw plasma (VRP) is based on a measured volume of plasma product (VPP). The NexSys PCS PERSONA weighs the plasma product to determine if the volume of raw plasma collected equals the target volume of raw plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller is also configured to operate the draw and return phases until a volume of raw plasma in the collection container equals the target volume of raw plasma, based on a measured volume of plasma product, as claimed in the '724 Patent. Haemonetics further denies that the NexSys PCS PERSONA weighs the plasma product to determine if the volume of raw plasma collected equals the target volume of raw plasma as claimed in the '724 Patent.

584. Alternatively, the NexSys PCS PERSONA device meets the controller limitation under the doctrine of equivalence, because the device perform substantially the same function as the recited limitation ("a controller configured to control operation of the system, the controller coupled to the touchscreen and configured to receive donor parameters electronically from a donor management system, to use a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume, the target volume for raw plasma based on the total donor blood volume, wherein the target volume for raw plasma is set prior to blood collection from the donor; the controller to control the system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor, wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP)"), in substantially the same way, and achieves substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

585. Claim 2 of the '724 Patent recites: "The system of claim 1, wherein ACR=Volume of Whole Blood/Volume of Anticoagulant."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

586. The NexSys PCS PERSONA with Disposable Kit meets each element of claim 2 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

587. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

588. The ACR used in the NexSys PCS PERSONA is equal to the volume of whole blood divided by the volume of anticoagulant. For example, where the system combines 16 units of whole blood with 1 unit of anticoagulant, the ACR is 16/1 or 16.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the ACR used in the NexSys PCS PERSONA is equal to the volume of whole blood divided by the volume of anticoagulant as claimed in the '724 Patent.

589. Claim 3 of the '724 Patent recites: "The system of claim 1, wherein the volume of plasma product (VPP) is measured by a weigh scale."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

590. The NexSys PCS PERSONA with Disposable Kit meets each element of claim 3 of the '251 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

591. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

592. The NexSys PCS PERSONA measures the volume of plasma product by using a weigh scale which measures the weight of the plasma collection container as plasma product (raw plasma and anticoagulant) is being collected in the container.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA measures the volume of plasma product by using a weigh scale which measures the weight of the plasma collection container as plasma product is being collected in the container as claimed in the ’724 Patent.

593. Claim 4 of the ‘724 Patent recites: “The system of claim 3, wherein the controller is configured to calculate the volume of raw plasma (VRP) in the collection container based on a measured volume of plasma product (VPP), the ACR and a hematocrit of the donor.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

594. The NexSys PCS PERSONA with the Disposable Kit meets each element of claim 4 of the ‘724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

595. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 3.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

596. The NexSys PCS PERSONA controller is configured to calculate the volume of raw plasma in the Plasma Collection Container based on the measured volume of plasma product, the ACR and the donor hematocrit.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to calculate the volume of raw plasma in the Plasma Collection Container based on the measured volume of plasma product, the ACR and the donor hematocrit as claimed in the ’724 Patent.

597. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (to calculate the volume of raw plasma (VRP) in the collection container based on a measured volume of plasma product (VPP), the ACR and a hematocrit of the donor), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

598. The NexSys PCS PERSONA with the Disposable Kit meets each element of claim 4 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25, which is incorporated herein by reference.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

599. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

600. The NexSys PCS PERSONA has a controller that is further configured to receive the donor's weight and hematocrit electronically from the donor management system (*e.g.*, the NexLynk DMS or another third-party donor management system), wherein the donor management system is used for qualification screening.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA has a controller that is further configured to receive the donor's weight and hematocrit electronically from the donor management system, wherein the donor management system is used for qualification screening as claimed in the '724 Patent.

601. On information and belief, the donor management system (*e.g.*, the NexLynk DMS and/or another third-party donor management system) is used for qualification screening, *e.g.*, to ensure that donor is medically qualified to donate plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the donor management system is used for qualification screening as claimed in the '724 Patent.

602. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (to receive the donor's weight and hematocrit electronically from the donor management system,

wherein the donor management system is used for qualification screening), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

603. Claim 6 of the '724 Patent recites: "The system of claim 5, further comprising the donor management system."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

604. The NexSys PCS PERSONA with Donor Kit, together with the NexLynk DMS donor management system or a third-party donor management system, practices claim 6 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25, which is incorporated herein by reference.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

605. As explained above, the NexSys PCS PERSONA with the Disposable Kit is a system that practices claim 5.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

606. The NexLynk DMS is a donor management system. On information and belief, third party providers also offer donor management systems that can function with the NexSys PCS PERSONA in an integrated system.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexLynk DMS is a donor management system. On information and belief, third party providers also offer donor management systems that can function with the NexSys PCS PERSONA in an integrated system as claimed in the '724 Patent.

607. Claim 7 of the '724 Patent recites: "The system of claim 1, wherein the target volume for raw plasma is based on the raw plasma volume of the donor."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

608. The NexSys PCS PERSONA with Disposable Kit practices claim 7 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

609. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

610. On information and belief, the NexSys PCS PERSONA tailors the raw plasma donation targets to each donor based on the raw plasma volume of the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA tailors the raw plasma donation targets to each donor based on the raw plasma volume of the donor as claimed in the ’724 Patent.

611. Claim 8 of the ‘724 Patent recites: “The system of claim 7, wherein the controller is configured to calculate the target volume for raw plasma by calculating a fraction of the plasma volume for the donor.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

612. The NexSys PCS PERSONA with Disposable Kit practices claim 8 of the ‘724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

613. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 7.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

614. The NexSys PCS PERSONA controller is configured to calculate the target volume for raw plasma based on a calculated percentage (fraction) of the donor’s total plasma volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to calculate the target volume for raw plasma based on a calculated percentage of the donor’s total plasma volume as claimed in the ’724 Patent.

615. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (to calculate the target volume for raw plasma by calculating a fraction of the plasma volume for the donor), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

616. Claim 9 of the '724 Patent recites: "The system of claim 1, wherein the controller is configured to perform the draw and return cycles at least three times and the controller is configured to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

617. The NexSys PCS PERSONA with Disposable Kit practices claim 9 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

618. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

619. The NexSys PCS PERSONA controller is programmed to collect at least three collection and reinfusion cycles and to draw a lower volume of whole blood in the final cycle.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS PERSONA controller is programmed to collect at least three collection and reinfusion cycles and to draw a lower volume of whole blood in the final cycle as claimed in the '724 Patent.

620. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (to perform the draw and return cycles at least three times and the controller is configured to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

621. Claim 10 of the '724 Patent recites: "The system of claim 9, wherein a first draw phase of a draw and return cycle draws approximately 500 mL of whole blood."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

622. The NexSys PCS PERSONA with Disposable Kit practices claim 10 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

623. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 9.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

624. The NexSys PCS PERSONA with Disposable Kit is configured to collect up to 300 mL of plasma per cycle (with the default value being 300 mL), which would require drawing approximately 500 mL of whole blood per cycle, depending on the donor's hematocrit.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs a first draw phase of a draw and return cycle draws approximately 500 mL of whole blood as claimed in the '724 Patent.

625. Claim 11 of the '724 Patent recites: "The system of claim 1, further comprising a venipuncture needle which is a single needle through which whole blood is drawn from the donor in a collection phase and the second blood component is returned to the donor in a return phase."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

626. The NexSys PCS PERSONA with Disposable Kit practices claim 11 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

627. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

628. The Disposable Kit includes a venipuncture needle, which is a single needle through which whole blood is drawn from the donor in a collection phase and the second blood component is returned to the donor in a return phase.[108]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Disposable Kit includes a venipuncture needle, which is a single needle through which whole blood is drawn from the donor in a collection phase and the second blood component is returned to the donor in a return phase as claimed in the '724 Patent. Haemonetics refers to the cited document that speaks for itself.

629. Claim 12 of the '724 Patent recites: "The system of claim 1, wherein the controller is configured to control operation of the system to combine anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

630. The NexSys PCS PERSONA with Disposable Kit practices claim 12 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

631. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

632. The NexSys PCS PERSONA controller is configured to combine anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant.[109]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to combine anticoagulant with the whole blood from the donor at an anticoagulant ratio

---

[108] *See, e.g.*, NexSys PCS User Manual at 1, 42.

[109] *See id.* at 23.

of about 16 parts of whole blood to 1 part of anticoagulant as claimed in the ’724 Patent. Haemonetics refers to the cited document that speaks for itself. Haemonetics refers to the cited document that speaks for itself.

633. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (to control operation of the system to combine anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

634. Claim 13 of the ‘724 Patent recites: “The system of claim 1, wherein the donor management system calculates the target volume for raw plasma based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume, wherein the donor management system transmits the target volume for raw plasma to the controller.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

635. The NexSys PCS PERSONA with Disposable Kit practices claim 13 of the ‘724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

636. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

637. The NexLynk DMS is a donor management system that, on information and belief, uses the PERSONA nomogram to calculates the target volume for raw plasma based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume. The target volume for raw plasma collection with the NexSys PCS PERSONA is based on a calculated percentage of the donor’s total plasma volume, hematocrit, weight, and height.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexLynk DMS is a donor management system that, on information and belief, uses the PERSONA nomogram to calculates the target

volume for raw plasma based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume as claimed in the ’724 Patent.

638. On further information and belief, the NexLynk DMS donor management system transmits the target volume for raw plasma to the NexSys PCS PERSONA controller. According to the NexSys PCS User Manual, when the device is connected to a Blood Establishment Computer Systems (BECS) or compatible central monitoring software system (which runs the NexLynk DMS), the NexSys PCS PERSONA receives donor information, including hematocrit and plasma target, from the BECS.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexLynk DMS donor management system transmits the target volume for raw plasma to the NexSys PCS PERSONA controller as claimed in the ’724 Patent. The NexSys PCS User Manual speaks for itself.

639. Claim 14 of the ‘724 Patent recites: “The system of claim 1, wherein the controller is configured to use hematocrit (Hct) to calculate total donor plasma volume, the target volume for raw plasma based on the total donor plasma volume.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

640. The NexSys PCS PERSONA with Disposable Kit practices claim 14 of the ‘724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

641. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

642. The NexSys PCS PERSONA controller is configured to use hematocrit to calculate total donor plasma volume. Furthermore, the controller is configured to calculate the target volume of raw plasma based on the total plasma volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is

configured to use hematocrit to calculate total donor plasma volume and to calculate the target volume of raw plasma based on the total plasma volume as claimed in the ’724 Patent.

643. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (to use hematocrit (Hct) to calculate total donor plasma volume, the target volume for raw plasma based on the total donor plasma volume), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

644. Claim 15 of the ‘724 Patent recites: “The system of claim 1, wherein ACR is a ratio of volume of anticoagulant to volume of anticoagulated blood.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

645. The NexSys PCS PERSONA with Disposable Kit practices claim 15 of the ‘724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

646. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

647. The NexSys PCS PERSONA calculates an AC ratio as the volume of anticoagulant over the volume of whole blood (1:16).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA calculates an AC ratio as the volume of anticoagulant over the volume of whole blood as claimed in the ’724 Patent.

648. Claim 16 of the ‘724 Patent recites: “The system of claim 1, wherein the controller is configured to receive from the touch screen a donor ID, donor weight, donor hematocrit and a target plasma volume.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

649. The NexSys PCS PERSONA with Disposable Kit practices claim 16 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

650. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

651. The NexSys PCS PERSONA controller is configured to receive from the touchscreen donor ID, donor weight, donor hematocrit, and a target plasma volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to receive from the touchscreen donor ID, donor weight, donor hematocrit, and a target plasma volume as claimed in the '724 Patent.

652. Alternatively, the NexSys PCS PERSONA meets this limitation under the doctrine of equivalents, because it performs substantially the same function as the recited limitation (to receive from the touch screen a donor ID, donor weight, donor hematocrit and a target plasma volume), in substantially the same way, to achieve substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

653. Claim 19 of the '724 Patent covers a novel system for collecting plasma and recites:

> 19. A system for collecting plasma, comprising:
>
> a blood separator configured to separate whole blood into a plasma product and a second blood component comprising red blood cells, the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container;
>
> a donor line configured to introduce the whole blood from the donor to the blood separator;
>
> an anticoagulant line coupled to an anticoagulant source configured to combine anticoagulant with the whole blood from the donor based on an anticoagulant ratio (ACR);
>
> a touchscreen configured to receive input from an operator; and

> a controller configured to control operation of the system, the controller coupled to the touchscreen and configured to receive donor parameters electronically from a donor management system, to determine a target volume for plasma product and/or raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, the controller to control the system to operate collection and reinfusion cycles to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to reinfuse the second blood component to the donor, wherein the controller is programmed to perform the collection and reinfusion cycles at least three times and the controller is programmed to perform a final collection and reinfusion cycle by drawing a volume of whole blood which is less than a volume of whole blood drawn in a prior collection and reinfusion cycle.

**ANSWER:** Haemonetics admits that Claim 19 of the ’724 Patent recites the stated claim language based on the language in the ’724 Patent. Haemonetics otherwise denies the remaining allegations in this par

654. The NexSys PCS PERSONA meets each of the foregoing limitations of claim 19, literally and/or under the doctrine of equivalents, as described in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

655. The NexSys PCS PERSONA with a Disposable Kit forms a system for collecting plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with a Disposable Kit forms a system for collecting plasma as claimed in the ’724 Patent.

656. The NexSys PCS PERSONA with the Disposable Kit has a “blood separator” (including, for example, the centrifuge and disposable bowl) that is configured to separate whole blood into a plasma product and a second blood component comprising red blood cells.[110]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable

---

[110] *See, e.g.*, NexSys PCS User Manual at 21-22, 40-41; NexSys PCS Service Manual at 186-188.

Kit has a blood separator that is configured to separate whole blood into a plasma product and a second blood component comprising red blood cells as claimed in the '724 Patent. Haemonetics refers to the cited document that speaks for itself.

657. The disposable bowl of the blood separator has a plasma output port that is coupled to a plasma line (which is part of the tubing), and the plasma line is configured to send the plasma product (plasma and anticoagulant) to a plasma product collection container (the Plasma Collection Container).[111]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the disposable bowl of the blood separator has a plasma output port that is coupled to a plasma line, and the plasma line is configured to send the plasma product to a plasma product collection container as claimed in the '724 Patent. Haemonetics refers to the cited document that speaks for itself.

658. The NexSys PCS PERSONA with the Disposable Kit includes a donor line configured to introduce the whole blood from the donor to the separator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable Kit includes a donor line configured to introduce the whole blood from the donor to the separator as claimed in the '724 Patent.

659. The NexSys PCS PERSONA with the Disposable Kit has an anticoagulant line coupled to an anticoagulant source (the anticoagulant solution bag)[112] configured to combine anticoagulant with the whole blood from the donor based on an anticoagulant ratio (ACR).[113]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable Kit has an anticoagulant line coupled to an anticoagulant source configured to combine

---

[111] *See, e.g.*, NexSys PCS User Manual at 43.

[112] *See, e.g.*, NexSys PCS User Manual at 23.

[113] *Id.*

anticoagulant with the whole blood from the donor based on an anticoagulant ratio as claimed in the ’724 Patent. Haemonetics refers to the cited document that speaks for itself.

660. The NexSys PCS PERSONA with the Disposable Kit has a touchscreen that is configured to receive an input from an operator.[114]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable Kit has a touchscreen that is configured to receive an input from an operator as claimed in the ’724 Patent. Haemonetics refers to the cited document that speaks for itself.

661. The NexSys PCS PERSONA with the Disposable Kit has a “controller” that is configured (via software/firmware) to control the operation of the system composed of the NexSys PCS PERSONA with Donor Kit.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA with the Disposable Kit has a controller that is configured to control the operation of the system as claimed in the ’724 Patent.

662. The controller is coupled to the touchscreen and is also configured to receive donor parameters electronically from a donor management system (*e.g.*, NexLynk DMS).[115]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller is coupled to the touchscreen and is also configured to receive donor parameters electronically from a donor management system as claimed in the ’724 Patent. Haemonetics refers to the cited document that speaks for itself.

663. The controller is configured to determine a target volume for plasma product (anticoagulant and raw plasma) and/or raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume. The NexSys PCS PERSONA controller is configured to determine the donor’s total blood volume using donor weight and height. The NexSys PCS PERSONA controller

---

[114] *See, e.g.*, NexSys PCS User Manual at 20, 28-29.

[115] *See* NexSys PCS Service Manual at 31, 37-38, 59-60.

is configured to compute the target volume for raw plasma based on the total donor blood volume and hematocrit (Hct) which is used to calculate donor plasma volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller is configured to determine a target volume for plasma product and/or raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume as claimed in the ’724 Patent. Haemonetics further denies the NexSys PCS PERSONA controller is configured to compute the target volume for raw plasma based on the total donor blood volume and hematocrit which is used to calculate donor plasma volume as claimed in the ’724 Patent.

664. The controller controls the system consisting of the NexSys PCS PERSONA with Disposable Kit to operate collection and reinfusion phases (Draw Cycle and Return Cycle respectively)[116] to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component (*e.g.*, red blood cells) and to reinfuse the second blood component to the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller controls the system consisting of the NexSys PCS PERSONA with Disposable Kit to operate collection and reinfusion phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to reinfuse the second blood component to the donor as claimed in the ’724 Patent. Haemonetics refers to the cited document that speaks for itself.

665. The controller is also programmed to perform the collection and reinfusion cycles at least three times and the controller is programmed to perform a final collection and reinfusion cycle by drawing a volume of whole blood which is less than a volume of whole blood drawn in a prior collection and reinfusion cycle. The NexSys PCS PERSONA with Disposable Kit is configured to collect up to 300 mL of plasma per cycle (with the default value being 300 mL), which would require drawing approximately 500 mL of whole blood per cycle, depending on the donor’s hematocrit. At least for certain collection ranges, the NexSys PCS PERSONA with

---

[116] *See, e.g.*, NexSys PCS User Manual at 10.

Disposable Kit must withdraw whole blood in at least three cycles, and the volume of whole blood drawn in the third cycle is less than the volume of whole blood drawn in prior collection cycles (approximately 500 mL).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller is also programmed to perform the collection and reinfusion cycles at least three times and the controller is programmed to perform a final collection and reinfusion cycle by drawing a volume of whole blood which is less than a volume of whole blood drawn in a prior collection and reinfusion cycle as claimed in the ’724 Patent. Haemonetics also denies the NexSys PCS system withdraws a volume of whole blood approximating 500 mL as claimed in the ’724 Patent.

666. Alternatively, the NexSys PCS PERSONA device meets the controller limitation under the doctrine of equivalence, because the device perform substantially the same function as the recited limitation (“a controller configured to control operation of the system, the controller coupled to the touchscreen and configured to receive donor parameters electronically from a donor management system, to determine a target volume for plasma product and/or raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, the controller to control the system to operate collection and reinfusion cycles to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to reinfuse the second blood component to the donor, wherein the controller is programmed to perform the collection and reinfusion cycles at least three times and the controller is programmed to perform a final collection and reinfusion cycle by drawing a volume of whole blood which is less than a volume of whole blood drawn in a prior collection and reinfusion cycle”), in substantially the same way, and achieves substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

667. Claim 20 of the ‘724 Patent recites: “The system of claim 19, wherein the controller is configured to use the parameters received from the donor management system to determine the target volume for plasma product and/or raw plasma.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

668. The NexSys PCS PERSONA with Disposable Kit practices claim 20 of the ‘724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

669. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

670. The NexSys PCS PERSONA controller is configured to use the parameters received from the donor management system (*e.g.*, NexLynk DMS) to determine the target volume for plasma collection.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to use the parameters received from the donor management system to determine the target volume for plasma collection as claimed in the ’724 Patent.

671. Alternatively, the NexSys PCS PERSONA meets the controller limitation under the doctrine of equivalence, because the device perform substantially the same function as the recited limitation (“to use the parameters received from the donor management system to determine the target volume for plasma product and/or raw plasma”), in substantially the same way, and achieves substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

672. Claim 21 of the ‘724 Patent recites: “The system of claim 19, further comprising the donor management system, wherein the donor management system is used for qualification screening and is in electronic communication with the controller.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

673. The NexSys PCS PERSONA with Disposable Kit and the donor management system (*e.g.*, NexLynk DMS or other third-party donor management system) together practice claim 21 of the ‘724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

674. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

675. On information and belief, the donor management system (*e.g.*, the NexLynk DMS and/or another third-party donor management system) is used for qualification screening, *e.g.*, to

ensure that donor is medically qualified to donate plasma and is in electronic communication with the controller using a wired or wireless network.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the donor management system is used for qualification screening and is in electronic communication with the controller using a wired or wireless network as claimed in the ’724 Patent.

676. Claim 22 of the ‘724 Patent recites: “The system of claim 21, wherein the donor management system is configured to calculate the target volume for plasma product and/or raw plasma and the controller is configured to determine a target volume for plasma product and/or raw plasma by receiving the target volume for plasma product and/or raw plasma from the donor management system.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

677. The NexSys PCS PERSONA with Disposable Kit and the donor management system (*e.g.*, NexLynk DMS or other third-party donor management system) together practice claim 22 of the ‘724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

678. As explained above, the NexSys PCS PERSONA with Disposable Kit and the donor management system (*e.g.*, NexLynk DMS or other third-party donor management system) together a system that practices claim 21.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

679. On information and belief, the NexLynk DMS and/or other third-party donor management system is configured to calculate the target volume for plasma product (based on the donor’s total plasma volume, hematocrit, weight, and height), and the NexSys PCS PERSONA controller is also configured to determine a target volume for plasma product and/or raw plasma by receiving the target volume for plasma product and/or raw plasma from the donor management system.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the donor management system is configured to calculate the target volume for plasma product and the NexSys PCS PERSONA controller is also

configured to determine a target volume for plasma product and/or raw plasma by receiving the target volume for plasma product and/or raw plasma from the donor management system as claimed in the ’724 Patent.

680. Alternatively, NexSys PCS PERSONA meets the controller limitation under the doctrine of equivalence, because the device perform substantially the same function as the recited limitation (“to determine a target volume for plasma product and/or raw plasma by receiving the target volume for plasma product and/or raw plasma from the donor management system”), in substantially the same way, and achieves substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

681. Claim 23 of the ‘724 Patent recites: “The system of claim 19, wherein the controller is configured to determine the target volume for plasma product and/or raw plasma by calculating the target volume for plasma product and/or raw plasma and wherein the controller is local to and coupled to the blood separator.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’724 Patent.

682. The NexSys PCS PERSONA with Disposable Kit practices claim 23 of the ‘724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

683. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

684. The NexSys PCS PERSONA controller is configured to determine the target volume for plasma product by calculating the target volume for plasma product. The NexSys PCS PERSONA controller is local to and coupled to the blood separator because they are both within the housing of the NexSys PCS PERSONA.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to determine the target volume for plasma product by calculating the target volume for plasma product and the controller is local to and coupled to the blood separator because they are both within the housing of the NexSys PCS PERSONA as claimed in the ’724 Patent.

685. Alternatively, NexSys PCS PERSONA meets the controller limitation under the doctrine of equivalence, because the device perform substantially the same function as the recited limitation ("to determine the target volume for plasma product and/or raw plasma by calculating the target volume for plasma product and/or raw plasma"), in substantially the same way, and achieves substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

686. Claim 24 of the '724 Patent recites: "The system of claim 19, wherein the controller is configured to determine the donor's total blood volume before whole blood is withdrawn from the donor during a donation."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

687. The NexSys PCS PERSONA with Disposable Kit practices claim 24 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

688. As explained above, the NexSys PCS PERSONA with Disposable Kit is a system that practices claim 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

689. The NexSys PCS PERSONA controller is configured to determine the donor's total blood volume before whole blood is withdrawn from the donor during a donation. The NexSys PCS PERSONA controller uses donor characteristics (height, weight, and hematocrit) to determine the target plasma collection volume based on total available plasma prior to the start of the donation procedure. On information and belief, the NexSys PCS PERSONA controller is configured to determine determines the donor's total blood volume and uses that value to calculate the total available plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to determine the donor's total blood volume before whole blood is withdrawn from the donor during a donation as claimed in the '724 Patent. Haemonetics further denies the NexSys PCS PERSONA controller is configured to determine determines the donor's total blood volume and uses that value to calculate the total available plasma as claimed in the '724 Patent.

690. Alternatively, the NexSys PCS PERSONA meets the controller limitation under the doctrine of equivalence, because the device perform substantially the same function as the recited limitation ("to determine the donor's total blood volume before whole blood is withdrawn from the donor during a donation"), in substantially the same way, and achieves substantially the same result.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

691. Claim 25 of the '724 Patent recites: "The system of claim 19, wherein the controller is configured to determine the target volume for plasma product comprising raw plasma and anticoagulant, wherein the target volume for plasma product is determined prior to withdrawing the whole blood from the donor based at least in part on an anticoagulant ratio, the donor's weight and the donor's hematocrit."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '724 Patent.

692. The NexSys PCS PERSONA with Disposable Kit practices claim 25 of the '724 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

693. As explained above, NexSys PCS PERSONA with Disposable Kit is a system that practices claim 19.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

694. The NexSys PCS PERSONA controller is configured to determine the target volume for plasma product comprising raw plasma and anticoagulant, wherein the target volume for plasma product is determined prior to withdrawing the whole blood from the donor based at least in part on an anticoagulant ratio, the donor's weight and the donor's hematocrit. Specifically, the controller is configured to compute the target volume for plasma product based at least in part on the anticoagulant ration, the donor's body-mass index (which is calculated using the donor's height and weight), and the donor's hematocrit.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA controller is configured to determine the target volume for plasma product comprising raw plasma and anticoagulant, wherein the target volume for plasma product is determined prior to withdrawing the whole blood from the donor based at least in part on an anticoagulant ratio, the donor's weight and the donor's hematocrit as claimed in the '724 Patent.

695. Haemonetics directly infringes at least claims 1-16 and 19-25 of the ‘724 Patent by using (including in tests, commercial demonstrations, and clinical trials), making, importing, offering for sale/lease, selling, and/or leasing the Accused Haemonetics Products in the United States.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

696. Additionally, on information and belief, the infringing acts of third parties (such as Haemonetics’ customers, clients, partners, and end users such as clinicians and phlebotomists) are attributable to Haemonetics. Haemonetics’ partners, clients, customers, and/or end users in the United States lease and/or buy the Accused Haemonetics Products across this country, including in this District. On information and belief, Haemonetics directs and controls the activities or actions of its third-party customers with respect to the Accused Haemonetics Products through contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Haemonetics Products which, when followed and used, result in infringement of the ‘724 Patent, including at least claims 1-16 and 19-25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

697. In addition to directly infringing the ‘724 Patent, Haemonetics has indirectly infringed the ‘724 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the ‘724 Patent (including claims 1-16 and 19-25) at least by using the Accused Haemonetics Products in plasma donation centers. On information and belief, Haemonetics markets, offers to sell/lease, and/or sells/leases the Accused Haemonetics Products to customers and/or end users. On additional information and belief, Haemonetics provides, *inter alia*, training, written guidance (*e.g.*, User Manuals and Service Manuals), technical assistance, promotional materials, sales and marketing materials, and/or demonstrations to customers and end users.[117] On information and belief, these acts induce said third parties to perform acts intended by Haemonetics to cause direct infringement of the ‘724 Patent (including claims 1-16 and 19-25). On information and belief, Haemonetics performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the ‘724 Patent (including claims 1-16 and 19-25).

**ANSWER:** Haemonetics denies the allegations in this paragraph. Haemonetics refers to the cited document that speaks for itself.

698. Haemonetics has had knowledge of the ‘724 Patent since at least the filing of these Counterclaims. Haemonetics has had knowledge that the induced acts of its customers and end users constitutes infringement of the ‘724 Patent since at least the filing of these Counterclaims.

[117] *See, e.g.*, NexSys PCS Service Manual; NexSys PCS User Manual; NexSys PCS PERSONA Brochure; NexSys PCS Brochure.

**ANSWER:** Haemonetics admits that it has had knowledge of the '724 Patent since at least the filing of the Counterclaims. Haemonetics otherwise denies the remaining allegations in this paragraph.

699. Haemonetics has also indirectly infringed the '724 Patent (including claims 1-16 and 19-25) as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to the infringement of the '724 Patent by third parties, such as its customers and end users. Such third parties infringe the '724 Patent (including claims 1-16 and 19-25) at least by using the Accused Haemonetics Products in plasma donation centers. Haemonetics' affirmative acts of making, importing, leasing, and/or selling the Accused Haemonetics Products contributes to the infringement of the '724 Patent because those components constitute a material part of the invention of the '724 Patent (as they embody all limitations of the claims), are specially made or adapted for use in infringing the '724 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

700. As a consequence of Haemonetics' direct and indirect infringement of the '724 Patent, both literally and under the doctrine of equivalents, Fenwal has been and continues to be irreparably harmed.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

701. Due to Haemonetics' infringing acts, Fenwal has been and will be damaged in an amount to be determined at trial.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

702. On information and belief, unless enjoined, Haemonetics will continue to infringe the '724 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

## COUNT 8: INFRINGEMENT OF U.S. PATENT NO. 11,730,873

703. Fenwal realleges and incorporates the allegations set forth in the foregoing paragraphs 1-702 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

704. On information and belief, Haemonetics has infringed and continues to infringe, directly and indirectly, literally and/or under the doctrine of equivalents, at least claims 1-10 and 12-23 of the '873 Patent by making, importing, using, offering for sale/lease, and/or selling/leasing

the Accused Haemonetics Products in the United States. The use of the Accused Haemonetics Products meets each limitation of each of foregoing claims, literally and/or under the doctrine of equivalents, as described in Exhibit 26, which is incorporated herein by reference. Fenwal reserves the right to assert additional claims of the '873 Patent against Haemonetics based on discovery that will become available in due course.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

705. Claim 1 of the '873 Patent covers a novel method of collecting plasma and recites:

> 1. A method of collecting plasma, comprising:
>
> receiving input from an operator via a touchscreen of a plasma collection device;
>
> receiving donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system;
>
> storing a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume, the target volume for raw plasma based on the total donor blood volume;
>
> setting the target volume for raw plasma prior to blood collection from a donor;
>
> controlling the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor,
>
> wherein each draw and return phase comprises:
>
> introducing whole blood from the donor to a separator via a donor line;
>
> combining anticoagulant with the whole blood from the donor using an anticoagulant line based on an anticoagulant ratio (ACR);
>
> separating whole blood into the plasma product and the second blood component comprising red blood cells; and
>
> sending the plasma product to a plasma product collection container,
>
> wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the plasma

> product collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP).

**ANSWER:** Haemonetics admits that Claim 1 of the ’873 Patent recites the stated claim language based on the language in the ’873 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

706. The use of the NexSys PCS PERSONA with a Disposable Kit meets each of the foregoing limitations of claim 1, literally and/or under the doctrine of equivalents, as described in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

707. Claim 1 of the ‘873 Patent recites in part, “[a] method of collecting plasma.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

708. As shown by at least the NexSys PCS User Manual, the Accused Haemonetics Products practice a method of collecting plasma. The NexSys PCS User Manual discloses instructions for the “plasmapheresis system designed for the highly efficient collection of plasma from donors.”[118]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice a method of collecting plasma as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

709. End users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform a method of collecting plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Accused Haemonetics Products practice a method of collecting plasma as claimed in the ’873 Patent.

---

[118] NexSys PCS User Manual, at 10.

710. Claim 1 of the '873 Patent also recites in part, "receiving input from an operator via a touchscreen of a plasma collection device."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

711. As shown in the NexSys PCS User Manual, the NexSys PCS device includes a "touchscreen graphical user interface." NexSys PCS User Manual, at 11. The manual describes how the device receives inputs from a touchscreen periodically as part of its intended operation.[119]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS device includes a touchscreen graphical user interface as claimed in the '873 Patent. Haemonetics refers to the cited document that speaks for itself.

712. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of "receiving an input from a touch screen of the apheresis treatment device."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS device will perform the step of receiving an input from a touch screen of the apheresis treatment device as claimed in the '873 Patent.

713. Claim 1 of the '873 Patent also recites in part, "receiving donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

714. The NexSys PCS User Manual describes a "BECS" which is a "central monitoring software system that exchanges information with the device via an approved server application."

---

[119] *See, e.g.*, NexSys PCS User Manual, at 60, 71, 74.

NexSys PCS User Manual, at 120. It further describes how the NexSys PCS device "receives [donor] information from the BECS."[120]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system includes a central monitoring software system that exchanges information with the device via an approved server application as claimed in the '873 Patent. Haemonetics refers to the cited document that speaks for itself.

715. The donor management system may be the Haemonetics NexLynk DMS system or a third-party donor management system. The NexLynk DMS Brochure describes the software as helping users "manage information about your donors" and providing "donor management" functionality.[121]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system includes a donor management system as claimed in the '873 Patent. Haemonetics refers to the cited document that speaks for itself.

716. The NexSys PCS User Manual describes how the NexSys PCS device receives donor parameters and displays them at the touchscreen user interface.[122]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the the NexSys PCS device receives donor parameters and displays them at the touchscreen user interface as claimed in the '873 Patent. Haemonetics refers to the cited document that speaks for itself.

717. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of "receiving donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system."

---

[120] NexSys PCS User Manual, at 59.

[121] NexLynk DMS Brochure, at 3.

[122] NexSys PCS User Manual, at 59-60.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of receiving donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system as claimed in the ’873 Patent.

718. Claim 1 of the ‘873 Patent also recites in part, “storing a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume, the target volume for raw plasma based on the total donor blood volume.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

719. The NexSys PCS PERSONA stores a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume, the target volume for raw plasma based on the total donor blood volume. For example, the NexSys PCS PERSONA Brochure describes plasma collection according to total blood volume based on BMI, which is a function of height and weight.[123]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA stores a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume, the target volume for raw plasma based on the total donor blood volume as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

720. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “storing a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume, the target volume for raw plasma based on the total donor blood volume.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of

[123] NexSys PCS PERSONA Brochure, at 2.

storing a target volume for raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume, the target volume for raw plasma based on the total donor blood volume as claimed in the ’873 Patent.

721. Claim 1 of the ‘873 Patent also recites in part, “setting the target volume for raw plasma prior to blood collection from a donor.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

722. The NexSys PCS User Manual shows the target volume for raw plasma on the user interface, which is displayed with other donor information prior to blood collection from the donor.[124]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system shows the target volume for raw plasma on the user interface, which is displayed with other donor information prior to blood collection from the donor as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

723. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “setting the target volume for raw plasma prior to blood collection from a donor.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of setting the target volume for raw plasma prior to blood collection from a donor as claimed in the ’873 Patent.

724. Claim 1 of the ‘873 Patent also recites in part, “controlling the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor.”

---

[124] NexSys PCS User Manual, at 59.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

725. The NexSys PCS User Manual describes the operation comprising two phases, Draw and Return.[125]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs draw and return phases as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

726. The User Manual also describes how, “during the collection procedure,” the device separates “plasma components” of whole blood which are directed into a “plasma collection container for storage” while the non-selected blood components “are returned to the donor during the Return cycle.”[126]

**ANSWER:** To the extent this paragraph contains legal conclusions, no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system controls the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

727. The User Manual also describes the parameters controlling the Draw and Return phases and provides instructions to modify those parameters.[127]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs draw and

---

[125] NexSys PCS User Manual, at 33.

[126] *Id.* at 10.

[127] *Id.* at 79-80.

return phases as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

728. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “controlling the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system controls the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor as claimed in the ’873 Patent.

729. Claim 1 of the ‘873 Patent also recites in part, “wherein each draw and return phase comprises: introducing whole blood from the donor to a separator via a donor line.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

730. The NexSys PCS User Manual describes disposable sets of tubing including one set connected to a donor via a venipuncture needle when drawing whole blood.[128]

**ANSWER:** To the extent this paragraph contains legal conclusions, no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of introducing whole blood from the donor to a separator via a donor line as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

731. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step “wherein each draw and return phase comprises: introducing whole blood from the donor to a separator via a donor line.”

[128] NexSys PCS User Manual, at 10, 42, 68.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of wherein each draw and return phase comprises: introducing whole blood from the donor to a separator via a donor line as claimed in the ’873 Patent.

732. Claim 1 of the ‘873 Patent also recites in part, “combining anticoagulant with the whole blood from the donor using an anticoagulant line based on an anticoagulant ratio (ACR).”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in ’873 Patent.

733. The NexSys PCS User Manual describes an anticoagulant pump which mixes anticoagulant solution with whole blood from the donor.[129] The device regulates mixing based on an “AC [anticoagulant] ratio.”[130]

**ANSWER:** To the extent this paragraph contains legal conclusions, no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of combining anticoagulant with the whole blood from the donor using an anticoagulant line based on an anticoagulant ratio as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

734. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step “combining anticoagulant with the whole blood from the donor using an anticoagulant line based on an anticoagulant ratio (ACR).”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of combining anticoagulant with the whole blood from the donor using an anticoagulant line based on an anticoagulant ratio as claimed in the ’873 Patent.

---

[129] NexSys PCS User Manual, at 23.

[130] NexSys PCS User Manual, at 23.

735. Claim 1 of the ‘873 Patent also recites in part, “separating whole blood into the plasma product and the second blood component comprising red blood cells.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

736. The NexSys PCS User Manual describes how the NexSys PCS device separates whole blood in a centrifuge separator into layers of blood components, of which one layer is plasma and a second layer comprises red cells.[131]

**ANSWER:** To the extent this paragraph contains legal conclusions, no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of separating whole blood into the plasma product and the second blood component comprising red blood cells as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

737. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step “separating whole blood into the plasma product and the second blood component comprising red blood cells.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of separating whole blood into the plasma product and the second blood component comprising red blood cells as claimed in the ’873 Patent.

738. Claim 1 of the ‘873 Patent also recites in part, “sending the plasma product to a plasma product collection container.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

---

[131] NexSys PCS User Manual, at 10, 40.

739. The NexSys PCS User Manual describes how, "during the collection procedure," the device separates "plasma components" of whole blood which are directed into a "plasma collection container for storage."[132]

**ANSWER:** To the extent this paragraph contains legal conclusions, no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of sending the plasma product to a plasma product collection container as claimed in the '873 Patent. Haemonetics refers to the cited document that speaks for itself.

740. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step "sending the plasma product to a plasma product collection container."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system performs the step of sending the plasma product to a plasma product collection container as claimed in the '873 Patent.

741. Claim 1 of the '873 Patent also recites in part, "wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the plasma product collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP)."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

742. A controller of the NexSys PCS PERSONA is configured to operate the draw and return phases until a volume of raw plasma collected equals the target volume of raw plasma. For example, the NexSys PCS User Manual describes how the device measures the collection volume of plasma and ends the collection cycle "when the plasma target collection has been achieved."[133]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the controller of the NexSys PCS PERSONA is configured to operate the draw and return phases until a volume of raw plasma collected equals

[132] NexSys PCS User Manual, at 10, 41, 68.

[133] NexSys PCS User Manual, at 25.

the target volume of raw plasma as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

743. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step “wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the plasma product collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP).”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the plasma product collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP) as claimed in the ’873 Patent.

744. Claim 2 of the ‘873 Patent recites: “The method of claim 1, wherein ACR=Volume of Whole Blood/Volume of Anticoagulant.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

745. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 2 of the ‘873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

746. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

747. During use of the NexSys PCS PERSONA, the ACR utilized is equal to the volume of whole blood divided by the volume of anticoagulant. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: “wherein ACR=Volume of Whole Blood/Volume of Anticoagulant.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of wherein ACR=Volume of Whole Blood/Volume of Anticoagulant as claimed in the ’873 Patent.

748. Claim 3 of the ‘873 Patent recites: “The method of claim 1, further comprising calculating the volume of raw plasma (VRP) in the collection container based on a measured volume of plasma product (VPP), the ACR and a hematocrit of the donor.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

749. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 3 of the ‘873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

750. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

751. The NexSys PCS User Manual discloses how the device calculates the amount of anticoagulant in the plasma product based on the measured volume of plasma product, the AC ratio and the hematocrit of the donor.[134] Since the volume of raw plasma in the collection container is the difference between measured plasma volume and anticoagulant volume, the NexSys PCS User Manual discloses calculating the volume of raw plasma in the collection container based on the parameters recited in the claim. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: “calculating the volume of raw plasma (VRP) in the collection container based on a measured volume of plasma product (VPP), the ACR and a hematocrit of the donor.”

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of calculating the volume of raw

[134] NexSys PCS User Manual, at 116.

plasma (VRP) in the collection container based on a measured volume of plasma product (VPP), the ACR and a hematocrit of the donor as claimed in the ’873 Patent.

752. Claim 4 of the ‘873 Patent recites: “The method of claim 1, further comprising receiving the donor’s weight and hematocrit electronically at the controller from the donor management system, wherein the donor management system is used for qualification screening.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

753. The use of the Accused Haemonetics Products practices claim 4 of the ‘873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

754. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

755. The NexSys PCS PERSONA comprises a controller that is coupled to a touchscreen and is configured to electronically receive donor parameters, such as weight and hematocrit, from the NexLynk DMS or another third-party data management system. The data management system (*e.g.*, NexLynk DMS) downloads and transmits the donor information—including donor ID, donor name, donor birth date, donor weight, and donor hematocrit—from a database to the NexSys PCS device. The NexSys PCS device displays information about the donor that is used for qualification screening (*e.g.*, verify the identity of the donor).[135] Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: “receiving the donor’s weight and hematocrit electronically at the controller from the donor management system, wherein the donor management system is used for qualification screening.”

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of receiving the donor’s weight and hematocrit electronically at the controller from the donor management system, wherein the donor management system is used for qualification screening as claimed in the ’873 Patent.

---

[135] *See, e.g.* NexSys PCS User Manual, at 59-60.

756. Claim 5 of the '873 Patent recites: "The method of claim 1, further comprising calculating the target volume for raw plasma by calculating a fraction of total donor plasma volume."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

757. The use of the NexSys PCS PERSONA meets each element of claim 5 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

758. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

759. The target volume for raw plasma collection with the NexSys PCS PERSONA is calculated based on a calculated percentage of the donor's total plasma volume.[136]. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "calculating the target volume for raw plasma by calculating a fraction of total donor plasma volume."

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of calculating the target volume for raw plasma by calculating a fraction of total donor plasma volume as claimed in the '873 Patent.

760. Claim 6 of the '873 Patent recites: "The method of claim 1, further comprising performing the draw and return cycles at least three times and determining a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

761. The use of the NexSys PCS PERSONA meets each element of claim 6 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

---

[136] *See, e.g.*, NexSys PCS PERSONA Brochure, at 2.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

762. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

763. The controller of the NexSys PCS PERSONA can be programmed to collect at least three collection and reinfusion cycles and to draw a lower volume of whole blood in the final cycle.[137] Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "performing the draw and return cycles at least three times and determining a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase."

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of performing the draw and return cycles at least three times and determining a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase as claimed in the '873 Patent.

764. Claim 7 of the '873 Patent recites: "The method of claim 1, further comprising combining anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

765. The use of the NexSys PCS PERSONA meets each element of claim 7 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

766. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

---

[137] *See* NexSys PCS User Manual, at 33-34.

767. The NexSys PCS PERSONA mixes anticoagulant with the donor's whole blood as whole blood is drawn from the donor to prevent blood from clotting. The NexSys PCS PERSONA combines anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant.[138] Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "combining anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant."

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of combining anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant as claimed in the '873 Patent.

768. Claim 8 of the '873 Patent recites: "The method of claim 1, wherein the donor management system calculates the target volume for raw plasma based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume, further comprising transmitting the target volume for raw plasma from the donor management system to the controller."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

769. The use of the Accused Haemonetics Products meets each element of claim 8 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

770. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

771. The donor management system calculates the target volume for raw plasma based on donor height and weight used to calculate total donor blood volume and hematocrit used to determine the total donor plasma volume.[139] Further, The NexSys PCS User Manual states that when the device is connected to a BECS or compatible central monitoring software system, the

---

[138] NexSys PCS User Manual, at 23.

[139] *See, e.g.*, NexSys PCS PERSONA Brochure, at 2.

target volume for raw plasma is transmitted from the donor management system to the controller.[140] Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "wherein the donor management system calculates the target volume for raw plasma based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume, further comprising transmitting the target volume for raw plasma from the donor management system to the controller."

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of wherein the donor management system calculates the target volume for raw plasma based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume, further comprising transmitting the target volume for raw plasma from the donor management system to the controller as claimed in the '873 Patent.

772. Claim 9 of the '873 Patent recites: "The method of claim 1, wherein ACR is a ratio of volume of anticoagulant to volume of anticoagulated blood."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

773. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 9 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

774. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

775. The NexSys PCS PERSONA mixes anticoagulant with the donor's whole blood in the venipuncture needle adaptor as whole blood is drawn from the donor to prevent blood from clotting. This can be done wherein ACR is a ratio of volume of anticoagulant to volume of

[140] NexSys PCS User Manual, at 59.

anticoagulated blood.[141] Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "wherein ACR is a ratio of volume of anticoagulant to volume of anticoagulated blood."

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of wherein ACR is a ratio of volume of anticoagulant to volume of anticoagulated blood as claimed in the '873 Patent.

776. Claim 10 of the '873 Patent recites: "The method of claim 1, further comprising receiving via the touchscreen a donor ID, donor weight, donor hematocrit and a target plasma volume."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

777. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 10 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

778. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

779. The NexSys PCS PERSONA is configured to receive via a touchscreen a donor ID, weight, donor hematocrit and a target plasma volume.[142] Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "receiving via the touchscreen a donor ID, donor weight, donor hematocrit and a target plasma volume."

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required,

---

[141] *See* NexSys PCS User Manual, at 23, 116.

[142] NexSys PCS User Manual, at 59-60.

Haemonetics denies NexSys PCS system performs the step of receiving via the touchscreen a donor ID, donor weight, donor hematocrit and a target plasma volume as claimed in the ’873 Patent.

780. Claim 12 of the ‘873 Patent covers a novel method of collecting plasma and recites:

> 12. A method of collecting plasma, comprising:
>
> receiving input from an operator via a touchscreen of a plasma collection device;
>
> receiving donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system;
>
> determining a target volume for plasma product and/or raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume;
>
> controlling the plasma collection device to operate collection and reinfusion cycles to withdraw whole blood from a donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to reinfuse the second blood component to the donor, wherein each collection and reinfusion cycle comprises:
>
> introducing the whole blood from the donor to a blood separator;
>
> combining anticoagulant with the whole blood from the donor based on an anticoagulant ratio (ACR);
>
> separating whole blood into the plasma product and the second blood component comprising red blood cells; and
>
> sending the plasma product to a plasma product collection container,
>
> wherein the controller controls the plasma collection device to operate the collection and reinfusion cycles on the donor at least three times, wherein a final collection and reinfusion cycle comprises drawing a volume of whole blood which is less than a volume of whole blood drawn in a prior collection and reinfusion cycle.

**ANSWER:** Haemonetics admits that Claim 12 of the '873 Patent recites the stated claim language based on the language in the '873 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

781. The use of the NexSys PCS PERSONA with a Disposable Kit meets each of the foregoing limitations of claim 12, literally and/or under the doctrine of equivalents, as described in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

782. Claim 12 of the '873 Patent recites in part, "[a] method of collecting plasma."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

783. As shown by at least the NexSys PCS User Manual, the NexSys PCS PERSONA with a Disposable Kit practices a method of collecting plasma. The NexSys PCS User Manual discloses instructions for the "plasmapheresis system designed for the highly efficient collection of plasma from donors."[143]

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs a method of collecting plasma as claimed in the '873 Patent.

784. End users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform a method of collecting plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs a method of collecting plasma as claimed in the '873 Patent.

785. Claim 12 of the '873 Patent also recites in part, "receiving input from an operator via a touchscreen of a plasma collection device."

[143] NexSys PCS User Manual, at 10.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

786. As described above in relation to claim 1, the NexSys PCS device includes a “touchscreen graphical user interface.”[144] The User Manual describes how the device receives inputs from a touchscreen periodically as part of its intended operation.[145]

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system includes a touchscreen graphical user interface as claimed in the ’873 Patent.

787. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “receiving an input from a touch screen of the apheresis treatment device.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies NexSys PCS system performs the step of receiving an input from a touch screen of the apheresis treatment device as claimed in the ’873 Patent.

788. Claim 12 of the ‘873 Patent also recites in part, “receiving donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

789. As described above in relation to claim 1, the NexSys PCS User Manual describes a BECS which is a “central monitoring software system that exchanges information with the device

[144] NexSys PCS User Manual, at 11.

[145] *See, e.g.*, NexSys PCS User Manual, at 60, 71, 74.

via an approved server application."[146] It further describes how the NexSys PCS device "receives [donor] information from the BECS."[147]

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system receives donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system in the '873 Patent.

790. The donor management system may be the Haemonetics NexLynk DMS system or a third-party donor management system. The NexLynk DMS Brochure describes the software as helping users "manage information about your donors" and providing "donor management" functionality.[148]

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system receives donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system in the '873 Patent.

791. The NexSys PCS User Manual describes how the NexSys PCS device receives donor parameters and displays them at a controller of the plasma collection device, namely the touchscreen user interface.[149]

**ANSWER:** Haemonetics refers to the cited document which speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system receives donor parameters at a controller of the

---

[146] NexSys PCS User Manual, at 120.

[147] *Id.* at 59.

[148] NexLynk DMS Brochure, at 3.

[149] NexSys PCS User Manual, at 59-60.

plasma collection device, wherein the donor parameters are received electronically from a donor management system in the ’873 Patent.

792. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “receiving donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system receives donor parameters at a controller of the plasma collection device, wherein the donor parameters are received electronically from a donor management system as claimed in the ’873 Patent.

793. Claim 12 of the ‘873 Patent also recites in part, “determining a target volume for plasma product and/or raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

794. The NexSys PCS PERSONA determines a target volume for plasma product and/or raw plasma based on donor height and weight used to calculate total donor blood volume and hematocrit used to calculate total donor plasma volume. For example, the NexSys PCS PERSONA Brochure describes plasma collection according to total blood volume based on BMI, which is a function of height and weight, and donor plasma volume based on hematocrit.[150]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS determines a target volume for plasma product and/or raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

[150] NexSys PCS PERSONA Brochure, at 2.

795. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of "determining a target volume for plasma product and/or raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of determining a target volume for plasma product and/or raw plasma which is based at least in part on donor height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume as claimed in the '873 Patent.

796. Claim 12 of the '873 Patent also recites in part, "controlling the plasma collection device to operate collection and reinfusion cycles to withdraw whole blood from a donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to reinfuse the second blood component to the donor."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

797. As described above in relation to claim 1, The NexSys PCS User Manual describes the operation comprising two phases, Draw (*i.e.,* collection) and Return (*i.e.*, reinfusion).[151]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs a draw and return phase as claimed in the '873 Patent. Haemonetics refers to the cited document which speaks for itself.

798. The User Manual also describes how, "during the collection procedure," the device separates "plasma components" of whole blood which are directed into a "plasma collection container for storage" while the non-selected blood components "are returned to the donor during the Return cycle."[152]

---

[151] NexSys PCS User Manual, at 33.

[152] *Id.* at 10.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs a draw and return phase as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

799. The User Manual also describes the parameters controlling the Draw and Return phases and provides instructions to modify those parameters.[153]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs a draw and return phase as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

800. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of "controlling the plasma collection device to operate collection and reinfusion cycles to withdraw whole blood from a donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to reinfuse the second blood component to the donor."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of controlling the plasma collection device to operate collection and reinfusion cycles to withdraw whole blood from a donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to reinfuse the second blood component to the donor as claimed in the ’873 Patent.

801. Claim 12 of the ‘873 Patent also recites in part, "wherein each collection and reinfusion cycle comprises: introducing the whole blood from the donor to a blood separator."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

802. As described above in relation to claim 1, the NexSys PCS User Manual describes disposable sets of tubing including one set connected to a donor via a venipuncture needle when

[153] *Id.* at 79-80.

drawing whole blood.[154] The NexSys PCS device introduces the whole blood to a blood separator where it is "separated by centrifugal force into its various components."[155]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of introducing the whole blood from the donor to a blood separator as claimed in the '873 Patent.

803. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step "wherein each collection and reinfusion cycle comprises: introducing the whole blood from the donor to a blood separator."

**ANSWER:** To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of wherein each collection and reinfusion cycle comprises introducing the whole blood from the donor to a blood separator as claimed in the '873 Patent.

804. Claim 12 of the '873 Patent also recites in part, "combining anticoagulant with the whole blood from the donor based on an anticoagulant ratio (ACR)."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

805. As described above in relation to claim 1, the NexSys PCS User Manual describes an anticoagulant pump which mixes anticoagulant solution with whole blood from the donor.[156] The device regulates mixing based on an "AC [anticoagulant] ratio."[157]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required,

---

[154] NexSys PCS User Manual, at 10, 42, 68.

[155] *Id.* at 10.

[156] NexSys PCS User Manual, at 23.

[157] *Id.*

Haemonetics denies the NexSys PCS performs the step combining anticoagulant with the whole blood from the donor based on an anticoagulant ratio as claimed in the ’873 Patent.

806. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step “combining anticoagulant with the whole blood from the donor based on an anticoagulant ratio (ACR).”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step combining anticoagulant with the whole blood from the donor based on an anticoagulant ratio as claimed in the ’873 Patent.

807. Claim 12 of the ‘873 Patent also recites in part, “separating whole blood into the plasma product and the second blood component comprising red blood cells.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

808. As described above in relation to claim 1, the NexSys PCS User Manual describes how the NexSys PCS device separates whole blood in a centrifuge separator into layers of blood components, of which one layer is plasma and a second layer comprises red cells.[158]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step separating whole blood into the plasma product and the second blood component comprising red blood cells as claimed in the ’873 Patent.

809. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step “separating whole blood into the plasma product and the second blood component comprising red blood cells.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step separating

[158] NexSys PCS User Manual, at 10, 40.

whole blood into the plasma product and the second blood component comprising red blood cells as claimed in the ’873 Patent.

810. Claim 12 of the ‘873 Patent also recites in part, “sending the plasma product to a plasma product collection container.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

811. As described above in relation to claim 1, the NexSys PCS User Manual describes how, “during the collection procedure,” the device separates “plasma components” of whole blood which are directed into a “plasma collection container for storage.”[159]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step sending the plasma product to a plasma product collection container as claimed in the ’873 Patent.

812. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step “sending the plasma product to a plasma product collection container.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step sending the plasma product to a plasma product collection container as claimed in the ’873 Patent.

813. Claim 12 of the ‘873 Patent also recites in part, “wherein the controller controls the plasma collection device to operate the collection and reinfusion cycles on the donor at least three times, wherein a final collection and reinfusion cycle comprises drawing a volume of whole blood which is less than a volume of whole blood drawn in a prior collection and reinfusion cycle.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

---

[159] NexSys PCS User Manual, at 10, 41, 68.

814. As described above in relation to claim 6, the controller of the NexSys PCS PERSONA can be programmed to collect at least three collection and reinfusion cycles and to draw a lower volume of whole blood in the final cycle.[160]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step wherein the controller controls the plasma collection device to operate the collection and reinfusion cycles on the donor at least three times, wherein a final collection and reinfusion cycle comprises drawing a volume of whole blood which is less than a volume of whole blood drawn in a prior collection and reinfusion cycle as claimed in the ’873 Patent.

815. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step “wherein the controller controls the plasma collection device to operate the collection and reinfusion cycles on the donor at least three times, wherein a final collection and reinfusion cycle comprises drawing a volume of whole blood which is less than a volume of whole blood drawn in a prior collection and reinfusion cycle.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step wherein the controller controls the plasma collection device to operate the collection and reinfusion cycles on the donor at least three times, wherein a final collection and reinfusion cycle comprises drawing a volume of whole blood which is less than a volume of whole blood drawn in a prior collection and reinfusion cycle as claimed in the ’873 Patent.

816. Claim 13 of the ‘873 Patent recites: “The method of claim 12, wherein the controller uses the parameters received from the donor management system to determine the target volume for plasma product and/or raw plasma.”

---

[160] *See* NexSys PCS User Manual, at 33-34.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

817. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 13 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

818. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 12.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

819. The NexSys PCS System with NexLynk DMS is configured to connect a data storage device and the apheresis treatment device over a network (*e.g.*, wired or wireless internet). The remote data storage device communicates electronically with the controller and provides parameters to the NexSys PCS PERSONA which are used to determine the target volume for plasma product and/or raw plasma. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: wherein the controller uses the parameters received from the donor management system to determine the target volume for plasma product and/or raw plasma."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step wherein the controller uses the parameters received from the donor management system to determine the target volume for plasma product and/or raw plasma as claimed in the '873 Patent.

820. Claim 14 of the '873 Patent recites: "The method of claim 13, further comprising performing qualification screening using the donor management system."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

821. The use of the Accused Haemonetics Products meets each element of claim 14 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

822. As explained above, the use of the Accused Haemonetics Products by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at

least the NexSys PCS User Manual will perform the method of claim 13.The use of the NexSys PCS device with a donor management system (such as NexLynk DMS) in electronic communication with the controller, is designed to use parameters received from the donor management system to perform qualification screening. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "performing qualification screening using the donor management system."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step performing qualification screening using the donor management system as claimed in the '873 Patent.

823. Claim 15 of the '873 Patent recites: "The method of claim 12, wherein the donor management system calculates the target volume for plasma product and/or raw plasma and the controller determines the target volume for plasma product and/or raw plasma by receiving the target volume for plasma product and/or raw plasma from the donor management system."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

824. The use of the Accused Haemonetics Products meets each element of claim 15 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

825. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 12.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

826. The NexSys PCS System, including NexSys PCS PERSONA configurations with YES, is designed to interface with donor management systems (DMS) or BECS. The DMS can calculate the target volume for plasma product (and/or raw plasma) and the controller of the NexSys PCS PERSONA can determine the target volume for plasma product and/or raw plasma by receiving the target volume for plasma product and/or raw plasma from the donor management system. For example, the DMS will calculate the target volume for raw plasma and transmit it to the NexSys PCS PERSONA. The NexSys PCS PERSONA will then determine the target volume for plasma product. The Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "wherein the donor management system calculates the target volume for plasma product and/or raw plasma and the controller determines the target volume for plasma product and/or raw plasma by receiving the target volume for plasma product and/or raw plasma from the donor management system."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step wherein the donor management system calculates the target volume for plasma product and/or raw plasma and the controller determines the target volume for plasma product and/or raw plasma by receiving the target volume for plasma product and/or raw plasma from the donor management system as claimed in the ’873 Patent.

827. Claim 16 of the ‘873 Patent recites: “The method of claim 12, further comprising determining the total donor blood volume before whole blood is withdrawn from the donor during a donation.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

828. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 16 of the ‘873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

829. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 12.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

830. The NexSys PCS system determines the total donor blood volume before whole blood is withdrawn from the donor during a donation. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: “determining the total donor blood volume before whole blood is withdrawn from the donor during a donation.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step determining the total donor blood volume before whole blood is withdrawn from the donor during a donation as claimed in the ’873 Patent.

831. Claim 17 of the ‘873 Patent covers a novel method of collecting plasma and recites:

> 17. A method of collecting plasma, comprising:
>
> receiving input from an operator via a touchscreen of a plasma collection device;
>
> receive donor parameters at a controller local to the plasma collection device, wherein the donor parameters are received electronically from a donor management system;
>
> setting a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, wherein the target volume for raw plasma is set prior to blood collection from the donor;
>
> controlling the plasma collection device to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into a plasma product and a second blood component and to return the second blood component to the donor, controlling the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor,
>
> wherein each draw and return phase comprises:
>
> pumping whole blood from a donor to a separator of the plasma collection device;
>
> combining anticoagulant from an anticoagulant source with the whole blood from the donor based on an anticoagulant ratio (ACR); separating the whole blood into a plasma product and a second blood component comprising red blood cells; and sending the plasma product to a plasma product collection container, wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the plasma product collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP).

**ANSWER:** Haemonetics admits that Claim 17 of the ’873 Patent recites the stated claim language based on the language in the ’873 Patent. Haemonetics otherwise denies the remaining allegations in this paragraph.

832. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 17 of the ‘873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

833. Claim 17 of the ‘873 Patent recites in part, “[a] method of collecting plasma.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

834. As shown by at least the NexSys PCS User Manual, the Accused Haemonetics Products practice a method of collecting plasma. The NexSys PCS User Manual discloses instructions for the “plasmapheresis system designed for the highly efficient collection of plasma from donors.”[161]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs a method of collecting plasma as claimed in the ’873 Patent.

835. End users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform a method of collecting plasma.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs a method of collecting plasma as claimed in the ’873 Patent.

836. Claim 17 of the ‘873 Patent also recites in part, “receiving input from an operator via a touchscreen of a plasma collection device.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

---

[161] NexSys PCS User Manual, at 10.

837. As described in relation to claim 1, the NexSys PCS device includes a "touchscreen graphical user interface." NexSys PCS User Manual, at 11. The manual describes how the device receives inputs from a touchscreen periodically as part of its intended operation.[162]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of receiving input from an operator via a touchscreen of a plasma collection device as claimed in the '873 Patent.

838. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of "receiving input from an operator via a touchscreen of a plasma collection device."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of receiving input from an operator via a touchscreen of a plasma collection device as claimed in the '873 Patent.

839. Claim 17 of the '873 Patent also recites in part, "receive [sic] donor parameters at a controller local to the plasma collection device, wherein the donor parameters are received electronically from a donor management system."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

840. As described in relation to claim 1, the NexSys PCS User Manual describes a BECS which is a "central monitoring software system that exchanges information with the device via an approved server application."[163] It further describes how the NexSys PCS device "receives [donor] information from the BECS."[164]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required,

---

[162] *See, e.g.*, NexSys PCS User Manual, at 60, 71, 74.

[163] NexSys PCS User Manual, at 120.

[164] *Id.* at 59.

Haemonetics denies the NexSys PCS performs the step of receiving donor parameters at a controller local to the plasma collection device, wherein the donor parameters are received electronically from a donor management system as claimed in the ’873 Patent.

841. The donor management system may be the Haemonetics NexLynk DMS system or a third-party donor management system. The NexLynk DMS Brochure describes the software as helping users “manage information about your donors” and providing “donor management” functionality.[165]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of receiving donor parameters at a controller local to the plasma collection device, wherein the donor parameters are received electronically from a donor management system as claimed in the ’873 Patent.

842. The NexSys PCS User Manual describes how the NexSys PCS device receives donor parameters and displays them at a controller of the plasma collection device, namely the touchscreen user interface.[166]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of receiving donor parameters at a controller local to the plasma collection device, wherein the donor parameters are received electronically from a donor management system as claimed in the ’873 Patent.

843. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “receive [sic] donor parameters at a controller local to the plasma collection device, wherein the donor parameters are received electronically from a donor management system.”

[165] NexLynk DMS Brochure, at 3.

[166] NexSys PCS User Manual, at 59-60.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of receiving donor parameters at a controller local to the plasma collection device, wherein the donor parameters are received electronically from a donor management system as claimed in the '873 Patent.

844. Claim 17 of the '873 Patent also recites in part, "setting a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, wherein the target volume for raw plasma is set prior to blood collection from the donor."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

845. The NexSys PCS System sets a target volume for raw plasma based on donor parameters comprising donor weight and height used to calculate total donor blood volume and hematocrit to calculate total donor plasma volume. For example, the NexSys PCS PERSONA Brochure describes plasma collection according to total blood volume based on BMI, which is a function of height and weight, and donor plasma volume based on hematocrit.[167]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of setting a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, wherein the target volume for raw plasma is set prior to blood collection from the donor as claimed in the '873 Patent.

846. The NexSys PCS User Manual shows the target volume for raw plasma on the user interface, which is displayed with other donor information prior to blood collection from the donor.[168]

---

[167] NexSys PCS PERSONA Brochure, at 2.

[168] NexSys PCS User Manual, at 59.

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of setting a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, wherein the target volume for raw plasma is set prior to blood collection from the donor as claimed in the ’873 Patent.

847. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “setting a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, wherein the target volume for raw plasma is set prior to blood collection from the donor.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of setting a target volume for raw plasma which is based at least in part on donor parameters comprising height and weight used to calculate total donor blood volume and hematocrit (Hct) used to calculate total donor plasma volume, wherein the target volume for raw plasma is set prior to blood collection from the donor as claimed in the ’873 Patent.

848. Claim 17 of the ‘873 Patent also recites in part, “controlling the plasma collection device to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into a plasma product and a second blood component and to return the second blood component to the donor, controlling the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

849. As described above in relation to claim 12, the NexSys PCS User Manual describes the operation comprising two phases, Draw and Return.[169]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs draw and return cycles as claimed in the ’873 Patent.

850. The User Manual also describes how, “during the collection procedure,” the device separates “plasma components” of whole blood which are directed into a “plasma collection container for storage” while the non-selected blood components “are returned to the donor during the Return cycle.”[170]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of controlling the plasma collection device to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into a plasma product and a second blood component and to return the second blood component to the donor, controlling the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor as claimed in the ’873 Patent.

851. The User Manual also describes the parameters controlling the Draw and Return phases and provides instructions to modify those parameters.[171]

**ANSWER:** Haemonetics refers to the cited document that speaks for itself. This paragraph contains legal conclusions to which no response is required. To the extent a response is required,

---

[169] NexSys PCS User Manual, at 33.

[170] *Id.* at 10.

[171] *Id.* at 79-80.

Haemonetics denies the NexSys PCS performs draw and return cycles and modifies parameters as claimed in the ’873 Patent.

852. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step of “controlling the plasma collection device to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into a plasma product and a second blood component and to return the second blood component to the donor, controlling the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of controlling the plasma collection device to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into a plasma product and a second blood component and to return the second blood component to the donor, controlling the plasma collection device to operate draw and return phases to withdraw whole blood from the donor and separate the whole blood into a plasma product and a second blood component comprising red blood cells and to return the second blood component to the donor as claimed in the ’873 Patent.

853. Claim 17 of the ‘873 Patent also recites in part, “wherein each draw and return phase comprises: pumping whole blood from a donor to a separator of the plasma collection device.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

854. As described above in relations to claims 1 and 12, the NexSys PCS User Manual describes disposable sets of tubing including one set connected to a donor via a venipuncture needle when drawing whole blood.[172] The NexSys PCS device comprises a blood pump for pumping whole blood to the separator centrifuge.[173]

[172] NexSys PCS User Manual, at 10, 42, 68.

[173] *Id.* at 23, 68.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of wherein each draw and return phase comprises: pumping whole blood from a donor to a separator of the plasma collection device as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

855. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step “wherein each draw and return phase comprises: pumping whole blood from a donor to a separator of the plasma collection device.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of wherein each draw and return phase comprises: pumping whole blood from a donor to a separator of the plasma collection device as claimed in the ’873 Patent.

856. Claim 17 of the ‘873 Patent also recites in part, “combining anticoagulant from an anticoagulant source with the whole blood from the donor based on an anticoagulant ratio (ACR).”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

857. As described above in relation to claims 1 and 12, the NexSys PCS User Manual describes an anticoagulant pump which mixes anticoagulant solution with whole blood from the donor.[174] The device regulates mixing based on an “AC [anticoagulant] ratio.” *Id.*

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of combining anticoagulant from an anticoagulant source with the whole blood from the donor based on an anticoagulant ratio as claimed in the ’873 Patent. Haemonetics refers to the cited document that speaks for itself.

[174] NexSys PCS User Manual, at 23.

858. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step "combining anticoagulant from an anticoagulant source with the whole blood from the donor based on an anticoagulant ratio (ACR)."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of combining anticoagulant from an anticoagulant source with the whole blood from the donor based on an anticoagulant ratio as claimed in the '873 Patent.

859. Claim 17 of the '873 Patent also recites in part, "separating the whole blood into a plasma product and a second blood component comprising red blood cells."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

860. As described above in relation to claims 1 and 12, the NexSys PCS User Manual describes how the NexSys PCS device separates whole blood in a centrifuge separator into layers of blood components, of which one layer is plasma and a second layer comprises red cells.[175]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of separating the whole blood into a plasma product and a second blood component comprising red blood cells as claimed in the '873 Patent. Haemonetics refers to the cited document that speaks for itself.

861. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step "separating the whole blood into a plasma product and a second blood component comprising red blood cells."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of separating the whole blood into a plasma product and a second blood component comprising red blood cells as claimed in the '873 Patent.

[175] NexSys PCS User Manual, at 10, 40.

862. Claim 17 of the '873 Patent also recites in part, "sending the plasma product to a plasma product collection container."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

863. As described above in relation to claims 1 and 12, the NexSys PCS User Manual describes how, "during the collection procedure," the device separates "plasma components" of whole blood which are directed into a "plasma collection container for storage."[176]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of sending the plasma product to a plasma product collection container as claimed in the '873 Patent. Haemonetics refers to the cited document that speaks for itself.

864. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step "sending the plasma product to a plasma product collection container."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of sending the plasma product to a plasma product collection container as claimed in the '873 Patent.

865. Claim 17 of the '873 Patent also recites in part, "wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the plasma product collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP)."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

866. As described above in relation to claim 1, on information and belief, the controller of the NexSys PCS device is configured to operate the draw and return phases until a volume of raw plasma collected equals the target volume of raw plasma. For example, the NexSys PCS User

[176] NexSys PCS User Manual, at 10, 41, 68.

Manual describes how the device measures the collection volume of plasma and ends the collection cycle "when the plasma target collection has been achieved."[177]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the plasma product collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP) as claimed in the '873 Patent. Haemonetics refers to the cited document that speaks for itself.

867. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step "wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the plasma product collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP)."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step of wherein the controller is further configured to operate the draw and return phases until a volume of raw plasma (VRP) in the plasma product collection container equals the target volume of raw plasma, the volume of raw plasma (VRP) based on a measured volume of plasma product (VPP) as claimed in the '873 Patent.

868. Claim 18 of the '873 Patent recites: "The method of claim 17, wherein ACR = Volume of Whole Blood/Volume of Anticoagulant."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

869. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 18 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

[177] NexSys PCS User Manual, at 25.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

870. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

871. The ACR used in the NexSys PCS PERSONA is equal to the volume of whole blood divided by the volume of anticoagulant. For example, where the system combines 16 units of whole blood with 1 unit of anticoagulant, the ACR is 16/1 or 16. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "wherein ACR = Volume of Whole Blood/Volume of Anticoagulant."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step wherein ACR = Volume of Whole Blood/Volume of Anticoagulant as claimed in the '873 Patent.

872. Claim 19 of the '873 Patent recites: "The method of claim 17, further comprising performing donor qualification screening using the donor management system, wherein the donor parameters received from the donor management system comprise the donor weight and height and hematocrit (Hct)."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

873. The use of the Accused Haemonetics Products meets each element of claim 19 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

874. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

875. The use of the NexSys PCS PERSONA with a donor management system (such as NexLynk DMS) in electronic communication with the controller, is designed to use donor parameters (*e.g.*, weight, height hematocrit) received from the donor management system to perform qualification screening (*e.g.*, verify the identity of the donor). Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "performing donor qualification screening using the donor

management system, wherein the donor parameters received from the donor management system comprise the donor weight and height and hematocrit (Hct)."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step performing donor qualification screening using the donor management system, wherein the donor parameters received from the donor management system comprise the donor weight and height and hematocrit (Hct) as claimed in the '873 Patent.

876. Claim 20 of the '873 Patent recites: "The method of claim 17, wherein the controller is programmed to calculate the target volume of raw plasma (VRP) by calculating a fraction of the total donor blood volume or the total donor plasma volume."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

877. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 20 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

878. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

879. The controller of the NexSys PCS PERSONA using the PERSONA nomogram is programmed to calculate a target volume of raw plasma by calculating a fraction of the total donor plasma volume. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "The method of claim 17, wherein the controller is programmed to calculate the target volume of raw plasma (VRP) by calculating a fraction of the total donor blood volume or the total donor plasma volume."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step wherein the controller is programmed to calculate the target volume of raw plasma (VRP) by calculating a

fraction of the total donor blood volume or the total donor plasma volume as claimed in the ’873 Patent.

880. Claim 21 of the ‘873 Patent recites: “The method of claim 17, further comprising operating the draw and return phases at least three times and further comprising determining a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’873 Patent.

881. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 21 of the ‘873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

882. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

883. The controller of the NexSys PCS PERSONA can be programmed to collect at least three draw and return phases and to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: “operating the draw and return phases at least three times and further comprising determining a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase.”

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step operating the draw and return phases at least three times and further comprising determining a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase as claimed in the ’873 Patent.

884. Claim 22 of the ‘873 Patent recites: “The method of claim 17, further comprising combining the anticoagulant with the whole blood at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant.”

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

885. The use of the NexSys PCS PERSONA with a Disposable Kit meets each element of claim 22 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

886. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

887. The NexSys PCS PERSONA mixes anticoagulant with the donor's whole blood as whole blood is drawn from the donor to prevent blood from clotting. NexSys PCS PERSONA combines anticoagulant with the whole blood from the donor at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "combining the anticoagulant with the whole blood at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step combining the anticoagulant with the whole blood at an anticoagulant ratio (ACR) of about 16 parts of whole blood to 1 part of anticoagulant as claimed in the '873 Patent.

888. Claim 23 of the '873 Patent recites: "The method of claim 17, further comprising: calculating the target volume for raw plasma at the donor management system based at least in part on the donor height and weight used to calculate the total donor blood volume and the hematocrit used to calculate the total donor plasma volume; and transmitting the target volume for raw plasma from the donor management system to the controller."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '873 Patent.

889. The use of the Accused Haemonetics Products meets each element of claim 23 of the '873 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 26.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

890. As explained above, the use of the NexSys PCS PERSONA with a Disposable Kit by end users such as customers and phlebotomists following the instructions provided by Haemonetics in at least the NexSys PCS User Manual will perform the method of claim 17.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

891. The target volume for raw plasma collection with the NexSys PCS PERSONA using the PERSONA nomogram is based on a calculated percentage of the donor's total plasma volume, and the hematocrit, weight and height of the donor. This calculation can be done at the donor management system. The user manual for the NexSys PCS device states that when the device is connected to a BECS or compatible central monitoring software system, the target volume for raw plasma is transmitted from the donor management system to the controller. Accordingly, end users such as customers and phlebotomists following the instructions provided by Haemonetics in the NexSys PCS User Manual will perform the step: "calculating the target volume for raw plasma at the donor management system based at least in part on the donor height and weight used to calculate the total donor blood volume and the hematocrit used to calculate the total donor plasma volume; and transmitting the target volume for raw plasma from the donor management system to the controller."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS performs the step calculating the target volume for raw plasma at the donor management system based at least in part on the donor height and weight used to calculate the total donor blood volume and the hematocrit used to calculate the total donor plasma volume; and transmitting the target volume for raw plasma from the donor management system to the controller as claimed in the '873 Patent.

892. In addition to end users of the Accused Haemonetics Products, on information and belief, Haemonetics and its agents directly infringe at least claims 1-10 and 12-23 of the '873 Patent by using the Accused Haemonetics Products in the United States (for example in tests and commercial demonstrations) according to the instructions and guidance that Haemonetics provides to its end customers in the NexSys PCS User Manual and the NexSys PCS Service Manual.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

893. Additionally, on information and belief, the infringing acts of third parties (such as Haemonetics' customers, clients, partners, and end users such as clinicians and phlebotomists) are attributable to Haemonetics. Haemonetics' partners, clients, customers, and/or end users in the United States lease and/or buy the Accused Haemonetics Products across this country, including in this District. On information and belief, Haemonetics directs and controls the activities or actions of its third-party customers with respect to the Accused Haemonetics Products through contractual agreement, or otherwise providing, or requiring customers to provide, information and

instructions to end users of the Accused Haemonetics Products which, when followed and used, result in infringement of the '873 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

894. In addition to directly infringing the '873 Patent, Haemonetics has indirectly infringed the '873 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '873 Patent (including claims 1-10 and 12-23) at least by using the Accused Haemonetics Products in plasma donation centers. On information and belief, Haemonetics markets, offers to sell/lease, and/or sells/leases the Accused Haemonetics Products to customers and/or end users. On additional information and belief, Haemonetics provides, *inter alia*, training, written guidance (*e.g.*, User Manuals and Service Manuals), technical assistance, promotional materials, sales and marketing materials, and/or demonstrations to customers and end users.[178] On information and belief, these acts induce said third parties to perform acts intended by Haemonetics to cause direct infringement of the '873 Patent. On information and belief, Haemonetics performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '873 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph and refers to the cited document that speaks for itself.

895. Haemonetics has had knowledge of the '873 Patent since at least the filing of these Counterclaims. Haemonetics has had knowledge that the induced acts of its customers and end users constitutes infringement of the '873 Patent since at least the filing of these Counterclaims.

**ANSWER:** Haemonetics admits it has had knowledge of the '873 Patent since at least the filing of the Counterclaims. Haemonetics otherwise denies the remaining allegations in this paragraph.

896. Haemonetics has also indirectly infringed the '873 Patent (including claims 1-10 and 12-23) as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to the infringement of the '873 Patent by third parties, such as its customers and end users. Such third parties infringe the '873 Patent (including claims 1-10 and 12-23) at least by using the Accused Haemonetics Products in plasma donation centers. Haemonetics' affirmative acts of making, importing, leasing, and/or selling the Accused Haemonetics Products contributes to the infringement of the '873 Patent because those components constitute a material part of the invention of the '873 Patent (as their use practices all limitations of the claims), are specially made or adapted for use in infringing the '873 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

---

[178] *See, e.g.*, NexSys PCS Service Manual; NexSys PCS User Manual; NexSys PCS PERSONA Brochure; NexSys PCS Brochure.

897. As a consequence of Haemonetics' direct and indirect infringement of the '873 Patent, both literally and under the doctrine of equivalents, Fenwal has been and continues to be irreparably harmed.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

898. Due to Haemonetics' infringing acts, Fenwal has been and will be damaged in an amount to be determined at trial.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

899. On information and belief, unless enjoined, Haemonetics will continue to infringe the '873 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 9: INFRINGEMENT OF U.S. PATENT NO. 12,144,624**

900. Fenwal realleges and incorporates the allegations set forth in the foregoing paragraphs 1-899 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

901. On information and belief, Haemonetics has infringed and continues to infringe, directly and indirectly, literally and/or under the doctrine of equivalents, at least claims 1, 2, 7, and 8 of the '624 Patent by making, importing, using, offering for sale/lease, and/or selling/leasing the NexSys PCS PERSONA and Disposable Kits in the United States. The use of the Accused Haemonetics Products meets each limitation of each of foregoing claims, literally and/or under the doctrine of equivalents, as described in Exhibit 27, which is incorporated herein by reference. Fenwal reserves the right to assert additional claims of the '624 Patent against Haemonetics based on discovery that will become available in due course.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

902. Claim 1 of the '624 Patent recites:

> 1. A system for collecting plasma from a donor comprising:
>
> a) a venipuncture needle for withdrawing whole blood from the donor,
>
> b) a blood separator for separating the whole blood into a plasma product and a second blood component comprising red blood cells;

> c) a donor line coupled to the venipuncture needle for introducing whole blood from the donor to the blood separator;
>
> d) a first pump for controlling flow through the donor line;
>
> e) an anticoagulant line coupled to an anticoagulant source for combining anticoagulant with the whole blood;
>
> f) a second pump for controlling flow through the anticoagulant line;
>
> g) a touchscreen is provided for receiving input from an operator; and
>
> h) a programmable controller configured to: determine a target volume of plasma product to be collected (TVPP) based on a weight of the donor, or based on a weight and height of the donor, and a percentage of anticoagulant in the target volume of plasma product to be collected (% ACTVPP) based on a pre-determined anticoagulant ratio (ACR) and a hematocrit (Hct) of the donor, control the system to operate a draw and return cycle to withdraw whole blood from the donor, add anticoagulant to the whole blood at a pre-determined ratio (ACR), separate the anticoagulated whole blood into the plasma product and the second component and to return the second component to the donor, and stop withdrawing whole blood from the donor and initiate a final return of the second blood component when a measured volume of plasma product in a plasma collection container reaches the target volume for plasma product, TVPP.

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’624 Patent.

903. The NexSys PCS PERSONA with the Disposable Kit practices claim 1 of the ‘624 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 27.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

904. To the extent the preamble is limiting, the NexSys PCS PERSONA and the Disposable Kit comprise a system for collecting plasma from a donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA and the Disposable Kit comprise a system for collecting plasma from a donor as claimed in the ’624 Patent.

905. The Disposable Kit used with the NexSys PCS PERSONA includes a venipuncture needle for withdrawing whole blood from the donor.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Disposable Kit used with the NexSys PCS PERSONA includes a venipuncture needle for withdrawing whole blood from the donor as claimed in the ’624 Patent.

906. The Disposable Kit used with the NexSys PCS PERSONA includes a disposable bowl to separate the whole blood into a plasma product and a second blood component comprising red blood cells. The NexSys PCS PERSONA includes a centrifuge which holds the disposable bowl in place during device operation.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Disposable Kit used with the NexSys PCS PERSONA includes a blood separator for separating the whole blood into a plasma product and a second blood component comprising red blood cells as claimed in the ’624 Patent.

907. The Disposable Kit used with the NexSys PCS PERSONA include a donor line coupled to the venipuncture needle for introducing whole blood from the donor to the blood separator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Disposable Kit used with the NexSys PCS PERSONA include a donor line coupled to the venipuncture needle for introducing whole blood from the donor to the blood separator as claimed in the ’624 Patent.

908. The NexSys PCS PERSONA includes a blood pump (“first pump”) for controlling fluid flow through the donor line.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA includes a blood pump (“first pump”) for controlling fluid flow through the donor line as claimed in the ’624 Patent.

909. The Disposable Kit used with the NexSys PCS PERSONA includes an anticoagulant line coupled to an anticoagulant source (an anticoagulant bag) for combining anticoagulant with the whole blood.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the Disposable Kit used with the NexSys PCS PERSONA includes an anticoagulant line coupled to an anticoagulant source (an anticoagulant bag) for combining anticoagulant with the whole blood as claimed in the ’624 Patent.

910. The NexSys PCS PERSONA includes an anticoagulant pump (“second pump”) for controlling anticoagulant flow through the anticoagulant line.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA includes an anticoagulant pump (“second pump”) for controlling anticoagulant flow through the anticoagulant line as claimed in the ’624 Patent.

911. The NexSys PCS PERSONA includes a touchscreen for receiving input from an operator.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA includes a touchscreen for receiving input from an operator as claimed in the ’624 Patent.

912. The NexSys PCS PERSONA includes a programmable controller that is configured to perform the following actions:

a. determine a target volume of plasma product to be collected (TVPP) based on a weight of the donor, or based on a weight and height of the donor, and a percentage of anticoagulant in the target volume of plasma product to be collected (% ACTVPP) based on a pre-determined anticoagulant ratio (ACR) and a hematocrit (Hct) of the donor;

b. control the plasmapheresis system to operate a draw and return cycle to withdraw whole blood from the donor;

c. add anticoagulant to the whole blood at a pre-determined ratio (ACR);

d. separate the anticoagulated whole blood into the plasma product and the second component and to return the second component to the donor; and

e. stop withdrawing whole blood from the donor and initiate a final return of the second blood component when a measured volume of plasma product in a plasma collection container reaches the target volume for plasma product, TVPP.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS PERSONA includes a programmable controller configured to: determine a target volume of plasma product to be collected (TVPP) based on a weight of the donor, or based on a weight and height of the donor, and a percentage of anticoagulant in the target volume of plasma product to be collected (% ACTVPP) based on a pre-determined anticoagulant ratio (ACR) and a hematocrit (Hct) of the donor, control the system to operate a draw and return cycle to withdraw whole blood from the donor, add anticoagulant to the whole blood at a pre-determined ratio (ACR), separate the anticoagulated whole blood into the plasma product and the second component and to return the second component to the donor, and stop withdrawing whole blood from the donor and initiate a final return of the second blood component when a measured volume of plasma product in a plasma collection container reaches the target volume for plasma product, TVPP as claimed in the '624 Patent.

913. Claim 2 recites "the system of claim 1, wherein the controller is further programmed to calculate (i) a target volume of pure plasma product to be collected (TVP) from the weight of the donor and (ii) the percentage of anticoagulant in the target volume of plasma product to be collected, % ACTVPP, based on the pre-determined anticoagulant ratio, ACR, and the hematocrit, Hct, of the donor, wherein the TVPP=TVP/(1−% ACTVPP)."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '624 Patent.

914. The NexSys PCS PERSONA with the Disposable Kit practices claim 2 of the '624 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 27.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

915. As explained above, the NexSys PCS PERSONA with a Disposable Kit form a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

916. A controller in the NexSys PCS PERSONA is programmed to calculate a target volume of pure plasma product to be collected (TVP) from the weight of the donor. Specifically, the PERSONA nomogram uses donor weight to calculate the donor's total blood volume. In turn, total blood volume is used to determine total plasma volume. The target volume of pure plasma is calculated as 28.5% of total plasma volume.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the NexSys PCS system controller is programmed to calculate (i) a target volume of pure plasma product to be collected (TVP) from the weight of the donor and (ii) the percentage of anticoagulant in the target volume of plasma product to be collected, % ACTVPP, based on the pre-determined anticoagulant ratio, ACR, and the hematocrit, Hct, of the donor, wherein the TVPP=TVP/(1−% ACTVPP) as claimed in the '624 Patent.

917. Claim 7 recites "the system of claim 1, wherein ACR is the ratio of the amount of whole blood to the amount of anticoagulant (ACR=WB/AC), and the controller is further configured to determine the percent of anticoagulant in the target volume of plasma product, % ACTVPP, such that % ACTVPP=1/(1+ACR (1−Hct))."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the '624 Patent.

918. The NexSys PCS PERSONA with the Disposable Kit practices claim 7 of the '624 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 27.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

919. As explained above, the NexSys PCS PERSONA with the Disposable Kit forms a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

920. The NexSys PCS PERSONA can use an ACR wherein the ACR is equal to the volume of whole blood divided by the volume of anticoagulant. Moreover, on information and belief, a controller in the NexSys PCS PERSONA is configured to determine the percent of anticoagulant in the target volume of plasma product such that % ACTVPP = 1/(1+ACR (1−Hct)).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that in the NexSys PCS system ACR is the ratio of the amount of whole blood to the amount of anticoagulant (ACR=WB/AC), and the controller is further configured to determine the percent of anticoagulant in the target volume of plasma product, % ACTVPP, such that % ACTVPP=1/(1+ACR (1−Hct)) as claimed in the ’624 Patent.

921. Claim 8 recites: "The system of claim 1, wherein ACR is the ratio of volume of whole blood plus the volume of anticoagulant to the volume of anticoagulant (ACR=(WB+AC)/AC), and the controller is further configured to determine the percent of anticoagulant in the target volume of plasma product, % ACTVPP, such that % ACTVPP=1/(1+(ACR−1)(1−Hct))."

**ANSWER:** Haemonetics admits the allegations in this paragraph based on the language in the ’624 Patent.

922. The NexSys PCS PERSONA with the Disposable Kit practices claim 8 of the '624 Patent, literally and/or under the doctrine of equivalents, as explained in Exhibit 27.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

923. As explained above, the NexSys PCS PERSONA with the Disposable Kit forms a system that practices claim 1.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

924. The NexSys PCS PERSONA can use an ACR wherein the ACR is equal to the volume of whole blood divided by the volume of anticoagulant. For example, where the system combines 16 units of whole blood with 1 unit of anticoagulant, the ACR is 16+1/1 or 17. Moreover, on information and belief, a controller in the NexSys PCS PERSONA is configured to determine the percent of anticoagulant in the target volume of plasma product such that % ACTVPP = 1/(1+ACR (1−Hct)).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies that in the NexSys PCS system wherein ACR is the ratio of volume of whole blood plus the volume of anticoagulant to the volume of anticoagulant

(ACR=(WB+AC)/AC), and the controller is further configured to determine the percent of anticoagulant in the target volume of plasma product, % ACTVPP, such that % ACTVPP=1/(1+(ACR−1)(1−Hct)) as claimed in the '624 Patent.

925. Haemonetics directly infringes at least claims 1, 2, 7, and 8 of the '624 Patent by using (including in tests, commercial demonstrations, and clinical trials), making, importing, offering for sale/lease, selling, and/or leasing the NexSys PCS PERSONA with the Disposable Kit in the United States.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

926. Additionally, on information and belief, the infringing acts of third parties (such as Haemonetics' customers, clients, partners, and end users such as clinicians and phlebotomists) are attributable to Haemonetics. Haemonetics' partners, clients, customers, and/or end users in the United States lease and/or buy the Accused Haemonetics Products across this country, including in this District. On information and belief, Haemonetics directs and controls the activities or actions of its third-party customers with respect to the Accused Haemonetics Products through contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Haemonetics Products which, when followed and used, result in infringement of the '624 Patent, including at least claims 1, 2, 7, and 8.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

927. In addition to directly infringing the '624 Patent, Haemonetics has indirectly infringed the '624 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '624 Patent (including claims 1, 2, 7, and 8) at least by using the NexSys PCS PERSONA with the Disposable Kit in plasma donation centers. On information and belief, Haemonetics markets, offers to sell/lease, and/or sells/leases the Accused Haemonetics Products to customers and/or end users. On additional information and belief, Haemonetics provides, *inter alia*, training, written guidance (*e.g.*, User Manuals and Service Manuals), technical assistance, promotional materials, sales and marketing materials, and/or demonstrations to customers and end users.[179] On information and belief, these acts induce said third parties to perform acts intended by Haemonetics to cause direct infringement of the '624 Patent (including claims 1, 2, 7, and 8). On information and belief, Haemonetics performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '624 Patent (including claims 1, 2, 7, and 8).

---

[179] *See, e.g.*, NexSys PCS Service Manual; NexSys PCS User Manual; NexSys PCS PERSONA Brochure; NexSys PCS Brochure.

**ANSWER:** Haemonetics denies the allegations in this paragraph and refers to the cited documents which speak for themselves.

928. Haemonetics has had knowledge of the '624 Patent since at least the filing of these Counterclaims. Haemonetics has had knowledge that the induced acts of its customers and end users constitutes infringement of the '624 Patent since at least the filing of these Counterclaims.

**ANSWER:** Haemonetics admits it has had knowledge of the '624 Patent since at least the filing of these Counterclaims. Haemonetics otherwise denies the remaining allegations in this paragraph.

929. Haemonetics has also indirectly infringed the '624 Patent (including claims 1, 2, 7, and 8) as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to the infringement of the '624 Patent by third parties, such as its customers and end users. Such third parties infringe the '624 Patent (including claims 1, 2, 7, and 8) at least by using the Accused Haemonetics Products in plasma donation centers. Haemonetics' affirmative acts of making, importing, leasing, and/or selling the Accused Haemonetics Products contributes to the infringement of the '624 Patent because those components constitute a material part of the invention of the '624 Patent (as they embody all limitations of the claims), are specially made or adapted for use in infringing the '624 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

930. As a consequence of Haemonetics' direct and indirect infringement of the '624 Patent, both literally and under the doctrine of equivalents, Fenwal has been and continues to be irreparably harmed.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

931. Due to Haemonetics' infringing acts, Fenwal has been and will be damaged in an amount to be determined at trial.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

932. On information and belief, unless enjoined, Haemonetics will continue to infringe the '624 Patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 10: NON-INFRINGEMENT OF U.S. PATENT NO. 10,758,652**

933. Fenwal repeats and realleges paragraphs 1-932 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

934. Based on at least the allegations contained in the Haemonetics' First Amended Complaint against Fenwal (ECF No. 32), an actual and justiciable controversy exists between Fenwal and Haemonetics concerning alleged infringement of the U.S. Patent No. 10,758,652 ("the '652 patent").

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics admits it has asserted patent infringement claims against Fenwal regarding the '652 patent.

935. Fenwal has not made, used, offered to sell, or sold any alleged invention claimed in the '652 patent within the United States, or imported any alleged invention claimed in the '652 patent into the United States. Fenwal therefore has not infringed and does not currently infringe any asserted claim of the '652 patent, literally or under the doctrine of equivalents, directly or indirectly. For example, with respect to asserted claim 11, Fenwal has not made, used, offered to sell, sold, or imported within or into the United States any system that includes the following (to the extent such terms are understandable at this junction without the benefit of formal claim construction): "the controller configured to calculate (1) a volume of anticoagulant in the collected plasma component as the plasma component is being collected in the plasma container, and (2) a volume of pure plasma collected within the plasma container based, at least in part, upon the volume of anticoagulant in the collected plasma component, the controller configured to stop the blood draw pump when a target volume of pure plasma is collected within the plasma container."

**ANSWER:** Haemonetics denies the allegations in this paragraph.

936. Fenwal has not actively induced any infringement of the '652 patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

937. Fenwal has not contributed to any infringement of the '652 patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

938. Fenwal is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it has not and does not infringe the '652 patent, that it has not actively induced the infringement of the '652 patent, and that it has not contributed to the infringement of the '652 patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 11: INVALIDITY OF U.S. PATENT NO. 10,758,652**

939. Fenwal repeats and re-alleges paragraphs 1-938 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

940. Due to at least the allegations contained in Haemonetics' First Amended Complaint, an actual and justiciable controversy exists between Fenwal and Haemonetics concerning the validity of the '652 patent.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

941. The claims of the '652 patent are invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112. *See also* IPR2025-01391 (petition for *inter partes* review of U.S. Patent No. 10,758,652). The Court may take judicial notice of IPR2025-01391, which is a matter of public record before the USPTO, and which Fenwal incorporates by reference. *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 3651592, at *3 (N.D. Ill. Aug. 1, 2018).

**ANSWER:** Haemonetics denies the allegations in this paragraph.

942. For example, the claims of the '652 patent are anticipated by the prior art, under 35 U.S.C. §§102, and are rendered obvious by the prior art under 35 U.S.C. § 103. The prior art is evidenced by at least the following:

a. U.S. Patent No. 8,075,468 to Min et al. ("Min")

b. U.S. Patent No. 9,370,324 to Barret et al. ("Barrett")

c. U.S. Patent No. 6,296,602 to Headley ("Headley")

d. "Membrane versus centrifuge-based therapeutic plasma exchange: a randomized prospective crossover study," Carsten Hafer et al., Int. Urol. Nephrol (2016) 48:133-138; Springer Science+Business Media Dordrecht 2015.

e. U.S. Patent Publication No. 2017/0029762 ("Turgut")

f. "Volume Limits – Automated Collection of Source Plasma," November 4, 1992, Memorandum issued by the FDA Center for Biologics Evaluation and Research, Docket Number FDA-2013-S-0613.

g. Bruce C. McLeod, MD, et al., "Apheresis: Principles and Practice," 3rd Edition, AABB Press 2010.

h. U.S. Patent Publication No. 2012/0175313 to Barry et al. ("Barry")

i. U.S. Publication No. 2002/0033370 to Bainbridge et al. ("Bainbridge")

j. U.S. Patent No. 10,195,319 to Kimura ("Kimura")

k. U.S. Patent No. 6,743,192 to Sakota et al. ("Sakota")

l. Merleen M. Neyrinck & Hans Vrielink, "Calculations in Apheresis" Journal of Clinical Apheresis 30:38–42 (2015) ("Neyrinck")

m. Samuel B. Nadler et al., Prediction of blood volume in normal human adults, 51 Journal of Investigative Surgery 224-232 (1962) ("Nadler").

**ANSWER:** Haemonetics denies the allegations in this paragraph.

943. Fenwal is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 from this Court that each and every claim of the '652 patent, are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 12: NON-INFRINGEMENT OF U.S. PATENT NO. 12,171,916**

944. Fenwal repeats and realleges paragraphs 1-943 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

945. Based on at least the allegations contained in the Haemonetics' First Amended Complaint against Fenwal (ECF No. 32), an actual and justiciable controversy exists between Fenwal and Haemonetics concerning alleged infringement of the U.S. Patent No. 12,171,916 ("the '916 patent").

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics admits that it has asserted patent infringement claims concerning the '916 patent against Fenwal.

946. Fenwal has not made, used, offered to sell, or sold any alleged invention claimed in the '916 patent within the United States, or imported any alleged invention claimed in the '916 patent into the United States. Fenwal therefore has not infringed and does not currently infringe any asserted claim of the '916 patent, literally or under the doctrine of equivalents, directly or indirectly. For example, with respect to asserted claim 14, the accused Fenwal products do not practice, literally or under the doctrine of equivalents, at least the following limitations (to the extent such terms are understandable at this junction without the benefit of formal claim construction): "a controller programmed to control operation of the system, the controller coupled to the touchscreen and programmed to receive donor parameters electronically from a control system, to determine a target volume for plasma product and/or raw plasma based at least in part on the donor parameters and to control the system to operate draw and return phases to withdraw

whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor."

**ANSWER:** Haemonetics denies the allegations in this paragraph.

947. Fenwal has not actively induced any infringement of the '916 patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

948. Fenwal has not contributed to any infringement of the '916 patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

949. Fenwal is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it has not and does not infringe the '916 patent, that it has not actively induced the infringement of the '916 patent, and that it has not contributed to the infringement of the '916 patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

## COUNT 13: INVALIDITY OF U.S. PATENT NO. 12,171,916

950. Fenwal repeats and re-alleges paragraphs 1-949 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

951. Due to at least the allegations contained in Haemonetics' First Amended Complaint, an actual and justiciable controversy exists between Fenwal and Haemonetics concerning the validity of the '916 patent.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

952. The claims of the '916 patent are invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112. *See also* PGR2025-00078 (petition for post-grant review of U.S. Patent No. 12,171,916). The Court may take judicial notice of PGR2025-00078, which is a matter of public record before the USPTO, and which Fenwal incorporates by reference. *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 3651592, at *3 (N.D. Ill. Aug. 1, 2018).

**ANSWER:** Haemonetics denies the allegations in this paragraph.

953. For example, the claims of the '916 patent are anticipated by the prior art, under 35 U.S.C. §§102, and are rendered obvious by the prior art under 35 U.S.C. § 103. The prior art is evidenced by at least the following:

a. Min

b. Barrett

c. Headley

d. "Membrane versus centrifuge-based therapeutic plasma exchange: a randomized prospective crossover study," Carsten Hafer et al., Int. Urol. Nephrol (2016) 48:133-138; Springer Science+Business Media Dordrecht 2015.

e. Turgut

f. "Volume Limits – Automated Collection of Source Plasma," November 4, 1992, Memorandum issued by the FDA Center for Biologics Evaluation and Research, Docket Number FDA-2013-S- 0613.

g. Bruce C. McLeod, MD, et al., "Apheresis: Principles and Practice," 3rd Edition, AABB Press 2010.

h. Barry

i. Bainbridge

j. Kimura

k. Sakota

l. Merleen M. Neyrinck & Hans Vrielink, "Calculations in Apheresis" Journal of Clinical Apheresis 30:38–42 (2015) ("Neyrinck")

m. Samuel B. Nadler et al., Prediction of blood volume in normal human adults, 51 Journal of Investigative Surgery 224-232 (1962) ("Nadler").

**ANSWER:** Haemonetics denies the allegations in this paragraph.

954. Fenwal is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 from this Court that each and every claim of the '916 patent, are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 14: NON-INFRINGEMENT OF U.S. PATENT NO. 12,186,474**

955. Fenwal repeats and realleges paragraphs 1-954 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

956. Based on at least the allegations contained in the Haemonetics' First Amended Complaint against Fenwal (ECF No. 32), an actual and justiciable controversy exists between Fenwal and Haemonetics concerning alleged infringement of the U.S. Patent No. 12,186,474 ("the '474 patent").

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics admits it has asserted patent infringement allegations against Fenwal concerning the '474 Patent.

957. Fenwal has not made, used, offered to sell, or sold any alleged invention claimed in the '474 patent within the United States, or imported any alleged invention claimed in the '474 patent into the United States. Fenwal therefore has not infringed and does not currently infringe any asserted claim of the '474 patent, literally or under the doctrine of equivalents, directly or indirectly. For example, with respect to asserted claim 9, the accused Fenwal products do not practice, literally or under the doctrine of equivalents, at least the following limitations (to the extent such terms are understandable at this junction without the benefit of formal claim construction): "a controller programmed to control operation of the system, the controller coupled to the touchscreen and programmed to receive at least a donor's weight, height and hematocrit and to determine a target volume for plasma product comprising raw plasma and anticoagulant, wherein the target volume for plasma product is determined prior to withdrawing the whole blood from the donor based at least in part on the donor's total blood volume and/or the donor's plasma volume, the controller programmed to then control the system to operate a plurality of draw and return cycles to withdraw whole blood from the donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor."

**ANSWER:** Haemonetics denies the allegations in this paragraph.

958. Fenwal has not actively induced any infringement of the '474 patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

959. Fenwal has not contributed to any infringement of the '474 patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

960. Fenwal is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it has not and does not infringe the '474 patent, that it has not actively induced the infringement of the '474 patent, and that it has not contributed to the infringement of the '474 patent.

**ANSWER:** Haemonetics denies the allegations in this paragraph.

**COUNT 15: INVALIDITY OF U.S. PATENT NO. 12,186,474**

961. Fenwal repeats and re-alleges paragraphs 1-960 as if fully set forth herein.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

962. Due to at least the allegations contained in Haemonetics' First Amended Complaint, an actual and justiciable controversy exists between Fenwal and Haemonetics concerning the validity of the '474 patent.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Haemonetics denies the allegations in this paragraph.

963. The claims of the '474 patent are invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112. *See also* PGR2025-00077 (petition for post-grant review of U.S. Patent No. 12,186,474). The Court may take judicial notice of PGR2025-00077, which is a matter of public record before the USPTO, and which Fenwal incorporates by reference. *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 3651592, at *3 (N.D. Ill. Aug. 1, 2018).

**ANSWER:** Haemonetics denies the allegations in this paragraph.

964. For example, the claims of the '474 patent are anticipated by the prior art, under 35 U.S.C. §§102, and are rendered obvious by the prior art under 35 U.S.C. § 103. The prior art is evidenced by at least the following:

a. Min

b. Barrett

c. Headley

d. "Membrane versus centrifuge-based therapeutic plasma exchange: a randomized prospective crossover study," Carsten Hafer et al., Int. Urol. Nephrol (2016) 48:133-138; Springer Science+Business Media Dordrecht 2015.

e. Turgut

f. "Volume Limits – Automated Collection of Source Plasma," November 4, 1992, Memorandum issued by the FDA Center for Biologics Evaluation and Research, Docket Number FDA-2013-S- 0613.

g. Bruce C. McLeod, MD, et al., "Apheresis: Principles and Practice," 3rd Edition, AABB Press 2010.

h. Barry

i. Bainbridge

j. Kimura

k. Sakota

l. Merleen M. Neyrinck & Hans Vrielink, "Calculations in Apheresis" Journal of Clinical Apheresis 30:38–42 (2015) ("Neyrinck")

m. Samuel B. Nadler et al., Prediction of blood volume in normal human adults, 51 Journal of Investigative Surgery 224-232 (1962) ("Nadler").

**ANSWER:** Haemonetics denies the allegations in this paragraph.

965. Fenwal is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 from this Court that each and every claim of the '474 patent, are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

**ANSWER:** Haemonetics denies the allegations in this paragraph .

**[FENWAL'S] PRAYER FOR RELIEF**

966. Fenwal respectfully requests that this Court enter judgment in its favor and grant the following relief:

i. A determination that Haemonetics has infringed each of the Fenwal Asserted Patents (the '334 Patent, the '748 Patent, the '693 Patent, the '891 Patent, the '089 Patent, the '251 Patent, the '724 Patent, the '873 Patent, and the '624 Patent).

ii. An award of a permanent injunction enjoining Haemonetics form continuing to infringe, directly and indirectly, the '334, '748, '693, '891, '089, '251, '724, '873, and the '624 Patents;

iii. An award of damages to be paid by Haemonetics adequate to compensate Fenwal for Haemonetics' infringement of the '334, '748, '693, '891, '089, '251, '724, '873, and the '624 Patents that is no less than a reasonable royalty for the

use of the Accused Haemonetics Products or lost profits suffered by Fenwal, as well as pre- and post-judgment interest;

iv. An adjudication that Haemonetics' infringement has been willful and an award of treble damages;

v. A determination and declaratory judgment that Fenwal has not infringed any valid claim of the '652 patent;

vi. A determination and declaratory judgment that each and every claim of the '652 patent is invalid;

vii. A determination and declaratory judgment that Fenwal has not infringed any valid claim of the '916 patent;

viii. A determination and declaratory judgment that each and every claim of the '916 patent is invalid;

ix. A determination and declaratory judgment that Fenwal has not infringed any valid claim of the '474 patent;

x. A determination and declaratory judgment that each and every claim of the '474 patent is invalid;

xi. An order declaring that this is an exceptional case and awarding Fenwal its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117(a) and all other applicable statutes, rules, and common law;

xii. All costs be taxed against Haemonetics; and

xiii. Any such other relief as the Court may deem appropriate and just under the circumstances.

**ANSWER:** Haemonetics denies Fenwal is entitled to any relief sought in Fenwal's Prayer for Relief.

**[FENWAL'S] JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Fenwal, by and through is undersigned counsel, hereby demands a trial by jury on all claims so triable in this action.

**ANSWER:** No response is required to Fenwal's demand for a trial by jury in this case.

**HAEMONETICS' DEFENSES**

1. Without prejudice to the denials set forth in its Answer, and without admitting any allegations of the Counterclaim not expressly admitted, Haemonetics asserts the following defenses to the Counterclaims without assuming the burden of proof on any such defense that would otherwise rest with Fenwal. Haemonetics reserves the right to amend its Answer to add additional defenses, including for example unenforceability due to inequitable conduct, consistent with the facts discovered in this case.

**FIRST DEFENSE (FAILURE TO STATE A CLAIM)**

2. The Counterclaim fails to state a claim upon which relief can be granted.

**SECOND DEFENSE (NON-INFRINGEMENT)**

3. Haemonetics has not infringed and does not infringe, under any theory of infringement including directly, whether individually or jointly, or whether literally or under the doctrine of equivalents, or indirectly, whether contributorily or by inducement, any valid and enforceable claim of U.S. Patent Nos. 10,431,334, 10,643,748, 10,872,693, 11,672,891, 12,397,089, 11,852,251, 11,369,724, 11,730,873, and 12,144,624. Fenwal has not shown, and cannot show, that Haemonetics has infringed any valid and enforceable claim of the Fenwal Asserted Patents.

**THIRD DEFENSE (INVALIDITY)**

4. Each claim of U.S. Patent Nos. 10,431,334, 10,643,748, 10,872,693, 11,672,891, 12,397,089, 11,852,251, 11,369,724, 11,730,873, and 12,144,624 is invalid for failure to comply with one or more of the requirements of the patent laws of the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto. The claims of the Fenwal Asserted Patents are directed to non-statutory subject matter under 35 U.S.C. § 101, are anticipated by the prior art, including prior art disclosed by Haemonetics, under 35 U.S.C. § 102, are rendered obvious by the prior art under 35 U.S.C. § 103, and fail to satisfy the requirements of 35 U.S.C. § 112.

**FOURTH DEFENSE (PROSECUTION HISTORY ESTOPPEL AND PROSECUTION HISTORY DISCLAIMER)**

5. The claims of the Fenwal Asserted Patents are not entitled to a scope sufficient to encompass any system employed by Haemonetics. For example, the doctrines of prosecution history estoppel (based on amendments and arguments made during prosecution of the Fenwal Asserted Patents and related patent applications), disclosure-dedication (based on subject matter stated but not claimed in the Fenwal Asserted Patents), and ensnarement of the prior art, each preclude Fenwal from asserting the Asserted Patents in the manner purportedly stated in the Counterclaim. Accordingly, the doctrine of equivalents is unavailable. Fenwal's claims are further barred in whole or in part by the doctrine of waiver and/or other equitable doctrines.

**FIFTH DEFENSE (LACK OF STANDING)**

6. To the extent that Fenwal is not the sole and total owner of any of the Fenwal Asserted Patents as of the filing date of the Counterclaim, Fenwal lacks standing to assert, in this case, infringement of any claim from such patent.

**SIXTH DEFENSE (FAILURE TO MARK)**

7. Fenwal's recovery of damages is barred or limited by failure to comply with 35 U.S.C. § 287(a).

**SEVENTH DEFENSE (STATUTE OF LIMITATIONS)**

8. Fenwal is barred from recovery, in whole or in part, under the applicable statute of limitations as set forth in 35 U.S.C. § 286.

**EIGHTH DEFENSE (NOT AN EXCEPTIONAL CASE)**

9. The Counterclaims fail to state a claim for exceptional case.

**NINTH DEFENSE (PATENT MISUSE)**

10. Each of the Fenwal Asserted Patents is unenforceable because Fenwal has misused the patents by attempting to impermissibly broaden the scope of the patents, impose anticompetitive conditions, or otherwise extend the patents beyond their lawful scope despite knowing that the Fenwal Asserted Patents are invalid.

**TENTH DEFENSE (EQUITABLE RELIEF)**

11. Fenwal is not entitled to equitable relief because the remedies at law to which it is entitled, if any, are adequate.

**ELEVENTH DEFENSE (NO COSTS)**

12. To the extent any claim of the Fenwal Asserted Patents is invalid, Fenwal is barred by 35 U.S.C. § 288 from recovering costs associated with its action.

**TWELFTH DEFENSE (SAFE HARBOR)**

13. Fenwal's patent infringement claims are barred at least in part by the safe harbor provisions of 35 U.S.C. § 271(e)(1).

**THIRTEENTH DEFENSE (NO WILLFUL INFRINGEMENT)**

14. Haemonetics has not willfully infringed, and does not willfully infringe, any valid claim of any of the Asserted Patents.

**FOURTEENTH DEFENSE (EXHAUSTION)**

15. Fenwal's claims are barred, in whole or in part, by license, implied license, covenant not to sue, patent exhaustion, or other authorization.

**FIFTEENTH DEFENSE (UNCLEAN HANDS)**

16. Fenwal's claims are barred by the doctrine of unclean hands.

**SIXTEENTH DEFENSE (INTERVENING RIGHTS)**

17. Fenwal's claims are barred, in whole or in part, by the doctrines of absolute and equitable intervening rights under 35 U.S.C. §§ 252 and 307(b).

* * *

15. Haemonetics reserves all defenses, at law or equity, which may now exist or in the future be available on discovery and further factual investigation in this case. Haemonetics further reserves the right to supplement and/or amend the foregoing defenses.

Dated: January 16, 2026

/s/ *Erik B. Milch*
Todd J. Ohlms
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone: (312) 962-3550
tohlms@proskauer.com

Erik B. Milch
Elizabeth Shrieves
Proskauer Rose LLP
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004-2533
Telephone: (202) 416-6899
Email: emilch@proskauer.com

Email: eshrieves@proskauer.com

Joseph M. Drayton
Connor J. Villar
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-2900
Email: cvillar@proskauer.com
Email: jdrayton@proskauer.com

Alan S. Teran
Proskauer Rose LLP
2255 Glades Road
Suite 421 Atrium
Boca Raton, FL 33431-7360
Telephone: (561) 995-4723
Email: ateran@proskauer.com

*Counsel for Plaintiff Haemonetics Corporation*