**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HAEMONETICS CORPORATION<br><br>*Plaintiff and Counterclaim Defendant*,<br><br>v.<br><br>FRESENIUS KABI USA, LLC<br>FRESENIUS KABI AG<br>FENWAL, INC.<br><br>*Defendants and Counterclaim Plaintiffs* | Case No.: 1:25-cv-08680<br><br>**JURY TRIAL DEMANDED**<br><br>Honorable LaShonda A. Hunt |

**DEFENDANTS FRESENIUS KABI USA, LLC AND FRESENIUS KABI AG'S COUNTERCLAIMS AND ANSWER AND DEFENSES TO FIRST AMENDED COMPLAINT**

Defendants Fresenius Kabi USA, LLC and Fresenius Kabi AG (collectively "Fresenius"), by and through their undersigned counsel, hereby submit their Counterclaims and Answer and Defenses to the First Amended Complaint (ECF No. 32) filed by Haemonetics Corporation ("Haemonetics").

**FRESENIUS KABI USA, LLC AND FRESENIUS KABI AG'S COUNTERCLAIMS**

For its Counterclaims against Haemonetics, Defendants Fresenius Kabi USA, LLC and Fresenius Kabi AG allege as follows:

**INTRODUCTION**

1. Haemonetics' failure to conduct a diligent investigation into its claims has resulted in a scattershot approach that improperly ensnares defendants Fresenius Kabi USA, LLC and

Fresenius Kabi AG (collectively "Fresenius") in this litigation based on nothing more than "information and belief."

2. Haemonetics filed its Original Complaint against Fresenius Kabi USA, LLC on July 25, 2025. (ECF No. 1). As part of the meet and confer required under the Northern District of Illinois Local Rules prior to filing a motion to dismiss, counsel for Fresenius Kabi USA highlighted the deficiencies in Haemonetics' Complaint against Fresenius Kabi USA, advising that Fresenius Kabi USA had no involvement in the allegations and products described in that complaint.

3. The parties filed a Joint Motion to Vacate Case Deadlines, which the Court granted, to allow time for Haemonetics to investigate the proper parties for the lawsuit. (ECF Nos. 27, 31).

4. Haemonetics' First Amended Complaint ("FAC") contains the same deficiencies identified its Original Complaint, containing only conclusory, formulaic recitations of the elements of direct infringement and lacking any factual content to support its allegations that either Fresenius Kabi USA and/or Fresenius Kabi AG infringe the asserted Haemonetics patents.

5. Haemonetics alleges Fresenius' infringement consists of "market[ing]" and "advertising" activities, "[being] directly associated with the Aurora Xi System," and "own[ing] all copyrights," but these are not acts of alleged infringement. *E.g.,* FAC ¶¶ 123, 145, 172 ("market[ing]"), 19, 20, 26, 27, 70, 125, 147 ("advertising"), ¶ 71 ("associated with"), ¶ 73 ("owns all copyrights"); *see also Smith v. Garlock Equip. Co.*, 658 F. App'x 1017, 1028 (Fed. Cir. 2016) ("[A]dvertisements are not considered offers for sale, but are instead merely solicitations for offers."); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (communications that describe the allegedly infringing materials but "do not contain any price terms . . . on their face . . . cannot be construed as an 'offer' which [the offeree]

could make into a binding contract by simple acceptance"). Nor are postings of YouTube videos (FAC ¶ 70) or serving as correspondent or Applicant on a 510(k) submission (*id.* ¶ 76). *See* 35 U.S.C. § 271(a). Haemonetics' remaining allegations against Fresenius are alleged on "information and belief." *See e.g.*, FAC ¶¶ 3-8, 18, 24, 68-69, 71, 74, 77-78, 80, 123-126, 128, 130, 132, 145-148, 150, 152, 154, 172-175, 177-178, *etc.* (40 allegations based "on information and belief").

6. That Haemonetics' allegations against Fresenius are deficient is not surprising. Neither Fresenius entity "makes" or "manufactures" the accused Aurora Xi plasmapheresis device, nor do they "offer for sale," "sell" or "import" the Aurora Xi or induce parties to engage in any alleged infringing acts related to the Aurora Xi devices.

7. By failing to exercise the requisite due diligence expected before asserting claims of patent infringement, Haemonetics has recklessly cast a cloud of uncertainty over Fresenius and forced them to incur significant, unwarranted litigation costs. Despite having been alerted to this issue by counsel for Fresenius Kabi USA, Haemonetics turned a blind eye. This pattern of behavior suggests a litigation strategy of harassment rather than a good-faith pursuit of legal rights.

8. Consequently, Defendants/Counterclaim Plaintiffs Fresenius Kabi USA, LLC and Fresenius Kabi AG (collectively "Fresenius"), by and through its undersigned attorneys, hereby assert the following counterclaims against Plaintiff/Counterclaim Defendant Haemonetics Corporation ("Haemonetics" or "Counterclaim Defendant") for declaratory judgment that the claims of U.S. Patent Nos. 10,758,652 (the "'652 Patent"), 12,171,916 (the "'916 Patent"), and 12,186,474 (the "'474 Patent") (collectively, the "Haemonetics Asserted Patents") are invalid and not infringed by the products that are the subject matter of Haemonetics' FAC.

## NATURE OF THE ACTION

9. This is an action for: (i) invalidity of the Haemonetics Asserted Patents under the Declaratory Judgment Act (28 U.S.C. § 2201); (ii) non-infringement of the Haemonetics Asserted Patents under 28 U.S.C. § 2201; and (iii) such other relief as the Court deems just and proper.

## THE PARTIES

10. Fresenius Kabi USA, LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business at Three Corporate Drive, Lake Zurich, Illinois 60047.

11. Fresenius Kabi AG is a corporation organized and existing under the laws of Germany with its principal place of business at Else-Kröner-Straße 1, 61352 Bad Homburg, Germany.

12. Haemonetics Corporation is a Massachusetts corporation with its principal place of business at 125 Summer Street, Boston, Massachusetts 02110.

## JURISDICTION

13. This Court has jurisdiction over Fresenius' counterclaims pursuant to 28 U.S.C. §§ 2201 *et seq.* and 28 U.S.C. §§ 1331, 1338(a), and § 1367. Furthermore, an actual, substantial, and continuing justiciable controversy exists between Fresenius and Haemonetics based on Haemonetics having filed its First Amended Complaint (ECF No. 32) against Fresenius alleging infringement of the Haemonetics Asserted Patents. The controversy concerns the invalidity and non-infringement of the Haemonetics Asserted Patents.

14. This Court has personal jurisdiction over Haemonetics at least because Haemonetics has submitted to the personal jurisdiction of this Court by filing its Complaint (ECF No. 1) and First Amended Complaint (ECF No. 32) in this Court. Haemonetics has consented to this Court's jurisdiction for the purpose of this proceeding. FAC ¶ 14.

## VENUE

15. Venue properly lies in this District under 28 U.S.C. §§ 1391 and 1400(b), because Haemonetics has consented to venue in this Court by filing its First Amended Complaint for patent infringement in this Court, and seeking other relief from this Court, thereby waiving any objections to venue for any counterclaims asserted against it. *See, e.g.*, *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 973, 976-77 (N.D. Ill. 2002); *Shapo v. Engle*, No. 98-cv-7909, 2000 WL 198435, at *5 (N.D. Ill. Feb. 11, 2000); *see also* FAC ¶¶ 15-17.

## COUNT 1: NON-INFRINGEMENT OF U.S. PATENT NO. 10,758,652

16. Fresenius repeats and realleges herein by reference the allegations of each of the foregoing paragraphs.

17. Based on at least the allegations contained in the Haemonetics' First Amended Complaint against Fresenius (ECF No. 32), an actual and justiciable controversy exists between Fresenius and Haemonetics concerning alleged infringement of the U.S. Patent No. 10,758,652 ("the '652 patent").

18. Fresenius has not made, used, offered to sell, or sold any alleged invention claimed in the '652 patent within the United States, or imported any alleged invention claimed in the '652 patent into the United States. Fresenius therefore has not infringed and does not currently infringe any asserted claim of the '652 patent, literally or under the doctrine of equivalents, directly or indirectly.

19. Neither Fresenius Kabi AG nor Fresenius Kabi USA "make" or "manufacture" the Aurora Xi, nor does Fresenius Kabi AG or Fresenius Kabi USA "offer for sale," "sell" or "import" the Aurora Xi. Haemonetics alleges Fresenius engaged in "market[ing]" and "advertising," "[is] directly associated with the Aurora Xi System," and "owns all copyrights," but these are not acts of direct infringement. *See e.g.*, FAC ¶¶ 123, 145, 172 ("market[ing]"), ¶¶ 19, 20, 26, 27, 70, 125,

147 ("advertising"), ¶ 71 ("associated with"), ¶ 73 ("owns all copyrights"); *see also Smith v. Garlock Equip. Co.*, 658 F. App'x 1017, 1028 (Fed. Cir. 2016) ("[A]dvertisements are not considered offers for sale, but are instead merely solicitations for offers."); *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 966 (N.D. Ill. 2015) ("To constitute an 'offer to sell' under traditional contract principles, an offer requires a definite price term, otherwise the offeree could make the offer into a binding contract by a simple acceptance."); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1376 (Fed. Cir. 2005) (communications that describe the allegedly infringing materials but "do not contain any price terms . . . on their face . . . cannot be construed as an 'offer' which [the offeree] could make into a binding contract by simple acceptance"). In addition, acting as correspondent on a 510(k) submission is not an act of direct infringement, nor is acting as an Applicant for 510(k) clearance forms. *See* 35 U.S.C. § 271(a); *see also* FAC ¶ 71 (alleged submission of software to FDA).

20. Similarly, neither Fresenius Kabi AG nor Fresenius Kabi USA indirectly infringe the '652 patent. As an initial matter, there is no indirect infringement because there is no direct infringement of the '652 patent by the accused plasmapheresis systems at least because the accused plasmapheresis do not practice, literally or under the doctrine of equivalents, at least the following limitations (to the extent such terms are understandable at this junction without the benefit of formal claim construction): "the controller configured to calculate (1) a volume of anticoagulant in the collected plasma component as the plasma component is being collected in the plasma container, and (2) a volume of pure plasma collected within the plasma container based, at least in part, upon the volume of anticoagulant in the collected plasma component, the controller configured to stop the blood draw pump when a target volume of pure plasma is collected within

the plasma container." Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement. 35 U.S.C. § 271.

21. Fresenius has not actively induced any infringement of the '652 patent. Fresenius lacks the requisite specific knowledge and intent to encourage infringement of the '652 patent.

22. Fresenius has not contributed to any infringement of the '652 patent. Fresenius does not offer to sell, sell, or import the Accused Products or any component thereof into the United States.

23. Fresenius is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it has not and does not infringe the '652 patent, that it has not actively induced the infringement of the '652 patent, and that it has not contributed to the infringement of the '652 patent.

**COUNT 2: INVALIDITY OF U.S. PATENT NO. 10,758,652**

24. Fresenius repeats and realleges herein by reference the allegations of each of the foregoing paragraphs.

25. Due to at least the allegations contained in Haemonetics' First Amended Complaint, an actual and justiciable controversy exists between Fresenius and Haemonetics concerning the validity of the '652 patent.

26. The claims of the '652 patent are invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112. *See also* IPR2025-01391 (petition for *inter partes* review of U.S. Patent No. 10,758,652). The Court may take judicial notice of IPR2025-01391, which is a matter of public record before the USPTO, and which Fresenius incorporates by reference. *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 3651592, at *3 (N.D. Ill. Aug. 1, 2018).

27. For example, the claims of the ’652 patent are anticipated by the prior art, under 35 U.S.C. §§102, and are rendered obvious by the prior art under 35 U.S.C. § 103. The prior art is evidenced by at least the following:

a. U.S. Patent No. 8,075,468 to Min et al. (“Min”)

b. U.S. Patent No. 9,370,324 to Barret et al. (“Barrett”)

c. U.S. Patent No. 6,296,602 to Headley (“Headley”)

d. “Membrane versus centrifuge-based therapeutic plasma exchange: a randomized prospective crossover study,” Carsten Hafer et al., Int. Urol. Nephrol (2016) 48:133-138; Springer Science+Business Media Dordrecht 2015.

e. U.S. Patent Publication No. 2017/0029762 (“Turgut”)

f. “Volume Limits – Automated Collection of Source Plasma,” November 4, 1992, Memorandum issued by the FDA Center for Biologics Evaluation and Research, Docket Number FDA-2013-S-0613.

g. Bruce C. McLeod, MD, et al., “Apheresis: Principles and Practice,” 3rd Edition, AABB Press 2010.

h. U.S. Patent Publication No. 2012/0175313 to Barry et al. (“Barry”)

i. U.S. Publication No. 2002/0033370 to Bainbridge et al. (“Bainbridge”)

j. U.S. Patent No. 10,195,319 to Kimura (“Kimura”)

k. U.S. Patent No. 6,743,192 to Sakota et al. (“Sakota”)

l. Merleen M. Neyrinck & Hans Vrielink, “Calculations in Apheresis” Journal of Clinical Apheresis 30:38–42 (2015) (“Neyrinck”)

m. Samuel B. Nadler et al., Prediction of blood volume in normal human adults, 51 Journal of Investigative Surgery 224-232 (1962) (“Nadler”).

28. Fresenius is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 from this Court that each and every claim of the ’652 patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

**COUNT 3: NON-INFRINGEMENT OF U.S. PATENT NO. 12,171,916**

29. Fresenius repeats and realleges herein by reference the allegations of each of the foregoing paragraphs.

30. Based on at least the allegations contained in the Haemonetics' First Amended Complaint against Fresenius (ECF No. 32), an actual and justiciable controversy exists between Fresenius and Haemonetics concerning alleged infringement of the U.S. Patent No. 12,171,916 ("the '916 patent").

31. Fresenius has not made, used, offered to sell, or sold any alleged invention claimed in the '916 patent within the United States, or imported any alleged invention claimed in the '916 patent into the United States. Fresenius therefore has not infringed and does not currently infringe any asserted claim of the '916 patent, literally or under the doctrine of equivalents, directly or indirectly.

32. Neither Fresenius Kabi AG nor Fresenius Kabi USA "make" or "manufacture" the Aurora Xi, nor does Fresenius Kabi AG or Fresenius Kabi USA "offer for sale," "sell" or "import" the Aurora Xi. Haemonetics alleges Fresenius engaged in "market[ing]" and "advertising," "[is] directly associated with the Aurora Xi System," and "owns all copyrights," but these are not acts of direct infringement. *See e.g.*, FAC ¶¶ 123, 145, 172 ("market[ing]"), ¶¶ 19, 20, 26, 27, 70, 125, 147 ("advertising"), ¶ 71 ("associated with"), ¶ 73 ("owns all copyrights"); *see also Smith v. Garlock Equip. Co.*, 658 F. App'x 1017, 1028 (Fed. Cir. 2016) ("[A]dvertisements are not considered offers for sale, but are instead merely solicitations for offers."); *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 966 (N.D. Ill. 2015) ("To constitute an 'offer to sell' under traditional contract principles, an offer requires a definite price term, otherwise the offeree could make the offer into a binding contract by a simple acceptance."); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1376 (Fed. Cir. 2005) (communications that

describe the allegedly infringing materials but "do not contain any price terms . . . on their face . . . cannot be construed as an 'offer' which [the offeree] could make into a binding contract by simple acceptance"). In addition, acting as correspondent on a 510(k) submission is not an act of direct infringement, nor is acting as an Applicant for 510(k) clearance forms. *See* 35 U.S.C. § 271(a); *see also* FAC ¶ 71 (alleged submission of software to FDA).

33. Similarly, neither Fresenius Kabi AG nor Fresenius Kabi USA indirectly infringe the '916 patent. As an initial matter, there is no indirect infringement because there is no direct infringement of the '916 patent by the accused plasmapheresis systems at least because the accused plasmapheresis do not practice, literally or under the doctrine of equivalents, at least the following limitations (to the extent such terms are understandable at this junction without the benefit of formal claim construction): "a controller programmed to control operation of the system, the controller coupled to the touchscreen and programmed to receive donor parameters electronically from a control system, to determine a target volume for plasma product and/or raw plasma based at least in part on the donor parameters and to control the system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor." Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement. 35 U.S.C. § 271.

34. Fresenius has not actively induced any infringement of the '916 patent. Fresenius lacks the requisite specific knowledge and intent to encourage infringement of the '916 patent.

35. Fresenius has not contributed to any infringement of the '916 patent. Fresenius does not offer to sell, sell, or import the Accused Products or any component thereof into the United States.

36. Fresenius is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it has not and does not infringe the ’916 patent, that it has not actively induced the infringement of the ’916 patent, and that it has not contributed to the infringement of the ’916 patent.

## COUNT 4: INVALIDITY OF U.S. PATENT NO. 12,171,916

37. Fresenius repeats and realleges herein by reference the allegations of each of the foregoing paragraphs.

38. Due to at least the allegations contained in Haemonetics’ First Amended Complaint, an actual and justiciable controversy exists between Fresenius and Haemonetics concerning the validity of the ’916 patent.

39. The claims of the ’916 patent are invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112. *See also* PGR2025-00078 (petition for post-grant review of U.S. Patent No. 12,171,916). The Court may take judicial notice of PGR2025-00078, which is a matter of public record before the USPTO, and which Fresenius incorporates by reference. *Lecat’s Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 3651592, at *3 (N.D. Ill. Aug. 1, 2018).

40. For example, the claims of the ’916 patent are anticipated by the prior art, under 35 U.S.C. §§102, and are rendered obvious by the prior art under 35 U.S.C. § 103. The prior art is evidenced by at least the following:

a. Min

b. Barrett

c. Headley

d. “Membrane versus centrifuge-based therapeutic plasma exchange: a randomized prospective crossover study,” Carsten Hafer et al., Int. Urol. Nephrol (2016) 48:133-138; Springer Science+Business Media Dordrecht 2015.

e. Turgut

f. "Volume Limits – Automated Collection of Source Plasma," November 4, 1992, Memorandum issued by the FDA Center for Biologics Evaluation and Research, Docket Number FDA-2013-S- 0613.

g. Bruce C. McLeod, MD, et al., "Apheresis: Principles and Practice," 3rd Edition, AABB Press 2010.

h. Barry

i. Bainbridge

j. Kimura

k. Sakota

l. Merleen M. Neyrinck & Hans Vrielink, "Calculations in Apheresis" Journal of Clinical Apheresis 30:38–42 (2015) ("Neyrinck")

m. Samuel B. Nadler et al., Prediction of blood volume in normal human adults, 51 Journal of Investigative Surgery 224-232 (1962) ("Nadler").

41. Fresenius is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 from this Court that each and every claim of the '916 patent, are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

**COUNT 5: NON-INFRINGEMENT OF U.S. PATENT NO. 12,186,474**

42. Fresenius repeats and realleges herein by reference the allegations of each of the foregoing paragraphs.

43. Based on at least the allegations contained in the Haemonetics' First Amended Complaint against Fresenius (ECF No. 32), an actual and justiciable controversy exists between Fresenius and Haemonetics concerning alleged infringement of the U.S. Patent No. 12,186,474 ("the '474 patent").

44. Fresenius has not made, used, offered to sell, or sold any alleged invention claimed in the '474 patent within the United States, or imported any alleged invention claimed in the '474

patent into the United States. Fresenius therefore has not infringed and does not currently infringe any asserted claim of the ’474 patent, literally or under the doctrine of equivalents, directly or indirectly.

45. Neither Fresenius Kabi AG nor Fresenius Kabi USA “make” or “manufacture” the Aurora Xi, nor does Fresenius Kabi AG or Fresenius Kabi USA “offer for sale,” “sell” or “import” the Aurora Xi. Haemonetics alleges Fresenius engaged in “market[ing]” and “advertising,” “[is] directly associated with the Aurora Xi System,” and “owns all copyrights,” but these are not acts of direct infringement. *See e.g.*, FAC ¶¶ 123, 145, 172 (“market[ing]”), ¶¶ 19, 20, 26, 27, 70, 125, 147 (“advertising”), ¶ 71 (“associated with”), ¶ 73 (“owns all copyrights”); *see also Smith v. Garlock Equip. Co.*, 658 F. App’x 1017, 1028 (Fed. Cir. 2016) (“[A]dvertisements are not considered offers for sale, but are instead merely solicitations for offers.”); *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 966 (N.D. Ill. 2015) (“To constitute an ‘offer to sell’ under traditional contract principles, an offer requires a definite price term, otherwise the offeree could make the offer into a binding contract by a simple acceptance.”); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1376 (Fed. Cir. 2005) (communications that describe the allegedly infringing materials but “do not contain any price terms . . . on their face . . . cannot be construed as an ‘offer’ which [the offeree] could make into a binding contract by simple acceptance”). In addition, acting as correspondent on a 510(k) submission is not an act of direct infringement, nor is acting as an Applicant for 510(k) clearance forms. *See* 35 U.S.C. § 271(a); *see also* FAC ¶ 71 (alleged submission of software to FDA).

46. Similarly, neither Fresenius Kabi AG nor Fresenius Kabi USA indirectly infringe the ’474 patent. As an initial matter, there is no indirect infringement because there is no direct infringement of the ’474 patent by the accused plasmapheresis systems at least because the accused

plasmapheresis do not practice, literally or under the doctrine of equivalents, at least the following limitations (to the extent such terms are understandable at this junction without the benefit of formal claim construction): "a controller programmed to control operation of the system, the controller coupled to the touchscreen and programmed to receive at least a donor's weight, height and hematocrit and to determine a target volume for plasma product comprising raw plasma and anticoagulant, wherein the target volume for plasma product is determined prior to withdrawing the whole blood from the donor based at least in part on the donor's total blood volume and/or the donor's plasma volume, the controller programmed to then control the system to operate a plurality of draw and return cycles to withdraw whole blood from the donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor." Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement. 35 U.S.C. § 271.

47. Fresenius has not actively induced any infringement of the '474 patent. Fresenius lacks the requisite specific knowledge and intent to encourage infringement of the '474 patent.

48. Fresenius has not contributed to any infringement of the '474 patent. Fresenius does not offer to sell, sell, or import the Accused Products or any component thereof into the United States.

49. Fresenius is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it has not and does not infringe the '474 patent, that it has not actively induced the infringement of the '474 patent, and that it has not contributed to the infringement of the '474 patent.

**COUNT 6: INVALIDITY OF U.S. PATENT NO. 12,186,474**

50. Fresenius repeats and realleges herein by reference the allegations of each of the foregoing paragraphs.

51. Due to at least the allegations contained in Haemonetics' First Amended Complaint, an actual and justiciable controversy exists between Fresenius and Haemonetics concerning the validity of the '474 patent.

52. The claims of the '474 patent are invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112. *See also* PGR2025-00077 (petition for post-grant review of U.S. Patent No. 12,186,474). The Court may take judicial notice of PGR2025-00077, which is a matter of public record before the USPTO, and which Fresenius incorporates by reference. *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 3651592, at *3 (N.D. Ill. Aug. 1, 2018).

53. For example, the claims of the '474 patent are anticipated by the prior art, under 35 U.S.C. §§102, and are rendered obvious by the prior art under 35 U.S.C. § 103. The prior art is evidenced by at least the following:

a. Min

b. Barrett

c. Headley

d. "Membrane versus centrifuge-based therapeutic plasma exchange: a randomized prospective crossover study," Carsten Hafer et al., Int. Urol. Nephrol (2016) 48:133-138; Springer Science+Business Media Dordrecht 2015.

e. Turgut

f. "Volume Limits – Automated Collection of Source Plasma," November 4, 1992, Memorandum issued by the FDA Center for Biologics Evaluation and Research, Docket Number FDA-2013-S- 0613.

g. Bruce C. McLeod, MD, et al., "Apheresis: Principles and Practice," 3rd Edition, AABB Press 2010.

h. Barry

i. Bainbridge

j. Kimura

k. Sakota

l. Merleen M. Neyrinck & Hans Vrielink, "Calculations in Apheresis" Journal of Clinical Apheresis 30:38–42 (2015) ("Neyrinck")

m. Samuel B. Nadler et al., Prediction of blood volume in normal human adults, 51 Journal of Investigative Surgery 224-232 (1962) ("Nadler").

54. Fresenius is entitled to a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 from this Court that each and every claim of the '474 patent, are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

**PRAYER FOR RELIEF**

55. Fresenius respectfully requests that this Court enter judgment in its favor and grant the following relief:

i. A determination and declaratory judgment that Fresenius has not infringed any valid claim of the '652 patent;

ii. A determination and declaratory judgment that each and every claim of the '652 patent is invalid;

iii. A determination and declaratory judgment that Fresenius has not infringed any valid claim of the '916 patent;

iv. A determination and declaratory judgment that each and every claim of the '916 patent is invalid;

v. A determination and declaratory judgment that Fresenius has not infringed any valid claim of the '474 patent;

vi. A determination and declaratory judgment that each and every claim of the '474 patent is invalid;

vii. An order declaring that this is an exceptional case and awarding Fresenius its costs, expenses, and reasonable attorneys' fees under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117(a) and all other applicable statutes, rules, and common law;

viii. All costs be taxed against Haemonetics; and

ix. Any such other relief as the Court may deem appropriate and just under the circumstances.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Fresenius, by and through is undersigned counsel, hereby demands a trial by jury on all claims so triable in this action.

* * *

**DEFENDANTS FRESENIUS KABI USA, LLC AND FRESENIUS KABI AG'S ANSWER AND DEFENSES TO FIRST AMENDED COMPLAINT**

Defendants Fresenius Kabi USA, LLC and Fresenius Kabi AG (collectively "Fresenius"), by and through their undersigned counsel, hereby submit their Answer and Defenses to the First Amended Complaint (ECF No. 32) filed by Haemonetics Corporation ("Haemonetics").

Pursuant to Fed. R. Civ. P. 8(b)(3), Fresenius denies all allegations in Haemonetics' First Amended Complaint ("FAC"), whether express or implied, except those specifically admitted below. Each of the paragraphs 1-178 below corresponds to the same-numbered paragraphs in Haemonetics' FAC. Any factual allegation below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that arguably follow from the admitted facts. Fresenius denies that Haemonetics is entitled to the relief requested or any other relief.

Pursuant to Fed. R. Civ. P. 15(a)(3), Fresenius hereby answers Haemonetics' FAC as follows:

## NATURE OF ACTION[1]

1. This is an action for patent infringement of U.S. Patent Nos. 10,758,652 (the "'652 Patent"), 12,171,916 (the "'916 Patent"), and 12,186,474 (the "'474 Patent") (collectively, the "Asserted Patents"). This action arises under the United States patent laws, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271 and 281.

**ANSWER**: Paragraph 1 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius admits that Haemonetics' FAC purports to be a patent infringement action alleging infringement pursuant to the United States patent laws, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271 and 281. To the extent there are allegations not expressly admitted above, those allegations are denied.

## THE PARTIES

2. Haemonetics is a Massachusetts corporation with its principal place of business at 125 Summer Street, Boston, MA 02110.

**ANSWER**: Fresenius understands based on Haemonetics' Complaint that Haemonetics claims to be a Massachusetts corporation with a principal place of business at 125 Summer Street, Boston, MA 02110. (ECF No. 32 at ¶ 2).

3. On information and belief, Fresenius Kabi USA, LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business at Three Corporate Drive, Lake Zurich, Illinois 60047.

**ANSWER**: Admitted.

4. On information and belief, Fresenius Kabi USA, LLC, alone or in concert with the other Defendants, manufactures and distributes plasma collection systems, including the Aurora Xi Plasmapheresis System (the "Accused Products").

**ANSWER**: Denied.

5. On information and belief, Fresenius Kabi USA, LLC, alone or in concert with the other Defendants, sells and offers to sell products and services throughout the United States, including in this judicial district, and introduces products and services into the stream of commerce

1 Fresenius repeats the headings recited in the FAC for convenience. To the extent such headings contain factual allegations to which a response is required, Fresenius denies all such allegations.

that incorporate infringing technology knowing that they would be sold and or used in this judicial district and elsewhere in the United States.

**ANSWER**: Paragraph 5 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

6. On information and belief, Fresenius Kabi AG is a corporation organized and existing under the laws of Germany with its principal place of business at Else-Kröner-Straße 1, 61352 Bad Homburg, Germany.

**ANSWER**: Admitted.

7. On information and belief, Fresenius Kabi AG, alone or in concert with the other Defendants, manufactures and distributes the "Accused Products".

**ANSWER**: Denied.

8. On information and belief, Fresenius Kabi AG, alone or in concert with the other Defendants, sells and offers to sell products and services throughout the United States, including in this judicial district, and introduces products and services into the stream of commerce that incorporate infringing technology knowing that they would be sold and or used in this judicial district and elsewhere in the United States.

**ANSWER**: Paragraph 8 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

9. On information and belief, Fenwal, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at Three Corporate Drive, Lake Zurich, Illinois 60047.

**ANSWER**: Admitted.

10. On information and belief and based on the representation of defense counsel, Fenwal, Inc., alone or in concert with the other Defendants, manufactures and distributes the "Accused Products".

**ANSWER**: Paragraph 10 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

11. On information and belief and based on the representation of defense counsel, Fenwal, Inc., alone or in concert with the other Defendants, sells and offers to sell products and services throughout the United States, including in this judicial district, and introduces products and services into the stream of commerce that incorporate infringing technology knowing that they would be sold and or used in this judicial district and elsewhere in the United States.

**ANSWER**: Paragraph 11 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

12. All allegations contained within this First Amended Complaint relating to Fenwal, Inc. are based on the representations of defense counsel.

**ANSWER**: Denied.

## JURISDICTION AND VENUE

13. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

**ANSWER**: Paragraph 13 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius admits that Haemonetics purports to bring this action under the Patent Laws of the United States, Title 35 of the United States Code. To the extent there are allegations not expressly admitted above, those allegations are denied.

14. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER**: Paragraph 14 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius does not contest subject matter jurisdiction in the Northern District of Illinois for purposes of this litigation. To the extent there are allegations not expressly admitted above, those allegations are denied.

15. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Fresenius Kabi USA, LLC and Fenwal, Inc. reside in this District, have regular and established places of business in this District, and have committed acts of infringement in this District.

**ANSWER**: Paragraph 15 contains legal conclusions to which no answer is required. To the extent an answer is required, for purposes of this litigation, Fresenius does not contest venue in the Northern District of Illinois. To the extent there are allegations not expressly admitted above, those allegations are denied.

16. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) – (c) because Fresenius Kabi AG has committed acts of infringement in this District, including at least the sale

of infringing Accused Products in this District, and because at least one of the Defendants is incorporated in the State of Delaware.

**ANSWER**: Paragraph 16 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies the allegations.

17. Venue is proper in this judicial district under 28 U.S.C. § 1391(c)(3) because Fresenius Kabi AG is a foreign company and may be sued in any judicial district.

**ANSWER**: Paragraph 17 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies the allegations.

18. Fresenius Kabi USA, LLC is subject to this Court's general and specific personal jurisdiction because, on information and belief, it is registered to do business in the state of Illinois. Fresenius Kabi USA, LLC has purposefully availed itself of the privileges and benefits of the laws of the state of Illinois. And, on information and belief, Fresenius Kabi USA, LLC has sufficient minimum contacts with the state of Illinois, regularly conducts and solicits business within the state of Illinois, and Haemonetics' causes of action arise directly from Fresenius Kabi USA, LLC's business contacts and other activities in the state of Illinois. Additionally, Fresenius Kabi USA, LLC, either directly or through its related entities, has purposefully and voluntarily placed its infringing products into the stream of commerce with the intention and expectation that they will be acquired and used by customers in this District.

**ANSWER**: Paragraph 18 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies the allegations.

19. Fresenius Kabi USA, LLC engages in activities within this judicial district that infringe (directly or indirectly) the Asserted Patents, either literally or under the doctrine of equivalents, including the provision of, use, operation, sales, offering for sale, installation, and advertising of the Accused Products. Fresenius Kabi USA, LLC also infringes the Asserted Patents by making, using, offering for sale, selling, installing, maintaining, providing instructions, and/or advertising the Accused Products within this District, either literally or under the doctrine of equivalents.

**ANSWER**: Paragraph 19 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

20. Fresenius Kabi USA, LLC encourages and induces third parties, including partners and customers, to use the Accused Products in an infringing way at least by advertising and distributing the Accused Products and providing instructions, materials, training, and services regarding the Accused Products.

**ANSWER**: Paragraph 20 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

21. Fenwal, Inc. is subject to this Court's general and specific personal jurisdiction because, on information and belief, it is registered to do business in the state of Illinois. Fenwal, Inc. has purposefully availed itself of the privileges and benefits of the laws of the state of Illinois. And, on information and belief, Fenwal, Inc. has sufficient minimum contacts with the state of Illinois, regularly conducts and solicits business within the state of Illinois, and Haemonetics' causes of action arise directly from Fenwal, Inc.'s business contacts and other activities in the state of Illinois. Additionally, based on the representations of defense counsel, Fenwal, Inc., either directly or through its related entities, has purposefully and voluntarily placed its infringing products into the stream of commerce with the intention and expectation that they will be acquired and used by customers in this District.

**ANSWER**: Paragraph 21 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies any remaining allegations.

22. Fenwal, Inc. engages in activities within this judicial district that infringe (directly or indirectly) the Asserted Patents, either literally or under the doctrine of equivalents, including the provision of, use, operation, sales, offering for sale, installation, and advertising of the Accused Products. Fenwal, Inc. also infringes the Asserted Patents by making, using, offering for sale, selling, installing, maintaining, providing instructions, and/or advertising the Accused Products within this District, either literally or under the doctrine of equivalents.

**ANSWER**: Paragraph 22 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

23. Fenwal, Inc. encourages and induces third parties, including partners and customers, to use the Accused Products in an infringing way at least by advertising and distributing the Accused Products and providing instructions, materials, training, and services regarding the Accused Products.

**ANSWER**: Paragraph 23 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

24. Fresenius Kabi AG is subject to this Court's general and specific personal jurisdiction because, on information and belief, it has purposefully availed itself of the privileges and benefits of the laws of the state of Illinois. And, on information and belief, Fresenius Kabi AG has sufficient minimum contacts with the state of Illinois, regularly conducts and solicits business within the state of Illinois, and Haemonetics' causes of action arise directly from Fresenius Kabi AG's business contacts and other activities in the state of Illinois. Additionally, Fresenius Kabi AG, either directly or through its related entities, has purposefully and voluntarily placed its

infringing products into the stream of commerce with the intention and expectation that they will be acquired and used by customers in this District.

**ANSWER**: Paragraph 24 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

25. Fresenius Kabi AG is also subject to this Court's general and specific personal jurisdiction pursuant to 28 U.S.C. § 1391(c)(3) because it is a foreign company.

**ANSWER**: Paragraph 25 contains legal conclusions to which no answer is required. Fresenius admits Fresenius Kabi AG is a foreign company and denies any remaining allegations.

26. Fresenius Kabi AG engages in activities within this judicial district that infringe (directly or indirectly) the Asserted Patents, either literally or under the doctrine of equivalents, including the provision of, use, operation, sales, offering for sale, installation, and advertising of the Accused Products. Fresenius Kabi AG also infringes the Asserted Patents by making, using, offering for sale, selling, installing, maintaining, providing instructions, and/or advertising the Accused Products within this District, either literally or under the doctrine of equivalents.

**ANSWER**: Paragraph 26 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

27. Fresenius Kabi AG encourages and induces third parties, including partners and customers, to use the Accused Products in an infringing way at least by advertising and distributing the Accused Products and providing instructions, materials, training, and services regarding the Accused Products.

**ANSWER**: Paragraph 27 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius denies those allegations.

## BACKGROUND

28. Haemonetics is a global medical technology company dedicated to improving the quality, effectiveness, safety, and efficiency of healthcare. Haemonetics' innovative solutions address critical medical needs, including end-to-end plasma collection technologies to optimize operations for plasma centers; products to enable blood centers to collect blood components in the greatest demand; and a suite of hospital technologies designed to help enhance clinical outcomes and advance standards of care.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 28 and therefore denies those allegations.

29. Haemonetics Corporation was formed in 1971 by Jack Latham to develop and market apheresis and transfusion systems. Mr. Latham created the revolutionary Latham Bowl, an integral component for separating blood into its various components so that desired components can be collected while unneeded components can be returned to the donor, improving efficiency of donation while decreasing the time the donor must wait to make another donation. Mr. Latham's technology formed a foundation for the apheresis and transfusion systems used today. Haemonetics has been improving upon Mr. Latham's concepts and continuing to innovate in these areas ever since.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 29 and therefore denies those allegations.

30. Haemonetics invests significant resources into these improvements. For example, for the fiscal year that ended March 30, 2024, Haemonetics invested over $64 million in research and development of its products, which is directed out of its laboratory in Boston, Massachusetts.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 30 and therefore denies those allegations.

31. Through its research and development efforts, Haemonetics has become an industry leader in plasma solutions, providing integrated plasma collection systems.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 31, and therefore denies those allegations.

32. Plasma donation centers utilize Haemonetics' systems to collect blood plasma from donors. Haemonetics' systems collect physical characteristic information from a donor, collect the donor's blood, utilize the revolutionary centrifugation bowl technology and method to separate plasma from the donor blood, and then return the blood components, without the plasma, back to the donor.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 32 and therefore denies those allegations.

33. Haemonetics' systems are cleared by the United States Food and Drug Administration (the "U.S. FDA") and actively and commercially used to efficiently collect donated plasma.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 33 and therefore denies those allegations.

34. Human plasma is the indispensable source material for drugs that are known as plasma-derived medicinal products. Most of the plasma intended for fractionation into plasma-derived medicinal products is collected by plasmapheresis and is known as "source plasma." The frequency and volume of source plasma donations are strictly regulated by national regulatory authorities, for example by the U.S. FDA.

**ANSWER**: Fresenius admits that human plasma can be a source material for plasma-derived medicinal products. Fresenius admits that plasmapheresis is a process for the collection of plasma. Fresenius admits that the U.S. FDA has regulations regarding plasma donations. To the extent further answer is required, Fresenius lacks knowledge sufficient to answer and therefore denies those allegations.

35. After more than 20 years commercializing its market-leading PCS®2 plasmapheresis device, in 2017, Haemonetics announced its next generation NexSys PCS® plasmapheresis system, which today is used throughout the United States for plasma donation collection. Haemonetics' NexSys PCS® with YES® Technology, introduced in 2018, provides higher plasma collection volumes per donation by stopping the blood collection volume only when the correct volume of actual plasma, excluding the anticoagulant added during the procedure, has been reached. In 2020, Haemonetics introduced the NexSys PCS® with PERSONA® Technology, a proprietary plasma collection system that yields more plasma per donation on average, resulting in a more efficient donation and more efficient device functionality. Both technologies were significant leaps forward in the plasma collection field when released by Haemonetics, providing a way to collect more plasma per donation on average, thereby optimizing the donation volume for each donor and improving collection efficiency.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 35 and therefore denies those allegations.

36. Haemonetics designs, manufactures, and sells its NexSys PCS® systems to plasma collection companies that use them in the collection of plasma at donation centers around the country. Individual donors are then able to donate plasma utilizing Haemonetics' systems when visiting a donation center.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 36 and therefore denies those allegations.

37. Haemonetics has long been the industry leader in plasma collection systems, with five decades of industry experience and over 75 million collections to date on NexSys PCS®, including over 30 million collections using Persona® Technology. The NexSys PCS® is the industry's most advanced, completely integrated system designed to streamline plasma collections and improve yield, productivity, safety, quality, compliance, and donor satisfaction.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 37 and therefore denies those allegations.

38. Haemonetics has invested millions of dollars into research and development of the NexSys PCS® with YES® Technology and NexSys PCS® with PERSONA® Technology.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 38 and therefore denies those allegations.

## ASSERTED PATENTS

39. During the research and development of its NexSys PCS® systems, Haemonetics recognized that other plasma collection systems were inefficient and not optimized for plasma collection. Plasma collection amounts were primarily based on the U.S. FDA's "simplified nomogram" ("Volume Limits - Automated Collection of Source Plasma," November 1992), which prescribed the amount of blood plasma that could be collected based on three categories of donor weight. Because donors were classified into one of just three weight ranges, however, and because physiology of individual donors varies even within a particular weight category, collections were inefficient and did not tailor the amount of plasma that could safely be taken from an individual donor.

**ANSWER**: Fresenius admits that the U.S. FDA authored a document titled "Volume Limits – Automated Collection of Source Plasma" in November 1992 that references a "simplified nomogram" and included three categories of donor weight. To the extent further answer is required, Fresenius lacks knowledge or information to form a basis as to the truth of the remaining allegations in paragraph 39 and therefore denies those allegations.

40. At the time Haemonetics developed the NexSys PCS® system, plasma collection systems on the market utilized the U.S. FDA's simplified nomogram. Prior collection systems also only focused on the full collection volume of a donation procedure—which includes both anticoagulant and blood plasma—instead of homing in on the actual blood plasma-only volume. So, plasma collections which fell into the U.S. FDA-prescribed ranges indeed included less plasma than allowed because some of the counted volume was merely anticoagulant.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 40 and therefore denies those allegations.

41. Recognizing these deficiencies in prior collection systems, Haemonetics created innovative approaches to plasma collection systems, embodied in their NexSys PCS® with YES® Technology and PERSONA® Technology. These technologies optimized plasma collections on an

individual basis by focusing on accuracy of each collection—based on a donor's individual characteristics—and still ensuring the safety of the donor.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 41 and therefore denies those allegations.

42. The NexSys PCS® with PERSONA® Technology is configured to utilize an individual donor's actual height, weight, and hematocrit to calculate the correct volume of plasma to be collected, within the guidelines the U.S. FDA cleared for YES® (2018) and PERSONA® (2020). This individually tailored approach typically yields an increased amount of plasma collected during one donation, on average, while still ensuring the safety and comfort of the individual donor. In 2020, in a prospective, multicenter, double-blinded, randomized, controlled trial the NexSys PCS® with PERSONA® Technology was used with 3,443 donors in over 23,000 donations to demonstrate a plasma collection yield improvement, on average of 8% per donation as compared to the NexSys PCS® with YES® Technology alone.

**ANSWER**: Fresenius admits that NexSys PCS® with PERSONA® "utilize[s] an individual donor's actual height, weight, and hematocrit" to calculate the volume of plasma to be collected. To the extent that further answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the remaining allegations in paragraph 42 and therefore denies those allegations.

43. Haemonetics' NexSys PCS® with YES® Technology is configured to calculate the volume of actual plasma within the collection container, instead of utilizing the plasma and anticoagulant volume as a base for determining when to stop the collection. Collections performed with the NexSys PCS® system with YES® Technology achieve an average increase in yield of 18-26 mL of plasma per donation over the same system without YES® Technology implemented.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 43 and therefore denies those allegations.

44. Again, this approach and these specially-configured systems allow for increased plasma collection during a single donation without impacting the safety or comfort of the donor. The increases in plasma collected in each procedure offered by Haemonetics' innovations revolutionized the industry. The increases, multiplied by the tens of millions of collections each year, offered hundreds of thousands of liters of additional plasma available to be collected from the same pool of donors, having a value of hundreds of million dollars for the plasma collection/fractionation industry.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 44 and therefore denies those allegations.

45. Haemonetics patented these novel approaches and systems beginning in 2017. The patents acknowledged the issues in the prior art and created novel systems to overcome the existing shortcomings.

**ANSWER**: Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 45 and therefore denies those allegations.

46. For example, as explained in the ’652 Patent: “Prior art plasma collection systems are unable to determine the total volume of plasma that has been collected (*e.g.*, because the product collected is a mixture of plasma and anticoagulant) and, therefore collect based on the total collection volume, even if the total volume of plasma that has been collected is below the limit prescribed by the FDA.” Exhibit A at 1:38-44.

**ANSWER**: Fresenius admits that the ’652 Patent, at 1:38-44, states: “Prior art plasma collection systems are unable to determine the total volume of plasma that has been collected (*e.g.*, because the product collected is a mixture of plasma and anticoagulant) and, therefore collect based on the total collection volume, even if the total volume of plasma that has been collected is below the limit prescribed by the FDA.” To the extent further answer is required, Fresenius lacks knowledge sufficient to answer and therefore denies those allegations.

47. Haemonetics recognized the inefficiencies in existing approaches and patented its systems which optimized the collection process by more efficiently collecting an optimized volume of plasma per-patient with increased accuracy pursuant to U.S. FDA guidelines. The ’652 Patent, which is exemplary of the Asserted Patents, discussed the problems inherent in the preexisting prior art plasma collection systems that the patent improves upon:

> Various embodiment[s] of the present invention provide numerous benefits over prior art plasma collection systems. In particular, as noted above, prior art plasmapheresis devices end plasma collection based on a total volume of anticoagulated plasma (*e.g.*, pure plasma plus the added anticoagulant). Although this is the easiest method because it requires only that the product collection container be weighed, the amount of true product—the pure plasma—is dependent on the donor’s hematocrit. In other words, **prior art systems will collect more plasma from low hematocrit donors than from high hematocrit donors because of the variation of the percentage of anticoagulant in the product.**

*Id.* at 9:53-64 (emphasis added).

**ANSWER**: Fresenius admits the '652 Patent, at 9:53-64, states:

> Various embodiment[s] of the present invention provide numerous benefits over prior art plasma collection systems. In particular, as noted above, prior art plasmapheresis devices end plasma collection based on a total volume of anticoagulated plasma (*e.g.*, pure plasma plus the added anticoagulant). Although this is the easiest method because it requires only that the product collection container be weighed, the amount of true product—the pure plasma—is dependent on the donor's hematocrit. In other words, prior art systems will collect more plasma from low hematocrit donors than from high hematocrit donors because of the variation of the percentage of anticoagulant in the product.

To the extent further answer is required, Fresenius lacks knowledge sufficient to answer and therefore denies those allegations.

48. The plasma collection systems claimed in the Asserted Patents "address the issues of prior art systems by collecting a standard volume (*e.g.*, a target volume) of pure plasma from each donor." *Id.* at 9:65-67. The claimed systems improve upon the accuracy of prior art systems by "using knowledge of the donor's hematocrit and the amount of anticoagulant collected within the plasma collection container 216 (*e.g.*, by counting pump rotations and/or using scale/weight sensors, etc.) to determine the percentage of anticoagulant in the product." *Id*. at 10:2-6.

**ANSWER**: Fresenius admits the '652 Patent contains the following language:

> "address the issues of prior art systems by collecting a standard volume (*e.g.*, a target volume) of pure plasma from each donor."

'652 Patent at 9:65-67; and

> "using knowledge of the donor's hematocrit and the amount of anticoagulant collected within the plasma collection container 216 (*e.g.*, by counting pump rotations and/or using scale/weight sensors, etc.) to determine the percentage of anticoagulant in the product."

'652 Patent at 10:2-6. To the extent further answer is required, Fresenius lacks knowledge sufficient to answer and therefore denies those allegations.

49. The claimed invention allows the blood processing system to optimize plasma collection by tailoring the appropriate amount to each donor based on individualized donor information. Moreover, "by stopping the plasma collection process based on a volume of pure plasma collected, embodiments of the present invention are able to collect a greater volume of

plasma as compared to prior art systems that stop based on a plasma/anticoagulant mixture." *Id.* at 10:6-11.

**ANSWER**: Fresenius admits the '652 Patent contains the following language:

> "by stopping the plasma collection process based on a volume of pure plasma collected, embodiments of the present invention are able to collect a greater volume of plasma as compared to prior art systems that stop based on a plasma/anticoagulant mixture."

'652 Patent at 10:6-11. To the extent further answer is required, Fresenius lacks knowledge sufficient to answer, and therefore denies those allegations.

50. As such, the Asserted Patents are directed to a "blood processing system that collects plasma" which is tailored to the individual donor and which is capable of determining the actual plasma volume within a collection container with accuracy not seen before in this industry. *Id.* at 10:12-13.

**ANSWER**: Fresenius admits the '652 Patent, at 10:13-14, contains the following language: "blood processing system that collects plasma." To the extent further answer is required, Fresenius lacks knowledge sufficient to answer and therefore denies those allegations.

51. The claims of the Asserted Patents recite an improved blood processing system that optimizes plasma collection in a manner that improves upon the prior art. The claimed system is not merely focused on a computerized process via the controller; rather, the claims recite mechanical improvements and other hardware improvements (*e.g.*, optical sensors and weight sensors) that result in an accurate, efficient blood processing system to optimize the amount of plasma collected per donor, while ensuring the safety of the donor.

**ANSWER**: Paragraph 51 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 51 and therefore denies those allegations.

52. The elements claimed by the Asserted Patents, taken alone or in combination, were not well-understood, routine, or conventional to one of ordinary skill in the art at the time of invention. Rather, the Asserted Patents teach unconventional methods and systems, utilizing the novel approaches described above and embodied in Haemonetics' NexSys PCS® YES® and PERSONA® systems.

**ANSWER**: Paragraph 52 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 52 and therefore denies those allegations.

53. As explained in the specifications of the Asserted Patents, these unconventional approaches increase efficiency of the claimed plasma collection systems, resulting in more plasma collected, on average, per-donation, increasing the amount of donated plasma and availability of its components for life saving therapies, ensuring accuracy in the volume of plasma that is collected, without requiring an increase in the number of donations. The claims of the Asserted Patents accordingly describe technological solutions to the problems persistent in prior art collection systems and methods of how to collect the maximum allowable plasma volume from each donor. And these novel methods and systems result in maximum plasma collection volume without sacrificing a donor's comfort level or safety.

**ANSWER**: Paragraph 53 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 53 and therefore denies those allegations.

54. The systems and methods covered by the Asserted Patents, therefore, differ from prior art collection systems and methods in use at the time of invention. The prior art systems lacked the novel features of the Asserted Patents, including, for example, tailoring collection volumes based on an individual donor's physical characteristics, determining the volume of actual plasma within a collection container, utilizing plasma weighers and optical sensors, and/or configuring an all-in-one plasma collection system capable of carrying out these methods.

**ANSWER**: Paragraph 54 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 54 and therefore denies those allegations.

55. By enabling a plasma collection system to perform these calculations and determinations resulting in a more efficient and accurate machine, the claims are directed to specific, unconventional improvements to the way plasma collection systems operate. Moreover, the claimed standalone plasma collection system can collect blood, provide anticoagulant, separate plasma, return blood components, and utilize a controller to make determinations about the correct volume of plasma and calculate that volume. The claimed invention constitutes an unconventional and novel approach and system that optimizes plasma collection.

**ANSWER**: Paragraph 55 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 55 and therefore denies those allegations.

56. The dependent claims are further directed to specific, unconventional improvements to the way plasma collection systems operate. They claim nuances in the specific ways in which target collection volume is calculated, which individual characteristics are used in performing calculation determinations, and different ways to configure the controller using identified ratios. The written description of the Asserted Patents provides details regarding these different calculations and ways of configuring the collection device to carry out the claimed methods.

**ANSWER**: Paragraph 56 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 56 and therefore denies those allegations.

57. The specific combination of claim elements recite systems and methods for a continuous nomogram for an individual donor in a way that had never been done before. This individualized nomogram created a new solution in the plasma donation industry. The inventive combinations of claim elements, whether previously known or unknown, constitute inventive concepts.

**ANSWER**: Paragraph 57 contains legal conclusions to which no answer is required. To the extent an answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 57 and therefore denies those allegations.

58. Haemonetics is the assignee and owner of the right, title, and interest in and to the ’652 Patent, including the right to assert all causes of action arising under the ’652 Patent and the right to any remedies for infringement thereof.

**ANSWER**: Paragraph 58 contains legal conclusions to which no answer is required. Fresenius admits Haemonetics Corporation is listed as the Assignee on the face of the ’652 Patent. To the extent a further answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 58 and therefore denies those allegations.

59. The ’652 Patent, entitled “System and Method for Collecting Plasma,” was duly issued by the United States Patent and Trademark Office on September 1, 2020 to Michael Ragusa.

The ’652 Patent issued from United States Patent Application No. 15/608,183 which was filed on May 30, 2017. A copy of the ’652 Patent is attached as Exhibit A.

**ANSWER**: Fresenius admits the ’652 Patent states “System and Method for Collecting Plasma,” “Inventor: Michael Ragusa,” “Date of Patent: Sept. 1, 2020,” “Appl. No.: 15/608,183,” and “Filed: May 30, 2017.” Fresenius admits Exhibit A of the FAC purports to be a copy of the ’652 Patent. To the extent a further answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 59 and therefore denies those allegations.

60. The ’652 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**ANSWER**: Denied.

61. Haemonetics is the assignee and owner of the right, title, and interest in and to the ’916 Patent, including the right to assert all causes of action arising under the ’916 Patent and the right to any remedies for infringement thereof.

**ANSWER**: Paragraph 61 contains legal conclusions to which no answer is required. Fresenius admits Haemonetics Corporation is listed as the Assignee on the face of the ’916 Patent. To the extent a further answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 61 and therefore denies those allegations.

62. The ’916 Patent, entitled “System and Method for Collecting Plasma,” was duly issued by the United States Patent and Trademark Office on December 24, 2024 to Michael Ragusa. The ’916 Patent issued from United States Patent Application No. 17/205,374 which was filed on March 18, 2021. A copy of the ’916 Patent is attached as Exhibit B.

**ANSWER**: Fresenius admits the ’916 Patent states “System and Method for Collecting Plasma,” “Inventor: Michael Ragusa,” “Date of Patent: *Dec. 24, 2024,” “Appl. No.: 17/205,374,” and “Filed: Mar. 18, 2021.” Fresenius admits Exhibit B of the FAC purports to be a copy of the ’916 Patent. To the extent a further answer is required, Fresenius lacks sufficient knowledge or

information to form a basis as to the truth of the allegations in paragraph 62 and therefore denies those allegations.

63. The ’916 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**ANSWER**: Denied.

64. Haemonetics is the assignee and owner of the right, title, and interest in and to the ’474 Patent, including the right to assert all causes of action arising under the ’474 Patent and the right to any remedies for infringement thereof.

**ANSWER**: Paragraph 64 contains legal conclusions to which no answer is required. Fresenius admits Haemonetics Corporation is listed as the Assignee on the face of the ’474 Patent. To the extent a further answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 64 and therefore denies those allegations.

65. The ’474 Patent, entitled “System and Method for Collecting Plasma,” was duly issued by the United States Patent and Trademark Office on January 7, 2025 to Michael Ragusa. The ’474 Patent issued from United States Patent Application No. 17/205,400 which was filed on March 18, 2021. A copy of the ’474 Patent is attached as Exhibit C.

**ANSWER**: Fresenius admits the ’474 Patent states “System and Method for Collecting Plasma,” “Inventor: Michael Ragusa,” “Date of Patent: *Jan. 7, 2025,” “Appl. No.: 17/205,400,” and “Filed: Mar. 18, 2021.” Fresenius admits Exhibit C of the FAC purports to be a copy of the ’474 Patent. To the extent a further answer is required, Fresenius lacks sufficient knowledge or information to form a basis as to the truth of the allegations in paragraph 65 and therefore denies those allegations.

66. The ’474 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**ANSWER**: Denied.

67. Fresenius Kabi USA LLC has had knowledge of the ’652 Patent, the ’916 Patent, and the ’474 Patent at least since the filing of the first Complaint on July 25, 2025.

**ANSWER**: Denied.

68. On information and belief, Fresenius Kabi AG and Fenwal, Inc. have had knowledge of the ’652 Patent, the ’916 Patent, and the ’474 Patent at least since the filing of the original Complaint on July 25, 2025.

**ANSWER**: Denied.

**ACCUSED PRODUCTS**

69. On information and belief, Defendants make, use, sell, offer for sale, and/or import the Aurora Xi Plasmapheresis System (“Aurora Xi System”).

**ANSWER**: Denied.

70. For example, the Aurora Xi System is advertised on Fresenius Kabi USA, LLC’s website. *See, e.g.,* https://plasma.fresenius-kabi.us/devices/; https://www.fresenius-kabi.com/us/products/medtech. On its website, Fresenius Kabi USA, LLC provides “plasma support” and “customer service” through Fresenius Kabi email addresses: plasma.us@fresenius-kabi.com and MDservice.usa@fresenius-kabi.com. See https://plasma.fresenius-kabi.us/devices/. Similarly, that website includes plasma support, customer service, and sales phone numbers which connect to Fresenius Kabi. Id. Fresenius Kabi USA, LLC also provides publicly-available videos on YouTube regarding these systems. *See, e.g.,* https://www.youtube.com/watch?v=F1fBzM2gcdk.

**ANSWER**: Fresenius admits the Aurora Xi System is referenced on the website https://plasma.fresenius-kabi.us/devices/. Fresenius denies that the Aurora Xi System is referenced on the website https://www.fresenius-kabi.com/us/products/medtech. Fresenius admits the phrases “plasma support” and “customer service” and the email addresses plasma.us@fresenius-kabi.com and MDservice.usa@fresenius-kabi.com appear on the website https://plasma.fresenius-kabi.us/devices/. Fresenius admits phone numbers appear on the website https://plasma.fresenius-kabi.us/devices/. Fresenius also admits the Aurora Xi System is shown in the video at https://www.youtube.com/watch?v=F1fBzM2gcdk. Fresenius denies any of these websites demonstrate Fresenius makes, uses, sells, offers for sale, and/or imports the Aurora Xi Plasmapheresis System (“Aurora Xi System”). To the extent a further answer is required, Fresenius denies those allegations.

71. Fresenius Kabi AG is also directly associated with the Aurora Xi System according to publicly-available sources. For example, when the Aurora Xi System received FDA clearance

on January 24, 2025, the applicant was listed as "Fresenius Kabi AG."[2] *See* https://www.fda.gov/media/185301/download. Fresenius Kabi AG referred to this on its May 7, 2025 Q1 earnings call as follows: "we received FDA clearance for ***our*** new Adaptive Nomogram software. We expect to distribute this to more than 160 US plasma collection centers by the end of 2025." https://www.fresenius.com/sites/default/files/2025-05/Fresenius_Transcript_Q1_25_20250507.pdf (emphasis added). The Fresenius Kabi AG 2024 Annual Report further acknowledged that it was Fresenius Kabi AG who "developed a software solution to optimize plasma yield and donor efficiency" and submitted it to the FDA in 2024. https://www.fresenius.com/sites/default/files/2025-03/Fresenius_Annual_Report_2024.pdf at 101. This same Annual Report indicates that the "disposable products for ***our*** Aurora Xi" are produced in the Haina plant in the Dominican Republic. *Id.* at 125. Thus, on information and belief, Fresenius Kabi AG and/or Fresenius Kabi USA, LLC imports these disposable products into the United States for sale.

**ANSWER**: Fresenius admits https://www.fda.gov/media/185301/download states "Applicant Name: Fresenius Kabi AG." Fresenius admits https://www.fresenius.com/sites/default/files/2025-05/Fresenius_Transcript_Q1_25_20250507.pdf is a "Transcript Conference Call Q1 2025 results" with Fresenius SE & Co. KGaA corporate participants. In the transcript, Michael Sen, the CEO of Fresenius SE & Co. KGaA, stated "we received FDA clearance for our new Adaptive Nomogram software. We expect to distribute this to more than 160 US plasma collection centers by the end of 2025." Fresenius admits the https://www.fresenius.com/sites/default/files/2025-03/Fresenius_Annual_Report_2024.pdf website is a "Fresenius Annual Report" that states: "For our plasma donation product, Aurora Xi, we developed a software solution to optimize plasma yield and donor efficiency. The corresponding clinical study was successfully completed, and the software update was submitted to the FDA for review in October 2024." Fresenius denies the allegation that "[t]his same Annual Report indicates that the 'disposable products for our Aurora

[2] Notably, the correspondent address for the 2025 FDA application was that belonging to both Fresenius Kabi USA, LLC and Fenwal, Inc. further demonstrating the interplay between all three Defendant entities as it pertains to the Accused Products. https://www.fda.gov/media/185301/download.

Xi' are produced in the Haina plant in the Dominican Republic," as the exact quotation provided by Haemonetics does not appear in the Annual Report. Fresenius admits the Annual Report states "disposable products of the successor system, Aurora Xi, are also produced in Haina." Fresenius objects to the footnote on the bottom of page 17 of the FAC pursuant Fed. Rule Civ. Pro. 10(b) as improper. Fresenius denies any remaining allegations of paragraph 71 including statements in footnotes on page 17 of the FAC.

72. Moreover, the Aurora Xi operator's manual published in 2025 lists Fresenius Kabi AG on the cover page. https://eifu.fresenius-kabi.com/medtech/pages/viewers/pdf?projectKey=66941d1caf17220d655e1cc7&itemKey=67be172ce73ea60e227ff26d. The same manual provides "Manufacturing facility / Manufactured by: Fresenius Kabi Warrendale," a Fresenius Kabi manufacturing facility in Warrendale, Pennsylvania. *Id.*

**ANSWER**: Fresenius admits the Aurora Xi operator's manual found at https://eifu.fresenius-kabi.com/medtech/pages/viewers/pdf?projectKey=66941d1caf17220d655e1cc7&itemKey=67be172ce73ea60e227ff26d lists Fresenius Kabi AG on the cover page and states "Manufacturing facility / Manufactured by: Fresenius Kabi Warrendale 770 Commonwealth Drive Warrendale, PA 15086 USA." Fresenius denies any remaining allegations of paragraph 72.

73. Additionally, Fresenius Kabi AG owns all copyrights to the "Fresenius Kabi Transfusion and Cell Technologies Product Catalog" which includes the Aurora Xi system and accessories (at pages 23-25). https://www.fresenius-kabi.com/content/dam/fresenius-kabi/us/documents/products/medtech/catalogs/Transfusion%20and%20Cell%20Technologies%20Product%20Catalog.pdf.coredownload.inline.pdf.

**ANSWER**: Fresenius admits that the "Fresenius Kabi Transfusion and Cell Technologies Product Catalog" available at https://www.fresenius-kabi.com/content/dam/fresenius-kabi/us/documents/products/medtech/catalogs/Transfusion%20and%20Cell%20Technologies%20Product%20Catalog.pdf.coredownload.inline.pdf, states "Copyright © 2025 Fresenius Kabi AG"

and references the "Aurora Xi Plasmapheresis System." Fresenius denies any remaining allegations of paragraph 73.

74. Accordingly, on information and belief both Fresenius Kabi USA, LLC and Fresenius Kabi AG are involved with the make, use, sale, offer for sale, and importation of the Accused Products.

**ANSWER**: Denied.

75. Based on the representation of defense counsel, Fenwal, Inc. makes, uses, sells, offers for sale, and/or imports the Aurora Xi System.

**ANSWER**: Paragraph 75 contains legal conclusions to which a response is not required. To the extent a response is required, Fresenius denies any such allegations.

76. Defendants' Aurora Xi System is used to collect blood, process and remove plasma, and return blood to a donor. The Aurora Xi System received FDA clearances in September 2016 and December 2022. On January 24, 2025, Fresenius received clearance from the FDA for the Aurora Xi System with an "Adaptive Nomogram." *See* https://www.fresenius-kabi.com/us/news-and-events/receives-fda-510k-clearance-adaptive-nomogram-enhancing-plasma-collection-efficiency-aurora-xi-plasmapheresis-system; *see* also https://www.fda.gov/vaccines-blood-biologics/substantially-equivalent-510k-device-information/bk251160-adaptive-nomogram-bottle (Fresenius Kabi AG received FDA clearance for the Adaptive Nomogram Bottle). According to Fresenius, among the Adaptive Nomogram's innovative features, "[t]he newly cleared Adaptive Nomogram considers each donor's individual characteristics in calculating the volume of plasma to collect, enabling an average 11.5% increase in plasma collection per donation." *Id.*

**ANSWER**: Fresenius admits the website https://www.fresenius-kabi.com/us/news-and-events/receives-fda-510k-clearance-adaptive-nomogram-enhancing-plasma-collection-efficiency-aurora-xi-plasmapheresis-system states "Fresenius Kabi Receives FDA 510(k) Clearance for Adaptive Nomogram, Enhancing Plasma Collection Efficiency with the Aurora Xi Plasmapheresis System" and "[t]he newly cleared Adaptive Nomogram considers each donor's individual characteristics in calculating the volume of plasma to collect, enabling an average 11.5% increase in plasma collection per donation while maintaining safe and effective operation," and bears the date January 28, 2025. Fresenius also admits the website https://www.fda.gov/vaccines-blood-biologics/substantially-equivalent-510k-device-

information/bk251160-adaptive-nomogram-bottle references 510(k) Number BK251160, which relates to "Device Name: Adaptive Nomogram Bottle" and references a "Decision Date: 2/21/2025." To the extent there are allegations not expressly admitted above, Fresenius lacks knowledge sufficient to answer, and therefore denies those allegations.

77. On information and belief, Defendants have made the Accused Products available to third parties, including Haemonetics customers.

**ANSWER**: Denied.

78. On information and belief, each Defendant, either alone or in combination with one another, makes, sells, offers for sale, and distributes the Accused Products.

**ANSWER**: Denied.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,758,652

79. Haemonetics realleges and incorporates the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER**: Paragraph 79 does not contain allegations that require a response. To the extent a response is required, Fresenius denies any allegations.

80. On information and belief, Defendants have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claims 11, 13, 14, 15, 16, 17, and 18 of the '652 Patent by making, using, selling, and/or offering for sale the Accused Products.

**ANSWER**: Denied.

81. Claim 11 of the '652 Patent covers a novel plasma collection system and recites:

A system for collecting plasma comprising:

a venous-access device for drawing whole blood from a subject and returning blood components to the subject;

a blood component separation device for separating the drawn blood into a plasma component and a second blood component, the blood component separation device having an outlet and being configured to send the plasma component to a plasma container;

a blood draw line fluidly connected to the venous-access device and configured to transport drawn whole blood to the blood component separation device, the flow through the blood draw line being controlled by a blood draw pump;

an anticoagulant line connected to an anticoagulant source, the anticoagulant line configured to introduce anticoagulant into the drawn whole blood; and

a controller configured to control the operation of the blood component separation device and the blood draw pump, the controller configured to calculate (1) a volume of anticoagulant in the collected plasma component as the plasma component is being collected in the plasma container, and (2) a volume of pure plasma collected within the plasma container based, at least in part, upon the volume of anticoagulant in the collected plasma component, the controller configured to stop the blood draw pump when a target volume of pure plasma is collected within the plasma container.

**ANSWER:** Fresenius admits Claim 11 of the '652 Patent states:

A system for collecting plasma comprising:

a venous-access device for drawing whole blood from a subject and returning blood components to the subject;

a blood component separation device for separating the drawn blood into a plasma component and a second blood component, the blood component separation device having an outlet and being configured to send the plasma component to a plasma container;

a blood draw line fluidly connected to the venous-access device and configured to transport drawn whole blood to the blood component separation device, the flow through the blood draw line being controlled by a blood draw pump;

an anticoagulant line connected to an anticoagulant source, the anticoagulant line configured to introduce anticoagulant into the drawn whole blood; and

a controller configured to control the operation of the blood component separation device and the blood draw pump, the controller configured to calculate (1) a volume of anticoagulant in the collected plasma component as the plasma component is being collected in the plasma container, and (2) a volume of pure plasma collected within the plasma container based, at least in part, upon the volume of anticoagulant in the collected plasma component, the controller configured to stop the blood draw pump when a target volume of pure plasma is collected within the plasma container.

To the extent there are allegations not expressly admitted above, those allegations are denied.

82. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

83. The Accused Products are systems for collecting plasma.

**ANSWER**: Paragraph 83 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products are systems for collecting plasma as claimed in the ’652 Patent.

84. The Accused Products have a venous-access device for drawing whole blood from a subject and returning blood components to the subject.

**ANSWER**: Paragraph 84 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a venous-access device for drawing whole blood from a subject and returning blood components to the subject as required by the system for collecting plasma as claimed in the ’652 Patent.

85. The Accused Products have a blood component separation device for separating the drawn blood into a plasma component and a second blood component, the blood component separation device having an outlet and being configured to send the plasma component to a plasma container.

**ANSWER**: Paragraph 85 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a blood component separation device for separating the drawn blood into a plasma component and a second blood component, the blood component separation device having an outlet and being configured to send the plasma component to a plasma container as required by the system for collecting plasma as claimed in the ’652 Patent.

86. The Accused Products have a blood draw line fluidly connected to the venous-access device and configured to transport drawn whole blood to the blood component separation device, the flow through the blood draw line being controlled by a blood draw pump.

**ANSWER**: Paragraph 86 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a blood draw line fluidly connected to the venous-access device and configured to transport drawn whole blood to

the blood component separation device, the flow through the blood draw line being controlled by a blood draw pump as required by the system for collecting plasma as claimed in the ’652 Patent.

87. The Accused Products have an anticoagulant line connected to an anticoagulant source, the anticoagulant line configured to introduce anticoagulant into the drawn whole blood.

**ANSWER**: Paragraph 87 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have an anticoagulant line connected to an anticoagulant source, the anticoagulant line configured to introduce anticoagulant into the drawn whole blood as required by the system for collecting plasma as claimed in the ’652 Patent.

88. The Accused Products have a controller configured to control the operation of the blood component separation device and the blood draw pump.

**ANSWER**: Paragraph 88 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a controller configured to control the operation of the blood component separation device and the blood draw pump as required by the system for collecting plasma as claimed in the ’652 Patent.

89. The controllers of the Accused Products are configured to calculate a volume of anticoagulant in the collected plasma component as the plasma component is being collected in the plasma container.

**ANSWER**: Paragraph 89 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have controllers that are configured to calculate a volume of anticoagulant in the collected plasma component as the plasma component is being collected in the plasma container as required by the system for collecting plasma as claimed in the ’652 Patent.

90. The controllers of the Accused Products are also configured to calculate a volume of pure plasma collected within the plasma container based, at least in part, upon the volume of anticoagulant in the collected plasma component.

**ANSWER**: Paragraph 90 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have controllers that are also configured to calculate a volume of pure plasma collected within the plasma container based, at least in part, upon the volume of anticoagulant in the collected plasma component as required by the system for collecting plasma as claimed in the '652 Patent.

91. The controllers of the Accused Products are configured to stop the blood draw pump when a target volume of pure plasma is collected within the plasma container.

**ANSWER**: Paragraph 91 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have controllers that are configured to stop the blood draw pump when a target volume of pure plasma is collected within the plasma container as required by the system for collecting plasma as claimed in the '652 Patent.

92. Claim 13 of the '652 Patent depends from claim 11 and recites:

A system according to claim 11, further comprising:

an anticoagulant source weight sensor configured to measure the weight of the anticoagulant source,

the controller further configured to monitor a change in volume within the anticoagulant source based on the measured weight of the anticoagulant source,

the calculated volume of anticoagulant in the collected plasma component being based, at least in part, on the change in volume within the anticoagulant source.

**ANSWER**: Fresenius admits Claim 13 of the '652 Patent purports to depend from claim 11 of the '652 Patent. Fresenius admits that Claim 13 recites:

A system according to claim 11, further comprising:

an anticoagulant source weight sensor configured to measure the weight of the anticoagulant source,

the controller further configured to monitor a change in volume within the anticoagulant source based on the measured weight of the anticoagulant source,

the calculated volume of anticoagulant in the collected plasma component being based, at least in part, on the change in volume within the anticoagulant source.

To the extent there are allegations not expressly admitted above, those allegations are denied.

93. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

94. The Accused Products are a system according to claim 11. *See* ¶¶ 81-91, supra.

**ANSWER**: Denied.

95. The Accused Products include an anticoagulant source weight sensor configured to measure the weight of the anticoagulant source.

**ANSWER**: Paragraph 95 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products include an anticoagulant source weight sensor configured to measure the weight of the anticoagulant source as required by the system for collecting plasma as claimed in the '652 Patent.

96. The Accused Products have a controller further configured to monitor a change in volume within the anticoagulant source based on the measured weight of the anticoagulant source.

**ANSWER**: Paragraph 96 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a controller further configured to monitor a change in volume within the anticoagulant source based on the measured weight of the anticoagulant source as required by the system for collecting plasma as claimed in the '652 Patent.

97. The Accused Products calculate the volume of anticoagulant in the collected plasma component based, at least in part, on the change in volume within the anticoagulant source.

**ANSWER**: Paragraph 97 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products calculate the volume of anticoagulant in the collected plasma component based, at least in part, on the change in volume within the anticoagulant source as required by the system for collecting plasma as claimed in the '652 Patent.

98. Claim 14 of the ’652 Patent depends from claim 11 and recites:

> A system according to claim 11, wherein the controller is configured to monitor a number of rotations of an anticoagulant pump to determine a volume of anticoagulant introduced into the whole blood,
>
> the calculated volume of anticoagulant in the collected plasma component being based, at least in part, on the number of rotations of the anticoagulant pump.

**ANSWER**: Fresenius admits Claim 14 of the ’652 Patent purports to depend from claim 11 of the ’652 Patent. Fresenius admits that Claim 14 recites:

> A system according to claim 11, wherein the controller is configured to monitor a number of rotations of an anticoagulant pump to determine a volume of anticoagulant introduced into the whole blood,
>
> the calculated volume of anticoagulant in the collected plasma component being based, at least in part, on the number of rotations of the anticoagulant pump.

To the extent there are allegations not expressly admitted above, those allegations are denied.

99. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

100. The Accused Products are a system according to claim 11. *See* ¶¶ 81-91, *supra.*

**ANSWER**: Denied.

101. The Accused Products have a controller configured to monitor a number of rotations of an anticoagulant pump to determine a volume of anticoagulant introduced into the whole blood.

**ANSWER**: Paragraph 101 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a controller configured to monitor a number of rotations of an anticoagulant pump to determine a volume of anticoagulant introduced into the whole blood as required by the system for collecting plasma as claimed in the ’652 Patent.

102. The Accused Products calculate the volume of anticoagulant in the collected plasma component based, at least in part, on the number of rotations of the anticoagulant pump.

**ANSWER**: Paragraph 102 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products calculate the volume of anticoagulant in the collected plasma component based, at least in part, on the number of rotations of the anticoagulant pump as required by the system for collecting plasma as claimed in the '652 Patent.

103. Claim 15 of the '652 Patent depends from claim 11 and recites:

A system according to claim 11, further comprising:

an optical sensor located on the blood component separation device and configured to monitor the contents of the blood component separation device and determine if a volume of anticoagulant remains within the blood component separation device,

the calculated volume of anticoagulant in the collected plasma component being based, at least in part, on the volume of anticoagulant within the blood component separation device.

**ANSWER**: Fresenius admits Claim 15 of the '652 Patent purports to depend from claim 11 of the '652 Patent. Fresenius admits that Claim 15 recites:

A system according to claim 11, further comprising:

an optical sensor located on the blood component separation device and configured to monitor the contents of the blood component separation device and determine if a volume of anticoagulant remains within the blood component separation device,

the calculated volume of anticoagulant in the collected plasma component being based, at least in part, on the volume of anticoagulant within the blood component separation device.

To the extent there are allegations not expressly admitted above, those allegations are denied.

104. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

105. The Accused Products are a system according to claim 11. *See* ¶¶ 81-91, *supra.*

**ANSWER**: Denied.

106. The Accused Products include an optical sensor located on the blood component separation device and configured to monitor the contents of the blood component separation device and determine if a volume of anticoagulant remains within the blood component separation device.

**ANSWER**: Paragraph 106 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products include an optical sensor located on the blood component separation device and configured to monitor the contents of the blood component separation device and determine if a volume of anticoagulant remains within the blood component separation device as required by the system for collecting plasma as claimed in the ’652 Patent.

107. The Accused Products calculate the volume of anticoagulant in the collected plasma component based, at least in part, on the volume of anticoagulant within the blood component separation device.

**ANSWER**: Paragraph 107 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products calculate the volume of anticoagulant in the collected plasma component based, at least in part, on the volume of anticoagulant within the blood component separation device as required by the system for collecting plasma as claimed in the ’652 Patent.

108. Claim 16 of the ’652 Patent depends from claim 11 and recites:

A system according to claim 11, further comprising:

a plasma container weight sensor configured to monitor a volume of plasma component collected within the plasma container,

the calculated volume of pure plasma collected within the plasma component based, at least in part, on the monitored volume of collected plasma component.

**ANSWER**: Fresenius admits Claim 16 of the ’652 Patent purports to depend from claim 11 of the ’652 Patent. Fresenius admits that Claim 16 recites:

A system according to claim 11, further comprising:

a plasma container weight sensor configured to monitor a volume of plasma component collected within the plasma container,

the calculated volume of pure plasma collected within the plasma component based, at least in part, on the monitored volume of collected plasma component.

To the extent there are allegations not expressly admitted above, those allegations are denied.

109. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

110. The Accused products are a system according to claim 11. *See* ¶¶ 81-91, *supra*.

**ANSWER**: Denied.

111. The Accused Products include a plasma container weight sensor configured to monitor a volume of plasma component collected within the plasma container.

**ANSWER**: Paragraph 111 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products include a plasma container weight sensor configured to monitor a volume of plasma component collected within the plasma container as required by the system for collecting plasma as claimed in the '652 Patent.

112. The Accused Products calculate the volume of pure plasma collected within the plasma component based, at least in part, on the monitored volume of collected plasma component.

**ANSWER**: Paragraph 112 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products calculate the volume of pure plasma collected within the plasma component based, at least in part, on the monitored volume of collected plasma component as required by the system for collecting plasma as claimed in the '652 Patent.

113. Claim 17 of the '652 Patent depends from claim 11 and recites:
A system according to claim 11, further comprising:

a plasma container weight sensor configured to monitor a weight of plasma component collected within the plasma container,

the calculated volume of pure plasma collected within the plasma component based, at least in part, on the monitored weight of collected plasma component.

**ANSWER**: Fresenius admits Claim 17 of the '652 Patent purports to depend from claim 11 of the '652 Patent. Fresenius admits that Claim 17 recites:

A system according to claim 11, further comprising:

a plasma container weight sensor configured to monitor a weight of plasma component collected within the plasma container,

the calculated volume of pure plasma collected within the plasma component based, at least in part, on the monitored weight of collected plasma component.

To the extent there are allegations not expressly admitted above, those allegations are denied.

114. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

115. The Accused Products are a system according to claim 11. *See* ¶¶ 81-91, *supra*.

**ANSWER**: Denied.

116. The Accused Products include a plasma container weight sensor configured to monitor a weight of plasma component collected within the plasma container.

**ANSWER**: Paragraph 116 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products include a plasma container weight sensor configured to monitor a weight of plasma component collected within the plasma container as required by the system for collecting plasma as claimed in the '652 Patent.

117. The Accused Products calculate the volume of pure plasma collected within the plasma component based, at least in part, on the monitored weight of collected plasma component.

**ANSWER**: Paragraph 117 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products calculate the volume of pure plasma collected within the plasma component based, at least in part, on the monitored weight of collected plasma component as required by the system for collecting plasma as claimed in the '652 Patent.

118. Claim 18 of the '652 Patent depends from claim 11 and recites:

A system according to claim 11, further comprising:

an optical sensor located on the blood component separation device and configured to monitor a volume of red blood cells collected within the blood component separation device,

the controller configured to determine the subject's hematocrit based, at least in part, upon on the monitored volume of red blood cells collected within the blood component separation device and a volume of whole blood withdrawn from the subject.

**ANSWER**: Fresenius admits Claim 18 of the '652 Patent purports to depend from claim 11 of the '652 Patent. Fresenius admits that Claim 18 recites:

A system according to claim 11, further comprising:

an optical sensor located on the blood component separation device and configured to monitor a volume of red blood cells collected within the blood component separation device,

the controller configured to determine the subject's hematocrit based, at least in part, upon on the monitored volume of red blood cells collected within the blood component separation device and a volume of whole blood withdrawn from the subject.

To the extent there are allegations not expressly admitted above, those allegations are denied.

119. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

120. The Accused Products are a system according to claim 11. *See* ¶¶ 81-91, *supra.*

**ANSWER**: Denied.

121. The Accused Products include an optical sensor located on the blood component separation and configured to monitor a volume of red blood cells collected within the blood component separation device.

**ANSWER**: Paragraph 121 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products include an optical sensor located on the blood component separation and configured to monitor a volume of red blood cells collected within the blood component separation device as required by the system for collecting plasma as claimed in the '652 Patent.

122. The Accused Products have a controller configured to determine the subject's hematocrit based, at least in part, on the monitored volume of red blood cells collected within the blood component separation device and a volume of whole blood withdrawn from the subject.

**ANSWER**: Paragraph 122 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a controller configured to determine the subject's hematocrit based, at least in part, on the monitored volume of red blood cells collected within the blood component separation device and a volume of whole blood withdrawn from the subject as required by the system for collecting plasma as claimed in the '652 Patent.

123. On information and belief, Defendants market and sell the Accused Products in the United States to their partners, clients, customers, and/or end users who use the Accused Products across this country and in this District.

**ANSWER**: Denied.

124. On information and belief, Defendants have induced and continue to induce others to infringe at least one claim of the '652 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Defendants' partners, clients, customers, and/or end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the '652 Patent.

**ANSWER**: Denied.

125. In particular, on information and belief, Defendants' actions that aid and abet others such as their partners, clients, customers, and/or end users to infringe include advertising and distributing the Accused Products and providing instruction materials, training, and services regarding the Accused Products.

**ANSWER**: Denied.

126. On information and belief, Defendants are liable for contributory infringement of the '652 Patent under 35 U.S.C. § 271(c) for offering to sell and selling in the United States the Accused Products which are especially made or adapted for use to infringe the '652 Patent. The Accused Products are a material component for use in practicing the '652 Patent, are specifically made for an infringing use, and are not a staple article of commerce suitable for a non-infringing use. For example, the Accused Products and the example functionality described above have no substantial non-infringing uses, but are specifically designed to practice the claims of the '652 Patent. The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose. Indeed, the Accused Products are plasma collection

systems, containing all the structural elements claimed in the ’652 Patent, specifically designed for plasma collection.

**ANSWER**: Denied.

127. In addition, the Accused Products provided by Defendants constitute a material part of the claimed invention, providing all components and features of the claimed system of the ’652 Patent. For example, the Accused Products constitute a material part of the invention claimed because they contain each and every element of the claimed system, including a venous-access device, blood component separation device, plasma container, blood draw line, blood drawn pump, anticoagulant line, anticoagulant source, and a controller configured to carry out the claimed functionality.

**ANSWER**: Denied.

128. On information and belief, the infringing acts of each partner or customer regarding the Accused Product are attributable to Defendants. For example, on information and belief, Defendants direct and control the activities or actions of their third-party customers in connection with the Accused Products by contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Product which, when followed and used, result in infringement.

**ANSWER**: Denied.

129. As a consequence of Defendants’ direct and indirect infringement of the ’652 Patent, both literally and under the doctrine of equivalents, Haemonetics has been and continues to be irreparably harmed.

**ANSWER**: Denied.

130. On information and belief, Defendants’ infringement of the ‘652 Patent will continue in the future, and Haemonetics will be irreparably harmed as a consequence unless Defendants’ infringing acts are enjoined by this Court.

**ANSWER**: Denied.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 12,171,916

131. Haemonetics realleges and incorporates the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER**: Paragraph 131 does not contain allegations that require a response. To the extent an answer is required, Fresenius denies any allegations.

132. On information and belief, Defendants have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claim 14 of the '916 Patent by making, using, selling, and/or offering for sale the Accused Products.

**ANSWER**: Denied.

133. Claim 14 of the '916 Patent covers a novel plasma collection system and recites:

A system for collecting plasma comprising:

a venipuncture needle configured to draw whole blood from a donor;

a blood separator configured to separate the whole blood into a plasma product and a second blood component comprising red blood cells, the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container;

a donor line fluidly coupled to the venipuncture needle configured to introduce the whole blood from the donor to the separator, flow through the donor line being controlled by a first pump;

an anticoagulant line coupled to an anticoagulant source, the anticoagulant line configured to combine anticoagulant with the whole blood from the donor, flow through the anticoagulant line being controlled by a second pump;

a touchscreen configured to receive input from an operator; and

a controller programmed to control operation of the system, the controller coupled to the touchscreen and programmed to receive donor parameters electronically from a control system, to determine a target volume for plasma product and/or raw plasma based at least in part on the donor parameters and to control the system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor.

**ANSWER**: Fresenius admits Claim 14 of the '916 Patent recites:

A system for collecting plasma comprising:

a venipuncture needle configured to draw whole blood from a donor;

a blood separator configured to separate the whole blood into a plasma product and a second blood component comprising red blood cells, the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container;

a donor line fluidly coupled to the venipuncture needle configured to introduce the whole blood from the donor to the separator, flow through the donor line being controlled by a first pump;

an anticoagulant line coupled to an anticoagulant source, the anticoagulant line configured to combine anticoagulant with the whole blood from the donor, flow through the anticoagulant line being controlled by a second pump;

a touchscreen configured to receive input from an operator; and

a controller programmed to control operation of the system, the controller coupled to the touchscreen and programmed to receive donor parameters electronically from a control system, to determine a target volume for plasma product and/or raw plasma based at least in part on the donor parameters and to control the system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor.

To the extent there are allegations not expressly admitted above, those allegations are denied.

134. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

135. The Accused Products are systems for collecting plasma.

**ANSWER**: Paragraph 135 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products are systems for collecting plasma as claimed in the ’916 Patent.

136. The Accused Products have a venipuncture needle configured to draw whole blood from a donor.

**ANSWER**: Paragraph 136 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a venipuncture needle configured to draw whole blood from a donor as required by the system for collecting plasma as claimed in the ’916 Patent.

137. The Accused Products have a blood separator configured to separate the whole blood into a plasma product and a second blood component comprising red blood cells, the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container.

**ANSWER**: Paragraph 137 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a blood separator configured to separate the whole blood into a plasma product and a second blood component comprising red blood cells, the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container as required by the system for collecting plasma as claimed in the '916 Patent.

138. The Accused Products have a donor line fluidly coupled to the venipuncture needle configured to introduce the whole blood from the donor to the separator, flow through the donor line being controlled by a first pump.

**ANSWER**: Paragraph 138 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a donor line fluidly coupled to the venipuncture needle configured to introduce the whole blood from the donor to the separator, flow through the donor line being controlled by a first pump as required by the system for collecting plasma as claimed in the '916 Patent.

139. The Accused Products have an anticoagulant line coupled to an anticoagulant source, the anticoagulant line configured to combine anticoagulant with the whole blood from the donor, flow through the anticoagulant line being controlled by a second pump.

**ANSWER**: Paragraph 139 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have an anticoagulant line coupled to an anticoagulant source, the anticoagulant line configured to combine anticoagulant with the whole blood from the donor, flow through the anticoagulant line being controlled by a second pump as required by the system for collecting plasma as claimed in the '916 Patent.

140. The Accused Products have a touchscreen configured to receive input from an operator.

**ANSWER**: Paragraph 140 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a touchscreen

configured to receive input from an operator as required by the system for collecting plasma as claimed in the ’916 Patent.

141. The Accused Products have a controller programmed to control operation of the system.

**ANSWER**: Paragraph 141 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a controller programmed to control operation of the system as required by the system for collecting plasma as claimed in the ’916 Patent.

142. The controllers of the Accused Products are coupled to the touchscreen and programmed to receive donor parameters electronically from a control system.

**ANSWER**: Paragraph 142 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have controllers that are coupled to the touchscreen and programmed to receive donor parameters electronically from a control system as required by the system for collecting plasma as claimed in the ’916 Patent.

143. The controllers of the Accused Products are also programmed to determine a target volume for plasma product and/or raw plasma based at least in part on the donor parameters.

**ANSWER**: Paragraph 143 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have controllers that are also programmed to determine a target volume for plasma product and/or raw plasma based at least in part on the donor parameters as required by the system for collecting plasma as claimed in the ’916 Patent.

144. The controllers of the Accused Products are also programmed to control the system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor.

**ANSWER**: Paragraph 144 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have controllers that are

also programmed to control the system to operate draw and return phases to withdraw whole blood from a donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor as required by the system for collecting plasma as claimed in the ’916 Patent.

145. On information and belief, Defendants market and sell the Accused Products in the United States to their partners, clients, customers, and/or end users who use the Accused Products across this country and in this District.

**ANSWER**: Denied.

146. On information and belief, Defendants have induced and continue to induce others to infringe at least one claim of the ‘916 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Defendants’ partners, clients, customers, and/or end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the ’916 Patent.

**ANSWER**: Denied.

147. In particular, on information and belief, Defendants’ actions that aid and abet others such as their partners, clients, customers, and/or end users to infringe include advertising and distributing the Accused Products and providing instruction materials, training, and services regarding the Accused Products.

**ANSWER**: Denied.

148. On information and belief, Defendants are liable for contributory infringement of the ’916 Patent under 35 U.S.C. § 271(c) for offering to sell and selling in the United States the Accused Products which are especially made or adapted for use to infringe the ’916 Patent. The Accused Products are a material component for use in practicing the ’916 Patent, are specifically made for an infringing use, and are not a staple article of commerce suitable for a non-infringing use. For example, the Accused Products and the example functionality described above have no substantial non-infringing uses, but are specifically designed to practice the claims of the ’916 Patent. The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose. Indeed, the Accused Products are plasma collection systems, containing all the structural elements claimed in the ’916 Patent, specifically designed for plasma collection.

**ANSWER**: Denied.

149. In addition, the Accused Products provided by Defendants constitute a material part of the claimed invention, providing all components and features of the claimed system of the ’916 Patent. For example, the Accused Products constitute a material part of the invention claimed

because they contain each and every element of the claimed system, including a venipuncture needle, blood separator, plasma product collection container, donor line, a first pump, anticoagulant line, anticoagulant source, a second pump, touchscreen, and a controller configured to carry out the claimed functionality.

**ANSWER**: Denied.

150. On information and belief, the infringing acts of each partner or customer regarding the Accused Product are attributable to Defendants. For example, on information and belief, Defendants direct and control the activities or actions of their third-party customers in connection with the Accused Products by contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Product which, when followed and used, result in infringement.

**ANSWER**: Denied.

151. As a consequence of Defendants' direct and indirect infringement of the '916 Patent, both literally and under the doctrine of equivalents, Haemonetics has been and continues to be irreparably harmed.

**ANSWER**: Denied.

152. On information and belief, Defendants' infringement of the '916 Patent will continue in the future, and Haemonetics will be irreparably harmed as a consequence unless Defendants' infringing acts are enjoined by this Court.

**ANSWER**: Denied.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 12,186,474**

153. Haemonetics realleges and incorporates the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER**: Paragraph 153 does not contain allegations that require a response. To the extent an answer is required, Fresenius denies any allegations.

154. On information and belief, Defendants have infringed and continue to infringe, directly and indirectly, literally and under the doctrine of equivalents, at least claims 9 and 14 of the '474 Patent by making, using, selling, and/or offering for sale the Accused Products.

**ANSWER**: Denied.

155. Claim 9 of the '474 Patent covers a novel plasma collection system and recites:

A system for collecting plasma, comprising:

a venipuncture needle configured to draw whole blood from a donor;

a blood separator configured to separate the whole blood into a plasma product and a second blood component comprising red blood cells, the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container;

a donor line fluidly coupled to the venipuncture needle configured to introduce the whole blood from the donor to the blood separator, flow through the donor line being controlled by a first pump;

an anticoagulant line coupled to an anticoagulant source, the anticoagulant line configured to combine anticoagulant with the whole blood from the donor, flow through the anticoagulant line being controlled by a second pump;

a touchscreen configured to receive input from an operator; and

a controller programmed to control operation of the system, the controller coupled to the touchscreen and programmed to receive at least a donor's weight, height and hematocrit and to determine a target volume for plasma product comprising raw plasma and anticoagulant, wherein the target volume for plasma product is determined prior to withdrawing the whole blood from the donor based at least in part on the donor's total blood volume and/or the donor's plasma volume, the controller programmed to then control the system to operate a plurality of draw and return cycles to withdraw whole blood from the donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor.

**ANSWER**: Fresenius admits Claim 9 of the '474 Patent recites:

A system for collecting plasma, comprising:

a venipuncture needle configured to draw whole blood from a donor;

a blood separator configured to separate the whole blood into a plasma product and a second blood component comprising red blood cells, the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container;

a donor line fluidly coupled to the venipuncture needle configured to introduce the whole blood from the donor to the blood separator, flow through the donor line being controlled by a first pump;

an anticoagulant line coupled to an anticoagulant source, the anticoagulant line configured to combine anticoagulant with the whole blood from the donor, flow through the anticoagulant line being controlled by a second pump;

a touchscreen configured to receive input from an operator; and

a controller programmed to control operation of the system, the controller coupled to the touchscreen and programmed to receive at least a donor's weight, height and hematocrit and to determine a target volume for plasma product comprising raw plasma and anticoagulant, wherein the target volume for plasma product is determined prior to withdrawing the whole blood from the donor based at least in part on the donor's total blood volume and/or the donor's plasma volume, the controller programmed to then control the system to operate a plurality of draw and return cycles to withdraw whole blood from the donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor.

To the extent there are allegations not expressly admitted above, those allegations are denied.

156. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

157. The Accused Products are a system for collecting plasma.

**ANSWER**: Paragraph 157 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products are systems for collecting plasma as claimed in the '474 Patent.

158. The Accused Products have a venipuncture needle configured to draw whole blood from a donor.

**ANSWER**: Paragraph 158 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies Accused Products have a venipuncture needle configured to draw whole blood from a donor as required by the system for collecting plasma as claimed in the '474 Patent.

159. The Accused Products have a blood separator configured to separate the whole blood into a plasma product and a second blood component, the second blood component including red blood cells and the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container.

**ANSWER**: Paragraph 159 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a blood separator configured to separate the whole blood into a plasma product and a second blood component, the

second blood component including red blood cells and the blood separator having a plasma output port coupled to a plasma line configured to send the plasma product to a plasma product collection container as required by the system for collecting plasma as claimed in the ’474 Patent.

160. The Accused Products have a donor line fluidly connected to the venipuncture needle and configured to introduce drawn whole blood to the blood separator, the flow through the first line being controlled by a first pump.

**ANSWER**: Paragraph 160 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a donor line fluidly connected to the venipuncture needle and configured to introduce drawn whole blood to the blood separator, the flow through the first line being controlled by a first pump as required by the system for collecting plasma as claimed in the ’474 Patent.

161. The Accused Products have an anticoagulant line coupled to an anticoagulant source, the anticoagulant line configured to combine anticoagulant with the whole blood from the donor, the flow through the anticoagulant line being controlled by a second pump.

**ANSWER**: Paragraph 161 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have an anticoagulant line coupled to an anticoagulant source, the anticoagulant line configured to combine anticoagulant with the whole blood from the donor, the flow through the anticoagulant line being controlled by a second pump as required by the system for collecting plasma as claimed in the ’474 Patent.

162. The Accused Products have a touchscreen configured to receive input from an operator.

**ANSWER**: Paragraph 162 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a touchscreen configured to receive input from an operator as required by the system for collecting plasma as claimed in the ’474 Patent.

163. The Accused Products have a controller programmed to control operation of the system.

**ANSWER**: Paragraph 163 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a controller programmed to control operation of the system as required by the system for collecting plasma as claimed in the '474 Patent.

164. The controllers of the Accused Products are coupled to the touchscreen and programmed to receive at least a donor's weight, height, and hematocrit.

**ANSWER**: Paragraph 164 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have controllers that are coupled to the touchscreen and programmed to receive at least a donor's weight, height, and hematocrit as required by the system for collecting plasma as claimed in the '474 Patent.

165. The controllers of the Accused Products are also programmed to determine a target volume for plasma product including raw plasma and anticoagulant, the target volume for plasma product determined prior to withdrawing the whole blood from the donor based at least in part on the donor's total blood volume and/or the donor's plasma volume.

**ANSWER**: Paragraph 165 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have controllers that are also programmed to determine a target volume for plasma product including raw plasma and anticoagulant, the target volume for plasma product determined prior to withdrawing the whole blood from the donor based at least in part on the donor's total blood volume and/or the donor's plasma volume as required by the system for collecting plasma as claimed in the '474 Patent.

166. The controllers of the Accused Products are also programmed to control the system to operate draw and return cycles to withdraw whole blood from the donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor.

**ANSWER**: Paragraph 166 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have controllers that are also programmed to control the system to operate draw and return cycles to withdraw whole blood

from the donor and separate the whole blood into the plasma product and the second blood component and to return the second blood component to the donor as required by the system for collecting plasma as claimed in the ’474 Patent.

167. Claim 14 of the ’474 Patent depends from claim 9 and recites:

> The system of claim 9, wherein the controller is programmed to perform the draw and return cycles at least three times and the controller is programmed to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase.

**ANSWER**: Fresenius admits Claim 14 of the ’474 Patent purports to depend from claim 9 of the ’474 Patent. Fresenius admits that Claim 14 recites:

> The system of claim 9, wherein the controller is programmed to perform the draw and return cycles at least three times and the controller is programmed to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase.

To the extent there are allegations not expressly admitted above, those allegations are denied.

168. The Accused Products contain each of the above limitations. *See* Exhibit D.

**ANSWER**: Denied.

169. The Accused Products are a system of claim 9. *See* ¶¶ 155-166, *supra*.

**ANSWER**: Denied.

170. The Accused Products have a controller programmed to perform the draw and return cycles at least three times.

**ANSWER**: Paragraph 170 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a controller programmed to perform the draw and return cycles at least three times as required by the system for collecting plasma as claimed in the ’474 Patent.

171. The Accused Products have a controller programmed to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase.

**ANSWER**: Paragraph 171 contains legal conclusions to which no response is required. To the extent an answer is required, Fresenius denies the Accused Products have a controller programmed to determine a volume of whole blood to be drawn in a final draw phase which is different than a volume drawn in a prior draw phase as required by the system for collecting plasma as claimed in the '474 Patent.

172. On information and belief, Defendants market and sell the Accused Products in the United States to their partners, clients, customers, and/or end users who use the Accused Products across this country and in this District.

**ANSWER**: Denied.

173. On information and belief, Defendants have induced and continue to induce others to infringe at least one claim of the '474 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Defendants' partners, clients, customers, and/or end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the '474 Patent.

**ANSWER**: Denied.

174. In particular, on information and belief, Defendants' actions that aid and abet others such as their partners, clients, customers, and/or end users to infringe include advertising and distributing the Accused Products and providing instruction materials, training, and services regarding the Accused Products.

**ANSWER**: Denied.

175. On information and belief, Defendants are liable for contributory infringement of the '474 Patent under 35 U.S.C. § 271(c) for offering to sell and selling in the United States the Accused Products which are especially made or adapted for use to infringe the '474 Patent. The Accused Products are a material component for use in practicing the '474 Patent, are specifically made for an infringing use, and are not a staple article of commerce suitable for a non-infringing use. For example, the Accused Products and the example functionality described above have no substantial non-infringing uses, but are specifically designed to practice the claims of the '474 Patent. The Accused Products have no substantial non-infringing uses because the accused functionality is an integral part of the Accused Products and must be performed for the Accused Products to perform their intended purpose. Indeed, the Accused Products are a plasma collection system, containing all the structural elements claimed in the '474 Patent, specifically designed for plasma collection.

**ANSWER**: Denied.

176. In addition, the Accused Products provided by Defendants constitute a material part of the claimed invention, providing all components and features of the claimed system of the ’474 Patent. For example, the Accused Products constitute a material part of the invention claimed because it contains each and every element of the claimed system, including a venipuncture needle, blood separator, plasma product collection container, donor line, first pump, anticoagulant line, anticoagulant source, second pump, touchscreen, and a controller configured to carry out the claimed functionality.

**ANSWER**: Denied.

177. On information and belief, the infringing acts of each partner or customer regarding the Accused Products are attributable to Defendants. For example, on information and belief, Defendants direct and control the activities or actions of their third-party customers in connection with the Accused Products by contractual agreement, or otherwise providing, or requiring customers to provide, information and instructions to end users of the Accused Products which, when followed and used, result in infringement. As a consequence of Defendants’ direct and indirect infringement of the ’474 Patent, both literally and under the doctrine of equivalents, Haemonetics has been and continues to be harmed.

**ANSWER**: Denied.

178. On information and belief, Defendants’ infringement of the ‘474 Patent will continue in the future, and Haemonetics will be irreparably harmed as a consequence unless Defendants’ infringing acts are enjoined by this Court.

**ANSWER**: Denied.

**[HAEMONETICS’] JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Haemonetics demands a trial by jury on all triable issues.

**ANSWER**: No response is required to Haemonetics’ demand for a trial by jury in this case.

**FRESENIUS’ RESPONSE TO HAEMONETICS’ PRAYER FOR RELIEF**

Fresenius denies Haemonetics is entitled to any relief sought in Haemonetics’ Prayer for Relief.

**FRESENIUS KABI USA, LLC AND FRESENIUS KABI AG’S DEFENSES**

1. Without prejudice to the denials set forth in its Answer, and without admitting any allegations of the FAC not expressly admitted, Fresenius asserts the following defenses to the

FAC without assuming the burden of proof on any such defense that would otherwise rest with Haemonetics. Fresenius reserves the right to amend its Answer to add additional defenses, including for example unenforceability due to inequitable conduct, consistent with the facts discovered in this case.

**FIRST DEFENSE (FAILURE TO STATE A CLAIM)**

2. The FAC fails to state a claim upon which relief can be granted.

**SECOND DEFENSE (NON-INFRINGEMENT)**

3. Fresenius has not infringed and does not infringe, under any theory of infringement including directly, whether individually or jointly, or whether literally or under the doctrine of equivalents, or indirectly, whether contributorily or by inducement, any valid and enforceable claim of U.S. Patent Nos. 10,758,652; 12,171,916; and 12,186,474. Haemonetics has not shown, and cannot show, that Fresenius has infringed any valid and enforceable claim of the Haemonetics Asserted Patents.

**THIRD DEFENSE (INVALIDITY)**

4. Each claim of U.S. Patent Nos. 10,758,652; 12,171,916; and 12,186,474 is invalid for failure to comply with one or more of the requirements of the patent laws of the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto. The claims of the Haemonetics Asserted Patents are directed to non-statutory subject matter under 35 U.S.C. § 101, are anticipated by the prior art, including prior art disclosed by Fresenius, under 35 U.S.C. § 102, are rendered obvious by the prior art under 35 U.S.C. § 103, and fail to satisfy the requirements of 35 U.S.C. §112.

**FOURTH DEFENSE (PROSECUTION HISTORY ESTOPPEL AND PROSECUTION HISTORY DISCLAIMER)**

5. The claims of the Haemonetics Asserted Patents are not entitled to a scope sufficient to encompass any system alleged of infringement by Fresenius. For example, the doctrines of prosecution history estoppel (based on amendments and arguments made during prosecution of the Haemonetics Asserted Patents and related patent applications), disclosure-dedication (based on subject matter stated by not claimed in the Haemonetics Asserted Patents), and ensnarement of the prior art each preclude Haemonetics from asserting the Asserted Patents in the manner purportedly stated in the First Amended Complaint. Accordingly, the doctrine of equivalents is unavailable. Haemonetics' claims are further barred in whole or in part by the doctrine of waiver and/or other equitable doctrines.

**FIFTH DEFENSE (LACK OF STANDING)**

6. To the extent that Haemonetics is not the sole and total owner of any of the Haemonetics Asserted Patents as of the filing date of the FAC, Haemonetics lacks standing to assert, in this case, infringement of any claim from such patent.

**SIXTH DEFENSE (FAILURE TO MARK)**

7. Haemonetics' patent infringement claims are barred in whole or in part for failure to plead compliance with patent marking pursuant to the requirements of 35 U.S.C. § 287(a).

**SEVENTH DEFENSE (STATUTE OF LIMITATIONS)**

8. Haemonetics is barred from recovery, in whole or in part, under the applicable statute of limitations as set forth in 35 U.S.C. § 286.

**EIGHTH DEFENSE (NOT AN EXCEPTIONAL CASE)**

9. The FAC fails to state a claim for exceptional case.

**NINTH DEFENSE (PATENT MISUSE)**

10. Each of the Haemonetics Asserted Patents is unenforceable because Haemonetics has misused the patents by attempting to impermissibly broaden the scope of the patents, impose anticompetitive conditions, or otherwise extend the patents beyond their lawful scope despite knowing that the Haemonetics Asserted Patents are invalid.

**TENTH DEFENSE (EQUITABLE RELIEF)**

11. Haemonetics is not entitled to equitable relief because the remedies at law to which it is entitled, if any, are adequate.

**ELEVENTH DEFENSE (NO COSTS)**

12. To the extent any claim of the Haemonetics Asserted Patents is invalid, Haemonetics is barred by 35 U.S.C. § 288 from recovering costs associated with its action.

**TWELFTH DEFENSE (SAFE HARBOR)**

13. Haemonetics' patent infringement claims are barred at least in part by the safe harbor provision of 35 U.S.C. § 271(e)(1).

**THIRTEENTH DEFENSE (NO WILLFUL INFRINGEMENT)**

14. Fresenius has not willfully infringed, and does not willfully infringe, any valid claim of any of the Asserted Patents.

* * *

15. Fresenius reserves all defenses, at law or equity, which may now exist or in the future be available on discovery and further factual investigation in this case. Fresenius further reserves the right to supplement and/or amend the foregoing defenses.

Dated: March 3, 2026

Respectfully submitted,

**FRESENIUS KABI USA, LLC**
**FRESENIUS KABI AG**

By: */s/ Tasha Gerasimow*

Tasha Francis Gerasimow (ARDC# 6334781)
tasha.gerasimow@kirkland.com
James F. Hurst (ARDC# 6202190)
james.hurst@kirkland.com
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

Patricia A. Carson (PHV)
patricia.carson@kirkland.com
Gregory S. Arovas (NY 2553782)
greg.arovas@kirkland.com
Joseph A. Loy (PHV)
joseph.loy@kirkland.com
Brad Deem (PHV)
brad.deem@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

*Attorneys for Defendants and Counterclaim Plaintiffs, Fresenius Kabi USA, LLC and Fresenius Kabi AG*